# EXHIBIT 12

# ADDRESSING RISKS FROM WILMERHALE

🌐 whitehouse.gov/presidential-actions/2025/03/addressing-risks-from-wilmerhale

March 27, 2025



By the authority vested in me as President by the Constitution and the laws of the United States of America, it is hereby ordered:

Section1.  Background.  My Administration is committed to addressing the significant risks associated with law firms, particularly so-called "Big Law" firms, that engage in conduct detrimental to critical American interests.  Many firms take actions that threaten public safety and national security, limit constitutional freedoms, degrade the quality of American elections, or undermine bedrock American principles.  Moreover, law firms regularly conduct this harmful activity through their powerful pro bono practices, earmarking hundreds of millions of their clients' dollars for destructive causes, that often directly or indirectly harm their own clients.  Lawyers and law firms that engage in such egregious conduct should not have access to our Nation's secrets, nor should such conduct be subsidized by Federal taxpayer funds or contracts.

Wilmer Cutler Pickering Hale and Dorr LLP (WilmerHale) is yet another law firm that has abandoned the profession's highest ideals and abused its pro bono practice to engage in activities that undermine justice and the interests of the United States.  For example, WilmerHale engages in obvious partisan representations to achieve political ends, supports efforts to discriminate on the basis of race, backs the obstruction of efforts to prevent illegal aliens from committing horrific crimes and trafficking deadly drugs within our borders, and furthers the degradation of the quality of American elections, including by supporting efforts designed to enable noncitizens to vote.  Moreover, WilmerHale itself discriminates against its

employees based on race and other categories prohibited by civil rights laws, including through the use of race-based "targets."

WilmerHale is also bent on employing lawyers who weaponize the prosecutorial power to upend the democratic process and distort justice.  For example, WilmerHale rewarded Robert Mueller and his colleagues — Aaron Zebley, Mueller's "top aide" and "closest associate," and James Quarles — by welcoming them to the firm after they wielded the power of the Federal Government to lead one of the most partisan investigations in American history.  Mueller's investigation epitomizes the weaponization of government, yet WilmerHale claimed he "embodies the highest value of our firm and profession."  Mueller's "investigation" upended the lives of public servants in my Administration who were summoned before "prosecutors" with the effect of interfering in their ability to fulfill the mandates of my first term agenda.  This weaponization of the justice system must not be rewarded, let alone condoned.

Sec. 2.  Security Clearance Review.  (a)  The Attorney General, the Director of National Intelligence, and all other relevant heads of executive departments and agencies (agencies) shall immediately take steps consistent with applicable law to suspend any active security clearances held by individuals at WilmerHale, pending a review of whether such clearances are consistent with the national interest.

(b)  The Office of Management and Budget shall identify all Government goods, property, material, and services, including Sensitive Compartmented Information Facilities, provided for the benefit of WilmerHale.  The heads of agencies providing such material or services shall, to the extent permitted by law, expeditiously cease such provision.

Sec. 3.  Contracting.  (a)  To prevent the transfer of taxpayer dollars to Federal contractors whose earnings subsidize, among other things, activities that are not aligned with American interests, including racial discrimination, Government contracting agencies shall, to the extent permissible by law, require Government contractors to disclose any business they do with WilmerHale and whether that business is related to the subject of the Government contract.

(b)  The heads of agencies shall review all contracts with WilmerHale or with entities that disclose doing business with WilmerHale under subsection (a) of this section.  To the extent permitted by law, the heads of agencies shall:

(i)   take appropriate steps to terminate any contract, to the maximum extent permitted by applicable law, including the Federal Acquisition Regulation, for which WilmerHale has been hired to perform any service; and

(ii)  otherwise align their agency funding decisions with the interests of the citizens of the United States; with the goals and priorities of my Administration as expressed in executive actions, especially Executive Order 14147 of January 20, 2025 (Ending the Weaponization of the Federal Government); and as heads of agencies deem appropriate.  Within 30 days of the date of this order, agencies shall submit to the Director of the Office of Management and

Budget an assessment of contracts with WilmerHale or with entities that do business with WilmerHale effective as of the date of this order and any actions taken with respect to those contracts in accordance with this order.

Sec. 4.  Racial Discrimination.  Nothing in this order shall be construed to limit the action authorized by section 4 of Executive Order 14230 of March 6, 2025 (Addressing Risks from Perkins Coie LLP).

Sec. 5.  Personnel.  (a)  The heads of agencies shall, to the extent permitted by law, provide guidance limiting official access from Federal Government buildings to employees of WilmerHale when such access would threaten the national security of or otherwise be inconsistent with the interests of the United States.  In addition, the heads of agencies shall provide guidance limiting Government employees acting in their official capacity from engaging with WilmerHale employees to ensure consistency with the national security and other interests of the United States.
(b)  Agency officials shall, to the extent permitted by law, refrain from hiring employees of WilmerHale, absent a waiver from the head of the agency, made in consultation with the Director of the Office of Personnel Management, that such hire will not threaten the national security of the United States.

 Sec. 6.  General Provisions.  (a)  Nothing in this order shall be construed to impair or otherwise affect:
(i)   the authority granted by law to an executive department or agency, or the head thereof; or
(ii)  the functions of the Director of the Office of Management and Budget relating to budgetary, administrative, or legislative proposals.
(b)  This order shall be implemented consistent with applicable law and subject to the availability of appropriations.
(c)  This order is not intended to, and does not, create any right or benefit, substantive or procedural, enforceable at law or in equity by any party against the United States, its departments, agencies, or entities, its officers, employees, or agents, or any other person.