1              IN THE UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF COLUMBIA
2

3    JENNER & BLOCK LLP,
                                        Civil Action No.
4              Plaintiff,               1:25-cv-0916

5         vs.                           Washington, DC
                                        March 28, 2025
6    U.S. DEPARTMENT OF JUSTICE,
     et al.,
7                                       5:51 p.m.
               Defendants.
8    _____/

9
                     TRANSCRIPT OF MOTION HEARING
10          BEFORE THE HONORABLE JOHN D. BATES
                  UNITED STATES DISTRICT JUDGE
11

12   APPEARANCES:

13   For the Plaintiff:      MICHAEL ATTANASIO
                             Cooley LLP
14                           4401 Eastgate Mall
                             San Diego, CA 92121
15

16   For the Defendants:     RICHARD LAWSON
                             DOJ-USAO
17                           950 Pennsylvania Avenue, NW
                             Washington, DC 20530
18

19

20

21

22

23   Court Reporter:         JEFF HOOK
                             Official Court Reporter
24                           U.S. District & Bankruptcy Courts
                             333 Constitution Avenue, NW
25                           Washington, DC 20001

1              **P R O C E E D I N G S**

2          **DEPUTY CLERK:**  We are on the record in civil case

3      25-916, Jenner & Block LLP vs. U.S. Department of Justice,

4      et al.

5              Starting with plaintiff's counsel, please approach

6      the podium and state your appearance for the record.

7          **MR. ATTANASIO:**  Good evening, Your Honor.  Michael

8      Attanasio, Cooley LLP, on behalf of the plaintiff, Jenner &

9      Block.

10         **THE COURT:**  Good evening.

11         **MR. LAWSON:**  Good evening, Your Honor.  Richard

12     Lawson with the Department of Justice, a Deputy Associate

13     Attorney General in the Associate Attorney General's Office.

14     And if I could thank Court and counsel and staff for

15     accommodating the staggered schedule this evening.

16         **THE COURT:**  Well, the schedule was a little

17     rushed, but you were a little busy as well.  We're here on

18     the motion of the plaintiff, Jenner & Block, for a temporary

19     restraining order.  It has filed papers in support of that,

20     and I've reviewed those papers, including copies of the

21     various executive orders and fact sheets -- and the

22     particular ones relevant here, and the accompanying

23     declaration.

24             I don't want you to start from scratch and take an

25     hour given the late time that we're starting this, but I

1    want to give each side -- and I guess even more so the

2    government, a chance to say its piece.  I haven't heard yet

3    from the government.  But we'll start with Jenner & Block

4    and Mr. Attanasio.

5          **MR. ATTANASIO:**  Thank you, Your Honor.  And let me

6    begin by, again, thanking the Court and the court staff for

7    staying late on this very significant matter; we greatly

8    appreciate it.

9          I want to begin by mentioning to the Court that

10   with me tonight are the declarant that we submitted to Your

11   Honor, Thomas Perrelli -- he is the chair of the global firm

12   Jenner & Block, along with several partners and lawyers from

13   Jenner & Block.  And I'm glad they're here because of the

14   importance of this matter to their firm and to lawyers

15   everywhere, frankly.

16         I appreciate the Court's comment regarding not

17   starting at the beginning and marching through the whole

18   exercise, which can be found in our papers, found in the

19   declaration.  Let me attempt to address two critical issues

20   that sweep across the entire landscape of the Executive

21   Order, our complaint and the temporary restraining order we

22   would ask you to enter.  And the two sweeping issues are,

23   first, that the Executive Order on its face is retaliatory;

24   and second, that the Executive Order on its face is intended

25   to have, and is having, a chilling effect on Jenner & Block,

1    its lawyers, its employees, their clients, government

2    lawyers and officials who might engage with -- to quote the

3    Executive Order, engage with Jenner & Block are all --

4          **THE COURT:**  So what do you point to in the

5    Executive Order to specify that intent or purpose?

6          **MR. ATTANASIO:**  I believe the Executive Order --

7          **THE COURT:**  You can imply it from much of the

8    Executive Order, but what do you point to specifically that

9    expresses that intent or purpose?

10         **MR. ATTANASIO:**  Yes, Your Honor.  And I'll preface

11   it by saying I don't think we have to set aside our common

12   sense in this regard, but I will point the Court

13   respectfully --

14         **THE COURT:**  But I'm not a juror.  That's what

15   usually is said to a juror.

16         **MR. ATTANASIO:**  Fair enough, fair enough.  I will

17   go right to Section 1.  Section 1 calls out what this is

18   about, calls out what the intent is.  It might as well have

19   a heading that says:  Assault on the viewpoints of Jenner &

20   Block and its clients; assault on the free speech rights of

21   this law firm for these reasons.  And let's look at the

22   reasons, because that will tell us the intent.

23         The first reason stated is the firm's, what I

24   would suggest to this Court in particular -- and frankly all

25   courts I've been in, commendable pro bono activities on

1   unpopular -- sometimes unpopular causes.  It's right there

2   in Section 1.  It says:  "This is a law firm that has stood

3   for and represented clients in matters implicating LGBTQ

4   rights, and in matters impacting asylum, refugee status and

5   immigration."  It says it right here.

6         The other thing it says, Your Honor, which I found

7   frankly incredible, is:  "Jenner engages in obvious partisan

8   representations to achieve political ends."  I want to

9   center that, and I want to make sure it's quoted with the

10   court reporter.  Quote:  "Jenner engages in obvious partisan

11   representations to achieve political ends."  That says that

12   if Jenner represents in any way, pro bono or paid, a client

13   that has a partisan or political difference with the

14   Executive, then Jenner will suffer the consequences.

15         And then most startling, most surprisingly and

16   shockingly, the order then goes on in Section 1 to name and

17   malign a former -- emphasis on former, partner of Jenner &

18   Block named Andrew Weissmann.

19         **THE COURT:**  Would this case be different if

20   Mr. Weissmann was still employed at Jenner & Block?

21         **MR. ATTANASIO:**  It would not.  But his prior

22   employment, and the fact that the order later in Section 5

23   indicates that Mr. Weissmann still works for Jenner &

24   Block -- because the order says to government officials do

25   not engage with Jenner & Block attorneys; do not let them

1    into your buildings including, but not limited to, Andrew

2    Weissmann, which is both nonsensical, but more importantly,

3    more importantly, tells us what is really going on here in

4    terms of retaliation.  The President of the United States is

5    saying that if a law firm represents clients with a

6    viewpoint, if the law firm employs an attorney who once

7    worked on an investigation under the auspices of the United

8    States, fully authorized investigation, appointed Special

9    Counsel Robert Mueller by the Deputy Attorney General, then

10    that law firm will be punished.  And the law firm in this

11    case is Jenner.

12        **THE COURT:**  Now, Section 1, you and I may find

13    much in Section 1 to be reprehensible.  My question for you

14    is:  What are you asking me to enjoin there?  It doesn't

15    instruct any action.  It doesn't really -- unlike some other

16    sections, it doesn't say agencies do this or agencies do

17    that.  It's just stating some viewpoints that I understand

18    why you find to be pretty distasteful.

19        But what would I be enjoining other than enjoining

20    the President's speech on those subjects?

21        **MR. ATTANASIO:**  There are --

22        **THE COURT:**  What would I be doing, saying:  I

23    strike this; President, you can't say this?

24        **MR. ATTANASIO:**  I understood -- I understand the

25    Court's concern on that point.  Let me address it in two

1    ways.  First, the reason there is a need to enjoin Section 1

2    is that the entire structure of the Executive Order is

3    essentially circular.  There is a direction to government

4    contracting agencies in Section 3 and all officials, all

5    agencies, in Section 5 to take certain steps, to the extent

6    consistent with national security or the interests of the

7    United States otherwise.  And in doing so, it has already

8    created the standard for that, and indeed the conclusion to

9    that question, and that is found in Section 1.  There is no

10   ability to apply Section 3 and Section 5 without reference

11   to Section 1.  And I would submit that is exactly why the

12   President set it up this way, is so that Section 3 and

13   Section 5 already have the question answered:  Just look

14   above to Section 1.

15         The second reason, Your Honor, in addition to the

16   interplay between these sections, is that Section 1 by

17   itself is impermissible violation of Jenner & Block's First

18   Amendment rights to advocate, to engage with its clients, to

19   take clients with unpopular causes, and is the real engine

20   of the chilling effect behind the First Amendment violation.

21   Section 3 and Section 5 are the execution.

22         **THE COURT:**  So if the President just gave a

23   response to a reporter's question at a press conference and

24   said exactly -- or just about what's in Section 1, but

25   didn't ask for any action by anybody, do you think that

1    would be actionable in court by Jenner & Block?

2          **MR. ATTANASIO:**  Well, I don't think we'd be here

3    filing this lawsuit and seeking a TRO.

4          **THE COURT:**  I think that's right, but my question

5    is would it be actionable?

6          **MR. ATTANASIO:**  I suppose there could be

7    situations in which statements that are defamatory or

8    malicious and meet those standards -- which we're not here

9    about, could require action.  But I'm not here to say that,

10   and I'd want to give that some more thought.

11          I don't -- what I am urging the Court is that you

12   can't effectively do that.  You can't strip Section 1 out of

13   this Executive Order, Sections 1 through 5, and treat it as

14   the type of statement Your Honor just suggested.  Could

15   there be an actionable case there?  I suppose.  But I want

16   to really drill in here on the interplay between the

17   sections, beginning with Section 1, and then the impact and

18   the chilling effect.  It is retaliatory intentionally.  It

19   is retaliatory to attack the viewpoints of Jenner & Block

20   and its clients.

21          And now let me turn, if I may, to the second part

22   of the big picture items I wanted to share with the Court,

23   and that is the chilling effect.  This is not a

24   hypothetical.  This is not the future.  This is today,

25   yesterday and the day before.  Jenner has been put in a

1    position in which its attorneys are being threatened with

2    the sanction of the Executive Branch, punishment by the

3    Executive Branch because they would represent certain

4    clients.  I would like the Court to consider, as an

5    experienced lawyer and judge, the chilling effect on counsel

6    who walks on eggshells, who looks over her shoulder because

7    representation of one of these groups or some other group we

8    don't know yet would cause an executive order like this to

9    be issued against her law firm.

10          I would like the Court to consider, and not only

11   consider, but read Mr. Perrelli's declaration at paragraphs

12   63 through 71 --

13          THE COURT:  That chilling effect that you just

14   mentioned, does it go to Jenner attorneys or does it go to

15   other attorneys who are chilled by this Executive Order?

16          MR. ATTANASIO:  Both, both.  And I don't want to

17   unduly rely on what is effectively a sister court of this

18   Court, but I -- because this Court will make its own

19   decision, I understand that.  But I would, in this regard,

20   just commend Your Honor to the order in the Perkins Coie

21   case in which the court said:  "These executive orders" --

22   this is quoting, "threaten to cast a chilling harm of

23   blizzard proportions across the entire legal profession."

24          THE COURT:  I understand that, I was just trying

25   to --

1      **MR. ATTANASIO:**  And that's what I thought Your

2   Honor was asking.  It is both, it is our profession -- your

3   profession, my profession, all of their professions, it is.

4   But right now, tonight, it's Jenner & Block.  They have

5   clients who don't want to work with them.  We have

6   clients --

7      **THE COURT:**  So what's the specifics, just for the

8   record, in terms of the harms?  Some of the harm -- I don't

9   know whether to call it most of it or much of it or just

10   some of it, depends on something that a private third party,

11   a client might do, drop the firm.

12      What is there specifically that takes that beyond

13   just assumptions or speculation to likelihood?

14      **MR. ATTANASIO:**  Understood.  First of all, again,

15   if we just take the order on its own terms, it is intended

16   to move clients away from Jenner & Block.  The President,

17   and allies of the President, have said the goal of these

18   orders is to put firms out of business that we don't like.

19      **THE COURT:**  Has the President said that?

20      **MR. ATTANASIO:**  The President -- one of his --

21      **THE COURT:**  I know Steve Bannon said that, but has

22   the President said that?

23      **MR. ATTANASIO:**  Your Honor has certainly read the

24   papers, I appreciate that.  The President has not said it in

25   those terms.  But in dealing with this Executive Order, both

1    in announcing its signing, and prior to that when talking

2    about law firms in general, the President has said:  Law

3    firms need to behave; they're -- some of them are bad

4    actors; they need to -- and I'm paraphrasing somewhat, but

5    he said they need to behave, they need to get with it.

6          **THE COURT:**  No, I think those two things have been

7    said.  Whether that comports with put them out of business;

8    maybe.

9          **MR. ATTANASIO:**  Then -- and I want to have some

10   distinction between what is obvious about the order and what

11   we know is happening, but also I want to be very granular.

12   We have specifics in Mr. Perrelli's declaration at

13   paragraphs 63 through 71.  The day after the order issued, a

14   client was told by a government official:  We cannot meet

15   with you if Jenner & Block is there.  That meeting is not

16   two years from now after some guidance is issued, that

17   meeting is April 3rd.  And that government lawyer has said:

18   No meeting if Jenner's going to be there.

19          They were fired, fired -- paragraph 64, by a pro

20   bono client who said this is -- effectively, this is too

21   hot, we're not going to be able to do that.  We have every

22   day clients, particularly those with government contracts,

23   expressing concern about their ability to continue with

24   Jenner & Block.  And so there's nothing fanciful or

25   speculative about this.  Your Honor understands this, I'm

1       confident.

2              A paying client or a pro bono client faced with a

3       choice of selecting a law firm that is under this kind of

4       shadow and cloud, and real consequences about government

5       buildings, government lawyers, choosing that law firm -- in

6       this case Jenner, versus another law firm that somehow or

7       another has escaped that sanction, what do we think is

8       likely to happen there?  There are many good lawyers at many

9       good law firms -- there are tremendous lawyers at Jenner,

10      but there's many good lawyers at many good law firms who

11      might be a better choice in that client's mind.

12             The other thing I'd like to just address, Your

13      Honor, is I would like to frame the idea of proportionality

14      and scrutiny of this order in the following terms.  We would

15      have an Executive Order here that says to 900 people --

16      including people in the mailroom, IT professionals, young

17      attorneys who want to be an Assistant U.S. Attorney, who

18      want to be a federal prosecutor:  You cannot be hired by the

19      federal government unless you go through a different

20      procedure than everybody else.  The door for you to be a

21      prosecutor, the door for you to be a courtroom deputy, the

22      door for you to be a U.S. Marshal, that's different than

23      anybody else.  Why?  Because you worked at Perkins Coie --

24      excuse me, excuse me, because you worked at Jenner.  That

25      cannot be how things stand in terms of the First Amendment

1    and the viewpoints that this law firm has represented.

2         **THE COURT:**  Let me ask a couple of other questions

3    along similar lines.  So in one of the more important

4    operative sections that you seek to enjoin, Section 3,

5    agency heads are instructed to review all contracts with

6    Jenner, and it goes a little further than that.  But it

7    doesn't necessarily direct a particular outcome from that

8    review.

9         Does that mean that it leaves discretion for

10   agency heads to reach whatever conclusion they feel is

11   appropriate, and does that somehow make your irreparable

12   harm less immediate and less likely?

13        **MR. ATTANASIO:**  No, it does not.  First of all, it

14   does not because government contracting is a critical part

15   of Jenner's business.  And we are being told, as we've

16   proven, that we're going to lose some business in that space

17   because of this order.  But with respect to the order, if I

18   could respectfully direct the Court's attention to 3(b)(i).

19        **THE COURT:**  Got it.

20        **MR. ATTANASIO:**  Those heads of agencies, at the

21   end of that part -- of part B, are told:  "To the extent

22   permitted by law, the heads of agencies shall" -- not may,

23   "shall take appropriate steps to terminate any contract, to

24   the maximum extent permitted by applicable law, including

25   the FAR, for which Jenner has been hired to perform any

1    service."  That's -- as I read that, that's mandatory.

2    There's no savings there.  There's no savings when you have

3    a blatant First Amendment violation like this by saying as

4    long as it complies with applicable law.  That law is well

5    established, so there's no out there.

6         But what this says is shall take steps to

7    terminate the contract.  Not because it's a bad contract,

8    not because it's waste, fraud and abuse, to use the phrase

9    of the day, but because Jenner worked with the client.  The

10   client --

11        **THE COURT:**  And so what about the phrase that you

12   just referred to, which appears in several locations:  "To

13   the extent permissible by law"?  Does that mean we should be

14   comfortable, and everything that's being commanded in this

15   Executive Order will be done consistent with the law?

16        **MR. ATTANASIO:**  Absolutely not.  First of all,

17   when the order on its face is retaliatory and causes the

18   chilling effect I've described, it cannot be saved.  Second

19   of all, the law is clear that when you have an executive

20   order or an act and it first violates the Constitution the

21   way this does, it's not saved by a boilerplate recitation of

22   consistent with applicable law.  And so no, there's nothing

23   here that can take a blatantly unconstitutional executive

24   order and save it by a boilerplate reference back to other

25   law that we don't even know what it is.  That just cannot

1    operate and withstand constitutional scrutiny, certainly not

2    under the First Amendment.

3         Because what is happening then, Your Honor, would

4    be a -- it would swallow itself.  You'd be saying to Jenner:

5    You violated what we think are proper activities; you've

6    represented clients we don't like, so we are going to punish

7    you, but it's only going to be consistent with law

8    otherwise.  The Supreme Court and the Constitution does not

9    allow for that kind of approach with this kind of order.

10   **THE COURT:**  So on due process -- not on the right

11   to counsel aspect of due process, the Fifth and Sixth

12   Amendment argument in terms of representing clients, but in

13   terms of notice of what the Executive Branch is doing or

14   wants to do with respect to Jenner & Block, why isn't the

15   Executive Order sufficient notice?

16   **MR. ATTANASIO:**  Well, the Executive Order came

17   with no notice, so -- I understand the Court's question.

18   We're here now.

19   **THE COURT:**  The Executive Order itself doesn't do

20   anything, it says agencies do these things.  So why isn't

21   the Executive Order sufficient notice that this is going to

22   be happening?

23   **MR. ATTANASIO:**  Because the -- what's happening in

24   terms of the punishment and the chilling effect on Jenner &

25   Block, its people and its clients is happening the second

1   this hit.  There was no opportunity to respond to what was

2   proposed in terms of immediate irreparable injury.  The

3   immediate irreparable injury will only be added to when

4   further steps are taken.  It's already happening the second

5   this came out.

6          So the moment in time, the snapshot in time to

7   look at procedural due process was when this was issued and

8   before: Did Jenner have notice?  Did Jenner have an

9   opportunity to try to do anything about this?  And the

10  answer is no.  And then you have a sweeping, very broad --

11  overbroad set of mandates that come out of the clear blue

12  sky and, frankly, are threatening to the firm, threatening

13  to its employees, threatening to its clients without any

14  notice or process whatsoever.

15          **THE COURT:**  So why don't you take a couple of

16  minutes to sort of wrap things up so I can hear from

17  Mr. Dawson (sic) on behalf of the defendants.

18          **MR. ATTANASIO:**  Yes, Your Honor.  I'll wrap up

19  here:  I often tell the young lawyers in my firm that you

20  are blessed to work in a profession that's as unique -- is

21  unique.  It's unique in the sense that you represent

22  somebody -- an individual, a company, a public interest

23  organization, and you stand behind -- between, rather, you

24  stand between that client and whatever the threat is that

25  faces that client.  It could be government action, it could

1    be a civil lawsuit, it doesn't matter.  We are the only

2    profession where the client hires you to stand in front of

3    the client and defend the client against whatever threat is

4    on the horizon: economic, personal freedom, the right to do

5    certain things, the right to live your life.

6            Unlike being a doctor, unlike being a teacher,

7    unlike anything, this Executive Order is designed to punish

8    that.  It's designed to say:  Lawyers, if the person or the

9    company or the organization you're standing in front of is

10   something that this Executive Branch does not like, we will

11   punish you.  We will punish you.  And that is not

12   constitutional, and that is not right, and this Court should

13   enjoin it with a TRO.  Thank you.

14           **THE COURT:**  Thank you.  Mr. Dawson -- I'm sorry,

15   Lawson.

16           **MR. LAWSON:**  Thank you, Your Honor.  So I would --

17   if the Court permits, I think a way to approach this is to

18   take each section that is, I believe, currently before the

19   Court for a TRO.  I read the order -- or the proposed order

20   in the motion as only addressing Sections 1, 3 and 5, not 2

21   and 4.

22           **THE COURT:**  That's all they seek to enjoin

23   temporarily --

24           **MR. LAWSON:**  Correct.

25           **THE COURT:**  -- through this TRO motion.

1          **MR. LAWSON:**  So if we could --

2          **THE COURT:**  And I believe that's consistent with

3     at least one other case.

4          **MR. LAWSON:**  Correct, Your Honor, the Perkins Coie

5     matter.  And so as to Section 1, I think our argument tracks

6     many of the questions the Court asked.  This is -- it is

7     speech, it is background.  It informs the order.  It informs

8     the background for where the order comes from.  It would

9     inform the provisions that are to be acted upon.  I would --

10    as I understand plaintiff's argument, the purpose of

11    enjoining Section 1 is that it has material influence on how

12    Sections 3 and 5 would be implemented.

13         We would submit that an order as it relates to 3

14    and 5 -- well, we would submit that there should be no

15    order, of course, but any order that addressed 3 and 5 would

16    necessarily resolve any concerns about Section 1.  I --

17         **THE COURT:**  So why is that important to the

18    government?  Let's assume what you said a moment ago, that 3

19    and 5 were enjoined.  Why is it important to the government

20    that Section 1 not be enjoined?

21         **MR. LAWSON:**  Because --

22         **THE COURT:**  What freedom does that give you to do

23    what?

24         **MR. LAWSON:**  I think it sends a very -- I think it

25    encroaches upon the speech prerogatives of the head of the

1    Executive Branch, that certain things could be said in

2    certain circumstances where the Judiciary is saying no, you

3    can't say that.  I think it's -- I think it would be

4    improper, and I think it's unnecessary.  So it's almost a

5    discretionary point that I'm making, that there is a thicket

6    over there with Section 1.  It's immaterial to any relief

7    that could be granted as to Section 3s 3 and 5.  It's

8    background, it is commentary.  It is a more formal, refined

9    version than the -- but in essence, the same as the

10   hypothetical the Court raised of a press interview where the

11   same statements would have been made.

12          So I would just urge that there's -- it offers no

13   material relief, and it skirts into a very, very complicated

14   area as far as the speech rights of the Executive and the

15   power of the Judiciary to control that.  I don't see that

16   being necessary.  I don't think ignoring Section 1, to the

17   degree the Court is inclined to grant any relief for

18   Sections 3 and 5 --

19          **THE COURT:**  But you will agree that Section 1 and

20   the observations -- I'll call them observations, made in

21   Section 1 are integral to and necessary to the order in

22   Section 3 and the order in Section 5 with respect to what

23   the federal government is going to be doing?

24          **MR. LAWSON:**  I think it's fair to say --

25          **THE COURT:**  Because without the basis, to the

1    extent that it is a basis, expressed in Section 1, that

2    there's no --

3         **MR. LAWSON:**  I think any --

4         **THE COURT:**  -- nothing to support Section 3 and

5    Section 5.

6         **MR. LAWSON:**  I think any member of the Executive

7    who would be wrestling with how to implement Sections 3 or 5

8    would necessarily be resorting and looking at what was said

9    in Section 1 to guide that decision.  But again, I think for

10   the purpose -- if the Court doesn't touch one but does do

11   something for 3 and 5, I don't think there's any, any harm

12   to plaintiff that the Judiciary hasn't enjoined statements

13   from the Executive as to his feelings on this firm.  And I

14   think it probably is --

15        **THE COURT:**  So let's talk about Section 1 then for

16   a second, you know, whether it's enjoined or not.  It looks

17   to me like a lot of conclusions and very little in the way

18   of specifics or facts to support those conclusions.  Would

19   you agree with that assessment?

20        **MR. LAWSON:**  I --

21        **THE COURT:**  Other than the specifics with respect

22   to Mr. Weissmann, there's very little --

23        **MR. LAWSON:**  Well, I mean --

24        **THE COURT:**  It says, okay, in this case or with

25   respect to this client or in articulating this position.

1      **MR. LAWSON:**  The document clearly speaks for

2  itself as far as what it's saying.  Is it an almanac of

3  specific case cites?  Clearly not.  Is it a reference to

4  numerous news articles?  I don't see that in there.  So, I

5  mean, it's -- I don't -- I'm not going to be able to sit

6  here and point to a section that says no, the Court has it

7  wrong as far as what you're seeing in there.

8      That being said, I'm not sure it is insufficient

9  for the purpose of guiding the other sections and their

10  implementation.  I don't think there's anything improper

11  with the specificity or not in the order.  It is a

12  promulgation from the Executive, fully within his rights,

13  government speech, to --

14      **THE COURT:**  So I'm left to guess to some extent

15  on, for example, what's the national security threat posed

16  by Jenner employees?

17      **MR. LAWSON:**  I think that there is a concern based

18  on the former employee Mr. Weissmann's activities.

19      **THE COURT:**  But he's a former employee.  You're

20  not really going to tell me now that -- perhaps your client

21  didn't know, but now that it's clear that he hasn't been

22  employed at Jenner & Block for four years, you're not going

23  to really tell me that having someone employed four years

24  ago poses some kind of national security threat?

25      **MR. LAWSON:**  Not per se, no.  But to the --

1      **THE COURT:**  Well, if not per se, then how?

2      **MR. LAWSON:**  To the degree there were any partners

3  or any interaction with people who are still there that

4  Mr. Weissmann might have been involved with when he was

5  there previously.

6      **THE COURT:**  Interaction with Mr. Weissmann,

7  what -- of course there are going to be people who had some

8  interaction with Mr. Weissmann.  Perhaps you might try to

9  make that a little more specific, because that seems a

10  little bit broad.

11      **MR. LAWSON:**  Well, if I could, on that point, it's

12  not a subject of the TRO.  I guess we will revisit it later

13  on the more substantive portions in the pleadings.  But the

14  national security interests are not critical -- they are

15  relevant, but they're not --

16      **THE COURT:**  But it's the basis for some of what is

17  commanded in Sections 3 and 5.

18      **MR. LAWSON:**  Well, it drives Section 2.  This is

19  where I was coming from on that.  And in Section 2, there

20  are some discretionary points.  Also in Section 5, when it

21  comes to hiring, there's some discretionary points; Section

22  3 as well.  And so it's -- I think there is the opportunity

23  for an inquiry onto the national security interests of

24  any -- or jeopardization of any national security interests

25  of Jenner & Block.  So it's not unnecessarily wholesale.

1          **THE COURT:**  To play off of what Mr. Attanasio was

2    referring to in terms of the entire workforce of Jenner &

3    Block, what's the national security justification for

4    commanding that an IT person or the mail person or a

5    second-year associate who's only worked on banking issues

6    cannot be hired by the federal government?  What's the

7    national security or other justification for that?

8          **MR. LAWSON:**  Well, I would submit that even higher

9    than the national security issue is another question of the

10   prerogative of the Executive to make those hiring decisions

11   in toto.  This is -- there is no --

12         **THE COURT:**  In toto, you mean notwithstanding the

13   First Amendment?

14         **MR. LAWSON:**  No, no, no --

15         **THE COURT:**  Is that what in toto means?

16         **MR. LAWSON:**  No, Your Honor.  What I mean by that

17   is these are hiring decisions that can be made -- it's in

18   the prerogative of the Executive to determine who to hire.

19   So it doesn't have to be driven by national security

20   interests to make a decision to or not to hire an employee.

21         **THE COURT:**  But can it be driven by First

22   Amendment interests?

23         **MR. LAWSON:**  Well, then we would always be --

24         **THE COURT:**  Because that's what it's driven by

25   here, isn't it?

1        **MR. LAWSON:**  Well, I don't think there is a

2    requirement necessarily that -- you have a -- I'm just

3    trying to imagine a situation where a prominent Democrat

4    were to seek employment within the Executive Branch of a

5    Republican administration or vice versa, there's no right to

6    that, there's no prerogative to that.  And the decision to

7    hire or not will be driven in large part by First Amendment

8    activities, you know, what is one political preference over

9    another political preference.  If that -- hopefully this has

10   answered --

11       **THE COURT:**  That might be true in an individual

12   circumstance, but this is not an individual circumstance

13   because it's not tied to anything individually.  It's a

14   blanket prohibition on hiring anyone in any federal agency

15   who is associated with Jenner & Block.

16       **MR. LAWSON:**  Not toto, Your Honor.  It allows for

17   individualized review; it does allow for that.

18       **THE COURT:**  Individualized reviews that are

19   skewed.

20       **MR. LAWSON:**  Well, it's -- there are

21   individualized reviews.  I mean, and exceptions could be

22   made.  It's not the total ban on that point.  But again, I

23   would submit to examine it within what is the true

24   prerogative of the Executive to make hiring decisions on

25   this point.  And I don't think that this order is

1    inconsistent.  I don't even -- I don't think any of the

2    provisions of Section 1 necessarily have to guide that

3    decision, whether --

4         **THE COURT:**  Let's look at the scope in another

5    context.  So you get to Section 5, and it tells the agency

6    heads that they should prohibit access to federal buildings

7    when such access would threaten the national security or

8    otherwise be inconsistent with the interests of the United

9    States.

10        Given what is said in Section 1 with respect to

11   Jenner & Block and its employees, what situation would you

12   present where agency heads would not find access to be

13   inconsistent with the interests of the United States?  I

14   mean, how would agency heads, given the Executive Order,

15   possibly say okay to a Jenner & Block employee having access

16   to a federal building?  It seems to basically say never.

17        **MR. LAWSON:**  Well, I would -- on a fine point as

18   it relates to Section 5 and that, I would urge the Court's

19   direction to the fact that it is calling for guidance, that

20   the guidance has not been issued.  We have a ripeness issue.

21   And to the degree that the Court is inclined -- of course,

22   we respectfully submit you should not, but to the degree

23   that the Court is inclined to grant an order on Section 5, I

24   would urge allowance for the development of the guidance,

25   because otherwise we can't have a concrete guidance issue.

1        I readily concede that there's no --

2              THE COURT:  I can't remember, did Judge Howell

3     allow the development of that guidance?

4              MR. LAWSON:  No, it was a total -- a total ban.

5     And we would submit that there's -- the ripeness issue is

6     kind of frozen, if you will, if you don't allow the guidance

7     to be developed.  Once we have the guidance, we know what is

8     concrete.  We know we will have solid issues to join as far

9     as what problems with access to buildings; what problems to

10    access to meeting with opposing counsel in criminal cases,

11    civil cases, government regulatory agencies; what problems,

12    if any, I should stress, exist.

13            Right now, we just have a direction to promulgate

14    the guidance, we don't have the guidance.  If the Court

15    freezes the order, as I'm reading the proposed order in the

16    motion, that doesn't happen.  There are many issues at play

17    in interaction with counsel, interaction with federal

18    agencies --

19             THE COURT:  No one's issued guidance yet?

20             MR. LAWSON:  To my knowledge, no.  To my

21    knowledge, no.

22             THE COURT:  Well, you're the fount of all

23    knowledge as far as I'm concerned, I don't have any other

24    access.

25             MR. LAWSON:  Well, as the Court noted, I've been

1    busy.  But I do not know, and I would doubt it just given my

2    limited experience and the speed with which these happen.

3    But we -- I apologize, I somewhat lost my train of thought.

4    So the -- you know, if we can get the guidance, then we can

5    have a concrete issue on that point.  Obviously, we've --

6    this is the third case that's been filed.  The Court is not

7    unaware of the Perkins Coie and the WilmerHale and now the

8    Jenner & Block issues.  We've seen the issues that have been

9    brought up as far as being able to execute duties for

10   clients and so forth.  These points are available.

11        The order in its way has acted as notice.  There

12   has been, through these pleadings, ways for the parties to

13   voice their concerns.  If -- once we have the guidance, if

14   the concerns are still there, then there is something to

15   join an action in this case.  There is one -- yes.

16        **THE COURT:**  Back to the point that your adversary

17   made a few minutes ago looking beyond Jenner & Block to the

18   legal community at large.  Do you think that we should

19   expect there will be more executive orders like this?  The

20   Executive Order with respect to Perkins Coie was temporarily

21   enjoined.

22        **MR. LAWSON:**  Yes.

23        **THE COURT:**  But that didn't dissuade the President

24   from issuing executive orders with respect to Paul, Weiss,

25   Wilmer and now Jenner & Block.

1           **MR. LAWSON:**  I don't --

2           **THE COURT:**  We should expect that more is going to

3  come, shouldn't we?

4           **MR. LAWSON:**  I think it would be out of place for

5  me to represent what the White House is intending as yes or

6  no.  But I don't think I can -- there are too many double

7  negatives I was about to say.  There certainly may be more,

8  I cannot represent yes or no.  I just -- I don't know enough

9  to represent confidently on that.

10          **THE COURT:**  And so -- I know I'm jumping around,

11  but that's because --

12          **MR. LAWSON:**  It's the Court's pleasure.

13          **THE COURT:**  So part of the position of Jenner &

14  Block, as articulated in their memorandum, is that this

15  Executive Order effectively bars their lawyers from entering

16  not just agency buildings but federal courthouses.  Do you

17  agree?

18          **MR. LAWSON:**  I don't believe that -- for the

19  reasons I mentioned earlier, I do not believe this order

20  bans them from anything.  It orders guidance to agencies

21  to -- or orders --

22          **THE COURT:**  Forget --

23          **MR. LAWSON:**  -- and so we don't -- if we have --

24          **THE COURT:**  Getting past that guidance versus

25  order point, are courthouses included?

1           **MR. LAWSON:**  I don't know the formal structure.

2      It's my understanding --

3           **THE COURT:**  Well, that's a problem.  It would be

4      nice if the Executive Order, and you speaking for it, knew

5      what it applied to.

6           **MR. LAWSON:**  Well, I was going to --

7           **THE COURT:**  That's a fairly significant point for

8      a law firm, isn't it?

9           **MR. LAWSON:**  Well, yes, but I would submit my

10     understanding is that the courthouses are run by the

11     executive agency of the General Services Administration,

12     GSA.

13          **THE COURT:**  For the most part, that is true.

14          **MR. LAWSON:**  So if the GSA is --

15          **THE COURT:**  Now that I've added to the record with

16     my own knowledge.

17          **MR. LAWSON:**  Thank you.  And if -- to the degree

18     that would come into play, that the order would be bound on

19     GSA, there would be guidance on that point.  We will not

20     deny the --

21          **THE COURT:**  So the U.S. Marshals would be at the

22     door, and if a Jenner & Block attorney showed up at this

23     courthouse, the U.S. Marshals would tell them to go away?

24          **MR. LAWSON:**  Your Honor, it's --

25          **THE COURT:**  How's that look?

1     **MR. LAWSON:**  I would not expect the guidance to

2   read that way.  And this order is not saying it has to read

3   that way.  The order is not saying anything about access to

4   courthouses.  That is not in this order as drafted.  It is

5   guidance to limit access.  An issue that was that granular

6   and that specific, that U.S. Marshals are to exclude Jenner

7   & Block lawyers from courthouses, would be very specific,

8   very granular, and we would be before this Court within

9   moments.  And I don't even think the Court would adjust the

10   hearing from 4:00 p.m. to 5:45 to address that issue.

11         The larger point I'm trying to make, Your Honor --

12   and I don't mean to be cute, is we don't have the

13   granularity of the guidance to know what is enjoined.  We

14   can have many issues, many examples of things that would be

15   clearly problematic that could fall within this, if you

16   wanted to look for it that way.

17         **THE COURT:**  So if --

18         **MR. LAWSON:**  But we won't know it for certain

19   until the guidance is issued.

20         **THE COURT:**  If there's a concern that some,

21   whether they be at agencies or at courthouses or wherever,

22   wouldn't -- would take this Executive Order as requiring

23   action rather than just the development of guidance, what

24   you're asking me to do, I take it, is, okay, Judge, the

25   Executive Order we don't think says that anything has to

1    happen, so we don't care if you say nothing can happen as

2    long as you say but the guidance can continue to be

3    developed.

4         MR. LAWSON:  I think this order -- the only action

5    called for from this order, as I'm reading it, is the

6    development of guidance.  That's it.

7         THE COURT:  That's not -- I think you're being a

8    little cute when you say that, and I'm sorry for the term I

9    use.

10        MR. LAWSON:  I introduced it.

11        THE COURT:  But it doesn't just say develop

12   guidance, it says review all contracts.

13        MR. LAWSON:  That is Section 3, Your Honor.

14        THE COURT:  There are things other than developing

15   guidance in here.

16        MR. LAWSON:  Section 3 is the review contracts, an

17   important distinction.  I hope, if we have time, that I can

18   address Section 3.  But as to Section 5, as to personnel and

19   buildings, as I'm reading --

20        THE COURT:  Section 2 isn't talking about

21   guidance, it says take steps to suspend any active security

22   clearances.  Now, they may not be seeking a temporary

23   restraining order with respect to that, but to categorize

24   this Executive Order as only saying develop some guidance --

25        MR. LAWSON:  I was only referring to Section 5,

1    Your Honor, when I made that comment.  Because the Court was

2    talking about access to building, access to meeting U.S.

3    Attorneys, access to patent officers, et cetera, et cetera.

4    So I was only talking about that.  If I could, I -- we're

5    taking --

6         THE COURT:  Of course, Section 5 also says agency

7    officials shall refrain from hiring employees of Jenner.  It

8    doesn't say develop guidance, it says refrain from hiring

9    employees of Jenner.

10        MR. LAWSON:  No, I will concede the point.  On

11   Section 5(b) for the hiring, that's not the guidance, but --

12        THE COURT:  So you're only talking about guidance

13   when you're talking about Section 5(a)?

14        MR. LAWSON:  Yes, to be granular on that point.

15   That's how I read it.  If I could to Section 3, an important

16   point on this and many of the issues that have been

17   circulating on this.  And I beg the Court's indulgence, a

18   number of pleadings have been before me today and cases, but

19   I think I've got it generally correct that some arguments

20   have been made --

21        THE COURT:  The Department of Justice has a lot of

22   lawyers.  Why is this all on you, Mr. Lawson?

23        MR. LAWSON:  Some of the people working with me on

24   this were not available.  And I, frankly, was supposed to be

25   in Florida, but here I am, and I'm much happier with that.

1   But it's --

2        **THE COURT:**  I don't find that to be much of an

3   answer, but go ahead.

4        **MR. LAWSON:**  Okay.  Well, the -- so as it relates

5   to Section 3, there has been some talk in a number of the

6   pleadings about sanctions and penalties.  And I would urge

7   the Court to take a look -- or to study the points we've

8   already discussed as to Section 5, individualized hiring at

9   5(b), the guidance in 5(a).  If we look at Section 3, and

10  we're talking about reviewing of the contracts, I would

11  submit that the issues regarding sanctions and penalties are

12  not applicable here.

13       Sanctions and penalties fall within the type of

14  issues addressed in the recent Supreme Court case with Vullo

15  involving, you know, aggressive moves by a New York

16  regulatory agency against the NRA.  And then also reference

17  the older case of Bantam Books involving some censorship and

18  threatened prosecutions.  The key distinction was Section 3

19  in contracts, is that when engaged in contracting -- and

20  this is a reference to Waters v. Churchill, 511 U.S. 661.

21  The government is acting as a private party, not as a

22  sovereign.  And the significance of that is that there is a

23  very long tradition of using the procurement power to

24  advance social policy.  Yes, Your Honor?

25       **THE COURT:**  I'm not sure where you're going.  The

1    government is acting as a private party and therefore the

2    First Amendment doesn't apply?

3            **MR. LAWSON:**  No, where I'm coming from, Your

4    Honor, is in the order, in Section 3 and in Section 1, there

5    are references to issues such as racial discrimination and

6    diversity and that sort of thing.  And it is a

7    well-established policy -- or well-established practice

8    going back decades that the procurement power can be

9    advanced and used to advance a social policy.  One of the

10   concerns laid out in this order does relate to issues of

11   diversity.  Jenner & Block is a participant in, I believe

12   it's called, the Mansfield Certification process regarding

13   diversity issues and that sort of thing.  And so the use

14   of -- in Section 3, the reference to diversity issues,

15   racial discrimination issues, this is a plausible and

16   well-supported use of power for procurement power to advance

17   this policy.

18           To give an example, although recently rescinded,

19   back in the '60s, Lyndon Johnson issued an EO regarding

20   affirmative action in government contracting.  There were

21   challenges to this.  One case brought a challenge, and it

22   was decided -- it's Contractors Association of Eastern

23   Pennsylvania vs. The Secretary of Labor, 442 F.2d 159, Third

24   Circuit, 1971.  Older case, but fairly early, of course, in

25   reaction to the Johnson executive order.  And the court,

1    recounting the whole history going back to Roosevelt on the

2    use of executive orders to advance social policy through

3    procurement, stated this, quote:  "No less than in the case

4    of defense procurement, it is in the interests of the United

5    States in all procurement to see that its suppliers are not

6    over the long run" --

7         **THE COURT:**  Slow down for the court reporter,

8    please.

9         **MR. LAWSON:**  Sorry.  "Not over the long run

10   increasing its costs and delaying its programs by excluding

11   from the labor pool available minority workmen."  And here's

12   the essential part:  "In the area of government procurement,

13   executive authority to impose nondiscrimination contract

14   provisions falls in Justice Jackson's first category" --

15   this is a reference, of course, to the Youngstown -- the

16   Court, I'm sure, knows -- Sheet.  "Falls in Justice

17   Jackson's first category, action pursuant to the express or

18   implied authorization of Congress."

19         So I would submit that there's no general right to

20   be able to receive contractor vending.  There is great power

21   and deference given to the Executive on procurement powers

22   to advance social issues.  So I would submit -- yes, sir.

23        **THE COURT:**  But you're sort of writing out of your

24   consideration the First Amendment and whether this is being

25   done in retaliation for speech.

1      **MR. LAWSON:**  I would submit that --

2      **THE COURT:**  Does any of the law that you're

3   referring to, whether from 1971 or any other time, deal with

4   a situation where the government action in the contracting

5   field was alleged to be retaliatory for the speech of the

6   contractor or its lawyers?

7      **MR. LAWSON:**  There certainly is a body of law that

8   discusses the idea of retaliation in contracting work.  But

9   I would direct the Court's attention --

10     **THE COURT:**  Do any of those cases deal with the

11  ability of the government to actually terminate contracts

12  because of the speech of the lawyers for the contractor?

13     **MR. LAWSON:**  I do not recall any other cases --

14     **THE COURT:**  I don't recall either, but I betcha

15  there aren't any.

16     **MR. LAWSON:**  There may not be, but I know even in

17  the Umbehr case, I mean, they're quite clear in that that

18  the concerns about retaliation and contracts, that

19  doesn't -- they were quite clear that their order does

20  not -- that the order in Umbehr addressing the retaliation

21  issues for First Amendment contract retaliation doesn't

22  affect -- that order does not reach future contracts.  So

23  this could even be going on a prospective basis outside of

24  the realm of the traditional cases that undoubtedly the

25  Court is thinking of in its question.

1          But I would also direct the Court's attention to

2     the McGowan vs. Maryland case, 366 U.S. 420.  And this is a

3     case that, as I recall, involved a challenge to Maryland

4     blue laws.  There was an accusation that the closing on

5     Sundays was designed to advance a religious motive.  And the

6     court looked at it and said, you know, there is a reason to

7     make everybody rest, productivity increases and so forth.

8     So even if there was a discriminatory reason on this, if

9     there's a valid reason to support it, that covers it.  So to

10    the degree the Court is worried about First Amendment

11    retaliation as it may apply to Section 3, there is the

12    discriminatory racial aspect that I would submit covers it.

13    I would submit that the First Amendment retaliation issue

14    doesn't quite apply here, but even if the Court found that,

15    I think that these cases support that it's a procurement

16    power.

17          And the larger point I would like to leave the

18    Court with, as it debates what to do with this, is that

19    Section 3 does not involve the exercise of sovereign power,

20    sovereign power like seen in Vullo of I will launch an

21    investigation and exact fines; or on Bantam Books, I will

22    launch investigation and look for criminal --

23          **THE COURT:**  But if you're right, therefore what?

24          **MR. LAWSON:**  That at the very least, that there

25    isn't enough merit at this point to grant the extraordinary

1     remedy of a temporary restraining order.

2             THE COURT:  Because of what?

3             MR. LAWSON:  Because Section 3 deals with

4     contracting.  And when it comes to the contracting order

5     addressing social policy, that is firmly supported on the

6     firmest grounds of Youngstown Sheet.

7             THE COURT:  Even if --

8             MR. LAWSON:  Partially.

9             THE COURT:  Even if it's for First Amendment

10    retaliatory reasons?

11            MR. LAWSON:  I read the McGowan case as saying

12    that if the Court finds that it was for retaliatory reasons,

13    but finds that one portion was valid -- and this is a

14    statute --

15            THE COURT:  Is that retaliatory reasons under the

16    First Amendment or just retaliatory reasons not under the

17    First Amendment?

18            MR. LAWSON:  To be clear, the McGowan case is not

19    dealing with retaliation First Amendment.

20            THE COURT:  Why isn't the First Amendment

21    different?  You're talking about a constitutional context.

22            MR. LAWSON:  McGowan was addressing -- well, the

23    First Amendment, but religious liberty, that provision in

24    that case.  The larger point, the larger point I think

25    that -- to derive from McGowan is that the Court was

1    examining a statute talking about thou shalt be closed on

2    Sunday.  And they said even if there was a discriminatory

3    reason, there is a legitimate reason and we're going to

4    sustain it.

5             This is an EO.  As it addresses procurement --

6    Section 3 is procurement, the firmest possible grounds as

7    referenced by the Contractors Association case, firmest

8    possible grounds.  So that's what I would say as to Section

9    3.  I think we have discussed Section 5 and then also

10   Section 1.  So I think the key points I'd like to -- I'd

11   wanted to raise I have.  I don't know if the Court has --

12            **THE COURT:**  I'll thank you and I'll give --

13            **MR. LAWSON:**  Thank you, Your Honor.

14            **THE COURT:**  -- your adversary just a few minutes,

15   very few.

16            **MR. ATTANASIO:**  I appreciate that.  Let me

17   first -- I'm going to address, I think, four points.  Let me

18   first take up this point about guidance in Section 5.  And I

19   think it's important to look at the word that follows the

20   word guidance in that section.  It appears in two places:

21   guidance relating to access to federal buildings, guidance

22   relating to engagement with government officials.  The word

23   that follows in both cases is limiting: guidance limiting

24   official access from federal government buildings; guidance

25   limiting government employees acting in their official

1    capacity from engaging with Jenner employees including, but

2    not limited to, Andrew Weissmann, who doesn't work for

3    Jenner.

4         It doesn't say expanding.  It doesn't say leave

5    neutral.  It doesn't say guidance that would treat Perkins

6    Coie and Jenner & Block like every other law firm in America

7    despite their speech, it says guidance limiting.  That

8    itself is the penalty.  That itself is what clients are

9    looking at and clients are saying, gee, I can hire a lawyer

10   that is not awaiting guidance that is likely to bar or limit

11   it from federal buildings or engaging with federal officials

12   or I can hire another firm.  So that's guidance, Your Honor.

13        The second point is I don't like to engage in

14   hyperbole, but I'm astounded by some of what I heard, and

15   Your Honor was getting right at it.  Of course there is

16   discretion in the Executive on hiring decisions.  Of course

17   there is discretion in the Executive for contracting

18   decisions.  The discretion does not extend to doing things

19   to people, citizens because of their race, because of their

20   gender, because of their speech, their First Amendment

21   speech.  And for government counsel of the United States

22   Department of Justice to say that the Executive has the

23   discretion to make those decisions about hiring, about

24   access to buildings, about government contracts, and just

25   sort of casually allow it to stand that those decisions

1    could be based on retaliation because of First Amendment

2    speech, I think, answers everything Your Honor needs to know

3    in granting this order.

4        The third point is I think we can all agree the

5    transcript will be excellent, I'm sure, but what we heard

6    under Your Honor's questioning is that the Department of

7    Justice concedes there is no national security implications

8    here for the employees of Jenner & Block.  Your Honor

9    pressed on that.  The answer is clear, the transcript will

10   show it, there was no stated national security risk.  The

11   whole point of this Executive Order was supposed to be

12   national security risk.  It's as obvious a pretext as the

13   seal over Your Honor's head, but we just heard that.  That's

14   what's most interesting.

15       Fourth, and finally, I'll end effectively where

16   Your Honor and I started, and that is Section 1.  Section 1

17   is critical.  It is the engine that moves the car.  It is

18   the engine and the wheels of this car, the car being this

19   whole Executive Order.  That is what Your Honor should put

20   an end to, along with Sections 3 and 5.  But I want to -- I

21   do want to be surgical here, and I would respectfully direct

22   the Court to our proposed order.

23       The order does not say restrain anybody from

24   saying these things.  The order says restrain the Executive

25   from using Section 1 to direct agencies to implement

1    anything, to do anything, to engage or communicate with

2    Jenner & Block or its clients based on Section 1.  So it is

3    meant to enjoin a specific utilization of Section 1 in

4    Sections 3 and 5, which we clearly see.  And that is

5    appropriate.  That is not restraining speech, that is

6    restraining execution of the vision of the President in this

7    Executive Order to punish Jenner for its speech.  Section 1

8    is the engine and the wheels of the car that do that, so we

9    would ask Your Honor to enjoin that, too.  Thank you.

10         **THE COURT:**  All right, thank you.  We're going to

11   take a five-minute break, then I'm going to come back and

12   I'll issue an oral opinion.  But we're going to have a

13   five-minute break first.

14         (Recess taken at 6:54 p.m.)

15         (Proceedings resumed at 7:08 p.m.)

16         **THE COURT:**  Before I forget, my thanks to staff

17   who are here today, court reporter and deputy clerk, for

18   staying to this late hour to deal with this matter.  And

19   we're here today because of an executive order, Executive

20   Order 14246, issued a couple of days ago, March 25th, 2025.

21   Its title is Addressing Risks from Jenner & Block, very

22   specific.  And this is one of several executive orders that

23   President Trump has issued over the course of this month

24   directing the federal government to target specific

25   prominent law firms for special -- that's not necessarily a

1  good term, treatment from the Executive Branch.  And it

2  follows Executive Order 14230 dealing with Perkins Coie and

3  Executive Order 14237 dealing with Paul, Weiss.  And then

4  there also is Executive Order -- an executive order dealing

5  with WilmerHale issued yesterday, I guess.

6        So in short, this Executive Order identifies a

7  series of so called risks that the President has assessed

8  that Jenner & Block poses to the federal government and to

9  the American people, and requires the federal government to

10  take steps to either terminate, restrict or reevaluate

11  aspects of the relationship that the federal government has

12  with Jenner & Block.  And I'll use the term Jenner from here

13  on out.

14        Today, Jenner filed a complaint and a motion for a

15  temporary restraining order seeking to immediately enjoin

16  the government from enforcing Sections 1, 3 and 5 of the

17  six-part Executive Order.  The Court scheduled this hearing,

18  and I appreciate everybody being available for it.  I'm

19  going to briefly address the three sections of the Executive

20  Order that Jenner seeks to enjoin.

21        Section 1 explains the so called risks that

22  President Trump has identified from Jenner.  The risks

23  derive directly from Jenner's choice of clients and causes

24  to represent and attorneys to associate with.  First, the

25  order claims that the firm has abandoned the legal

1    profession's highest ideals, condoned partisan lawfare, and

2    abused its pro bono practice to engage in activities that

3    undermine justice and the interests of the United States.

4    Jenner also allegedly "engages in obvious partisan

5    representations to achieve political ends, supports attacks

6    against women and children based on a refusal to accept the

7    biological reality of sex, and backs the obstruction of

8    efforts to prevent illegal aliens from committing horrific

9    crimes and trafficking deadly drugs within our borders."

10   And I'm quoting provisions here.

11       The order further contends that:  "Jenner

12   discriminates against its employees based on race and other

13   categories prohibited by civil rights laws, including

14   through the use of race-based targets."  Finally, the order

15   expresses President Trump's concern about Jenner's value and

16   priorities based on the firm's hiring of Andrew Weissmann,

17   an individual who worked on the Mueller investigation back

18   in 2016 and years after that, and who has been critical of

19   President Trump.  No further specifics or factual support

20   for these conclusory assertions is provided.  While Section

21   1 does not independently direct any action, it does serve as

22   the basis for the operative sections, Sections 3 and 5 in

23   particular, and is thus critical to their enforcement.

24       Section 3 imposes obligations on government

25   agencies related to government contracts associated with

1    Jenner.  As the White House succinctly summarized in its

2    fact sheet that accompanies the Executive Order:  "The

3    federal government will terminate contracts that involve

4    Jenner."  And not only contracts directly involving Jenner,

5    but it will also assess contracts with entities that do

6    business with Jenner.

7         Section 5 requires agency heads to provide

8    guidance broadly limiting agency contact with and access for

9    Jenner employees.  Agency heads must, to the extent

10   permitted by law -- and that phrase is frequently placed in

11   the Executive Order, "provide guidance limiting official

12   access from federal government buildings to employees of

13   Jenner when such access would threaten the national security

14   of or otherwise be inconsistent with the interests of the

15   United States."  And, "provide guidance limiting government

16   employees acting in their official capacity from engaging

17   with Jenner employees, including but not limited to Andrew

18   Weissmann, to ensure consistency with the national security

19   and other interests of the United States."

20        Finally, "Agency officials shall, to the extent

21   permitted by law, refrain from hiring employees of Jenner,

22   including but not limited to Andrew Weissmann, absent a

23   waiver from the head of the agency, made in consultation

24   with the Director of the Office of Personnel Management," a

25   waiver "that such hire will not threaten the national

1    security of the United States."  Now, upon inquiry, there

2    was no satisfaction for this Court in the responses of

3    government counsel as to what the national security

4    interests were, for example, in not hiring any employee of

5    Jenner into the federal government.

6         In any event, we're here on a TRO.  To secure a

7    TRO, the movant must establish a likelihood of success on

8    the merits, show irreparable harm in the absence of

9    preliminary relief, demonstrate that the equities favor

10   issuing an injunction, and persuade the Court that an

11   injunction is in the public interest.  Citation, Trump vs.

12   Thompson, 20 F.4th 10, jump cite 31, D.C. Circuit, 2021.

13   Where, as here, the government is the defendant, factors

14   three and four often merge.

15        In my view, Jenner has satisfied each factor for a

16   temporary restraining order.  As to likelihood of success on

17   the merits, the Court determines that plaintiffs are likely

18   to succeed on the merits of at least two of their claims,

19   and perhaps as well a third.  This does not indicate that

20   its other claims lack merit.  The Court limits itself to

21   these two claims primarily in the interest of time, because

22   they are sufficient to support the relief plaintiffs seek.

23        The first claim Jenner is likely to succeed on is

24   its claim that the Executive Order retaliates against it for

25   its protected speech in violation of the First Amendment.

1    Official reprisal for protected speech offends the

2    Constitution because it threatens to inhibit exercise of the

3    protected right.  And the law is settled that, as a general

4    matter, the First Amendment prohibits government officials

5    from subjecting an individual to retaliatory actions for

6    protected speech; Hartman vs. Moore, 547 U.S. 250, jump cite

7    256, 2006.  As well, that is true for the individuals

8    associations.  See Rutan vs. Republican Party of Illinois,

9    497 U.S. 62, jump cite 75, 1990.

10        Here, the Executive Order explicitly targets

11    Jenner because of the speech the firm engages in and the

12    viewpoints it represents in litigation; namely, its actions

13    against the federal government, and its litigation in

14    support of transgender individuals and undocumented

15    immigrants.  The Executive Order also targets the firm

16    because it once employed -- in other words, it was

17    associated with, Andrew Weissmann.  As a judge in this

18    district said in regard to a similar executive order against

19    another law firm, the speech and viewpoints for which Jenner

20    is targeted fall squarely within the protections of the

21    First Amendment; a transcript of the hearing before Judge

22    Howell in the Perkins Coie matter at 76, lines 24 to 25.

23        And the Executive Order gives no reason specific

24    to Jenner for the restrictions it places on the firm besides

25    the speech or its former -- that it or its former partner

1    has engaged in.  The fact that the Executive Order facially

2    retaliates against Jenner because of its speech and

3    association is sufficient to show that the firm is likely to

4    succeed on the merits of the First Amendment retaliation

5    claim.

6         For similar reasons, the Court determines that

7    Jenner is likely to succeed on the merits of its claim that

8    the Executive Order constitutes unconstitutional viewpoint

9    discrimination.  Of all the content discrimination the First

10   Amendment covers, viewpoint discrimination is particularly

11   egregious; Vidal vs. Elster, 602 U.S. 286, jump cite 293,

12   2024.  A regulation or sanction discriminates based on

13   viewpoint if it targets not merely a subject matter but

14   particular views taken by speakers on the subject; citation

15   to id.  Such regulations are, as the D.C. Circuit has put

16   it, poison, and in cases such as this one, can only survive

17   if they survive strict scrutiny.  See Frederick Douglass

18   Foundation, Inc. vs. District of Columbia, 82 F.4th 1122,

19   jump cite 1141, D.C. Circuit 2023.

20        Little need be said to show why the Executive

21   Order places restrictions on Jenner based on the particular

22   views the firm has taken.  Indeed, all that need be said is

23   said by the Executive Order itself: Jenner supports attacks

24   against women and children based on a refusal to accept the

25   biological reality of sex, and backs the obstruction of

1    efforts to prevent illegal aliens from committing crimes.

2    All, I might add, by its litigation positions in court.  And

3    that's from Executive Order, Section 1.  These are the

4    reasons the Executive Order gives for its sanctions against

5    Jenner, and they are viewpoints.

6          There is no cogent argument that these

7    viewpoint-based sanctions are likely to pass strict

8    scrutiny.  To satisfy strict scrutiny, the government must

9    demonstrate that a speech restriction serves a compelling

10   government interest and is narrowly tailored to further that

11   interest; citation to the TikTok case v. Garland, 122 F.4th

12   930, jump cite 952, D.C. Circuit 2024.

13         The Executive Order gives lip service to the

14   interests of public safety and national security and

15   protecting constitutional rights and bedrock American

16   principles.  Even if the Court were to somehow conclude that

17   Jenner's representation of transgender individuals and

18   undocumented immigrants threatens public safety, national

19   security and the like, its sanctions imposed by Sections 3

20   and 5 sweep far too broadly.  Section 3 requires government

21   contractors to disclose any contracts with Jenner and agency

22   heads to cancel those contracts, completely divorced from

23   the subject matter of the contracts or how they impact the

24   firm's representations deemed problematic in Section 1 of

25   the Executive Order.

1    Section 5 then limits the access of every Jenner

2    employee -- not just those associated with certain

3    litigation or actions, limits their access to federal

4    government buildings and federal employees.  A limit placed

5    on everyone, from managing partners to office staff, as a

6    result of a subset of cases the firm has taken on cannot be

7    said to be narrowly tailored.  Surely there are less

8    restrictive alternatives that would accomplish the

9    government's goal, even if that goal were appropriate.  See

10   TikTok, 122 F.4th 952.

11   The Supreme Court has said time and again that the

12   public expression of ideas may not be prohibited merely

13   because the ideas are themselves offensive to some of their

14   hearers; Matal vs. Tam, 582 U.S. 218, jump cite 244, a 2017

15   case.  And those hearers include the Trump administration.

16   Thus, this Court concludes that plaintiffs are likely to

17   succeed on the merits of their claim that the Executive

18   Order unconstitutionally discriminates based on viewpoint.

19   Now, the third reason I'll refer to only briefly.

20   The First Amendment harms the Executive Order inflicts are

21   magnified by its additional Fifth and Sixth Amendment

22   deficiencies.  Together, these amendments reflect and

23   protect the essential role that lawyers play in our polity.

24   The Sixth Amendment guarantees criminal defendants the right

25   to the effective assistance of counsel, and the Fifth

1    Amendment's Due Process Clause affords certain protections

2    to civil litigants' access to lawyers.  By arguing that

3    Jenner -- by targeting Jenner for its activities in both

4    realms, the Executive Order likely offends the Fifth and

5    Sixth Amendments in addition to the First Amendment.

6            With respect to irreparable harm, of course,

7    simple likelihood of success on the merits is not enough.

8    Jenner must also show irreparable harm.  Jenner has shown

9    that absent a TRO it will likely suffer irreparable harm in

10   at least two ways.  First, Jenner will likely suffer

11   irreparable economic harm because of the Executive Order.

12   In this circuit, it is well settled that economic loss does

13   not in and of itself constitute irreparable harm.  The

14   Wisconsin Gas Company vs. FERC case, 758 F.2d 669, jump cite

15   674, D.C. Circuit 1985, stands for that proposition.  But

16   economic loss can constitute irreparable harm where the loss

17   threatens the very existence of the movant's business; id.,

18   citation to the same case at same place.  Considering the

19   firm-wide effects of the Executive Order, it threatens the

20   existence of the firm.

21           Let's start with Section 3 which requires federal

22   contractors to disclose business they do with Jenner, and

23   directs agencies to cancel any contract they have with

24   Jenner.  Jenner's firm chair, Thomas Perrelli, explains that

25   for the past five years, about 40 percent of the firm's

1    revenue came from clients who are government contractors.

2    Since the Executive Order was issued, numerous federal

3    contractor clients of the firm have expressed concerns about

4    government mandated disclosure of their relationship with

5    Jenner, and are thus nervous about their relationship with

6    the firm.  These fears make it likely that the firm could

7    lose their federal contractor business or even a portion of

8    it, which amounts to a serious threat to the firm's

9    financial health.  And that does not take account of the

10   loss from the cancellation of Jenner's own government

11   contracts, which the facts sheet confirms will occur.

12          Section 5, meanwhile, threatens a vast swath of

13   the firm's other business.  The Executive Order's directive

14   to limit official access from government buildings to

15   employees of Jenner can be read to extend to federal

16   courthouses and administrative agency buildings, and

17   certainly nothing said in this hearing or the language of

18   the Executive Order would indicate otherwise.  Jenner,

19   however, has around 540 active matters pending before

20   federal courts and numerous matters before agencies that

21   require access to federal government buildings and

22   officials; Perrelli declaration, paragraph 64.  Some of

23   those clients have already expressed concern that Jenner

24   cannot represent them; citation to the same paragraph.

25   This, combined with the imminent loss of federal contractor

1    business, could be a death knell for Jenner's financials.

2         Additionally, while it's not alone dispositive, it

3    is relevant that the defendants here are shielded by

4    sovereign immunity.  That doesn't mean that any economic

5    loss is necessarily enough to establish irreparable harm,

6    but it does weigh in favor of a showing of irreparable harm

7    because what is lost is likely lost forever.  See, for

8    example, Cardinal Health, Inc. vs. Holder, 846 F.Supp.2d

9    203, jump cite 211, D.D.C. 2012.

10        Second, and even more simply, Jenner is suffering

11   irreparable harm because the order likely impinges on the

12   firm's First Amendment rights.  Although not the case for

13   all constitutional rights, the D.C. Circuit has said that

14   the loss of First Amendment freedoms for even minimal

15   periods of time unquestionably constitutes irreparable

16   injury; Pursuing America's Greatness vs. Federal Election

17   Commission, 831 F.3d 500, jump cite 511, D.C. Circuit 2016.

18   As explained already, the Court determines that it is likely

19   that the Executive Order is depriving Jenner of its First

20   Amendment freedoms in a significant way.  The firm is,

21   therefore, suffering irreparable harm.

22        Now, the last two factors are the balance of

23   equities and the public interest.  Where the movant seeks to

24   enjoin the government, the final two factors tend to merge.

25   Here, these clearly favor issuing the TRO.  Section 1 of the

1  Executive Order targets Jenner in part based on the

2  identities of its clients, such as its pro bono

3  representation of transgender individuals and immigrants.

4  Our legal system relies on lawyers who advocate zealously

5  for all clients.  If law firms are targeted by and thus

6  chilled from representing some of the most vulnerable

7  individuals and social groups, particularly through pro bono

8  work, then it is those individuals who will suffer the

9  greatest harm.  As such, it is emphatically in the public

10  interest to temporarily enjoin the Executive Order.

11          And I will note that the reference in the

12  Executive Order, Section 1 to pro bono practice is

13  disturbing where it says:  "Law firms regularly conduct this

14  harmful activity through their powerful pro bono practices,"

15  effectively condemning pro bono practice by Jenner or other

16  large firms.  That is troubling to the Court.  The Court

17  does not take lightly the power to enjoin the Executive

18  Branch, but the government has not made any persuasive case

19  that the public interests will be harmed by a temporary halt

20  to the enforcement of this plainly speech-based Executive

21  Order.

22          By contrast, Jenner seeks refuge from serious and

23  irreparable harm, both to its constitutional rights and to

24  its pocketbook.  And the public interest extends beyond

25  Jenner.  The legal profession as a whole is watching and

1   wondering whether its courtroom activities, in the best

2   tradition of lawyering, will cause the federal government to

3   turn its unwanted attention to them next.  In these

4   circumstances, a temporary restraining order is very well

5   warranted at this time.

6        Now, the order that I'm going to issue is a

7   written order.  I'll make that available in a moment to you,

8   but I'll go ahead and read it.

9        It is ordered that the motion for a temporary

10  restraining order is granted; and it is further ordered that

11  the defendants are enjoined from implementing or enforcing

12  Sections 3 and 5 of the President's March 5, 2025 Executive

13  Order entitled Addressing Risks from Jenner & Block.

14       It is further ordered that defendants are enjoined

15  from using the statements laid out in Section 1 of the

16  Executive Order in any interactions with plaintiff or

17  plaintiff's clients or employee of plaintiff or plaintiff's

18  clients.

19       It is further ordered that defendants are directed

20  to suspend and rescind all guidance or other direction

21  provided to their officers, staff, employees or contractors

22  to communicate, effectuate, implement or enforce Sections 1,

23  3 and 5 of the Executive Order.

24       It is further ordered that defendants are directed

25  immediately to issue guidance to their officers, staff,

1    employees and contractors to disregard Sections 1, 3 and 5

2    of the Executive Order, and to carry on their ordinary

3    course of business absent these sections of the Executive

4    Order.

5         It is further ordered that defendants are directed

6    immediately to, first, communicate to every recipient of a

7    request for disclosure of any relationship with Jenner &

8    Block or any person associated with the firm, made pursuant

9    to Section 3(a) of the Executive Order, that such request is

10   rescinded until further order of the Court; and secondly,

11   cease making such requests for disclosure pursuant to

12   Section 3(a) of the Executive Order until further order of

13   the Court.

14        It is further ordered that defendants must, in

15   good faith, take such other steps as are necessary to

16   prevent the enforcement or implementation of Sections 3 and

17   5 of the Executive Order during the effective period of this

18   order.

19        It is further ordered that Defendants U.S.

20   Department of Justice, Pamela Bondi, in her official

21   capacity as U.S. Attorney General; the Office of Management

22   and Budget and Russell Vought, in his official capacity as

23   director of the Office of Management and Budget, must

24   additionally immediately issue guidance to all other

25   agencies subject to the Executive Order to suspend and

1    rescind any implementation or enforcement of Sections 3 and

2    5 of the Executive Order, as well as any use of or reliance

3    on the statements in Section 1 of the order.

4          It is further ordered that defendants must file a

5    status report by 12:00 p.m. on Monday, March 31st describing

6    the steps taken to ensure compliance with this order, and

7    certifying compliance with its requirements.

8          And it is further ordered that this order shall

9    remain in effect until further order of the Court.  It is so

10   ordered.

11         So I will get signed copies of this order out to

12   you in two minutes, but that is the ruling of the Court as

13   explained.  And with that, I believe we are done late this

14   evening.

15         Is there anything that either side wishes --

16   you're both poised to jump up.  We'll listen to the

17   plaintiffs first.

18         **MR. ATTANASIO:**  Your Honor, we would propose to

19   report back to the Court on Monday after conferring with

20   government counsel on a scheduling order for the balance of

21   the case.  In the Perkins Coie case, the parties are going

22   directly to dispositive motions, summary judgment, so on.

23         **THE COURT:**  I will welcome that proposal with

24   respect to schedule.

25         **MR. ATTANASIO:**  Thank you.

1          **THE COURT:**  Mindful of the fact that this is a

2    temporary restraining order.

3          **MR. ATTANASIO:**  Yes.

4          **THE COURT:**  But certainly if you consult and

5    propose something, that will be welcome.

6          **MR. ATTANASIO:**  Thank you, Your Honor.  We would

7    like to go quickly, and we are prepared to even go on the --

8    on Judge Howell's schedule with respect to Perkins Coie, but

9    we'll discuss with government counsel.

10          **THE COURT:**  I appreciate that.  Mr. Lawson.

11          **MR. LAWSON:**  Can I have a moment with counsel and

12    then address the Court?

13          **THE COURT:**  You may.

14        (Discussion off the record)

15          **THE COURT:**  Yes, Mr. Lawson.

16          **MR. LAWSON:**  The -- there are some logistics

17    issues for the noon Monday deadline.  I had one request.  I

18    believe there is an objection --

19          **THE COURT:**  That's because you're supposed to be

20    in Florida or something like that?

21          **MR. LAWSON:**  Well, I'm -- there's a lot going on.

22    There was one -- the second to last provision, the direct --

23    the guidance from Bondi and Vought and those agencies, that

24    involves a great deal more technical approval processes.

25          **THE COURT:**  I understand that.

1      **MR. LAWSON:**  I believe counsel has an objection.

2   I would ask the Court if it could just direct the defendants

3   to do that exact same language.  For the defendants writ

4   large, it's just logistically easier.  That's the ask.

5      **THE COURT:**  I'm not dictating what the report by

6   noon on Monday will say.  And if it's something that both

7   sides agree to, it's probably going to be all right with me.

8   But in any event, whatever the representations are, make

9   them.  And I'm a reasonable person, I understand that there

10  are limitations in what can be accomplished in a limited

11  amount of time.

12     **MR. LAWSON:**  Thank you, Your Honor.

13     **THE COURT:**  All right.  With that, I thank

14  everyone for their patience, particularly those sitting in

15  front of me.  We'll bring out signed copies of that order

16  momentarily.  Have a good evening and a good weekend.

17     (Proceedings adjourned at 7:35 p.m.)

1                    **C E R T I F I C A T E**

2

3              I, **Jeff M. Hook, Official Court Reporter,**

4    certify that the foregoing is a true and correct transcript

5    of the record of proceedings in the above-entitled matter.

6

7

8

9       _March 31, 2025_                    _____

10             **DATE**                            **Jeff M. Hook**

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**DEPUTY CLERK:**
**[1]**   2/2
**MR. ATTANASIO:**
**[27]**   2/7 3/5
4/6 4/10 4/16
5/21 6/21 6/24
8/2 8/6 9/16
10/1 10/14
10/20 10/23
11/9 13/13
13/20 14/16
15/16 15/23
16/18 39/16
57/18 57/25
58/3 58/6
**MR. LAWSON:**
**[70]**
**THE COURT:**
**[99]**

**'**

**'60s [1]**   34/19

**0**

**0916 [1]**   1/4

**1**

**10 [1]**   46/12
**1122 [1]**   48/18
**1141 [1]**   48/19
**122 [2]**   49/11
50/10
**12:00 p.m [1]**
57/5
**14230 [1]**   43/2
**14237 [1]**   43/3
**14246 [1]**
42/20
**159 [1]**   34/23
**1971 [2]**   34/24
36/3
**1985 [1]**   51/15
**1990 [1]**   47/9
**1:25-cv-0916**
**[1]**   1/4

**2**

**20 [1]**   46/12
**20001 [1]**   1/25
**2006 [1]**   47/7
**2012 [1]**   53/9
**2016 [2]**   44/18
53/17
**2017 [1]**   50/14
**2021 [1]**   46/12
**2023 [1]**   48/19
**2024 [2]**   48/12

**49/12**
**2025 [3]**   1/5
42/20 55/12
**203 [1]**   53/9
**20530 [1]**   1/17
**211 [1]**   53/9
**218 [1]**   50/14
**24 [1]**   47/22
**244 [1]**   50/14
**25 [1]**   47/22
**25-916 [1]**   2/3
**250 [1]**   47/6
**256 [1]**   47/7
**25th [1]**   42/20
**28 [1]**   1/5
**286 [1]**   48/11
**293 [1]**   48/11

**3**

**31 [1]**   46/12
**31st [1]**   57/5
**333 [1]**   1/24
**366 [1]**   37/2
**3rd [1]**   11/17
**3s [1]**   19/7

**4**

**40 [1]**   51/25
**420 [1]**   37/2
**4401 [1]**   1/14
**442 [1]**   34/23
**497 [1]**   47/9
**4:00 p.m [1]**
30/10

**5**

**500 [1]**   53/17
**511 [2]**   33/20
53/17
**540 [1]**   52/19
**547 [1]**   47/6
**582 [1]**   50/14
**5:45 [1]**   30/10
**5:51 [1]**   1/7

**6**

**602 [1]**   48/11
**62 [1]**   47/9
**63 [2]**   9/12
11/13
**64 [2]**   11/19
52/22
**661 [1]**   33/20
**669 [1]**   51/14
**674 [1]**   51/15
**6:54 p.m [1]**
42/14

**7**

**71 [2]**   9/12
11/13
**75 [1]**   47/9
**758 [1]**   51/14
**76 [1]**   47/22
**7:08 p.m [1]**
42/15
**7:35 p.m [1]**
59/17

**8**

**82 [1]**   48/18
**831 [1]**   53/17
**846 [1]**   53/8

**9**

**900 [1]**   12/15
**916 [1]**   2/3
**92121 [1]**   1/14
**930 [1]**   49/12
**950 [1]**   1/17
**952 [2]**   49/12
50/10

**A**

**abandoned [1]**
43/25
**ability [3]**
7/10 11/23
36/11
**able [4]**   11/21
21/5 27/9
35/20
**above [2]**   7/14
60/5
**above-entitled**
**[1]**   60/5
**absence [1]**
46/8
**absent [3]**
45/22 51/9
56/3
**Absolutely [1]**
14/16
**abuse [1]**   14/8
**abused [1]**
44/2
**accept [2]**
44/6 48/24
**access [23]**
25/6 25/7
25/12 25/15
26/9 26/10
26/24 30/3
30/5 32/2 32/2
32/3 39/21
39/24 40/24

**45/8 45/12**
45/13 50/1
50/3 51/2
52/14 52/21
**accommodating**
**[1]**   2/15
**accompanies [1]**
45/2
**accompanying**
**[1]**   2/22
**accomplish [1]**
50/8
**accomplished**
**[1]**   59/10
**account [1]**
52/9
**accusation [1]**
37/4
**achieve [3]**
5/8 5/11 44/5
**across [2]**
3/20 9/23
**act [1]**   14/20
**acted [2]**   18/9
27/11
**acting [4]**
33/21 34/1
39/25 45/16
**action [12]**
1/3 6/15 7/25
8/9 16/25
27/15 30/23
31/4 34/20
35/17 36/4
44/21
**actionable [3]**
8/1 8/5 8/15
**actions [3]**
47/5 47/12
50/3
**active [2]**
31/21 52/19
**activities [7]**
4/25 15/5
21/18 24/8
44/2 51/3 55/1
**activity [1]**
54/14
**actors [1]**
11/4
**actually [1]**
36/11
**add [1]**   49/2
**added [2]**   16/3
29/15
**addition [2]**
7/15 51/5
**additional [1]**

**50/21**
**additionally**
**[2]**   53/2
56/24
**address [8]**
3/19 6/25
12/12 30/10
31/18 39/17
43/19 58/12
**addressed [2]**
18/15 33/14
**addresses [1]**
39/5
**addressing [6]**
17/20 36/20
38/5 38/22
42/21 55/13
**adjourned [1]**
59/17
**adjust [1]**
30/9
**administration**
**[3]**   24/5
29/11 50/15
**administrative**
**[1]**   52/16
**advance [6]**
33/24 34/9
34/16 35/2
35/22 37/5
**advanced [1]**
34/9
**adversary [2]**
27/16 39/14
**advocate [2]**
7/18 54/4
**affect [1]**
36/22
**affirmative [1]**
34/20
**affords [1]**
51/1
**again [5]**   3/6
10/14 20/9
24/22 50/11
**against [11]**
9/9 17/3 33/16
44/6 44/12
46/24 47/13
47/18 48/2
48/24 49/4
**agencies [17]**
6/16 6/16 7/4
7/5 13/20
13/22 15/20
26/11 26/18
28/20 30/21
41/25 44/25

## A

**agencies... [4]**
51/23 52/20
56/25 58/23
**agency [17]**
13/5 13/10
24/14 25/5
25/12 25/14
28/16 29/11
32/6 33/16
45/7 45/8 45/9
45/20 45/23
49/21 52/16
**aggressive [1]**
33/15
**ago [4]**  18/18
21/24 27/17
42/20
**agree [5]**
19/19 20/19
28/17 41/4
59/7
**ahead [2]**  33/3
55/8
**al [2]**  1/6 2/4
**aliens [2]**
44/8 49/1
**alleged [1]**
36/5
**allegedly [1]**
44/4
**allies [1]**
10/17
**allow [5]**  15/9
24/17 26/3
26/6 40/25
**allowance [1]**
25/24
**allows [1]**
24/16
**almanac [1]**
21/2
**almost [1]**
19/4
**alone [1]**  53/2
**along [3]**  3/12
13/3 41/20
**alternatives
[1]**  50/8
**although [2]**
34/18 53/12
**always [1]**
23/23
**Amendment [34]**
7/18 7/20
12/25 14/3
15/2 15/12

23/13 23/22
24/7 34/2
35/24 36/21
37/10 37/13
38/9 38/16
38/17 38/19
38/20 38/23
40/20 41/1
46/25 47/4
47/21 48/4
48/10 50/20
50/21 50/24
51/5 53/12
53/14 53/20
**Amendment's [1]**
51/1
**amendments [2]**
50/22 51/5
**America [1]**
40/6
**America's [1]**
53/16
**American [2]**
43/9 49/15
**amount [1]**
59/11
**amounts [1]**
52/8
**Andrew [7]**
5/18 6/1 40/2
44/16 45/17
45/22 47/17
**announcing [1]**
11/1
**answered [2]**
7/13 24/10
**apologize [1]**
27/3
**appearance [1]**
2/6
**APPEARANCES [1]**
1/12
**appears [2]**
14/12 39/20
**applicable [4]**
13/24 14/4
14/22 33/12
**applied [1]**
29/5
**apply [4]**  7/10
34/2 37/11
37/14
**appointed [1]**
6/8
**appreciate [6]**
3/8 3/16 10/24
39/16 43/18
58/10

**approach [3]**
2/5 15/9 17/17
**appropriate [4]**
13/11 13/23
42/5 50/9
**approval [1]**
58/24
**April [1]**
11/17
**April 3rd [1]**
11/17
**area [2]**  19/14
35/12
**arguing [1]**
51/2
**argument [4]**
15/12 18/5
18/10 49/6
**arguments [1]**
32/19
**around [2]**
28/10 52/19
**articles [1]**
21/4
**articulated [1]**
28/14
**articulating
[1]**  20/25
**aside [1]**  4/11
**aspect [2]**
15/11 37/12
**aspects [1]**
43/11
**assault [2]**
4/19 4/20
**assertions [1]**
44/20
**assess [1]**
45/5
**assessed [1]**
43/7
**assessment [1]**
20/19
**assistance [1]**
50/25
**Assistant [1]**
12/17
**associate [4]**
2/12 2/13 23/5
43/24
**associated [5]**
24/15 44/25
47/17 50/2
56/8
**association [3]**
34/22 39/7
48/3
**associations
[1]**  47/8

**assume [1]**
18/18
**assumptions [1]**
10/13
**astounded [1]**
40/14
**asylum [1]**  5/4
**attack [1]**
8/19
**attacks [2]**
44/5 48/23
**ATTANASIO [4]**
1/13 2/8 3/4
23/1
**attempt [1]**
3/19
**attention [4]**
13/18 36/9
37/1 55/3
**attorney [7]**
2/13 2/13 6/6
6/9 12/17
29/22 56/21
**attorneys [7]**
5/25 9/1 9/14
9/15 12/17
32/3 43/24
**auspices [1]**
6/7
**authority [1]**
35/13
**authorization
[1]**  35/18
**authorized [1]**
6/8
**available [5]**
27/10 32/24
35/11 43/18
55/7
**Avenue [2]**
1/17 1/24
**awaiting [1]**
40/10
**away [2]**  10/16
29/23

## B

**back [8]**  14/24
27/16 34/8
34/19 35/1
42/11 44/17
57/19
**background [3]**
18/7 18/8 19/8
**backs [2]**  44/7
48/25
**bad [2]**  11/3
14/7

**balance [2]**
53/22 57/20
**ban [2]**  24/22
26/4
**banking [1]**
23/5
**Bankruptcy [1]**
1/24
**Bannon [1]**
10/21
**bans [1]**  28/20
**Bantam [2]**
33/17 37/21
**bar [1]**  40/10
**bars [1]**  28/15
**based [14]**
21/17 41/1
42/2 44/6
44/12 44/14
44/16 48/12
48/21 48/24
49/7 50/18
54/1 54/20
**basically [1]**
25/16
**basis [5]**
19/25 20/1
22/16 36/23
44/22
**BATES [1]**  1/10
**bedrock [1]**
49/15
**beg [1]**  32/17
**begin [2]**  3/6
3/9
**beginning [2]**
3/17 8/17
**behalf [2]**  2/8
16/17
**behave [1]**
11/3 11/5
**behind [2]**
7/20 16/23
**besides [1]**
47/24
**best [1]**  55/1
**betcha [1]**
36/14
**better [1]**
12/11
**beyond [3]**
10/12 27/17
54/24
**big [1]**  8/22
**biological [2]**
44/7 48/25
**bit [1]**  22/10
**blanket [1]**

**B**

**blanket... [1]**
24/14
**blatant [1]**
14/3
**blatantly [1]**
14/23
**blessed [1]**
16/20
**blizzard [1]**
9/23
**BLOCK [43]**   1/3
2/3 2/9 2/18
3/3 3/12 3/13
3/25 4/3 4/20
5/18 5/20 5/24
5/25 8/1 8/19
10/4 10/16
11/15 11/24
15/14 15/25
21/22 22/25
23/3 24/15
25/11 25/15
27/8 27/17
27/25 28/14
29/22 30/7
34/11 40/6
41/8 42/2
42/21 43/8
43/12 55/13
56/8
**Block's [1]**
7/17
**blue [2]**   16/11
37/4
**body [1]**   36/7
**boilerplate [2]**
14/21 14/24
**Bondi [2]**
56/20 58/23
**bono [10]**   4/25
5/12 11/20
12/2 44/2 54/2
54/7 54/12
54/14 54/15
**Books [2]**
33/17 37/21
**borders [1]**
44/9
**both [10]**   6/2
9/16 9/16 10/2
10/25 39/23
51/3 54/23
57/16 59/6
**bound [1]**
29/18
**Branch [8]**   9/2

9/3 15/13
17/10 19/1
24/4 43/1
54/18
**break [2]**
42/11 42/13
**briefly [2]**
43/19 50/19
**bring [1]**
59/15
**broad [2]**
16/10 22/10
**broadly [2]**
45/8 49/20
**brought [2]**
27/9 34/21
**Budget [2]**
56/22 56/23
**building [2]**
25/16 32/2
**buildings [15]**
6/1 12/5 25/6
26/9 28/16
31/19 39/21
39/24 40/11
40/24 45/12
50/4 52/14
52/16 52/21
**business [11]**
10/18 11/7
13/15 13/16
45/6 51/17
51/22 52/7
52/13 53/1
56/3
**busy [2]**   2/17
27/1
**but I [1]**   9/18
**But it's [1]**
33/1
**but they're [1]**
22/15

**C**

**CA [1]**   1/14
**call [2]**   10/9
19/20
**called [4]**
31/5 34/12
43/7 43/21
**calling [1]**
25/19
**calls [2]**   4/17
4/18
**came [3]**   15/16
16/5 52/1
**can [22]**   3/18
4/7 14/23

16/16 23/17
23/21 27/4
27/4 28/6
30/14 31/1
31/2 31/17
34/8 40/9
40/12 41/4
48/16 51/16
52/15 58/11
59/10
**cancel [2]**
49/22 51/23
**cancellation**
**[1]**   52/10
**capacity [4]**
40/1 45/16
56/21 56/22
**car [4]**   41/17
41/18 41/18
42/8
**Cardinal [1]**
53/8
**care [1]**   31/1
**carry [1]**   56/2
**case [31]**   2/2
5/19 6/11 8/15
9/21 12/6 18/3
20/24 21/3
27/6 27/15
33/14 33/17
34/21 34/24
35/3 36/17
37/2 37/3
38/11 38/18
38/24 39/7
49/11 50/15
51/12 53/18
53/12 54/18
57/21 57/21
**cases [10]**
26/10 26/11
32/18 36/10
36/13 36/24
37/15 39/23
48/16 50/6
**cast [1]**   9/22
**casually [1]**
40/25
**categories [1]**
44/13
**categorize [1]**
31/23
**category [2]**
35/14 35/17
**cause [2]**   9/8
55/2
**causes [4]**   5/1
7/19 14/17

43/23
**cease [1]**
56/11
**censorship [1]**
33/17
**center [1]**   5/9
**certain [8]**
7/5 9/3 17/5
19/1 19/2
30/18 50/2
51/1
**certainly [6]**
10/23 15/1
28/7 36/7
52/17 58/4
**Certification**
**[1]**   34/12
**certify [1]**
60/4
**certifying [1]**
57/7
**cetera [2]**
32/3 32/3
**chair [2]**   3/11
51/24
**challenge [2]**
34/21 37/3
**challenges [1]**
34/21
**chance [1]**   3/2
**children [2]**
44/6 48/24
**chilled [2]**
9/15 54/6
**chilling [9]**
3/25 7/20 8/18
8/23 9/5 9/13
9/22 14/18
15/24
**choice [3]**
12/3 12/11
43/23
**choosing [1]**
12/5
**Churchill [1]**
33/20
**circuit [9]**
34/24 46/12
48/15 48/19
49/12 51/12
51/15 53/13
53/17
**circular [1]**
7/3
**circulating [1]**
32/17
**circumstance**
**[2]**   24/12

24/12
**circumstances**
**[2]**   19/2 55/4
**citation [5]**
46/11 48/14
49/11 51/18
52/24
**cite [10]**
46/12 47/6
47/9 48/11
48/19 49/12
50/14 51/14
53/9 53/17
**cites [1]**   21/3
**citizens [1]**
40/19
**civil [6]**   1/3
2/2 17/1 26/11
44/13 51/2
**claim [5]**
46/23 46/24
48/5 48/7
50/17
**claims [4]**
43/25 46/18
46/20 46/21
**Clause [1]**
51/1
**clear [7]**
14/19 16/11
21/21 36/17
36/19 38/18
41/9
**clearances [1]**
31/22
**clearly [5]**
21/1 21/3
30/15 42/4
53/25
**clerk [1]**
42/17
**client [15]**
5/12 10/11
11/14 11/20
12/2 12/2 14/9
14/10 16/24
16/25 17/2
17/3 17/3
20/25 21/20
**client's [1]**
12/11
**clients [28]**
4/1 4/20 5/3
6/5 7/20 7/19
8/20 9/4 10/5
10/6 10/16
11/22 15/6
15/12 15/25

**C**

**clients... [13]**
16/13 27/10
40/8 40/9 42/2
43/3 52/1
52/3 52/23
54/2 54/5
55/17 55/18
**closed [1]**
39/1
**closing [1]**
37/4
**cloud [1]**    12/4
**cogent [1]**
49/6
**Coie [10]**    9/20
12/23 18/4
27/7 27/20
40/6 43/2
47/22 57/21
58/8
**COLUMBIA [2]**
1/1 48/18
**combined [1]**
52/25
**comfortable [1]**
14/14
**coming [2]**
22/19 34/3
**commanded [2]**
14/14 22/17
**commanding [1]**
23/4
**commend [1]**
9/20
**commendable [1]**
4/25
**comment [2]**
3/16 32/1
**commentary [1]**
19/8
**Commission [1]**
53/17
**committing [2]**
44/8 49/1
**common [1]**
4/11
**communicate [3]**
42/1 55/22
56/6
**community [1]**
27/18
**company [3]**
16/22 17/9
51/14
**compelling [1]**
49/9

**complaint [2]**
3/21 43/14
**completely [1]**
49/22
**compliance [2]**
57/6 57/7
**complicated [1]**
19/13
**complies [1]**
14/4
**comports [1]**
11/7
**concede [2]**
26/1 32/10
**concedes [1]**
41/7
**concern [6]**
6/25 11/23
21/17 30/20
44/15 52/23
**concerned [1]**
26/23
**concerns [6]**
18/16 27/13
27/14 34/10
36/18 52/3
**conclude [1]**
49/16
**concludes [1]**
50/16
**conclusion [2]**
7/8 13/10
**conclusions [2]**
20/17 20/18
**conclusory [1]**
44/20
**concrete [3]**
25/25 26/8
27/5
**condemning [1]**
54/15
**condoned [1]**
44/1
**conduct [1]**
54/13
**conference [1]**
7/23
**conferring [1]**
57/19
**confident [1]**
12/1
**confidently [1]**
28/9
**confirms [1]**
52/11
**Congress [1]**
35/18
**consequences**
**[2]**    5/14 12/4

**consider [3]**
9/4 9/10 9/11
**consideration**
**[1]**    35/24
**Considering [1]**
51/18
**consistency [1]**
45/18
**consistent [5]**
7/6 14/15
14/22 15/7
18/2
**constitute [2]**
51/13 51/16
**constitutes [2]**
48/8 53/15
**Constitution**
**[4]**    1/24
14/20 15/8
47/2
**constitutional**
**[6]**    15/1
17/12 38/21
49/15 53/13
54/23
**consult [1]**
58/4
**consultation**
**[1]**    45/23
**contact [1]**
45/8
**contends [1]**
44/11
**content [1]**
48/9
**context [2]**
25/5 38/21
**continue [2]**
11/23 31/2
**contract [6]**
13/23 14/7
14/7 35/13
36/21 51/23
**contracting [9]**
7/4 13/14
33/19 34/20
36/4 36/8 38/4
38/4 40/17
**contractor [6]**
35/20 36/6
36/12 52/3
52/7 52/25
**contractors [7]**
34/22 39/7
49/21 51/22
52/1 55/21
56/1
**contracts [18]**

11/22 13/5
31/12 31/16
33/10 33/19
36/11 36/18
36/22 40/24
44/25 45/3
45/4 45/5
49/21 49/22
49/23 52/11
**contrast [1]**
54/22
**control [1]**
19/15
**Cooley [2]**
1/13 2/8
**copies [3]**
2/20 57/11
59/15
**costs [1]**
35/10
**counsel [14]**
2/5 2/14 6/9
9/5 15/11
26/10 26/17
40/21 46/3
50/25 57/20
58/9 58/11
59/1
**couple [3]**
13/2 16/15
42/20
**course [11]**
18/15 22/7
25/21 32/6
34/24 35/15
40/15 40/16
42/23 51/6
56/3
**court [72]**
**Court's [9]**
3/16 6/25
13/18 15/17
25/18 28/12
32/17 36/9
37/1
**Court's**
**attention [1]**
36/9
**courthouse [1]**
29/23
**courthouses [7]**
28/16 28/25
29/10 30/4
30/7 30/21
52/16
**courtroom [2]**
12/21 55/1
**courts [3]**

1/24 4/25
52/20
**covers [3]**
37/9 37/12
48/10
**created [1]**
7/8
**crimes [2]**
44/9 49/1
**criminal [3]**
26/10 37/22
50/24
**critical [6]**
3/19 13/14
22/14 41/17
44/18 44/23
**currently [1]**
17/18
**cute [2]**    30/12
31/8
**cv [1]**    1/4

**D**

**D.C [7]**    46/12
48/15 48/19
49/12 51/15
53/13 53/17
**D.D.C [1]**    53/9
**DATE [1]**    60/10
**Dawson [2]**
16/17 17/14
**day [4]**    8/25
11/13 11/22
14/9
**days [1]**    42/20
**DC [3]**    1/5
1/17 1/25
**deadline [1]**
58/17
**deadly [1]**
44/9
**deal [4]**    36/3
36/10 42/18
58/24
**dealing [5]**
10/25 38/19
43/2 43/3 43/4
**deals [1]**    38/3
**death [1]**    53/1
**debates [1]**
37/18
**decades [1]**
34/8
**decided [1]**
34/22
**decision [5]**
9/19 20/9
23/20 24/6

**D**

**decision... [1]**
25/3
**decisions [7]**
23/10 23/17
24/24 40/16
40/18 40/23
40/25
**declarant [1]**
3/10
**declaration [5]**
2/23 3/19
9/11 11/12
52/22
**deemed [1]**
49/24
**defamatory [1]**
8/7
**defend [1]**
17/3
**defendant [1]**
46/13
**defendants [15]**
1/7 1/16
16/17 50/24
53/3 55/11
55/14 55/19
55/24 56/5
56/14 56/19
57/4 59/2 59/3
**defense [1]**
35/4
**deference [1]**
35/21
**deficiencies
[1]** 50/22
**degree [6]**
19/17 22/2
25/21 25/22
29/17 37/10
**delaying [1]**
35/10
**Democrat [1]**
24/3
**demonstrate [2]**
46/9 49/9
**deny [1]** 29/20
**DEPARTMENT [7]**
1/6 2/3 2/12
32/21 40/22
41/6 56/20
**depends [1]**
10/10
**depriving [1]**
53/19
**deputy [4]**
2/12 6/9 12/21

42/17
**derive [2]**
38/25 43/23
**described [1]**
14/18
**describing [1]**
57/5
**designed [3]**
17/7 17/8 37/5
**despite [1]**
40/7
**determine [1]**
23/18
**determines [3]**
46/17 48/6
53/18
**develop [3]**
31/11 31/24
32/8
**developed [2]**
26/7 31/3
**developing [1]**
31/14
**development [4]**
25/24 26/3
30/23 31/6
**dictating [1]**
59/5
**Diego [1]** 1/14
**difference [1]**
5/13
**different [4]**
5/19 12/19
12/22 38/21
**direct [9]**
13/7 13/18
36/9 37/1
41/21 41/25
44/21 58/22
59/2
**directed [3]**
55/19 55/24
56/5
**directing [1]**
42/24
**direction [4]**
7/3 25/19
26/13 55/20
**directive [1]**
52/13
**directly [3]**
43/23 45/4
57/22
**director [2]**
45/24 56/23
**directs [1]**
51/23
**disclose [2]**

49/21 51/22
**disclosure [3]**
52/4 56/7
56/11
**discretion [5]**
13/9 40/16
40/17 40/18
40/23
**discretionary
[3]** 19/5
22/20 22/21
**discriminates
[3]** 44/12
48/12 50/18
**discrimination
[5]** 34/5
34/15 48/9
48/9 48/10
**discriminatory
[3]** 37/8
37/12 39/2
**discuss [1]**
58/9
**discussed [2]**
33/8 39/9
**discusses [1]**
36/8
**Discussion [1]**
58/14
**dispositive [2]**
53/2 57/22
**disregard [1]**
56/1
**dissuade [1]**
27/23
**distasteful [1]**
6/18
**distinction [3]**
11/10 31/17
33/18
**district [6]**
1/1 1/1 1/10
1/24 47/18
48/18
**disturbing [1]**
54/13
**diversity [4]**
34/6 34/11
34/13 34/14
**divorced [1]**
49/22
**doctor [1]**
17/6
**document [1]**
21/1
**DOJ [1]** 1/16
**DOJ-USAO [1]**
1/16

**done [3]** 14/15
35/25 57/13
**door [4]** 12/20
12/21 12/22
29/22
**double [1]**
28/6
**doubt [1]** 27/1
**Douglass [1]**
48/17
**down [1]** 35/7
**drafted [1]**
30/4
**drill [1]** 8/16
**driven [4]**
23/19 23/21
23/24 24/7
**drives [1]**
22/18
**drop [1]** 10/11
**drugs [1]** 44/9
**due [4]** 15/10
15/11 16/7
51/1
**during [1]**
56/17
**duties [1]**
27/9

**E**

**earlier [1]**
28/19
**early [1]**
34/24
**easier [1]**
59/4
**Eastern [1]**
34/22
**Eastgate [1]**
1/14
**economic [5]**
17/4 51/11
51/12 51/16
53/4
**effect [9]**
3/25 7/20 8/18
8/23 9/5 9/13
14/18 15/24
57/9
**effective [2]**
50/25 56/17
**effectively [6]**
8/12 9/17
11/20 28/15
41/15 54/15
**effects [1]**
51/19
**effectuate [1]**

55/22
**efforts [2]**
44/8 49/1
**eggshells [1]**
9/6
**egregious [1]**
48/11
**either [3]**
36/14 43/10
57/15
**Election [1]**
53/16
**else [2]** 12/20
12/23
**Elster [1]**
48/11
**emphasis [1]**
5/17
**emphatically
[1]** 54/9
**employed [4]**
5/20 21/22
21/23 47/16
**employee [7]**
21/18 21/19
23/20 25/15
46/4 50/2
55/17
**employees [19]**
4/1 16/13
21/16 25/11
32/7 32/9
39/25 40/1
41/8 44/12
45/9 45/12
45/16 45/17
45/21 50/4
52/15 55/21
56/1
**employment [2]**
5/22 24/4
**employs [1]**
6/6
**encroaches [1]**
18/25
**end [3]** 13/21
41/15 41/20
**ends [3]** 5/8
5/11 44/5
**enforce [1]**
55/22
**enforcement [4]**
44/23 54/20
56/16 57/1
**enforcing [2]**
43/16 55/11
**engage [7]** 4/2
4/3 5/25 7/18

**E**

**engage... [3]**
40/13 42/1
44/2
**engaged [2]**
33/19 48/1
**engagement [1]**
39/22
**engages [4]**
5/7 5/10 44/4
47/11
**engaging [3]**
40/1 40/11
45/16
**engine [4]**
7/19 41/17
41/18 42/8
**enjoin [12]**
6/14 7/1 13/4
17/13 17/22
42/3 42/9
43/15 43/20
53/24 54/10
54/17
**enjoined [8]**
18/19 18/20
20/12 20/16
27/21 30/13
55/11 55/14
**enjoining [3]**
6/19 6/19
18/11
**enough [6]**
4/16 4/16 28/8
37/25 51/7
53/5
**ensure [2]**
45/18 57/6
**enter [1]**    3/22
**entering [1]**
28/15
**entire [4]**
3/20 7/2 9/23
23/2
**entities [1]**
45/5
**entitled [2]**
55/13 60/5
**EO [2]**    34/19
39/5
**equities [2]**
46/9 53/23
**escaped [1]**
12/7
**essence [1]**
19/9
**essential [2]**

35/12 50/23
**essentially [1]**
7/3
**establish [2]**
46/7 53/5
**established [3]**
14/5 34/7
34/7
**et [4]**    1/6 2/4
32/3 32/3
**even [18]**    3/1
14/25 23/8
25/1 30/9
36/16 36/23
37/8 37/14
38/7 38/9 39/2
49/16 50/9
52/7 53/10
53/14 58/7
**evening [6]**
2/7 2/10 2/11
2/15 57/14
59/16
**event [2]**    46/6
59/8
**everybody [3]**
12/20 37/7
43/18
**everyone [2]**
50/5 59/14
**everywhere [1]**
3/15
**exact [2]**
37/21 59/3
**exactly [2]**
7/11 7/24
**examine [1]**
24/23
**examining [1]**
39/1
**example [4]**
21/15 34/18
46/4 53/8
**examples [1]**
30/14
**excellent [1]**
41/5
**exceptions [1]**
24/21
**exclude [1]**
30/6
**excluding [1]**
35/10
**excuse [2]**
12/24 12/24
**execute [1]**
27/9
**execution [2]**

7/21 42/6
**executive [108]**

**exercise [3]**
3/18 37/19
47/2
**exist [1]**
26/12
**existence [2]**
51/17 51/20
**expanding [1]**
40/4
**expect [3]**
27/19 28/2
30/1
**experience [1]**
27/2
**experienced [1]**
9/5
**explained [2]**
53/18 57/13
**explains [2]**
43/21 51/24
**explicitly [1]**
47/10
**express [1]**
35/17
**expressed [3]**
20/1 52/3
52/23
**expresses [2]**
4/9 44/15
**expressing [1]**
11/23
**expression [1]**
50/12
**extend [2]**
40/18 52/15
**extends [1]**
54/24
**extent [8]**    7/5
13/21 13/24
14/13 20/1
21/14 45/9
45/20
**extraordinary**
**[1]**    37/25

**F**

**F.2d [2]**    34/23
51/14
**F.3d [1]**    53/17
**F.4th [4]**
46/12 48/18
49/11 50/10
**F.Supp.2d [1]**
53/8
**face [3]**    3/23

3/24 14/17
faced [1]    12/2
**faces [1]**
16/25
**facially [1]**
48/1
**fact [6]**    2/21
5/22 25/19
45/2 48/1 58/1
**factor [1]**
46/15
**factors [3]**
46/13 53/22
53/24
**facts [2]**
20/18 52/11
**factual [1]**
44/19
**fair [3]**    4/16
4/16 19/24
**fairly [2]**
29/7 34/24
**faith [1]**
56/15
**fall [3]**    30/15
33/13 47/20
**falls [2]**
35/14 35/16
**fanciful [1]**
11/24
**far [8]**    13/25
19/14 21/2
21/7 26/8
26/23 27/9
49/20
**favor [3]**    46/9
53/6 53/25
**fears [1]**    52/6
**federal [32]**
12/18 12/19
19/23 23/6
24/14 25/6
25/16 26/17
28/16 39/21
39/24 40/11
40/11 42/24
43/8 43/9
43/11 45/3
45/12 46/5
47/13 50/3
50/4 51/21
52/2 52/7
52/15 52/20
52/21 52/25
53/16 55/2
**feel [1]**    13/10
**feelings [1]**
20/13

**FERC [1]**    51/14
**few [3]**    27/17
39/14 39/15
**field [1]**    36/5
**Fifth [4]**
15/11 50/21
50/25 51/4
**file [1]**    57/4
**filed [3]**    2/19
27/6 43/14
**filing [1]**    8/3
**final [1]**
53/24
**finally [3]**
41/15 44/14
45/20
**financial [1]**
52/9
**financials [1]**
53/1
**find [4]**    6/12
6/18 25/12
33/2
**finds [2]**
38/12 38/13
**fine [1]**    25/17
**fines [1]**
37/21
**fired [2]**
11/19 11/19
**firm [36]**    3/11
3/14 4/21 5/2
6/5 6/6 6/10
6/10 9/9 10/11
12/3 12/5 12/6
13/1 16/12
16/19 20/13
29/8 40/6
40/12 43/25
47/11 47/15
47/19 47/24
48/3 48/22
50/6 51/19
51/20 51/24
52/3 52/6 52/6
53/20 56/8
**firm's [7]**
4/23 44/16
49/24 51/25
52/8 52/13
53/12
**firm-wide [1]**
51/19
**firmest [3]**
38/6 39/6 39/7
**firmly [1]**
38/5
**firms [9]**

firms... - higher

**F**

**firms... [9]**
10/18 11/2
11/3 12/9
12/10 42/25
54/5 54/13
54/16
**first [48]**
3/23 4/23 7/1
7/17 7/20
10/14 12/25
13/13 14/3
14/16 14/20
15/2 23/13
23/21 24/7
34/2 35/14
35/17 35/24
36/21 37/10
37/13 38/9
38/16 38/17
38/19 38/20
38/23 39/17
39/18 40/20
41/1 42/13
43/24 46/23
46/25 47/4
47/21 48/4
48/9 50/20
51/5 51/13
53/12 53/14
53/19 56/6
57/17
**five [3]** 42/11
42/13 51/25
**five-minute [2]**
42/11 42/13
**Florida [2]**
32/25 58/20
**following [1]**
12/14
**follows [3]**
39/19 39/23
43/2
**foregoing [1]**
60/4
**forever [1]**
53/7
**forget [2]**
28/22 42/16
**formal [2]**
19/8 29/1
**former [6]**
5/17 5/17
21/18 21/19
47/25 47/25
**forth [2]**
27/10 37/7

**found [5]** 3/18
3/18 5/6 7/9
37/14
**Foundation [1]**
48/18
**fount [1]**
26/22
**four [4]** 21/22
21/23 39/17
46/14
**Fourth [1]**
41/15
**frame [1]**
12/13
**frankly [5]**
3/15 4/24 5/7
16/12 32/24
**fraud [1]** 14/8
**Frederick [1]**
48/17
**free [1]** 4/20
**freedom [2]**
17/4 18/22
**freedoms [2]**
53/14 53/20
**freezes [1]**
26/15
**frequently [1]**
45/10
**front [3]** 17/2
17/9 59/15
**frozen [1]**
26/6
**fully [2]** 6/8
21/12
**further [17]**
13/6 16/4
44/11 44/19
49/10 55/10
55/14 55/19
55/24 56/5
56/10 56/12
56/14 56/19
57/4 57/8 57/9
**future [2]**
8/24 36/22

**G**

**Garland [1]**
49/11
**Gas [1]** 51/14
**gave [1]** 7/22
**gee [1]** 40/9
**gender [1]**
40/20
**general [7]**
2/13 6/9 11/2
29/11 35/19

47/3 56/21
**General's [1]**
2/13
**generally [1]**
32/19
**given [5]** 2/25
25/10 25/14
27/1 35/21
**gives [3]**
47/23 49/4
49/13
**glad [1]** 3/13
**global [1]**
3/11
**goal [3]** 10/17
50/9 50/9
**goes [2]** 5/16
13/6
**good [11]** 2/7
2/10 2/11 12/8
12/9 12/10
12/10 43/1
56/15 59/16
59/16
**government [59]**
3/2 3/3 4/1
5/24 7/3 11/14
11/17 11/22
12/4 12/5
12/19 13/14
16/25 18/18
18/19 19/23
21/13 23/6
26/11 33/21
34/1 34/20
35/12 36/4
36/11 39/22
39/24 39/25
40/21 40/24
42/24 43/8
43/9 43/11
43/16 44/24
44/25 45/3
45/12 45/15
46/3 46/5
46/13 47/4
47/13 49/8
49/10 49/20
50/4 52/1 52/4
52/10 52/14
52/21 53/24
54/18 55/2
56/20 58/9
**government's
[1]** 50/9
**grant [3]**
19/17 25/23
37/25

**granted [2]**
19/7 55/10
**granting [1]**
41/3
**granular [4]**
11/11 30/5
30/8 32/14
**granularity [1]**
30/13
**great [2]**
35/20 58/24
**greatest [1]**
54/9
**greatly [1]**
3/7
**Greatness [1]**
53/16
**grounds [3]**
38/6 39/6 39/8
**group [1]** 9/7
**groups [2]** 9/7
54/7
**GSA [3]** 29/12
29/14 29/19
**GSA is [1]**
29/14
**guarantees [1]**
50/24
**guess [4]** 3/1
21/14 22/12
43/5
**guidance [48]**
11/16 25/19
25/20 25/24
25/25 26/3
26/6 26/7
26/14 26/14
26/19 27/4
27/13 28/20
28/24 29/19
30/1 30/5
30/13 30/19
30/23 31/2
31/6 31/12
31/15 31/21
31/24 32/8
32/11 32/12
33/9 39/18
39/20 39/21
39/21 39/23
39/24 40/5
40/7 40/10
40/12 45/18
45/11 45/15
55/20 55/25
56/24 58/23
**guide [2]** 20/9
25/2

**guiding [1]**
21/9

**H**

**halt [1]** 54/19
**happen [5]**
12/8 26/16
27/2 31/1 31/1
**happening [6]**
11/11 15/3
15/22 15/23
15/25 16/4
**happier [1]**
32/25
**harm [17]** 9/22
10/8 13/12
20/11 46/8
51/6 51/8 51/9
51/11 51/13
51/16 53/5
53/6 53/11
53/21 54/9
54/23
**harmed [1]**
54/19
**harmful [1]**
54/14
**harms [2]** 10/8
50/20
**Hartman [1]**
47/6
**have a [1]**
24/2
**head [3]** 18/25
41/13 45/23
**heading [1]**
4/19
**heads [10]**
13/5 13/10
13/20 13/22
25/6 25/12
25/14 45/7
45/9 49/22
**health [2]**
52/9 53/8
**hear [1]** 16/16
**heard [4]** 3/2
40/14 41/5
41/13
**hearers [2]**
50/14 50/15
**hearing [5]**
1/9 30/10
43/17 47/21
52/17
**here's [1]**
35/11
**higher [1]**

**H**

higher... [1]
23/8
highest [1]
44/1
hire [6]    23/18
23/20 24/7
40/9 40/12
45/25
hired [3]
12/18 13/25
23/6
hires [1]    17/2
hiring [14]
22/21 23/10
23/17 24/14
24/24 32/7
32/8 32/11
33/8 40/16
40/23 44/16
45/21 46/4
history [1]
35/1
hit [1]    16/1
Holder [1]
53/8
Honor [36]    2/7
2/11 3/5 3/11
4/10 5/6 7/15
8/14 9/20 10/2
10/23 11/25
12/13 15/3
16/18 17/16
18/4 23/16
24/16 29/24
30/11 31/13
32/1 33/24
34/4 39/13
40/12 40/15
41/2 41/8
41/16 41/19
42/9 57/18
58/6 59/12
Honor's [2]
41/6 41/13
HONORABLE [1]
1/10
HOOK [3]    1/23
60/3 60/10
hope [1]    31/17
hopefully [1]
24/9
horizon [1]
17/4
horrific [1]
44/8
hot [1]    11/21

hour [2]    2/25
42/18
House [2]    28/5
45/1
How's [1]
29/25
Howell [2]
26/2 47/22
Howell's [1]
58/8
hyperbole [1]
40/14
hypothetical
[2]    8/24
19/10

**I**

I don't [1]
28/1
id [2]    48/15
51/17
idea [2]    12/13
36/8
ideals [1]
44/1
ideas [2]
50/12 50/13
identified [1]
43/22
identifies [1]
43/6
identities [1]
54/2
ignoring [1]
19/16
illegal [2]
44/8 49/1
Illinois [1]
47/8
imagine [1]
24/3
immaterial [1]
19/6
immediate [3]
13/12 16/2
16/3
immediately [4]
43/15 55/25
56/6 56/24
immigrants [3]
47/15 49/18
54/3
immigration [1]
5/5
imminent [1]
52/25
immunity [1]
53/4

impact [2]
8/17 49/23
impacting [1]
5/4
impermissible
[1]    7/17
impinges [1]
53/11
implement [3]
20/7 41/25
55/22
implementation
[3]    21/10
56/16 57/1
implemented [1]
18/12
implementing
[1]    55/11
implicating [1]
5/3
implications
[1]    41/7
implied [1]
35/18
imply [1]    4/7
importance [1]
3/14
important [6]
13/3 18/17
18/19 31/17
32/15 39/19
importantly [2]
6/2 6/3
impose [1]
35/13
imposed [1]
49/19
imposes [1]
44/24
improper [2]
19/4 21/10
Inc [2]    48/18
53/8
inclined [3]
19/17 25/21
25/23
include [1]
50/15
included [1]
28/25
including [8]
2/20 6/1 12/16
13/24 40/1
44/13 45/17
45/22
inconsistent
[4]    25/1 25/8
25/13 45/14

increases [1]
37/7
increasing [1]
35/10
incredible [1]
5/7
indeed [2]    7/8
48/22
independently
[1]    44/21
indicate [2]
46/19 52/18
indicates [1]
5/23
individual [5]
16/22 24/11
24/12 44/17
47/5
individualized
[4]    24/17
24/18 24/21
33/8
individually
[1]    24/13
individuals [6]
47/7 47/14
49/17 54/3
54/7 54/8
indulgence [1]
32/17
inflicts [1]
50/20
influence [1]
18/11
inform [1]
18/9
informs [2]
18/7 18/7
inhibit [1]
47/2
injunction [2]
46/10 46/11
injury [3]
16/2 16/3
53/16
inquiry [2]
22/23 46/1
instruct [1]
6/15
instructed [1]
13/5
insufficient
[1]    21/8
integral [1]
19/21
intended [2]
3/24 10/15
intending [1]

28/5
intent [4]    4/5
4/9 4/18 4/22
intentionally
[1]    8/18
interaction [5]
22/3 22/6
22/8 26/17
26/17
interactions
[1]    55/16
interest [8]
16/22 46/11
46/21 49/10
49/11 53/23
54/10 54/24
interesting [1]
41/14
interests [15]
7/6 22/14
22/23 22/24
23/20 23/22
25/8 25/13
35/4 44/3
45/14 45/19
46/4 49/14
54/19
interplay [2]
7/16 8/16
interview [1]
19/10
into [4]    6/1
19/13 29/18
46/5
introduced [1]
31/10
investigation
[5]    6/7 6/8
37/21 37/22
44/17
involve [2]
37/19 45/3
involved [2]
22/4 37/3
involves [1]
58/24
involving [3]
33/15 33/17
45/4
irreparable
[16]    13/11
16/2 16/3 46/8
51/6 51/8 51/9
51/11 51/13
51/16 53/5
53/6 53/11
53/15 53/21
54/23

**I**

is no [1]
23/11
is one [1]
27/15
issue [12]
23/9 25/20
25/25 26/5
27/5 30/5
30/10 37/13
42/12 55/6
55/25 56/24
issued [12]
9/9 11/13
11/16 16/7
25/20 26/19
30/19 34/19
42/20 42/23
43/5 52/2
issues [19]
3/19 3/22 23/5
26/8 26/16
27/8 27/8
30/14 32/16
33/11 33/14
34/5 34/10
34/13 34/14
34/15 35/22
36/21 58/17
issuing [3]
27/24 46/10
53/25
items [1]   8/22

**J**

Jackson's [2]
35/14 35/17
JEFF [3]   1/23
60/3 60/10
JENNER [110]
Jenner's [8]
11/18 13/15
43/23 44/15
49/17 51/24
52/10 53/1
jeopardization
[1]   22/24
JOHN [1]   1/10
Johnson [2]
34/19 34/25
join [2]   26/8
27/15
judge [7]   1/10
9/5 26/2 30/24
47/17 47/21
58/8
judgment [1]
57/22

Judiciary [3]
19/2 19/15
20/12
jump [11]
46/12 47/6
47/9 48/11
48/19 49/12
50/14 51/14
53/9 53/17
57/16
jumping [1]
28/10
juror [2]   4/14
4/15
justice [10]
1/6 2/3 2/12
32/21 35/14
35/16 40/22
41/7 44/3
56/20
justification
[2]   23/3 23/7

**K**

key [2]   33/18
39/10
kind [5]   12/3
15/9 15/9
21/24 26/6
knell [1]   53/1
knew [1]   29/4
knowledge [4]
26/20 26/21
26/23 29/16
knows [1]
35/16

**L**

labor [2]
34/23 35/11
lack [1]   46/20
laid [2]   34/10
55/15
landscape [1]
3/20
language [2]
52/17 59/3
large [4]   24/7
27/18 54/16
59/4
larger [4]
30/11 37/17
38/24 38/24
last [2]   53/22
58/22
late [4]   2/25
3/7 42/18
57/13

later [2]   5/22
22/12
launch [2]
37/20 37/22
law [36]   4/21
5/2 6/5 6/6
6/10 6/10 9/9
11/2 11/2 12/3
12/5 12/6 12/9
12/10 13/1
13/22 13/24
14/4 14/4
14/13 14/15
14/19 14/22
14/25 15/7
29/8 36/2 36/7
40/6 42/25
45/10 45/21
47/3 47/19
54/5 54/13
lawfare [1]
44/1
laws [2]   37/4
44/13
LAWSON [6]
1/16 2/12
17/15 32/22
58/10 58/15
lawsuit [2]
8/3 17/1
lawyer [3]   9/5
11/17 40/9
lawyering [1]
55/2
lawyers [18]
3/12 3/14 4/1
4/2 12/5 12/8
12/9 12/10
16/19 17/8
28/15 30/7
32/22 36/6
36/12 50/23
51/2 54/4
least [4]   18/3
37/24 46/18
51/10
leave [2]
37/17 40/4
leaves [1]
13/9
left [1]   21/14
legal [5]   9/23
27/18 43/25
54/4 54/25
legitimate [1]
39/3
less [4]   13/12
13/12 35/3

50/7
LGBTQ [1]   5/3
liberty [1]
38/23
life [1]   17/5
lightly [1]
54/17
likelihood [4]
10/13 46/7
46/16 51/7
likely [16]
12/8 13/12
40/10 46/17
46/23 48/3
48/7 49/7
50/16 51/4
51/9 51/10
52/6 53/7
53/11 53/18
limit [4]   30/5
40/10 50/4
52/14
limitations [1]
59/10
limited [6]
6/1 27/2 40/2
45/17 45/22
59/10
limiting [7]
39/23 39/23
39/25 40/7
45/8 45/11
45/15
limits [3]
46/20 50/1
50/3
lines [2]   13/3
47/22
lip [1]   49/13
listen [1]
57/16
litigants' [1]
51/2
litigation [4]
47/12 47/13
49/2 50/3
little [9]
2/16 2/17 13/6
20/17 20/22
22/9 22/10
31/8 48/20
live [1]   17/5
LLP [4]   1/3
1/13 2/3 2/8
locations [1]
14/12
logistically
[1]   59/4

logistics [1]
58/16
long [5]   14/4
31/2 33/23
35/6 35/9
look [10]   4/21
7/13 16/7 25/4
29/25 30/16
33/7 33/9
37/22 39/19
looked [1]
37/6
looking [3]
20/8 27/17
40/9
looks [2]   9/6
20/16
lose [2]   13/16
52/7
loss [7]   51/12
51/16 51/16
52/10 52/25
53/5 53/14
lost [3]   27/3
53/7 53/7
lot [3]   20/17
32/21 58/21
Lyndon [1]
34/19

**M**

magnified [1]
50/21
mail [1]   23/4
mailroom [1]
12/16
making [2]
19/5 56/11
malicious [1]
8/8
malign [1]
5/17
Mall [1]   1/14
Management [3]
45/24 56/21
56/23
managing [1]
50/5
mandated [1]
52/4
mandates [1]
16/11
mandatory [1]
14/1
Mansfield [1]
34/12
many [10]   12/8
12/8 12/10

# M

**many... [7]**
12/10 18/6
26/16 28/6
30/14 30/14
32/16
**March [4]**   1/5
42/20 55/12
57/5
**March 25th [1]**
42/20
**March 31st [1]**
57/5
**March 5 [1]**
55/12
**marching [1]**
3/17
**Marshal [1]**
12/22
**Marshals [3]**
29/21 29/23
30/6
**Maryland [2]**
37/2 37/3
**Matal [1]**
50/14
**material [2]**
18/11 19/13
**matter [10]**
3/7 3/14 17/1
18/5 42/18
47/4 47/22
48/13 49/23
60/5
**matters [4]**
5/3 5/4 52/19
52/20
**maximum [1]**
13/24
**may [9]**   6/12
8/21 13/22
28/7 31/22
36/16 37/11
50/12 58/13
**maybe [1]**   11/8
**McGowan [5]**
37/2 38/11
38/18 38/22
38/25
**mean [11]**  13/9
14/13 20/23
21/5 23/12
23/16 24/21
25/14 30/12
36/17 53/4
**means [1]**
23/15

**meant [1]**  42/3
**meanwhile [1]**
52/12
**meet [2]**   8/8
11/14
**meeting [5]**
11/15 11/17
11/18 26/10
32/2
**member [1]**
20/6
**memorandum [1]**
28/14
**mentioned [2]**
9/14 28/19
**mentioning [1]**
3/9
**merely [2]**
48/13 50/12
**merge [2]**
46/14 53/24
**merit [2]**
37/25 46/20
**merits [7]**
46/8 46/17
46/18 48/4
48/7 50/17
51/7
**MICHAEL [2]**
1/13 2/7
**might [8]**   4/2
4/18 10/11
12/11 22/4
22/8 24/11
49/2
**mind [1]**   12/11
**Mindful [1]**
58/1
**minimal [1]**
53/14
**minority [1]**
35/11
**minute [2]**
42/11 42/13
**minutes [4]**
16/16 27/17
39/14 57/12
**moment [4]**
16/6 18/18
55/7 58/11
**momentarily [1]**
59/16
**moments [1]**
30/9
**Monday [4]**
57/5 57/19
58/17 59/6
**month [1]**

42/23
**Moore [1]**   47/6
**more [13]**   3/1
6/2 6/3 8/10
13/3 19/8 22/9
22/13 27/19
28/2 28/7
53/10 58/24
**most [6]**   5/15
5/15 10/9
29/13 41/14
54/6
**motion [7]**   1/9
2/18 17/20
17/25 26/16
43/14 55/9
**motions [1]**
57/22
**motive [1]**
37/5
**movant [2]**
46/7 53/23
**movant's [1]**
51/17
**move [1]**   10/16
**moves [2]**
33/15 41/17
**Mr. [16]**   3/4
5/20 5/23 9/11
11/12 16/17
17/14 20/22
21/18 22/4
22/6 22/8 23/1
32/22 58/10
58/15
**Mr. Attanasio
[2]**   3/4 23/1
**Mr. Dawson [2]**
16/17 17/14
**Mr. Lawson [3]**
32/22 58/10
58/15
**Mr. Perrelli's
[2]**   9/11
11/12
**Mr. Weissmann
[6]**   5/20 5/23
20/22 22/4
22/6 22/8
**Mr. Weissmann's
[1]**   21/18
**much [5]**   4/7
6/13 10/9
32/25 33/2
**Mueller [2]**
6/9 44/17
**must [7]**   45/9
46/7 49/8 51/8

56/14 56/23
57/4

# N

**name [1]**   5/16
**named [1]**   5/18
**namely [1]**
47/12
**narrowly [2]**
49/10 50/7
**national [20]**
7/6 21/15
21/24 22/14
22/23 22/24
23/3 23/7 23/9
23/19 25/7
41/7 41/10
41/12 45/13
45/18 45/25
46/3 49/14
49/18
**necessarily [7]**
13/7 18/16
20/8 24/2 25/2
42/25 53/5
**necessary [3]**
19/16 19/21
56/15
**need [7]**   7/1
11/3 11/4 11/5
11/5 48/20
48/22
**needs [1]**   41/2
**negatives [1]**
28/7
**nervous [1]**
52/5
**neutral [1]**
40/5
**New [1]**   33/15
**news [1]**   21/4
**next [1]**   55/3
**nice [1]**   29/4
**nondiscriminati
on [1]**   35/13
**nonsensical [1]**
6/2
**noon [2]**   58/17
59/6
**note [1]**   54/11
**noted [1]**
26/25
**notice [7]**
15/13 15/15
15/17 15/21
16/8 16/14
27/11
**notwithstanding
[1]**   23/12

**NRA [1]**   33/16
**number [2]**
32/18 33/5
**numerous [3]**
21/4 52/2
52/20
**NW [2]**   1/17
1/24

# O

**objection [2]**
58/18 59/1
**obligations [1]**
44/24
**observations
[2]**   19/20
19/20
**obstruction [2]**
44/7 48/25
**obvious [5]**
5/7 5/10 11/10
41/12 44/4
**Obviously [1]**
27/5
**occur [1]**
52/11
**off [2]**   23/1
58/14
**offends [2]**
47/1 51/4
**offensive [1]**
50/13
**offers [1]**
19/12
**office [5]**
2/13 45/24
50/5 56/21
56/23
**officers [3]**
32/3 55/21
55/25
**official [11]**
1/23 11/14
39/24 39/25
45/11 45/16
47/1 52/14
56/20 56/22
60/3
**officials [9]**
4/2 5/24 7/4
32/7 39/22
40/11 45/20
47/4 52/22
**often [2]**
16/19 46/14
**older [2]**
33/17 34/24
**once [4]**   6/6

**O**

**once... [3]**
26/7 27/13
47/16
**one [14]**  9/7
10/20 13/3
18/3 20/10
24/8 27/15
34/9 34/21
38/13 42/22
48/16 58/17
58/22
**one's [1]**
26/19
**ones [1]**  2/22
**only [14]**  9/10
15/7 16/3 17/1
17/20 23/5
31/4 31/24
31/25 32/4
32/12 45/4
48/16 50/19
**onto [1]**  22/23
**operate [1]**
15/1
**operative [2]**
13/4 44/22
**opinion [1]**
42/12
**opportunity [3]**
16/1 16/9
22/22
**opposing [1]**
26/10
**oral [1]**  42/12
**order [148]**
**Order's [1]**
52/13
**ordered [11]**
55/9 55/10
55/14 55/19
55/24 56/5
56/14 56/19
57/4 57/8
57/10
**orders [9]**
2/21 9/21
10/18 27/19
27/24 28/20
28/21 35/2
42/22
**ordinary [1]**
56/2
**organization
[2]**  16/23
17/9
**otherwise [6]**

7/7 15/8 25/8
25/25 45/14
52/18
**out [15]**  4/17
4/18 8/12
10/18 11/7
14/5 16/5
16/11 28/4
34/10 35/23
43/13 55/15
57/11 59/15
**outcome [1]**
13/7
**outside [1]**
36/23
**over [7]**  9/6
19/6 24/8 35/6
35/9 41/13
42/23
**overbroad [1]**
16/11
**own [4]**  9/18
10/15 29/16
52/10

**P**

**p.m [6]**  1/7
30/10 42/14
42/15 57/5
59/17
**paid [1]**  5/12
**Pamela [1]**
56/20
**papers [4]**
2/19 2/20 3/18
10/24
**paragraph [3]**
11/19 52/22
52/24
**paragraphs [2]**
9/11 11/13
**paraphrasing
[1]**  11/4
**part [10]**  8/21
13/14 13/21
13/21 24/7
28/13 29/13
35/12 43/17
54/1
**Partially [1]**
38/8
**participant [1]**
34/11
**particular [6]**
2/22 4/24 13/7
44/23 48/14
48/21
**particularly
[4]**  11/22

48/10 54/7
59/14
**parties [2]**
27/12 57/21
**partisan [5]**
5/7 5/10 5/13
44/1 44/4
**partner [2]**
5/17 47/25
**partners [3]**
3/12 22/2 50/5
**party [4]**
10/10 33/21
34/1 47/8
**pass [1]**  49/7
**past [2]**  28/24
51/25
**patent [1]**
32/3
**patience [1]**
59/14
**Paul [2]**  27/24
43/3
**paying [1]**
12/2
**penalties [3]**
33/6 33/11
33/13
**penalty [1]**
40/8
**pending [1]**
52/19
**Pennsylvania
[2]**  1/17
34/23
**people [8]**
12/15 12/16
15/25 22/3
22/7 32/23
40/19 43/9
**per [2]**  21/25
22/1
**percent [1]**
51/25
**perform [1]**
13/25
**perhaps [3]**
21/20 22/8
46/19
**period [1]**
56/17
**periods [1]**
53/15
**Perkins [10]**
9/20 12/23
18/4 27/7
27/20 40/5
43/2 47/22

57/21 58/8
**permissible [1]**
14/13
**permits [1]**
17/17
**permitted [4]**
13/22 13/24
45/10 45/21
**Perrelli [3]**
3/11 51/24
52/22
**Perrelli's [2]**
9/11 11/12
**person [5]**
17/8 23/4 23/4
56/8 59/9
**personal [1]**
17/4
**personnel [2]**
31/18 45/24
**persuade [1]**
46/10
**persuasive [1]**
54/18
**phrase [3]**
14/8 14/11
45/10
**picture [1]**
8/22
**piece [1]**  3/2
**place [2]**  28/4
51/18
**placed [2]**
45/10 50/4
**places [3]**
39/20 47/24
48/21
**plainly [1]**
54/20
**plaintiff [7]**
1/4 1/13 2/8
2/18 20/12
55/16 55/17
**plaintiff's [4]**
2/5 18/10
55/17 55/17
**plaintiffs [4]**
46/17 46/22
50/16 57/17
**plausible [1]**
34/15
**play [4]**  23/1
26/16 29/18
50/23
**pleadings [4]**
22/13 27/12
32/18 33/6
**please [2]**  2/5

35/8
**pleasure [1]**
28/12
**pocketbook [1]**
54/24
**podium [1]**  2/6
**point [27]**  4/4
4/8 4/12 6/25
19/5 21/6
22/11 24/22
24/25 25/17
27/5 27/16
29/19 30/11
32/10 32/14
32/16 37/17
37/25 38/24
38/24 39/18
40/13 41/4
41/11
**points [6]**
22/20 22/21
27/10 33/7
39/10 39/17
**poised [1]**
57/16
**poison [1]**
48/16
**policy [6]**
33/24 34/7
34/9 34/17
35/2 38/5
**political [6]**
5/8 5/11 5/13
24/8 24/9 44/5
**polity [1]**
50/23
**pool [1]**  35/11
**portion [2]**
38/13 52/7
**portions [1]**
22/13
**posed [1]**
21/15
**poses [2]**
21/24 43/8
**position [3]**
9/1 20/25
28/13
**positions [1]**
49/2
**possible [2]**
39/6 39/8
**possibly [1]**
25/15
**power [10]**
19/15 33/23
34/8 34/16

**P**

**power... [6]**
34/16 35/20
37/16 37/19
37/20 54/17
**powerful [1]**
54/14
**powers [1]**
35/21
**practice [4]**
34/7 44/2
54/12 54/15
**practices [1]**
54/14
**preface [1]**
4/10
**preference [2]**
24/8 24/9
**preliminary [1]**
46/9
**prepared [1]**
58/7
**prerogative [4]**
23/10 23/18
24/6 24/24
**prerogatives
[1]** 18/25
**present [1]**
25/12
**President [18]**
6/4 6/23 7/12
7/22 10/16
10/17 10/19
10/20 10/22
10/24 11/2
27/23 42/6
42/23 43/7
43/22 44/15
44/19
**President --
one [1]** 10/20
**President's [2]**
6/20 55/12
**press [2]** 7/23
19/10
**pressed [1]**
41/9
**pretext [1]**
41/12
**pretty [1]**
6/18
**prevent [3]**
44/8 49/1
56/16
**previously [1]**
22/5
**primarily [1]**

46/21
**principles [1]**
49/16
**prior [2]** 5/21
11/1
**priorities [1]**
44/16
**private [3]**
10/10 33/21
34/1
**pro [10]** 4/25
5/12 11/19
12/2 44/2 54/2
54/7 54/12
54/14 54/15
**probably [2]**
20/14 59/7
**problem [1]**
29/3
**problematic [2]**
30/15 49/24
**problems [3]**
26/9 26/9
26/11
**procedural [1]**
16/7
**procedure [1]**
12/20
**proceedings [3]**
42/15 59/17
60/5
**process [6]**
15/10 15/11
16/7 16/14
34/12 51/1
**processes [1]**
58/24
**procurement
[11]** 33/23
34/8 34/16
35/3 35/4 35/5
35/12 35/21
37/15 39/5
39/6
**productivity
[1]** 37/7
**profession [7]**
9/23 10/2 10/3
10/3 16/20
17/2 54/25
**profession's
[1]** 44/1
**professionals
[1]** 12/16
**professions [1]**
10/3
**programs [1]**
35/10

**prohibit [1]**
25/6
**prohibited [2]**
44/13 50/12
**prohibition [1]**
24/14
**prohibits [1]**
47/4
**prominent [2]**
24/3 42/25
**promulgate [1]**
26/13
**promulgation
[1]** 21/12
**proper [1]**
15/5
**proportionality
[1]** 12/13
**proportions [1]**
9/23
**proposal [1]**
57/23
**propose [2]**
57/18 58/5
**proposed [4]**
16/2 17/19
26/15 41/22
**proposition [1]**
51/15
**prosecutions
[1]** 33/18
**prosecutor [2]**
12/18 12/21
**prospective [1]**
36/23
**protect [1]**
50/23
**protected [4]**
46/25 47/1
47/3 47/6
**protecting [1]**
49/15
**protections [2]**
47/20 51/1
**proven [1]**
13/16
**provide [3]**
45/7 45/11
45/15
**provided [2]**
44/20 55/21
**provision [2]**
38/23 58/22
**provisions [4]**
18/9 25/2
35/14 44/10
**public [9]**
16/22 46/11

49/14 49/18
50/12 53/23
54/9 54/19
54/24
**punish [5]**
15/6 17/7
17/11 17/11
42/7
**punished [1]**
6/10
**punishment [2]**
9/2 15/24
**purpose [5]**
4/5 4/9 18/10
20/10 21/9
**pursuant [3]**
35/17 56/8
56/11
**Pursuing [1]**
53/16
**put [5]** 8/25
10/18 11/7
41/19 48/15

**Q**

**quickly [1]**
58/7
**quite [3]**
36/17 36/19
37/14
**quote [3]** 4/2
5/10 35/3
**quoted [1]** 5/9
**quoting [2]**
9/22 44/10

**R**

**race [3]** 40/19
44/12 44/14
**race-based [1]**
44/14
**racial [3]**
34/5 34/15
37/12
**raise [1]**
39/11
**raised [1]**
19/10
**rather [2]**
16/23 30/23
**reach [2]**
13/10 36/22
**reaction [1]**
34/25
**read [10]** 9/11
10/23 14/1
17/19 30/2
30/2 32/15

38/11 52/15
55/8
**readily [1]**
26/1
**reading [3]**
26/15 31/5
31/19
**real [2]** 7/19
12/4
**reality [2]**
44/7 48/25
**really [5]** 6/3
6/15 8/16
21/20 21/23
**realm [1]**
36/24
**realms [1]**
51/4
**reason [10]**
4/23 7/1 7/15
37/6 37/8 37/9
39/3 39/3
47/23 50/19
**reasonable [1]**
59/9
**reasons [9]**
4/21 4/22
28/19 38/10
38/12 38/15
38/16 48/6
49/4
**recall [3]**
36/13 36/14
37/3
**recall any [1]**
36/13
**receive [1]**
35/20
**recent [1]**
33/14
**recently [1]**
34/18
**Recess [1]**
42/14
**recipient [1]**
56/6
**recitation [1]**
14/21
**record [6]** 2/2
2/6 10/8 29/15
58/14 60/5
**recounting [1]**
35/1
**reevaluate [1]**
43/10
**refer [1]**
50/19
**reference [8]**

**R**

reference...
**[8]**  7/10
14/24 21/3
33/16 33/20
34/14 35/15
54/11
referenced [1]
39/7
references [1]
34/5
referred [1]
14/12
referring [3]
23/2 31/25
36/3
refined [1]
19/8
reflect [1]
50/22
refrain [3]
32/7 32/8
45/21
refuge [1]
54/22
refugee [1]
5/4
refusal [2]
44/6 48/24
regard [3]
4/12 9/19
47/18
regarding [4]
3/16 33/11
34/12 34/19
regularly [1]
54/13
regulation [1]
48/12
regulations [1]
48/15
regulatory [2]
26/11 33/16
relate [1]
34/10
related [1]
44/25
relates [3]
18/13 25/18
33/4
relating [2]
39/21 39/22
relationship
**[4]**  43/11
52/4 52/5 56/7
relevant [3]
2/22 22/15

53/3
reliance [1]
57/2
relief [5]
19/6 19/13
19/17 46/9
46/22
relies [1]
54/4
religious [2]
37/5 38/23
rely [1]  9/17
remain [1]
57/9
remedy [1]
38/1
remember [1]
26/2
report [3]
57/5 57/19
59/5
reporter [6]
1/23 1/23 5/10
35/7 42/17
60/3
reporter's [1]
7/23
reprehensible
**[1]**  6/13
represent [7]
9/3 16/21 28/5
28/8 28/9
43/24 52/24
representation
**[3]**  9/7 49/17
54/3
representations
**[5]**  5/8 5/11
44/5 49/24
59/8
represented [3]
5/3 13/1 15/6
representing
**[2]**  15/12
54/6
represents [3]
5/12 6/5 47/12
reprisal [1]
47/1
Republican [2]
24/5 47/8
request [3]
56/7 56/9
58/17
requests [1]
56/11
require [2]
8/9 52/21

requirement [1]
24/2
requirements
**[1]**  57/7
requires [4]
43/9 45/7
49/20 51/21
requiring [1]
30/22
rescind [2]
55/20 57/1
rescinded [2]
34/18 56/10
resolve [1]
18/16
resorting [1]
20/8
respect [12]
13/17 15/14
19/22 20/21
20/25 25/10
27/20 27/24
31/23 51/6
57/24 58/8
respectfully
**[4]**  4/13
13/18 25/22
41/21
respond [1]
16/1
response [1]
7/23
responses [1]
46/2
rest [1]  37/7
restrain [2]
41/23 41/24
restraining
**[11]**  2/19
3/21 31/23
38/1 42/5 42/6
43/15 46/16
55/4 55/10
58/2
restrict [1]
43/10
restriction [1]
49/9
restrictions
**[2]**  47/24
48/21
restrictive [1]
50/8
result [1]
50/6
resumed [1]
42/15
retaliates [2]

46/24 48/2
retaliation
**[11]**  6/4
35/25 36/8
36/18 36/20
36/21 37/11
37/13 38/19
41/1 48/4
retaliatory
**[10]**  3/23
8/18 8/19
14/17 36/5
38/10 38/12
38/15 38/16
47/5
revenue [1]
52/1
review [5]
13/5 13/8
24/17 31/12
31/16
reviewed [1]
2/20
reviewing [1]
33/10
reviews [2]
24/18 24/21
revisit [1]
22/12
RICHARD [2]
1/16 2/11
right [19]
4/17 5/1 5/5
8/4 10/4 15/10
17/4 17/5
17/12 24/5
26/13 35/19
37/23 40/15
42/10 47/3
50/24 59/7
59/13
rights [10]
4/20 5/4 7/18
19/14 21/12
44/13 49/15
53/12 53/13
54/23
ripeness [2]
25/20 26/5
risk [2]  41/10
41/12
risks [5]
42/21 43/7
43/21 43/22
55/13
Robert [1]  6/9
role [1]  50/23
Roosevelt [1]

35/1
ruling [1]
57/12
run [3]  29/10
35/6 35/9
rushed [1]
2/17
Russell [1]
56/22
Rutan [1]  47/8

**S**

safety [2]
49/14 49/18
same [6]  19/9
19/11 51/18
51/18 52/24
59/3
San [1]  1/14
sanction [3]
9/2 12/7 48/12
sanctions [6]
33/6 33/11
33/13 49/4
49/7 49/19
satisfaction
**[1]**  46/2
satisfied [1]
46/15
satisfy [1]
49/8
save [1]  14/24
saved [2]
14/18 14/21
savings [2]
14/2 14/2
saying [13]
4/11 6/5 6/22
14/3 15/4 19/2
21/2 30/2 30/3
31/24 38/11
40/9 41/24
schedule [4]
2/15 2/16
57/24 58/8
scheduled [1]
43/17
scheduling [1]
57/20
scope [1]  25/4
scratch [1]
2/24
scrutiny [5]
12/14 15/1
48/17 49/8
49/8
se [2]  21/25
22/1

**S**

**seal [1]**  41/13
**second [11]**
3/24 7/15 8/21
14/18 15/25
16/4 20/16
23/5 40/13
53/10 58/22
**second-year [1]**
23/5
**secondly [1]**
56/10
**Secretary [1]**
34/23
**section [99]**
**sections [24]**
6/16 7/16 8/13
8/17 13/4
17/20 18/12
19/18 20/7
21/9 22/17
41/20 42/4
43/16 43/19
44/22 44/22
49/19 55/12
55/22 56/1
56/3 56/16
57/1
**secure [1]**
46/6
**security [21]**
7/6 21/15
21/24 22/14
22/23 22/24
23/3 23/7 23/9
23/19 25/7
31/21 41/7
41/10 41/12
45/13 45/18
46/1 46/3
49/14 49/19
**seeing [1]**
21/7
**seek [4]**  13/4
17/22 24/4
46/22
**seeking [3]**
8/3 31/22
43/15
**seeks [3]**
43/20 53/23
54/22
**seems [2]**  22/9
25/16
**selecting [1]**
12/3
**sends [1]**

18/24
**sense [2]**  4/12
16/21
**series [1]**
43/7
**serious [2]**
52/8 54/22
**serve [1]**
44/21
**serves [1]**
49/9
**service [2]**
14/1 49/13
**Services [1]**
29/11
**set [3]**  4/11
7/12 16/11
**settled [1]**
47/3 51/12
**several [3]**
3/12 14/12
42/22
**sex [2]**  44/7
48/25
**shadow [1]**
12/4
**shall [6]**
13/22 13/23
14/6 32/7
45/20 57/8
**shalt [1]**  39/1
**share [1]**  8/22
**sheet [4]**
35/16 38/6
45/2 52/11
**sheets [1]**
2/21
**shielded [1]**
53/3
**shockingly [1]**
5/16
**short [1]**  43/6
**shoulder [1]**
9/6
**show [5]**  41/10
46/8 48/3
48/20 51/8
**showed [1]**
29/22
**showing [1]**
53/6
**shown [1]**  51/8
**sic [1]**  16/17
**side [2]**  3/1
57/15
**sides [1]**  59/7
**signed [2]**
57/11 59/15

**significance
[1]**  33/22
**significant [3]**
3/7 29/7
53/20
**signing [1]**
11/1
**similar [3]**
13/3 47/18
48/6
**simple [1]**
51/7
**simply [1]**
53/10
**sister [1]**
9/17
**sit [1]**  21/5
**sitting [1]**
59/14
**situation [3]**
24/3 25/11
36/4
**situations [1]**
8/7
**six [1]**  43/17
**six-part [1]**
43/17
**Sixth [4]**
15/11 50/21
50/24 51/5
**skewed [1]**
24/19
**skirts [1]**
19/13
**sky [1]**  16/12
**Slow [1]**  35/7
**snapshot [1]**
16/6
**social [6]**
33/24 34/9
35/2 35/22
38/5 54/7
**solid [1]**  26/8
**somebody [1]**
16/22
**somehow [3]**
12/6 13/11
49/16
**someone [1]**
21/23
**sometimes [1]**
5/1
**somewhat [2]**
11/4 27/3
**sorry [3]**
17/14 31/8
35/9
**sort [5]**  16/16

34/6 34/13
35/23 40/25
**sovereign [4]**
33/22 37/19
37/20 53/4
**space [1]**
13/16
**speakers [1]**
48/14
**speaking [1]**
29/4
**speaks [1]**
21/1
**special [2]**
6/8 42/25
**specific [8]**
21/3 22/9 30/6
30/7 42/3
42/22 42/24
47/23
**specifically
[2]**  4/8 10/12
**specificity [1]**
21/11
**specifics [5]**
10/7 11/12
20/18 20/21
44/19
**specify [1]**
4/5
**speculation [1]**
10/13
**speculative [1]**
11/25
**speech [24]**
4/20 6/20 18/7
18/25 19/14
21/13 35/25
36/5 36/12
40/7 40/20
40/21 41/2
42/5 42/7
46/25 47/1
47/6 47/11
47/19 47/25
48/2 49/9
54/20
**speech-based
[1]**  54/20
**speed [1]**  27/2
**squarely [1]**
47/20
**staff [6]**  2/14
3/6 42/16 50/5
55/21 55/25
**staggered [1]**
2/15
**stand [5]**

12/25 16/23
16/24 17/2
40/25
**standard [1]**
7/8
**standards [1]**
8/8
**standing [1]**
17/9
**stands [1]**
51/15
**start [3]**  2/24
3/3 51/21
**started [1]**
41/16
**starting [3]**
2/5 2/25 3/17
**startling [1]**
5/15
**state [1]**  2/6
**stated [3]**
4/23 35/3
41/10
**statement [1]**
8/14
**statements [5]**
8/7 19/11
20/12 55/15
57/3
**STATES [13]**
1/1 1/10 6/4
6/8 7/7 25/9
25/13 35/5
40/21 44/3
45/15 45/19
46/1
**stating [1]**
6/17
**status [2]**  5/4
57/5
**statute [2]**
38/14 39/1
**staying [2]**
3/7 42/18
**steps [8]**  7/5
13/23 14/6
16/4 31/21
43/10 56/15
57/6
**Steve [1]**
10/21
**still [4]**  5/20
5/23 22/3
27/14
**stood [1]**  5/2
**stress [1]**
26/12
**strict [3]**

**S**

strict... [3]
48/17 49/7
49/8
strike [1]
6/23
strip [1]   8/12
structure [2]
7/2 29/1
study [1]   33/7
subject [5]
22/12 48/13
48/14 49/23
56/25
subjecting [1]
47/5
subjects [1]
6/20
submit [14]
7/11 18/13
18/14 23/8
24/23 25/22
26/5 29/9
33/11 35/19
35/22 36/1
37/12 37/13
submit that [1]
36/1
submitted [1]
3/10
subset [1]
50/6
substantive [1]
22/13
succeed [5]
46/18 46/23
48/4 48/7
50/17
success [3]
46/7 46/16
51/7
succinctly [1]
45/1
suffer [4]
5/14 51/9
51/10 54/8
suffering [2]
53/10 53/21
sufficient [4]
15/15 15/21
46/22 48/3
suggest [1]
4/24
suggested [1]
8/14
summarized [1]
45/1

summary [1]
57/22
Sunday [1]
39/2
Sundays [1]
37/5
suppliers [1]
35/5
support [8]
2/19 20/4
20/18 37/9
37/15 44/19
46/22 47/14
supported [2]
34/16 38/5
supports [2]
44/5 48/23
suppose [2]
8/6 8/15
supposed [3]
32/24 41/11
58/19
Supreme [3]
15/8 33/14
50/11
sure [5]   5/9
21/8 33/25
35/16 41/5
Surely [1]
50/7
surgical [1]
41/21
surprisingly
[1]   5/15
survive [2]
48/16 48/17
suspend [3]
31/21 55/20
56/25
sustain [1]
39/4
swallow [1]
15/4
swath [1]
52/12
sweep [2]   3/20
49/20
sweeping [2]
3/22 16/10
system [1]
54/4

**T**

tailored [2]
49/10 50/7
talk [2]   20/15
33/5
talking [9]

11/1 31/20
32/2 32/4
32/12 32/13
33/10 38/21
39/1
Tam [1]   50/14
target [1]
42/24
targeted [2]
47/20 54/5
targeting [1]
51/3
targets [5]
44/14 47/10
47/15 48/13
54/1
teacher [1]
17/6
technical [1]
58/24
tells [2]   6/3
25/5
temporarily [3]
17/23 27/20
54/10
temporary [10]
2/18 3/21
31/22 38/1
43/15 46/16
54/19 55/4
55/9 58/2
tend [1]   53/24
term [3]   31/8
43/1 43/12
terminate [5]
13/23 14/7
36/11 43/10
45/3
terms [11]   6/4
10/8 10/15
10/25 12/14
12/25 15/12
15/13 15/24
16/2 23/2
thanking [1]
3/6
thanks [1]
42/16
then we [1]
23/23
therefore [3]
34/1 37/23
53/21
thicket [1]
19/5
thinking [1]
36/25
third [6]

10/10 27/6
34/23 41/4
46/19 50/19
Thomas [2]
3/11 51/24
Thompson [1]
46/12
thou [1]   39/1
thought [3]
8/10 10/1 27/3
threat [5]
16/24 17/3
21/15 21/24
52/8
threaten [4]
9/22 25/7
45/13 45/25
threatened [2]
9/1 33/10
threatening [3]
16/12 16/12
16/13
threatens [5]
47/2 49/18
51/17 51/19
52/12
three [2]
43/19 46/14
thus [4]   44/23
50/16 52/5
54/5
tied [1]   24/13
TikTok [2]
49/11 50/10
title [1]
42/21
today [5]   8/24
32/18 42/17
42/19 43/14
Together [1]
50/22
told [3]   11/14
13/15 13/21
tonight [2]
3/10 10/4
total [3]
24/22 26/4
26/4
toto [4]   23/11
23/12 23/15
24/16
touch [1]
20/10
tracks [1]
18/5
tradition [2]
33/23 55/2
traditional [1]
36/24

trafficking [1]
44/9
train [1]   27/3
transcript [5]
1/9 41/5 41/9
47/21 60/4
transgender [3]
47/14 49/17
54/3
treat [2]   8/13
40/5
treatment [1]
43/1
tremendous [1]
12/9
TRO [9]   8/3
17/13 17/19
17/25 22/12
46/6 46/7 51/9
53/25
troubling [1]
54/16
true [5]   24/11
24/23 29/13
47/7 60/4
Trump [5]
42/23 43/22
44/19 46/11
50/15
Trump's [1]
44/15
try [2]   16/9
22/8
trying [3]
9/24 24/3
30/11
turn [2]   8/21
55/3
two [12]   3/19
3/22 6/25 11/6
11/16 39/20
46/18 46/21
51/10 53/22
53/24 57/12
type [2]   8/14
33/13

**U**

U.S [17]   1/6
1/24 2/3 12/17
12/22 29/21
29/23 30/6
32/2 33/20
37/2 47/6 47/9
48/11 50/14
56/19 56/21
Umbehr [2]
36/17 36/20

**U**

**unaware [1]**
27/7
**unconstitutiona**
**l [2]**   14/23
48/8
**unconstitutiona**
**lly [1]**  50/18
**under [6]**   6/7
12/3 15/2
38/15 38/16
41/6
**undermine [1]**
44/3
**understands [1]**
11/25
**understood [2]**
6/24 10/14
**undocumented**
**[2]**   47/15
49/18
**undoubtedly [1]**
36/24
**unduly [1]**
9/17
**unique [3]**
16/20 16/21
16/21
**UNITED [13]**
1/1 1/10 6/4
6/7 7/7 25/8
25/13 35/4
40/21 44/3
45/15 45/19
46/1
**unless [1]**
12/19
**unlike [4]**
6/15 17/6 17/6
17/7
**unnecessarily**
**[1]**   22/25
**unnecessary [1]**
19/4
**unpopular [3]**
5/1 5/1 7/19
**unquestionably**
**[1]**   53/15
**unwanted [1]**
55/3
**up [7]**   7/12
16/16 16/18
27/9 29/22
39/18 57/16
**upon [3]**   18/9
18/25 46/1
**urge [4]**   19/12

25/18 25/24
33/6
**urging [1]**
8/11
**USAO [1]**   1/16
**use [8]**   14/8
31/9 34/13
34/16 35/2
43/12 44/14
57/2
**used [1]**   34/9
**using [3]**
33/23 41/25
55/15
**usually [1]**
4/15
**utilization [1]**
42/3

**V**

**valid [2]**   37/9
38/13
**value [1]**
44/15
**various [1]**
2/21
**vast [1]**   52/12
**vending [1]**
35/20
**versa [1]**   24/5
**version [1]**
19/9
**versus [2]**
12/6 28/24
**vice [1]**   24/5
**Vidal [1]**
48/11
**view [1]**   46/15
**viewpoint [6]**
6/6 48/8 48/10
48/13 49/7
50/18
**viewpoint-based**
**[1]**   49/7
**viewpoints [7]**
4/19 6/17 8/19
13/1 47/12
47/19 49/5
**views [2]**
48/14 48/22
**violated [1]**
15/5
**violates [1]**
14/20
**violation [4]**
7/17 7/20 14/3
46/25
**vision [1]**

42/6
**voice [1]**
27/13
**Vought [2]**
56/22 58/23
**Vullo [2]**
33/14 37/20
**vulnerable [1]**
54/6

**W**

**waiver [2]**
45/23 45/25
**walks [1]**   9/6
**wants [1]**
15/14
**warranted [1]**
55/5
**Washington [3]**
1/5 1/17 1/25
**waste [1]**   14/8
**watching [1]**
54/25
**Waters [1]**
33/20
**way [10]**   5/12
7/12 14/21
17/17 20/17
27/11 30/2
30/3 30/16
53/20
**ways [3]**   7/1
27/12 51/10
**weekend [1]**
59/16
**weigh [1]**   53/6
**Weiss [2]**
27/24 43/3
**Weissmann [13]**
5/18 5/20 5/23
6/2 20/22 22/4
22/6 22/8 40/2
44/16 45/18
45/22 47/17
**Weissmann's [1]**
21/18
**welcome [2]**
57/23 58/5
**well-establishe**
**d [2]**   34/7
34/7
**well-supported**
**[1]**   34/16
**what's [7]**
7/24 10/7
15/23 21/15
23/3 23/6
41/14

**whatsoever [1]**
16/14
**wheels [2]**
41/18 42/8
**wherever [1]**
30/21
**White [2]**   28/5
45/1
**who's [1]**   23/5
**whole [5]**   3/17
35/1 41/11
41/19 54/25
**wholesale [1]**
22/25
**wide [1]**   51/19
**Wilmer [1]**
27/25
**WilmerHale [2]**
27/7 43/5
**Wisconsin [1]**
51/14
**wishes [1]**
57/15
**within [8]**
21/12 24/4
24/23 30/8
30/15 33/13
44/9 47/20
**without [3]**
7/10 16/13
19/25
**withstand [1]**
15/1
**women [2]**   44/6
48/24
**won't know [1]**
30/18
**wondering [1]**
55/1
**word [3]**   39/19
39/20 39/22
**words [1]**
47/16
**work [5]**   10/5
16/20 36/8
40/2 54/8
**worked [6]**   6/7
12/23 12/24
14/9 23/5
44/17
**workforce [1]**
23/2
**working [1]**
32/23
**workmen [1]**
35/11
**works [1]**   5/23
**worried [1]**

37/10
**would submit**
**[1]**   29/9
**wrap [2]**   16/16
16/18
**wrestling [1]**
20/7
**writ [1]**   59/3
**writing [1]**
35/23
**written [1]**
55/7
**wrong [1]**   21/7

**Y**

**year [1]**   23/5
**years [5]**
11/16 21/22
21/23 44/18
51/25
**yesterday [2]**
8/25 43/5
**York [1]**   33/15
**young [2]**
12/16 16/19
**Youngstown [2]**
35/15 38/6

**Z**

**zealously [1]**
54/4