# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

JENNER & BLOCK LLP,

    Plaintiff,

v.

U.S. DEPARTMENT OF JUSTICE, *et. al.*,

    Defendants.

Case No. 1:25-cv-00916-JDB

**BRIEF OF *AMICI CURIAE* OF 807 LAW FIRMS IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND FOR DECLARATORY AND PERMANENT INJUNCTIVE RELIEF**

Nathan P. Eimer (*pro hac vice forthcoming*)
EIMER STAHL LLP
224 South Michigan Avenue, Suite 1100
Chicago, IL 60604
Telephone: (312) 660-7600
Fax: (312) 692-1718
neimer@eimerstahl.com

Donald B. Verrilli, Jr. (D.C. Bar. No. 420434)
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Ave. NW, Suite 500E
Washington, D.C. 20001-5369
Telephone: (202) 220-1100
Fax: (202) 220-2300
Donald.Verrilli@mto.com

*Counsel for* Amici Curiae

## **CORPORATE DISCLOSURE STATEMENT**

*Amici curiae* are law firms and legal corporations. They have no parent corporations and do not issue stock.

i

## **TABLE OF CONTENTS**

CORPORATE DISCLOSURE STATEMENT ..............................................................................i
TABLE OF CONTENTS................................................................................................................ii
TABLE OF AUTHORITIES .........................................................................................................iii
INTEREST OF *AMICI CURIAE* ...................................................................................................1
ARGUMENT...................................................................................................................................2
CONCLUSION................................................................................................................................5

## **TABLE OF AUTHORITIES**

Page(s)

**FEDERAL CASES**

*Boumediene v. Bush*,
    553 U.S. 723 (2008)..................................................................................................4

*Consumer Financial Protection Bureau v. Community Financial Services Ass'n*,
    601 U.S. 416 (2024)..................................................................................................4

*Cooper v. Aaron*,
    358 U.S. 1 (1958)......................................................................................................1

*Legal Services Corp. v. Velazquez*,
    531 U.S. 533 (2001)..................................................................................................2

*Marbury v. Madison*,
    5 U.S. 137 (1803)......................................................................................................4

*Martinez v. Ryan*,
    566 U.S. 1 (2012)......................................................................................................2

*National Rifle Ass'n v. Vullo*,
    602 U.S. 175 (2024)..................................................................................................4

*NFIB v. Sebelius*,
    567 U.S. 519 (2012)..................................................................................................4

*Sacher v. United States*,
    343 U.S. 1 (1952)......................................................................................................3

*Seila Law LLC v. Consumer Financial Protection Bureau*,
    591 U.S. 197 (2020)..................................................................................................4

**OTHER**

Addressing Risks from Paul Weiss, The White House (Mar. 14, 2025),
    https://tinyurl.com/5w4j69fv ................................................................................1, 3

Addressing Risks from Perkins Coie LLP, The White House (Mar. 6, 2025),
    https://tinyurl.com/3jabz9vu ......................................................................................1

Addressing Risks from Susman Godfrey, The White House (April 9, 2025),
    https://tinyurl.com/278knbkz .....................................................................................1

Addressing Risks from WilmerHale, The White House (Mar. 28, 2025),
    https://tinyurl.com/4m8a79jn .....................................................................................1

Suspension of Security Clearances and Evaluation of Government Contracts (Feb. 25, 2025),
    https://tinyurl.com/3yxdrmfp ................................................................................................1

## INTEREST OF *AMICI CURIAE*[1]

This *amicus* brief is filed on behalf of many of this Nation's leading law firms.[2] Although we do not take this step lightly, our abiding commitment to preserving the integrity of the American legal system leaves us no choice but to join together to oppose the March 25, 2025 Executive Order entitled "Addressing Risks from Jenner & Block" (the "Executive Order") that is at issue in this litigation. The Executive Order (which is now subject to a temporary restraining order) should be permanently enjoined as a violation of core First, Fifth, and Sixth Amendment guarantees, as well as bedrock separation-of-powers principles.

But something even more fundamental is at stake. In recent weeks, the President has issued not one but *six* executive orders imposing punitive sanctions on leading law firms in undisguised retaliation for representations that the firm, or its former partners, have undertaken, and more may be in the offing.[3] Those Orders pose a grave threat to our system of constitutional governance and to the rule of law itself. The judiciary should act with resolve—now—to ensure that this abuse of executive power ceases. Cf. *Cooper v. Aaron*, 358 U.S. 1 (1958).

---

[1] In accordance with Federal Rule of Appellate Procedure 29(a)(4)(E), *amici* certify that (1) this brief was authored entirely by counsel for *amici curiae* and not by counsel for any party, in whole or part; (2) no party or counsel for any party contributed money to fund preparing or submitting this brief; and (3) apart from counsel for *amici curiae*, no other person contributed money to fund preparing or submitting this brief.

[2] The individual *amici* are described in Appendix A.

[3] See Addressing Risks from Perkins Coie LLP, The White House (Mar. 6, 2025) ("Perkins Coie Order"), https://tinyurl.com/3jabz9vu; Addressing Risks from WilmerHale, The White House (Mar. 28, 2025) ("WilmerHale Order"), https://tinyurl.com/4m8a79jn; Addressing Risks from Paul Weiss, The White House (Mar. 14, 2025) ("Paul Weiss Order"), https://tinyurl.com/5w4j69fv; Suspension of Security Clearances and Evaluation of Government Contracts (Feb. 25, 2025), https://tinyurl.com/3yxdrmfp; Addressing Risks from Susman Godfrey, The White House (April 9, 2025), https://tinyurl.com/278knbkz.

1

## ARGUMENT

1. The Executive Order at issue in this case, and the others like it, take direct aim at several of the Nation's leading law firms and seek to cow every other firm, large and small, into submission. On the basis of vague and unsubstantiated allegations, the Executive Order subjects an entire firm, as well as its clients and personnel, to draconian punishment—including the revocation of its attorneys' security clearances, the potential loss of clients that contract with the United States, and denial of access to federal buildings and facilities. Such disabilities would threaten the survival of any law firm.

2. The looming threat posed by the Executive Order at issue in this case and the others like it is not lost on anyone practicing law in this country today: any controversial representation challenging actions of the current administration (or even causes it disfavors) now brings with it the risk of devastating retaliation. Whatever short-term advantage an administration may gain from exercising power in this way, the rule of law cannot long endure in the climate of fear that such actions create. Our adversarial system depends upon zealous advocates litigating each side of a case with equal vigor; that is how impartial judges arrive at just, informed decisions that vindicate the rule of law. See *Legal Services Corp. v. Velazquez*, 531 U.S. 533, 545 (2001) ("An informed, independent judiciary presumes an informed, independent bar."). In the same vein, it is a deeply held principle of the legal profession that everyone, no matter their actions or beliefs, is entitled to zealous advocacy on their behalf. See *Martinez v. Ryan*, 566 U.S. 1, 12 (2012) ("[T]he right to counsel is the foundation for our adversary system."). The principle is so deeply ingrained that lawyers—going back to John Adams' defense of eight British soldiers who perpetrated the Boston Massacre of 1770—consider it a core part of their professional obligation to take on representation of clients with whom they disagree, even vehemently. Indeed, the

"courage" of attorneys who take on unpopular clients has long "made lawyerdom proud." *Sacher v. United States*, 343 U.S. 1, 4 (1952).

The work done by *amici*, and other firms like them, is indispensable to the success of our system. Many advocate for the interests of the Nation's leading business and financial institutions, which depend on the stability of the rule of law in order to thrive economically. Others advocate for the interests of small businesses, nonprofit organizations, consumers, workers and other individuals, and likewise depend on the impartial administration of justice to advance their clients' objectives. Individuals at these firms hold a wide range of political, social and economic views—even with respect to the representations attacked in the executive orders. But despite those differences *amici* are united in their support for the integrity of the adversarial system and the rule of law.

3. The role of *amici* and firms like them is particularly important when a law firm represents a client challenging the actions of a president or his administration, Republican or Democratic. Checking federal government overreach, whether it be infringements on religious liberty, assaults on the freedom of the press, or burdensome regulation, is a vital part of what *amici* and others like them are called to do. By definition, such litigation brings lawyers into conflict with the policies and objectives of the Executive Branch.

Since the Court entered its Temporary Restraining Order in the Perkins Coie case, the Administration has redoubled its threats of retaliation against the legal profession. In that regard, the express targeting of law firm pro bono efforts in the four most recent executive orders, including in the executive order against Jenner & Block at issue in this case—which alleged that the firm has "abused its pro bono practice to engage in activities that undermine justice and the interests of the United States"—is cause for particularly acute concern. Jenner Order, § 1. For

our system of justice to operate, members of the bar must be free to advocate zealously for all their clients, large and small, rich and poor, without fear of retribution. They must be free, in the words of Chief Justice Marshall, to defend "the right of every individual to claim the protection of the laws." *Marbury v. Madison*, 5 U.S. 137, 163 (1803). Without such zealous advocacy, there is no prospect of equal justice under law.

    4. History offers indelible reminders of the perils associated with governmental intrusion into the autonomy of the legal system and with political retribution aimed at lawyers thought to stand in the way of a regime's political objectives. In too many countries and instances to name, regimes have disbarred, prosecuted and jailed lawyers who dared to represent opposition figures or challenge government actions, with predictable results for the rule of law and the integrity of the legal profession.

    Fortunately, such abuses have been rare in our country's history. Over the past two decades alone, elite law firms have represented clients seeking to invalidate major presidential initiatives, from the Military Commissions Act of 2006[4] to the Affordable Care Act[5] and the Dodd-Frank Act.[6] Until now, it would have been inconceivable that a law firm would risk punitive retribution from the federal government for undertaking representations of this kind. And when state or local governments have attempted to wield the threat of official retribution to deter entities from advocating for what they believe, the Supreme Court has condemned such actions in clear and decisive terms. E.g. *National Rifle Ass'n v. Vullo*, 602 U.S. 175, 189 (2024) ("[T]he First Amendment prohibits government officials from relying on the threat of invoking

---

[4] *Boumediene v. Bush*, 553 U.S. 723 (2008).

[5] *NFIB v. Sebelius*, 567 U.S. 519 (2012).

[6] *Seila Law LLC v. Consumer Financial Protection Bureau*, 591 U.S. 197 (2020); *Consumer Financial Protection Bureau v. Community Financial Services Ass'n*, 601 U.S. 416 (2024).

legal sanctions and other means of coercion … to achieve the suppression of disfavored speech." (citation omitted)).  But that proud tradition is in jeopardy.  Unless the judiciary acts decisively now, what was once beyond the pale will in short order become a stark reality.  Corporations and individuals alike will risk losing their right to be represented by the law firms of their choice and a profound chill will be cast over the First Amendment right to petition the courts for redress.

5.  Like every lawyer, the members of the *amicus* law firms have sworn an oath to uphold the Constitution and to discharge the obligations of the profession to the best of our ability.  That oath obligates all of us, no matter our political views, to be faithful custodians of our Nation's commitment to the rule of law—a commitment that has made it possible for this Nation's corporations to lead the world in innovation and productivity; for our scientists, scholars and creative artists to contribute so much to human progress; and for all of us to know that we can turn to the courts to vindicate our fundamental civil rights.  We therefore feel a special responsibility to stand up now to the unprecedented threat posed by the Executive Order at issue in this case and the others like it.

## **CONCLUSION**

For the foregoing reasons, this Court should grant the motion for summary judgment and for declaratory and permanent injunctive relief.

Dated: April 11, 2025

| | |
|---|---|
| | /s/ Donald B. Verrilli, Jr. |
| Nathan P. Eimer (*pro hac vice forthcoming*) | Donald B. Verrilli, Jr. (D.C. Bar. No. 420434) |
| EIMER STAHL LLP | MUNGER, TOLLES & OLSON LLP |
| 224 South Michigan Avenue, Suite 1100 | 601 Massachusetts Ave. NW, Suite 500E |
| Chicago, IL 60604 | Washington, D.C. 20001-5369 |
| Telephone: (312) 660-7600 | Telephone: (202) 220-1100 |
| Fax: (312) 692-1718 | Fax: (202) 220-2300 |
| neimer@eimerstahl.com | Donald.Verrilli@mto.com |

*Counsel for* Amici Curiae

**CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing complies with Local Civil Rule 7(o)(4) and does not exceed 25 pages. I further certify that the attached *amicus* brief complies with the typeface and type style requirements of Local Rule 5.1(d) because it has been prepared in a proportionally spaced typeface using Microsoft Word and 12-point Times New Roman font.

| | |
|---|---|
| Dated: April 11, 2025 | */s/ Donald B. Verrilli, Jr.* <br> Donald B. Verrilli, Jr. |