**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

JENNER & BLOCK LLP,

               *Plaintiff*,

v.

U.S. DEPARTMENT OF JUSTICE, *et al.*,

               *Defendants*.

Case No. 1:25-cv-00916-JDB

**BRIEF OF AMICI CURIAE LITIGATION FIRMS IN SUPPORT OF
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND FOR
<u>DECLARATORY AND PERMANENT INJUNCTIVE RELIEF</u>**

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Local Rule 7(o)(5) and Federal Rules of Appellate Procedure 26.1 and 29(a)(4), undersigned counsel representing amici curiae states that Wheeler Trigg O'Donnell LLP, Bird, Marella, Rhow, Lincenberg, Drooks, Nessim, LLP, Botkin Chiarello Calaf PLLC, Buckner + Miles, P.A., Cohen Williams LLP, Corr Cronin LLP, Edwards & Culver, Garnett Powell Maximon Barlow & Farbes, LLC, Gelber Schachter & Greenberg, P.A., Hagens Berman Sobol Shapiro LLP, Halpern May Ybarra Gelberg LLP, Horvitz & Levy LLP, Kaplan Johnson Abate & Bird LLP, Long & Levit LLP, Lynn Pinker Hurst & Schwegmann LLP, Markowitz Herbold PC, Milberg Coleman Bryson Phillips Grossman, PLLC, Porzio, Bromberg, & Newman, P.C., Walden Macht Haran & Williams LLP, and Yetter Coleman LLP have no parent corporations and that no publicly held corporation owns 10% or more of any amicus law firm's stock. Undersigned counsel also states that amicus Rosing Pott & Strohbehn is in partnership with another law firm, Zelms Erlich Lenkov.

## TABLE OF CONTENTS

Page

CORPORATE DISCLOSURE STATEMENT ............................................................. i

TABLE OF AUTHORITIES ...................................................................................... iii

INTRODUCTION AND INTEREST OF AMICI........................................................ 1

ARGUMENT ............................................................................................................. 3

I.    Lawyers' Independence Is Essential to Providing Zealous Representation and Defending the Rule of Law.................................................................................. 3

     A.    Every client and cause—no matter how controversial or unpopular—deserves zealous, effective representation ................................................ 3

     B.    Lawyers will be less likely to zealously represent their clients with undivided loyalty if they fear government reprisal ................................. 5

     C.    Lawyers will be less likely to defend the rule of law if they fear government retribution.................................................................................. 7

II.   Lawyers' Zealous Advocacy Is Properly and Adequately Constrained by the Law and Lawyers' Ethical Duties.................................................................... 8

CONCLUSION.......................................................................................................... 8

CERTIFICATE OF COMPLIANCE ....................................................................... 11

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Cohen v. Hurley*,
366 U.S. 117 (1961)...................................................................................................... 7

*Devaney v. Cont'l Am. Ins. Co.*,
989 F.2d 1154 (11th Cir. 1993) ................................................................................... 8

*Heffernan v. Hunter*,
189 F.3d 405 (3d Cir. 1999) ........................................................................................ 5

*In re Griffiths*,
413 U.S. 717 (1973)................................................................................................... 6, 8

*Konigsberg v. State Bar of Cal.*,
353 U.S. 252 (1957)...................................................................................................... 1

*Legal Servs. Corp. v. Velazquez*,
531 U.S. 533 (2001)................................................................................................... 1, 7

*Malloy v. Hogan*,
378 U.S. 1 (1964).......................................................................................................... 7

*Meltzer v. C. Buck LeCraw & Co.*,
402 U.S. 936 (1971)...................................................................................................... 1

*Polk Cnty. v. Dodson*,
454 U.S. 312 (1981)................................................................................................... 4, 6

*Spevack v. Klein*,
385 U.S. 511 (1967)...................................................................................................... 7

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016)...................................................................................................... 7

*Thornton v. Breland*,
441 So. 2d 1348 (Miss. 1983)...................................................................................... 6

*Von Moltke v. Gillies*,
332 U.S. 708 (1948)................................................................................................ 1, 6-7

*Walters v. Nat'l Ass'n of Radiation Survivors*,
473 U.S. 305 (1985)................................................................................................... 1, 7

<u>OTHER AUTHORITIES</u>

31 A.B.A. Rep. 676 (1907) ................................................................................................ 6

1887 Code of Ethics of the Ala. State Bar Ass'n .............................................................. 8

Carl M. Cannon,
 *Paul Clement, DOMA and Legal Integrity*,
 Real Clear Politics (May 2, 2011) .......................................................................... 3, 4, 5

D.D.C. LCvR 7(o)(5) ........................................................................................................ 3

Diary of John Adams (Mar. 5, 1773),
 *Founders Online*, National Archives .......................................................................... 4

James M. Altman,
 *Considering the A.B.A.'s 1908 Canons of Ethics*,
 71 Fordham L. Rev. 2395 (2003) ................................................................................. 6

Josh Blackman,
 Unraveled: Obamacare, Religious Liberty,
 and Executive Power (2016) ........................................................................................ 7

Ltr. from P. Clement to R. Hays (Apr. 25, 2011) ............................................................. 5

Model R. of Prof'l Conduct 1.7 (Am. Bar Ass'n 2024) .................................................... 6

Model R. of Prof'l Conduct Preamble [5] (Am. Bar Ass'n 2024) ............................... 1, 7

Model R. of Prof'l Conduct Preamble [9] (Am. Bar Ass'n 2024) ............................ 1, 5, 6

*Rpt. of the Joint Conf. on Prof'l Resp.*,
 44 Am. Bar Assoc. J. 12 (Dec. 1958) .......................................................................... 4

U.S. Const. art. III, § 2 ...................................................................................................... 7

## INTRODUCTION AND INTEREST OF AMICI

Legal representation is fundamental to our system of adversary justice. *Meltzer v. C. Buck LeCraw & Co.*, 402 U.S. 936, 959 (1971) (Black, J., dissenting). Our system depends on lawyers who zealously "protect and pursue" their clients' "legitimate interests, within the bounds of the law," Model R. of Prof'l Conduct Preamble [9] (Am. Bar Ass'n 2024), and with "[u]ndivided allegiance," *Von Moltke v. Gillies*, 332 U.S. 708, 725–26 (1948). This is possible only if lawyers are "unintimidated" and "free to think, speak, and act as members of an Independent Bar." *Konigsberg v. State Bar of Cal.*, 353 U.S. 252, 273 (1957). To ensure that every client and cause gets its day in court, lawyers must be free to represent clients and their causes without fear of government retribution.

Every lawyer also has a duty to defend the rule of law. *See* Model R. of Prof'l Conduct Preamble [5]. Courts cannot act on their own; they must rely on lawyers to sue when the other branches of government break the law. "[A]n informed, independent bar" is thus necessary for "[a]n informed, independent judiciary" to play its role in the constitutional system. *Legal Servs. Corp. v. Velazquez*, 531 U.S. 533, 545 (2001). In this way, independent lawyers serve as "guardian[s] of our freedom." *Walters v. Nat'l Ass'n of Radiation Survivors*, 473 U.S. 305, 371 (1985) (Stevens, J., dissenting).

Government action to punish lawyers for the clients and causes they represent is anathema to these core principles. Such action "cannot be aimed at the suppression of ideas thought inimical to the Government's own interest." *Velazquez*, 531 U.S. at 549. Lawyers cannot fearlessly represent causes or clients—particularly controversial ones—if they fear government reprisal. Lawyers cannot zealously represent their clients with undivided loyalty if they may be punished when their clients' interests diverge from the government's. And lawyers cannot fearlessly defend the rule of law and, if necessary, hold the government accountable if they face

government retribution. If lawyers shirk or abandon their ethical duties and oaths for fear of government retaliation, the justice system—and society as a whole—will be powerless to curb abuses of authority.

Amici curiae are litigation firms that represent clients in state and federal courts nationwide: Wheeler Trigg O'Donnell LLP; Bird, Marella, Rhow, Lincenberg, Drooks, Nessim, LLP; Botkin Chiarello Calaf PLLC; Buckner + Miles, P.A.; Cohen Williams LLP; Corr Cronin LLP; Edwards & Culver; Garnett Powell Maximon Barlow & Farbes, LLC; Gelber Schachter & Greenberg, P.A.; Hagens Berman Sobol Shapiro LLP; Halpern May Ybarra Gelberg LLP; Horvitz & Levy LLP; Kaplan Johnson Abate & Bird LLP; Long & Levit LLP; Lynn Pinker Hurst & Schwegmann LLP; Markowitz Herbold PC; Milberg Coleman Bryson Phillips Grossman, PLLC; Porzio, Bromberg, & Newman, P.C.; Rosing Pott & Strohbehn (in partnership with Zelms Erlich Lenkov); Walden Macht Haran & Williams LLP; and Yetter Coleman LLP (together, the "Litigation Firms"). Among us, we represent a broad assortment of clients, including veterans, the accused or incarcerated, immigrants, foster care children, individuals of modest means, small business owners, investors, prominent law firms, health care providers, and many of the world's largest companies. Many times in the past, regardless of which major party controlled the executive branch of our government, the legislative branch, or both, we have represented clients fighting government overreach or pursuing causes disfavored or actively opposed by the government in power. Today, likewise, clients of Plaintiff Jenner & Block LLP and other law firms, including ours, are or may be fighting against government overreach and pursuing causes the current government or a future government disfavors. Those clients need and deserve representation by competent, zealous counsel.

2

We submit this brief to ensure that we can continue providing that representation to *every* client—regardless of their identity, and without fear of government retribution. And we submit this brief to guarantee that we can continue to defend the rule of law and hold the government accountable when it breaks the law or violates our clients' rights.[1]

## ARGUMENT

### I.    Lawyers' Independence Is Essential to Providing Zealous Representation and Defending the Rule of Law

Punishing lawyers simply for the clients and causes they represent undermines the bedrock American principles that the government cannot "effect [a] serious and fundamental restriction on advocacy of attorneys and the functioning of the judiciary," *Velazquez*, 531 U.S. at 544, and that "every person and every cause gets their day in court," Carl M. Cannon, *Paul Clement, DOMA and Legal Integrity*, Real Clear Politics (May 2, 2011).[2] Such punishment by presidential fiat seeks to erode lawyers' ethical obligations to their clients and undermine their ability to defend the rule of law. If it coerces even one lawyer into declining to represent even one client, it erodes the bedrock principles at issue in this case.

### A.    Every client and cause—no matter how controversial or unpopular— deserves zealous, effective representation

Fundamental to our legal system is the principle that every client deserves a lawyer. This principle is most important for clients who are, or whose causes may become, controversial or unpopular. The particular allegations or facts animating this case are irrelevant: The precedent

---

[1] Under LCvR 7(o)(5), undersigned counsel certifies that (i) no party's counsel authored this brief in whole or in part; (ii) no party or their counsel contributed money that was intended to fund preparing or submitting the brief; and (iii) no person contributed money that was intended to fund preparing or submitting the brief.

[2] *Available at* https://www.realclearpolitics.com/articles/2011/05/02/paul_clement_doma_ and_legal_integrity.html.

set here will either affirm or severely undermine fundamental values necessary to the functioning of our legal system.

"One of the highest services the lawyer can render to society is to appear in court on behalf of clients whose causes are in disfavor with the general public." *Rpt. of the Joint Conf. on Prof'l Resp.*, 44 Am. Bar Assoc. J. 12 (Dec. 1958) at 1216. Doing so not only protects clients and ensures equal access to justice, it also benefits society as a whole. Rigorous, adversarial testing by counsel "ultimately advance[s] the public interest in truth and fairness." *Polk Cnty. v. Dodson*, 454 U.S. 312, 318–19 (1981). It is "essential for a sound and wholesome development of public opinion that the disfavored cause have its full day in court"—which includes, "of necessity, representation by competent counsel." *Rpt. of the Joint Conf.*, 44 Am. Bar Assoc. J. 12 at 1216.

History is filled with American lawyers who had the courage to affirm this foundational principle. President John Adams represented nine British soldiers indicted for murder in the Boston Massacre. The soldiers benefitted from his representation: seven were acquitted, and the other two were found guilty of a lesser charge. Despite reportedly losing half his law practice as a result, President Adams later said it was "one of the best Pieces of Service I ever rendered my Country." Diary of John Adams (Mar. 5, 1773), *Founders Online*, National Archives.[3]

Renowned advocate Clarence Darrow defended Nathan Leopold and Richard Loeb in their trial for kidnapping and murder of a 14-year-old boy, then known as the "crime of the century." Darrow agreed to represent them, despite having "grown tired of standing in the lean and lonely front line facing the greatest enemy that ever confronted man—public opinion." Cannon, *supra*.

---

[3] *Available at* https://perma.cc/9LMR-SQAM.

More recently, former Solicitor General Paul Clement was retained to defend the Defense of Marriage Act on behalf of Republicans in the U.S. House of Representatives. After a public pressure campaign, Clement had to decide whether to abandon his client or resign from his firm and continue the representation. While expressing no position on the merits of the law itself, he wrote in his resignation letter that "[d]efending unpopular positions is what lawyers do." Ltr. from P. Clement to R. Hays (Apr. 25, 2011).[4] "The adversary system of justice depends on it," he continued, "especially in cases where the passions run high." *Id.* "When it comes to the lawyers, the surest way to be on the wrong side of history is to abandon a client in the face of hostile criticism." *Id.*

Lawyers who champion unpopular clients and causes "don't always win," of course, and their cases may "never become popular." Cannon, *supra*. They can "be on the wrong side of the facts, and [at least to some] the wrong side of history." *Id.* But these lawyers nevertheless rendered the highest service by upholding the bedrock principles of adversarial justice. Any efforts to punish lawyers simply for representing particular causes or clients—including, and most especially, those who have fallen out of favor with the government or the public—erode equal access to justice, undermine the justice system's adversarial nature, and should be stopped.

**B.      Lawyers will be less likely to zealously represent their clients with undivided loyalty if they fear government reprisal**

Fear of government retaliation undermines lawyers' ethical obligation to "zealously . . . protect and pursue a client's legitimate interests, within the bounds of the law." Model R. of Prof'l Conduct Preamble [9]. This duty is a long-standing feature of the American legal system. *See Heffernan v. Hunter*, 189 F.3d 405, 413 (3d Cir. 1999) ("The right of a litigant to

---

[4] *Available at* https://perma.cc/T62Q-FKVW.

independent and zealous counsel is at the heart of our adversary system. . . .”). In 1887, when the

Alabama State Bar Association adopted the first code of legal ethics in the United States, it

required that “[n]o sacrifice or peril, *even to loss of life itself*, can absolve [lawyers] from the

fearless discharge of” their duties to a client. James M. Altman, *Considering the A.B.A.’s 1908

Canons of Ethics*, 71 Fordham L. Rev. 2395, 2448 (2003) (quoting 31 A.B.A. Rep. 676, 693

(1907) (emphasis added)). More recently, the Mississippi Supreme Court described this

obligation as a lawyer’s willingness to “defy hell on [a] client’s behalf.” *Thornton v. Breland*,

441 So. 2d 1348, 1350 (Miss. 1983). When a client is “on the ropes,” the court explained, “the

lawyer, standing alone if need be, is the one person who, in the interest of his client, skillfully

defies the state, the opposing litigant, or whoever threatens.” *Id.*

　　Zealous advocacy requires lawyers to have “independent judgment” and steadfast

“loyalty” to their clients. Model R. of Prof’l Conduct 1.7 cmt. 1. Lawyers must “further the

interests of [their] clients by all lawful means, even when those interests are in conflict with the

interests of the United States or of a State.” *In re Griffiths*, 413 U.S. 717, 724 n.14 (1973)

(citation omitted). Lawyers fulfill their duty “not by acting on behalf of the State or in concert

with it, but rather by advancing the undivided interests of his client.” *Polk Cnty.*, 454 U.S. at

318–19.

　　Lawyers will be less likely to exercise independent judgment or have undivided loyalty if

they may face government reprisal for the clients or causes they represent. Nor can lawyers

“protect and pursue” their clients’ “legitimate interests,” Model R. of Prof’l Conduct Preamble

[9], if they are afraid of being punished for doing so. For “[u]ndivided allegiance and faithful,

devoted service to a client” to remain “prized traditions of the American lawyer,” *Von Moltke*,

6

332 U.S. at 725–26, lawyers must be free to represent any client and any cause, without fear of government retribution.

      **C.**      **Lawyers will be less likely to defend the rule of law if they fear government retribution**

Lawyers' duties do not end with their individual clients. Lawyers also have a "duty, when necessary, to challenge the rectitude of official action." Model R. of Prof'l Conduct Preamble [5]. Courts are, by their nature, reactive bodies whose power extends only to cases that are filed. *See, e.g.*, *Spokeo, Inc. v. Robins*, 578 U.S. 330, 337 (2016) (federal courts have jurisdiction to resolve only "Cases" and "Controversies" (quoting U.S. Const. art. III, § 2)). Courts cannot meaningfully check government abuse if lawyers are unwilling or unable to represent the government's opponents or to sue to stop official overreach. An "informed, independent judiciary" thus requires "an informed, independent bar." *Velazquez*, 531 U.S. at 545.

The government should not be allowed to "insulate" itself from judicial review by discouraging lawyers from suing the government, by threat of retaliation or otherwise. *Id.* at 548; *see also, e.g.*, Josh Blackman, *Unraveled: Obamacare, Religious Liberty, and Executive Power* 356 (2016) (reporting that an earlier administration pressured clients to fire a law firm that had agreed to sue that administration). If lawyers can accept only those clients or causes favored by the government, then they can no longer serve effectively as the "guardian[s] of our freedom." *Walters*, 473 U.S. at 371 (Stevens, J., dissenting). They will instead be relegated to "nothing more than parrots of the views of whatever group wields governmental power at the moment." *Cohen v. Hurley*, 366 U.S. 117, 138–39 (1961) (Black, J., dissenting), *overruled by Malloy v. Hogan*, 378 U.S. 1 (1964), *and Spevack v. Klein*, 385 U.S. 511 (1967).

**II.    Lawyers' Zealous Advocacy Is Properly and Adequately Constrained by the Law and Lawyers' Ethical Duties**

Of course, the duty of zealous advocacy is not boundless. It "does not permit, much less demand, violation of the law, or any manner of fraud or chicanery for the client's sake." *Devaney v. Cont'l Am. Ins. Co.*, 989 F.2d 1154, 1162 n.10 (11th Cir. 1993) (quoting 1887 Code of Ethics of the Ala. State Bar Ass'n). Lawyers must perform their "dual role—officer of the court and advocate for a client—strictly within and never in derogation of high ethical standards." *In re Griffiths*, 413 U.S. at 732–33 (Burger, J., dissenting).

Lawyers do not always live up to their professional responsibilities. When lawyers fail to comply with court orders or bring vexatious claims, they can be held in contempt or sanctioned. When lawyers violate the ethical rules, they are subject to disciplinary proceedings that can yield sanctions, including suspension or disbarment from the practice of law. And when lawyers break the law, they can be sued civilly or prosecuted criminally. Amici challenge none of these measures, which have served as effective checks on lawyer misconduct without the need for government action targeting lawyers or law firms for their past representations.

## CONCLUSION

Amici submit this brief to affirm that lawyers must retain their long-enduring freedom to represent clients and causes without fear of government retribution based on the identity of those clients. The more unpopular or controversial the client or cause, the greater the need for lawyers' freedom to accept the representation without fear or intimidation. Any government action that targets and punishes lawyers for the clients and causes they represent—or for seeking to hold the government accountable—should be rejected by the courts.

8

Dated: April 11, 2025                    Respectfully submitted,


                                         s/ Kathryn A. Reilly
                                         Kathryn A. Reilly (D.C. Bar #482584)
                                         Wheeler Trigg O'Donnell LLP
                                         370 Seventeenth Street, Suite 4500
                                         Denver, CO 80202
                                         Telephone: 303.244.1800
                                         Email: reilly@wtotrial.com

                                         *Counsel for Amici Curiae*

*The below-listed law firms authorize counsel for amici curiae to state that they join in this brief.*

| | |
|---|---|
| Mark Drooks | Katherine Chiarello |
| Bird, Marella, Rhow, Lincenberg, Drooks, Nessim, LLP | Botkin Chiarello Calaf PLLC |
| 1875 Century Park East, 23rd Floor | 1209 Nueces Street |
| Los Angeles, CA 90067-2561 | Austin, TX 78701 |
| 310.201.2100 | 512.615.2341 |
| mdrooks@birdmarella.com | katherine@bccaustin.com |
| | |
| David Buckner | Reuven Cohen |
| Buckner + Miles, P.A. | Cohen Williams LLP |
| 2020 Salzedo Street, Suite 302 | 724 South Spring Street, 9th Floor |
| Coral Gables, FL 33134 | Los Angeles, CA 90014 |
| 305.964.8003 | 213.232.5160 |
| david@bucknermiles.com | rcohen@cohen-williams.com |
| | |
| Steven W. Fogg | A. Clifford Edwards |
| Corr Cronin LLP | Edwards & Culver |
| 1015 Second Avenue, Floor 10 | 1648 Poly Drive, Suite 206 |
| Seattle, WA 98104-1001 | Billings, MT 59102 |
| 206.625.8600 | 406.256.8155 |
| sfogg@corrcronin.com | jenny@edwardslawfirm.org |
| | |
| Stan Garnett | Adam Schachter |
| Garnett Powell Maximon Barlow & Farbes, LLC | Gelber Schachter & Greenberg, P.A. |
| 1125 17th Street, Suite 2200 | One Southeast Third Ave., Suite 2600 |
| Denver, CO 80202 | Miami, FL 33131-1715 |
| 303.991.3344 | 305.728.0950 |
| stan.garnett@garnettlegalgroup.com | aschachter@gsgpa.com |

9

Steve W. Berman
Hagens Berman Sobol Shapiro LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
206.623.7292
steve@hbsslaw.com

Eric S. Boorstin
Horvitz & Levy LLP
3601 West Olive Avenue, 8th Floor
Burbank, CA 91505
818.995.0800
eboorstin@horvitzlevy.com

Kathleen Ewins
Long & Levit LLP
465 California Street, Suite 500
San Francisco, CA 94104
415.397.2222
kewins@longlevit.com

Stanton R. Gallegos
Markowitz Herbold PC
1455 SW Broadway, Suite 1900
Portland, OR 97201
503.295.3085
stantongallegos@markowitzherbold.com

Vito A. Gagliardi, Jr.
Porzio, Bromberg, & Newman, P.C.
100 Southgate Parkway
P.O. Box 1997
Morristown, NJ 07962-1997
973.538.4006
vagagliardi@pbnlaw.com

Sean Haran
Walden Macht Haran & Williams LLP
250 Vesey Street, 27th Floor
New York, NY 10281
212.335.2030
seanh@wmhwlaw.com

Joseph Ybarra
Halpern May Ybarra Gelberg LLP
550 S. Hope St., Suite 2330
Los Angeles, CA 90071
213.402.1930
joseph.ybarra@halpernmay.com

Clark Johnson
Kaplan Johnson Abate & Bird LLP
710 West Main Street, 4th Floor
Louisville, KY 40202
502.416.1630
cjohnson@kaplanjohnsonlaw.com

Chris Schwegmann
Lynn Pinker Hurst & Schwegmann LLP
2100 Ross Avenue, Suite 2700
Dallas, TX 75201
214.981.3800
cschwegmann@lynnllp.com

Greg Coleman
Milberg Coleman Bryson Phillips
Grossman, PLLC
800 S. Gay St., Suite 1100
Knoxville, TN 37929
865.232.1315
gcoleman@milberg.com

Heather L. Rosing
Rosing Pott & Strohbehn
In partnership with Zelms Erlich Lenkov
770 First Avenue, Suite 200
San Diego, CA 92101
619.235.6000
hrosing@rosinglaw.com

R. Paul Yetter
Yetter Coleman LLP
811 Main Street, Suite 4100
Houston, TX 77002
713.632.8000
pyetter@yettercoleman.com

10

## CERTIFICATE OF COMPLIANCE

I certify that the foregoing complies with Local Civil Rule 7(o)(4) and does not exceed 25 pages. I further certify that the foregoing amici curiae brief complies with the typeface and type style requirements of Local Rule 5.1(d) because it has been prepared in a proportionally-spaced typeface using Microsoft Word, 12-point Times New Roman font.

Dated: April 11, 2025                              *s/ Kathryn A. Reilly*
                                                   Kathryn A. Reilly

**<u>CERTIFICATE OF SERVICE</u>**

I certify that on April 11, 2025, I electronically filed the foregoing with the Clerk of the

Court using the CM/ECF system. Notice of this filing will be sent to all attorneys of record by

operation of the Court's electronic filing system.

*s/ Kathryn A. Reilly*
Kathryn A. Reilly
