APPEAL,CLOSED,TYPE–D

# U.S. District Court
## District of Columbia (Washington, DC)
## CIVIL DOCKET FOR CASE #: <u>1:25–cv–00916–JDB</u>
### *Internal Use Only*

| | |
|---|---|
| JENNER & BLOCK LLP v. U.S. DEPARTMENT OF JUSTICE et al | Date Filed: 03/28/2025 |
| Assigned to: Judge John D. Bates | Date Terminated: 07/16/2025 |
| Cause: 28:1331 Fed. Question | Jury Demand: None |
| | Nature of Suit: 440 Civil Rights: Other |
| | Jurisdiction: U.S. Government Defendant |

**Plaintiff**

**JENNER & BLOCK LLP**                    represented by    **David E. Mills**
COOLEY LLP
1299 Pennsylvania Avenue, NW
Suite 700
Washington, DC 20004
(202) 842–7800
Fax: (202) 842–7899
Email: dmills@cooley.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**John C. Bostic**
COOLEY LLP
3175 Hanover Street
Palo Alto, CA 94304–1130
650–843–5350
Fax: 650–849–7400
Email: jbostic@cooley.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kristine Forderer**
COOLEY LLP
3 Embarcadero Center
Ste 20th Floor
San Francisco, CA 94111–4004
415–693–2000
Fax: 415–693–2222
Email: kforderer@cooley.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Michael Attanasio**
COOLEY LLP
10265 Science Center Drive

1

San Diego, CA 92121−1117
858−550−6453
Email: mattanasio@cooley.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**U.S. DEPARTMENT OF JUSTICE**          represented by    **Richard Lawson**
DOJ−USAO
950 Pennsylvania Avenue, NW
Washington, DC 20530−0001
202−445−8042
Email: richard.lawson3@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**FEDERAL COMMUNICATIONS**             represented by    **Richard Lawson**
**COMMISSION**                                          (See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**OFFICE OF MANAGEMENT AND**           represented by    **Richard Lawson**
**BUDGET**                                              (See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**EQUAL EMPLOYMENT**                    represented by    **Richard Lawson**
**OPPORTUNITY COMMISSION**                              (See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**OFFICE OF PERSONNEL**                 represented by    **Richard Lawson**
**MANAGEMENT**                                          (See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**GENERAL SERVICES**                    represented by    **Richard Lawson**
**ADMINISTRATION**                                      (See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**OFFICE OF THE DIRECTOR OF NATIONAL INTELLIGENCE**

represented by **Richard Lawson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

<u>Defendant</u>

**CONSUMER FINANCIAL PROTECTION BUREAU**

represented by **Richard Lawson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

<u>Defendant</u>

**DEPARTMENT OF DEFENSE**

represented by **Richard Lawson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

<u>Defendant</u>

**ENVIRONMENTAL PROTECTION AGENCY**

represented by **Richard Lawson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

<u>Defendant</u>

**FEDERAL ENERGY REGULATORY COMMISSION**

represented by **Richard Lawson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

<u>Defendant</u>

**FEDERAL TRADE COMMISSION**

represented by **Richard Lawson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

<u>Defendant</u>

**SECURITIES AND EXCHANGE COMMISSION**

represented by **Richard Lawson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

<u>Defendant</u>

**DEPARTMENT OF THE INTERIOR**

represented by **Richard Lawson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

<u>Defendant</u>

| | | |
|---|---|---|
| **DEPARTMENT OF THE TREASURY** | represented by | **Richard Lawson** (See above for address) *LEAD ATTORNEY* *ATTORNEY TO BE NOTICED* |

**Defendant**

| | | |
|---|---|---|
| **UNITED STATES POSTAL SERVICE** | represented by | **Richard Lawson** (See above for address) *LEAD ATTORNEY* *ATTORNEY TO BE NOTICED* |

**Defendant**

| | | |
|---|---|---|
| **DEPARTMENT OF HEALTH AND HUMAN SERVICES** | represented by | **Richard Lawson** (See above for address) *LEAD ATTORNEY* *ATTORNEY TO BE NOTICED* |

**Defendant**

| | | |
|---|---|---|
| **DEPARTMENT OF HOMELAND SECURITY** | represented by | **Richard Lawson** (See above for address) *LEAD ATTORNEY* *ATTORNEY TO BE NOTICED* |

**Defendant**

| | | |
|---|---|---|
| **DEPARTMENT OF VETERANS AFFAIRS** | represented by | **Richard Lawson** (See above for address) *LEAD ATTORNEY* *ATTORNEY TO BE NOTICED* |

**Defendant**

| | | |
|---|---|---|
| **OTHER AGENCIES SUBJECT TO EXECUTIVE ORDER ADDRESSING RISKS FROM JENNER & BLOCK** | represented by | **Richard Lawson** (See above for address) *LEAD ATTORNEY* *ATTORNEY TO BE NOTICED* |

**Defendant**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | represented by | **Richard Lawson** (See above for address) *LEAD ATTORNEY* *ATTORNEY TO BE NOTICED* |

**Defendant**

| | | |
|---|---|---|
| **PAMELA J. BONDI** *in her official capacity as Attorney General* | represented by | **Richard Lawson** (See above for address) *LEAD ATTORNEY* *ATTORNEY TO BE NOTICED* |

**Defendant**

**BRENDAN CARR**
*in his official capacity as the Chairman of the Federal Communications Commission*

represented by **Richard Lawson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

__Defendant__

**GEOFFREY STARKS**
*in his official capacity as the Commissioner of the Federal Communications Commission*

represented by **Richard Lawson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

__Defendant__

**NATHAN SIMINGTON**
*in his official capacity as the Commissioner of the Federal Communications Commission*

represented by **Richard Lawson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

__Defendant__

**ANNA M. GOMEZ**
*in her official capacity as the Commissioner of the Federal Communications Commission*

represented by **Richard Lawson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

__Defendant__

**RUSSELL VOUGHT**
*in his official capacity as Director of the U.S. Office of Management and Budget*

represented by **Richard Lawson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

__Defendant__

**ANDREA LUCAS**
*in her official capacity as Acting Chair of the Equal Employment Opportunity Commission*

represented by **Richard Lawson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

__Defendant__

**CHARLES EZELL**
*in his official capacity as Acting Director of the Office of Personnel Management*

represented by **Richard Lawson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

__Defendant__

**STEPHEN EHEKIAN**
*in his official capacity as Acting Administrator of the General Services Administration*

represented by **Richard Lawson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

__Defendant__

**TULSI GABBARD**
*in her official capacity as U.S. Director of National Intelligence*

represented by  **Richard Lawson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**SCOTT BESSENT**
*in his official capacity as Acting Director of the Consumer Financial Protection Bureau*

represented by  **Richard Lawson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**PETER B. HEGSETH**
*in his official capacity as Secretary of the Department of Defense*

represented by  **Richard Lawson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**LEE M. ZELDIN**
*in his official capacity as Administrator of the Environmental Protection Agency*

represented by  **Richard Lawson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**MARK C. CHRISTIE**
*in his official capacity as Chairman of the Federal Energy Regulatory Commission*

represented by  **Richard Lawson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**WILLIE L. PHILLIPS**
*in his official capacity as Commissioner of the Federal Energy Regulatory Commission*

represented by  **Richard Lawson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**DAVID ROSNER**
*in his official capacity as Commissioner of the Federal Energy Regulatory Commission*

represented by  **Richard Lawson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**LINDSAY S. SEE**
*in her official capacity as Commissioner of the Federal Energy Regulatory Commission*

represented by  **Richard Lawson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**JUDY W. CHANG**
*in her official capacity as Commissioner of the Federal Energy Regulatory Commission*

represented by **Richard Lawson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

<u>**Defendant**</u>

**ANDREW N. FERGUSON**
*in his official capacity as Chairman, Federal Trade Commission*

represented by **Richard Lawson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

<u>**Defendant**</u>

**MELISSA ANN HOLYOAK**
*in her official capacity as Commissioner, Federal Trade Commission*

represented by **Richard Lawson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

<u>**Defendant**</u>

**MARK T. UYEDA**
*in his official capacity as Acting Chairman, Securities and Exchange Commission*

represented by **Richard Lawson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

<u>**Defendant**</u>

**HESTER M. PEIRCE**
*in her official capacity as Commissioner, Securities and Exchange Commission*

represented by **Richard Lawson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

<u>**Defendant**</u>

**CAROLINE A. CRENSHAW**
*in her official capacity as Commissioner, Securities and Exchange Commission*

represented by **Richard Lawson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

<u>**Defendant**</u>

**DOUGLAS J. BURGUM**
*in his official capacity as Secretary of the Interior*

represented by **Richard Lawson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

<u>**Defendant**</u>

**SCOTT BESSENT**
*in his official capacity as Secretary of the Treasury*

represented by **Richard Lawson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

<u>**Defendant**</u>

**DOUGLAS TULINO**
*in his official capacity as Postmaster General and Chief Executive Officer of the United States Postal Service*

represented by **Richard Lawson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**ROBERT F. KENNEDY, JR.**
*in his official capacity as Secretary of Health and Human Services*

represented by **Richard Lawson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**KRISTI NOEM**
*in her official capacity as Secretary of the Department of Homeland Security*

represented by **Richard Lawson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**DOUG COLLINS**
*in his official capacity as Secretary of Veterans Affairs*

represented by **Richard Lawson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Movant**

**ELECTRONIC FRONTIER FOUNDATION**

represented by **Cecillia D. Wang**
ACLU
Center for Democracy
425 California St
Suite 700
San Francisco, CA 94104
415–343–0775
Email: cwang@aclu.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Movant**

**RUTHERFORD INSTITUTE**

represented by **Cecillia D. Wang**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**GENERAL COUNSEL AMICI**

represented by **Andrew George Pappas**
OSBORN MALEDON, P.A.
2929 N. Central Avenue
Suite 2000
Phoenix, AZ 85012
602–640–9398
Fax: 602–640–9050

Email: apappas@omlaw.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Austin Tyler Marshall**
HERRERA ARELLANO LLP
1001 N Central Ave
Suite 404
Phoenix, AZ 85004
928−446−4410
Email: austin@ha−firm.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**David B. Rosenbaum**
OSBORN MALEDON, P.A.
2929 N. Central Avenue
Suite 2000
Phoenix, AZ 85012
602−640−9345
Fax: 602−640−9050
Email: drosenbaum@omlaw.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Eric M. Fraser**
OSBORN MALEDON P.A.
2929 North Central Avenue
Suite 2000
Phoenix, AZ 85012
602−640−9321
Fax: 602−640−9050
Email: efraser@omlaw.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Joseph N. Roth**
OSBORN MALEDON, P.A
2929 N. Central Avenue
Suite 2100
Phoenix, AZ 85012
602−640−9320
Fax: 602−640−9050
Email: jroth@omlaw.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Joshua James Messer**

OSBORN MALEDON, P.A.
2929 N. Central Avenue
Ste 2100
Phoenix, AZ 85012
602–640–9326
Fax: 602–640–9050
Email: jmesser@omlaw.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Mary Ruth O'Grady**
OSBORN MALEDON PA
2929 N Central Ave
Suite 2000
Phoenix, AZ 85012
602–640–9000
Fax: 602–640–9050
Email: mogrady@omlaw.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Amicus**

**FORMER SENIOR GOVERNMENT**          represented by  **Justin A. Nelson**
**OFFICIALS**                                         SUSMAN GODFREY LLP
                                                      1000 Louisiana Street
                                                      Suite 5100
                                                      Houston, TX 77002
                                                      713–653–7895
                                                      Fax: 713–654–6666
                                                      Email: jnelson@susmangodfrey.com
                                                      *LEAD ATTORNEY*
                                                      *ATTORNEY TO BE NOTICED*

**Amicus**

**FRED T. KOREMATSU CENTER**          represented by  **Jim Davy**
**FOR LAW AND EQUALITY**                              JIM DAVY
                                                      P.O. Box 15216
                                                      Philadelphia, PA 19125
                                                      215–792–3579
                                                      Email: jimdavy@allriselaw.org
                                                      *LEAD ATTORNEY*
                                                      *ATTORNEY TO BE NOTICED*

                                                      **Robert Seungchul Chang**
                                                      FRED T. KOREMATSU CENTER FOR
                                                      LAW AND EQUALITY
                                                      UC Irvine School of Law
                                                      401 E. Peltason Dr.
                                                      Ste 1000
                                                      Irvine, CA 92697

206–390–5676
Email: rchang@law.uci.edu
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jeremiah Chin**
UNIVERSITY OF WASHINGTON
School of Law
9622 S 221st Pl
Kent, WA 98031
480–334–7703
Email: jerchin@uw.edu
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jessica Levin**
RONALD A. PETERSON LAW CLINIC
Civil Rights Clinic
Seattle University School of Law
901 12th Ave, Sullivan Hall
Ste Sllh 315
Seattle, WA 98115
206–398–4167
Fax: 206–398–4261
Email: levinje@seattleu.edu
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Melissa Lee**
RONALD A. PETERSON LAW CLINIC
Center for Civil Rights and Critical Justice
1112 E. Columbia St.
Seattle, WA 98122
206–398–4394
Email: leeme@seattleu.edu
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Susan A. McMahon**
FRED T. KOREMATSU CENTER FOR
LAW AND EQUALITY
UC Irvine School of Law
401 E. Peltason Dr.
Ste 1000
Irvine, CA 92697
949–824–0066
Email: smcmahon@law.uci.edu
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Amicus**

**676 LAW PROFESSORS**                  represented by  **Phillip Robert Malone**
                                                        559 Nathan Abbott Way
                                                        Stanford, CA 94305−8610
                                                        650−725−6369
                                                        Email: pmalone@law.stanford.edu
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

Amicus

**PAST PRESIDENTS OF THE DC**           represented by  **Andrea C. Ferster**
**BAR**                                                 ANDREA C. FERSTER
                                                        68 Beebe Pond Rd
                                                        Canaan, NY 12029
                                                        202−669−6311
                                                        Email: andreaferster@gmail.com
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

Amicus

**LAWYERS DEFENDING**                   represented by  **Aderson Bellegarde Francois**
**AMERICAN DEMOCRACY**                                  GEORGETOWN UNIVERSITY LAW
                                                        CENTER
                                                        Civil Rights Clinic
                                                        600 New Jersey Avenue, NW
                                                        Suite 352
                                                        Washington, DC 20001
                                                        (202) 661−6721
                                                        Fax: 202−662−9634
                                                        Email: aderson.francois@georgetown.edu
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

Amicus

**24 NONGOVERNMENTAL**                  represented by  **William E. Zapf**
**ORGANIZATIONS**                                       KAISER PLLC
                                                        1099 14th Street, NW
                                                        Ste 8th Floor West
                                                        Washington, DC 20005
                                                        202−869−1300
                                                        Email: wzapf@kaiserlaw.com
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

Amicus

**INTERNATIONAL ACADEMY OF**            represented by  **Patrick Michael Regan**
**TRIAL LAWYERS**                                       REGAN ZAMBRI & LONG, PLLC
                                                        1919 M Street, NW
                                                        Suite 350
                                                        Washington, DC 20036
                                                        (202) 463−3030

Fax: (202) 463–0667
Email: pregan@reganfirm.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**807 LAW FIRMS**                    represented by    **Donald Beaton Verrilli , Jr**
MUNGER, TOLLES & OLSON LLP
1155 F Street, NW
7th Floor
Washington, DC 20004
213–683–9507
Email: donald.verrilli@mto.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Nathan P. Eimer**
EIMER STAHL LLP
224 South Michigan Avenue
Suite 1100
Chicago, IL 60604
(312) 660–7600
Fax: (312) 692–1718
Email: neimer@eimerstahl.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Amicus**

**LAWYERS' COMMITTEE FOR**            represented by    **Edward G. Caspar**
**CIVIL RIGHTS UNDER LAW AND**                         LAWYERS' COMMITTEE FOR CIVIL
**LOCAL AFFILIATES**                                   RIGHTS UNDER LAW
1500 K Street, NW
Suite 900
Washington, DC 20005
202–662–8390
Email: ecaspar@lawyerscommittee.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Adria Jasmine Bonillas**
LAWYERS' COMMITTEE FOR CIVIL
RIGHTS UNDER LAW
1500 K Street, NW
Suite 900
Washington, DC 20005
202–662–8317
Email: abonillas@lawyerscommittee.org
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Amicus**

**MEDIA ORGANIZATIONS AND PRESS FREEDOM ADVOCATES**

represented by **Mason Andrew Kortz**
HARVARD LAW SCHOOL
Cyberlaw Clinic
Lewis Hall, 4th Floor
1557 Massachusetts Avenue
Cambridge, MA 02138
617−495−2845
Email: mkortz@law.harvard.edu
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

Amicus

**KENNETH C. PICKERING**

represented by **KENNETH C. PICKERING**
Pickering Legal LLC
100 Grove Street
Worcester, MA 01605
PRO SE

Amicus

**NAACP LEGAL DEFENSE & EDUCATIONAL FUND, INC.**

represented by **Samuel Spital**
NAACP LEGAL DEFENSE &
EDUCATIONAL FUND, INC.
40 Rector Street
5th Floor
New York, NY 10006
(212) 965−2200
Email: sspital@naacpldf.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

Amicus

**STATE OF ILLINOIS**

represented by **Sarah A. Hunger**
ILLINOIS ATTORNEY GENERAL'S
OFFICE
Solicitor General's Office
115 South LaSalle
Chicago, IL 60603
312−814−5202
Email: sarah.hunger@ilag.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

Amicus

**AMICI CURIAE LITIGATION FIRMS**

represented by **Kathryn A. Reilly**
WHEELER TRIGG O'DONNELL LLP
370 17th Street
Suite 4500
Denver, CO 80202−5647
303−244−1800
Email: reilly@wtotrial.com

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

<u>Amicus</u>

**AMERICAN CIVIL LIBERTIES UNION**

represented by **Cecillia D. Wang**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

<u>Amicus</u>

**AMERICAN CIVIL LIBERTIES UNION OF THE DISTRICT OF COLUMBIA**

represented by **Cecillia D. Wang**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

<u>Amicus</u>

**CATO INSTITUTE**

represented by **Cecillia D. Wang**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

<u>Amicus</u>

**CENTER FOR INDIVIDUAL RIGHTS**

represented by **Cecillia D. Wang**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

<u>Amicus</u>

**FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION**

represented by **Cecillia D. Wang**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

<u>Amicus</u>

**INSTITUTE FOR JUSTICE**

represented by **Cecillia D. Wang**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

<u>Amicus</u>

**KNIGHT FIRST AMENDMENT INSTITUTE AT COLUMBIA UNIVERSITY**

represented by **Cecillia D. Wang**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

<u>Amicus</u>

**NATIONAL COALITION AGAINST CENSORSHIP**

represented by **Cecillia D. Wang**
(See above for address)

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**REPORTERS COMMITTEE FOR
THE FREEDOM OF THE PRESS**               represented by   **Cecillia D. Wang**
                                                          (See above for address)
                                                          *LEAD ATTORNEY*
                                                          *ATTORNEY TO BE NOTICED*

**Amicus**

**SOCIETY FOR THE RULE OF LAW
INSTITUTE**                              represented by   **Cecillia D. Wang**
                                                          (See above for address)
                                                          *LEAD ATTORNEY*
                                                          *ATTORNEY TO BE NOTICED*

**Amicus**

**LEGAL ETHICS PROFESSORS**              represented by   **Kelsi B. Corkran**
                                                          INSTITUTE FOR CONSTITUTIONAL
                                                          ADVOCACY AND PROTECTION
                                                          600 New Jersey Avenue NW
                                                          Washington, DC 20001
                                                          202–661–6728
                                                          Fax: 202–661–6730
                                                          Email: kbc74@georgetown.edu
                                                          *LEAD ATTORNEY*
                                                          *ATTORNEY TO BE NOTICED*

**Amicus**

**BAR ASSOCIATIONS**                     represented by   **Eric John Galvez Paredes**
                                                          PROTECT DEMOCRACY PROJECT
                                                          82 Nassau Street
                                                          #601
                                                          New York, NY 10038
                                                          202–579–4582
                                                          Email: john.paredes@protectdemocracy.org
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Hayden Johnson**
                                                          PROTECT DEMOCRACY PROJECT
                                                          2020 Pennsylvania Ave. NW
                                                          Ste 163
                                                          Washington, DC 20006
                                                          202–870–3210
                                                          Email: hayden.johnson@protectdemocracy.org
                                                          *ATTORNEY TO BE NOTICED*

**Amicus**

**NEW YORK COUNCIL OF
DEFENSE LAWYERS**                        represented by   **Noam Biale**
                                                          SHER TREMONTE LLP
                                                          90 Broad Street

23rd Floor
New York, NY 10004
212–202–2600
Email: nbiale@shertremonte.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**NATIONAL ASSOCIATION OF**             represented by  **Kobie Flowers**
**CRIMINAL DEFENSE LAWYERS**                            FLOWERS KELLER LLP
                                                        1601 Connecticut Avenue Northwest
                                                        20009
                                                        Washington, DC 20009
                                                        202–521–8742
                                                        Email: kflowers@flowerskeller.com
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Noam Biale**
                                                        (See above for address)
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

**Amicus**

**342 FORMER JUDGES**                   represented by  **Sara E. Kropf**
                                                        KROPF MOSELEY SCHMITT PLLC
                                                        1100 H Street NW
                                                        Suite 1220
                                                        Washington, DC 20005
                                                        202–627–6900
                                                        Email: sara@kmlawfirm.com
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

**Amicus**

**AARON H. CAPLAN**                     represented by  **Stephen Craig Leckar**
                                                        KALBIAN HAGERTY LLP
                                                        888 17th Street, NW
                                                        Suite 1200
                                                        Washington, DC 20006
                                                        202–223–5600
                                                        Email: sleckar@kalbianhagerty.com
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

**Amicus**

**LAW FIRM PARTNERS UNITED**            represented by  **Eric F. Citron**
**INC**                                                 ZIMMER, CITRON & CLARKE LLP
                                                        130 Bishop Allen Drive
                                                        Cambridge, DC 02139

617–821–6006
Email: eric@zimmercitronclarke.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Eric R. Olson**
OLSON GRIMSLEY KAWANABE
HINCHCLIFF & MURRAY LLC
700 17th Street, Suite 1600
Denver, CO 80202
303–535–9151
Email: eolson@olsongrimsley.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

<u>Amicus</u>

| | | |
|---|---|---|
| **1136 LAW STUDENTS AND 52 LAW STUDENT ORGANIZATIONS** | represented by | **Jordan Koel Merson** |

MERSON LAW, PLLC
950 Third Avenue, 18th Floor
New York, NY 10022
212–603–9100
Email: jmerson@mersonlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| e Filed | # | Docket Text |
|---|---|---|
| 28/2025 | 1 | COMPLAINT against SCOTT BESSENT, PAMELA J. BONDI, BRENDAN CARR, CONSUMER FINANCIAL PRO BUREAU, DEPARTMENT OF DEFENSE, DEPARTMENT OF HEALTH AND HUMAN SERVICES, DEPARTME HOMELAND SECURITY, DEPARTMENT OF THE INTERIOR, DEPARTMENT OF THE TREASURY, DEPARTM VETERANS AFFAIRS, STEPHEN EHEKIAN, ENVIRONMENTAL PROTECTION AGENCY, EQUAL EMPLOYN OPPORTUNITY COMMISSION, CHARLES EZELL, FEDERAL COMMUNICATIONS COMMISSION, FEDERAL REGULATORY COMMISSION, FEDERAL TRADE COMMISSION, TULSI GABBARD, GENERAL SERVICES ADMINISTRATION, ANNA M. GOMEZ, PETE HEGSETH, ANDREA LUCAS, OFFICE OF MANAGEMENT AN BUDGET, OFFICE OF PERSONNEL MANAGEMENT, OFFICE OF THE DIRECTOR OF NATIONAL INTELLIG OTHER AGENCIES SUBJECT TO EXECUTIVE ORDER ADDRESSING RISKS FROM JENNER & BLOCK, SEC AND EXCHANGE COMMISSION, NATHAN SIMINGTON, GEOFFREY STARKS, The United States of America, DEPARTMENT OF JUSTICE, UNITED STATES POSTAL SERVICE, RUSSELL T. VOUGHT, LEE ZELDIN ( Fili 405 receipt number ADCDC–11573517) filed by JENNER & BLOCK LLP. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Exhibit 10, # 11 C Sheet, # 12 Summons, # 13 Summons, # 14 Summons, # 15 Summons, # 16 Summons, # 17 Summons, # 18 Summons Summons, # 20 Summons, # 21 Summons, # 22 Summons, # 23 Summons, # 24 Summons, # 25 Summons, # 26 Summ Summons, # 28 Summons, # 29 Summons, # 30 Summons, # 31 Summons, # 32 Summons, # 33 Summons, # 34 Summ Summons, # 36 Summons, # 37 Summons, # 38 Summons, # 39 Summons, # 40 Summons, # 41 Summons, # 42 Summ Summons, # 44 Summons, # 45 Summons, # 46 Summons, # 47 Summons, # 48 Summons, # 49 Summons, # 50 Summ Summons, # 52 Summons, # 53 Summons, # 54 Summons, # 55 Summons, # 56 Summons, # 57 Summons, # 58 Summ Summons, # 60 Summons, # 61 Summons, # 62 Summons, # 63 Supplement)(Attanasio, Michael) (Entered: 03/28/202 |
| 28/2025 | 2 | MOTION for Temporary Restraining Order by JENNER & BLOCK LLP. (Attachments: # 1 Memorandum in Support Memorandum of Law in Support of Motion for a Temporary Restraining Order, # 2 Declaration Declaration of Michae |

| | | |
|---|---|---|
| | | Attanasio in Support of Motion for a Temporary Restraining Order, # 3 Exhibit 1, # 4 Exhibit 2, # 5 Exhibit 3, # 6 Exhi Exhibit 5, # 8 Exhibit 6, # 9 Exhibit 7, # 10 Exhibit 8, # 11 Exhibit 9, # 12 Exhibit 10, # 13 Exhibit 11, # 14 Exhibit 12, Exhibit 13, # 16 Declaration Declaration of Thomas J. Perrelli in Support of Motion for a Temporary Restraining Order of Proposed Order)(Attanasio, Michael) (Entered: 03/28/2025) |
| 28/2025 | 3 | NOTICE – *Certificate of Counsel in Compliance with Local Civil Rule 65.1* by JENNER & BLOCK LLP re 2 Motion (Attanasio, Michael) (Entered: 03/28/2025) |
| 28/2025 | 4 | NOTICE OF RELATED CASE by JENNER & BLOCK LLP. Case related to Case No. 1:25−cv−00716−BAH. (Attana Michael) (Entered: 03/28/2025) |
| 28/2025 | | Case Assigned to Judge Beryl A. Howell. (zmtm) (Entered: 03/28/2025) |
| 28/2025 | 5 | NOTICE of Appearance by David E. Mills on behalf of JENNER & BLOCK LLP (Mills, David) (Entered: 03/28/2025 |
| 28/2025 | 6 | SUMMONS (51) Issued Electronically as to SCOTT BESSENT(in his official capacity as Acting Director of the Consu Financial Protection Bureau), SCOTT BESSENT(in his official capacity as Secretary of the Treasury), PAMELA J. BC DOUG BURGUM, BRENDAN CARR, JUDY W. CHANG, MARK C. CHRISTIE, DOUGLAS A. COLLINS, CONS FINANCIAL PROTECTION BUREAU, CAROLINE A. CRENSHAW, DEPARTMENT OF DEFENSE, DEPARTME HEALTH AND HUMAN SERVICES, DEPARTMENT OF HOMELAND SECURITY, DEPARTMENT OF THE INT DEPARTMENT OF THE TREASURY, DEPARTMENT OF VETERANS AFFAIRS, STEPHEN EHEKIAN, ENVIRONMENTAL PROTECTION AGENCY, EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, CHAR EZELL, FEDERAL COMMUNICATIONS COMMISSION, FEDERAL ENERGY REGULATORY COMMISSION, TRADE COMMISSION, ANDREW N. FERGUSON, TULSI GABBARD, GENERAL SERVICES ADMINISTRATI M. GOMEZ, PETE HEGSETH, MELISSA HOLYOAK, ROBERT F. KENNEDY, JR., ANDREA LUCAS, KRISTI N OFFICE OF MANAGEMENT AND BUDGET, OFFICE OF PERSONNEL MANAGEMENT, OFFICE OF THE DIR NATIONAL INTELLIGENCE, HESTER M. PEIRCE, WILLIE L. PHILLIPS, DAVID ROSNER, SECURITIES AND EXCHANGE COMMISSION, LINDSAY S. SEE, NATHAN SIMINGTON, GEOFFREY STARKS, DOUG TULINO DEPARTMENT OF JUSTICE, UNITED STATES OF AMERICA, UNITED STATES POSTAL SERVICE, MARK T RUSSELL T. VOUGHT, LEE ZELDIN, U.S. Attorney and U.S. Attorney General (Attachments: # 1 Notice and Conse (Entered: 03/28/2025) |
| 28/2025 | 7 | LCvR 26.1 CERTIFICATE OF DISCLOSURE of Corporate Affiliations and Financial Interests by JENNER & BLOC (Attanasio, Michael) (Entered: 03/28/2025) |
| 28/2025 | | MINUTE ORDER (paperless), upon consideration of plaintiff's 1 Complaint in this case, which was directly, rather tha assigned to the undersigned Judge, this Court concludes that plaintiff's 4 Notice of Related Case ("Notice"), indicating t case is "related" to another case brought by a different plaintiff against similar federal government defendants, *Perkins U.S. Department of Justice et al.*, 25−cv−716 (BAH), is erroneous, since these two cases are not related in a manner co by D.D.C. LCvR 40.5(a)(3) (defining related civil cases) and 40.5(c)(1) (allowing direct assignment of "new case to the whom the oldest related case is assigned"). The legal issues involved in the two cases appear to be substantially similar instinct to keep and decide the cases together understandable and even tempting for preservation of judicial resources b single judge to become familiar with applicable legal principles in both cases. Nonetheless, the two cases involve differ of fact and arise from different events, and thus strict adherence to the Local Rules of the Court requires assignment thr normal random assignment procedures of this District. *See* D.D.C. LCvR 40.5(a)(3).<br><br>LCvR 40.5(a)(3) provides that cases may properly be deemed related when, as pertinent here, they "(ii) involve commo fact, or (iii) grow out of the same event or transaction..." This case and *Perkins Coie* do not involve common issues of f out of the same event or transaction. Executive Order ("E.O.") No. 14230, at issue in *Perkins Coie*, cites, as justification punitive measures applied to all employees of the targeted firm, the President's dislike of Perkins Coie's representation political opponent (i.e., "Hillary Clinton"), Exec. Order No. 14230 § 1, 90 Fed. Reg. 11781 (Mar. 11, 2025), and Perkin representation, sometimes *pro bono*, of clients seeking enforcement of voting rights (i.e., "Perkins Coie has worked wit donors... to judicially overturn popular, necessary, and democratically enacted election laws"; referring to work for wha calls "anti−democratic election changes"), *id.* §§ 1, 3, and rights to continue service as transgender individuals in the U. |

(i.e., "Perkins Coie LLP has filed lawsuits against the Trump Administration, including one designed to reduce military readiness"), *see* Fact Sheet: President Donald J. Trump Addresses Risks from Perkins Coie LLP (Mar. 6, 2025), https://www.whitehouse.gov/fact−sheets/2025/03/fact−sheet−president−donald−j−trump−adresses−risks−from−perkins

In contrast to the focus on Perkins Coie's provision of legal services to clients disliked by the President as the sole reason No. 14230, the E.O. at issue in this newly assigned case, *see* Addressing Risks from Jenner & Block ("Jenner E.O.") (M 2025), https://www.whitehouse.gov/presidential−actions/2025/03/addressing−risks−from−jenner−block/ (not yet publis Federal Register), cites as justification for the punitive measures on all employees of Jenner & Block, both (1) the firm' representation of clients and issues disfavored by the President, including gender and immigration issues, *see id.* § 1, an professional tasks undertaken by a former partner of Jenner & Block, Andrew Weissmann, during a time when he was employed by the firm and worked as a prosecutor on the Special Counsel investigation, led by former Federal Bureau o Investigation Director Robert Mueller. Although both law firms are being targeted in similar ways in these separate Exe Orders, the facts of each case differ: the punitive measures imposed on Perkins Coie arise solely from the firm's represe clients disliked by the President, while the punitive measures imposed on Jenner & Block in this new case arise, in part firm's representation of clients disliked by the President but also, in part, from professional work performed at the Unite Department of Justice by a former Jenner & Block partner who was not affiliated with the law firm at the time of the wo which the President objects.

While, as noted, the reasons for relating the new case brought by Jenner & Block with the case brought by Perkins Coi understandable, since both challenge Executive Orders carrying similar punitive measures and thereby raise similar que law, strict adherence to the normal process of random case assignment is crucial to ensure "fair and equal distribution o all judges, avoid[] public perception or appearance of favoritism in assignments, and reduce[] opportunities for judge–s *Tripp v. Exec. Off. of President*, 196 F.R.D. 201, 202 (D.D.C. 2000), and the reasons given to justify these orders do no the same underlying events or facts in the way contemplated by LCvR 40.5(a)(3). Accordingly, the Clerk of the Court i reassign this case randomly, pursuant to D.D.C. LCvR 40.3, since the exception provided for "related case" assignment LCvR 40.5 does not apply.

Signed by Judge Beryl A. Howell on March 28, 2025. (lcbah2) (Entered: 03/28/2025)

| Date | No. | Description |
|---|---|---|
| 28/2025 | 8 | NOTICE of Appearance by Richard Lawson on behalf of All Defendants (Lawson, Richard) (Entered: 03/28/2025) |
| 28/2025 | | Case Randomly Reassigned to Judge John D. Bates. Judge Beryl A. Howell is no longer assigned to the case. (zjd) Mo 3/28/2025 to indicate random reassignment. (ztnr) (Entered: 03/28/2025) |
| 28/2025 | | MINUTE ORDER: The Court will hold a hearing on 2 plaintiff's motion for temporary restraining order today, March 5:45pm in Courtroom 30. A public line will be available at: 833−990−9400; meeting ID: 367524674. Signed by Judge Bates on 3/28/2025. (lcjdb2) (Entered: 03/28/2025) |
| 28/2025 | | Minute Entry for Proceeding held on 3/28/2025 before Judge John D. Bates: Motion Hearing re 2 MOTION for Tempo Restraining Order. Order forthcoming GRANTING 2 Motion for TRO. Joint Status Report due by 12:00 pm on 3/31/2 Reporter Jeff Hook) (zed) (Entered: 03/28/2025) |
| 28/2025 | 9 | TEMPORARY RESTRAINING ORDER: Upon consideration of 2 plaintiff's motion for a temporary restraining order, entire record herein, and for the reasons stated on the record at today's hearing, it is hereby ORDERED that the motion GRANTED. See Order for details. Signed by Judge John D. Bates on 3/28/2025. (lcjdb2) (Entered: 03/28/2025) |
| 31/2025 | 10 | TRANSCRIPT OF MOTION HEARING before Judge John D. Bates held on March 28, 2025. Page Numbers: 1 – 76. Issuance: March 31, 2025. Court Reporter: Jeff Hook. Telephone number: 202−354−3373. Transcripts may be ordered submitting the Transcript Order Form <br><br> For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchas court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (m condensed, CD or ASCII) may be purchased from the court reporter. |

| | | |
|---|---|---|
| | | **NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty−one days to file with the court and the co any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made a the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifica covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 4/21/2025. Redacted Transcript Deadline set for 5/1/2025. Release of Transcript Restriction set 6/29/2025.(Hook, Jeff) (Entered: 03/31/2025) |
| 31/2025 | 11 | STATUS REPORT by U.S. DEPARTMENT OF JUSTICE. (Attachments: # 1 Exhibit)(Lawson, Richard) (Entered: 03 |
| 31/2025 | 12 | STATUS REPORT by U.S. DEPARTMENT OF JUSTICE. (Lawson, Richard) (Entered: 03/31/2025) |
| 31/2025 | 13 | Joint STATUS REPORT by JENNER & BLOCK LLP. (Attachments: # 1 Text of Proposed Order)(Attanasio, Michael) 03/31/2025) |
| 01/2025 | 14 | ORDER extending 9 TRO and setting briefing schedule. See Order for details. Signed by Judge John D. Bates on 4/1/2 (lcjdb2) (Entered: 04/01/2025) |
| 01/2025 | 15 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name− Kristine A. Forderer, Filing fee $ 100, receipt number ADCDC−11583264. Fee Status: Fee Paid. by JENNER & BLOCK LLP. (Attachments: # 1 Declaration of Kristine A. Support, # 2 Certificate of Good Standing, # 3 Text of Proposed Order)(Attanasio, Michael) (Entered: 04/01/2025) |
| 01/2025 | 16 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name− John C. Bostic, Filing fee $ 100, receipt number ADCDC−11583267. Fee Status: Fee Paid. by JENNER & BLOCK LLP. (Attachments: # 1 Declaration of John C. Bos Support, # 2 Certificate of Good Standing, # 3 Text of Proposed Order)(Attanasio, Michael) (Entered: 04/01/2025) |
| 02/2025 | | MINUTE ORDER: Upon consideration of 15 Kristine A. Forderer's motion for leave to appear pro hac vice, and the en herein, it is hereby ORDERED that the motion is GRANTED. **Counsel should register for e−filing via PACER and f of appearance pursuant to LCvR 83.6(a)** Click for instructions. Signed by Judge John D. Bates on 4/2/2025. (lcjdb2) 04/02/2025) |
| 02/2025 | | MINUTE ORDER: Upon consideration of 16 John C. Bostic's motion for leave to appear pro hac vice, and the entire re it is hereby ORDERED that the motion is GRANTED. **Counsel should register for e−filing via PACER and file a no appearance pursuant to LCvR 83.6(a)** Click for instructions. Signed by Judge John D. Bates on 4/2/2025. (lcjdb2) (E 04/02/2025) |
| 02/2025 | 17 | NOTICE of Appearance by Kristine Forderer on behalf of JENNER & BLOCK LLP (Forderer, Kristine) (Entered: 04/ |
| 02/2025 | 18 | NOTICE of Appearance by John C. Bostic on behalf of JENNER & BLOCK LLP (Bostic, John) (Entered: 04/02/2025) |
| 08/2025 | 19 | MOTION for Summary Judgment *and for Declaratory and Permanent Injunctive Relief* by JENNER & BLOCK LLP. (Attachments: # 1 Memorandum in Support Memorandum of Law in Support of Plaintiff Jenner & Block LLP's Motion Summary Judgment and for Declaratory and Permanent Injunctive Relief, # 2 Statement of Facts, # 3 Declaration Decla Michael A. Attanasio in Support of Plaintiff's Motion for Summary Judgment and for Declaratory and Permanent Injun Relief, # 4 Exhibit 1, # 5 Exhibit 2, # 6 Exhibit 3, # 7 Exhibit 4, # 8 Exhibit 5, # 9 Exhibit 6, # 10 Exhibit 7, # 11 Exhib Exhibit 9, # 13 Exhibit 10, # 14 Exhibit 11, # 15 Exhibit 12, # 16 Exhibit 13, # 17 Exhibit 14, # 18 Exhibit 15, # 19 Exh 20 Exhibit 17, # 21 Exhibit 18, # 22 Exhibit 19, # 23 Exhibit 20, # 24 Exhibit 21, # 25 Exhibit 22, # 26 Exhibit 23, # 27 # 28 Exhibit 25, # 29 Exhibit 26, # 30 Declaration Declaration of Thomas J. Perrelli in Support of Plaintiff Jenner & Bl Motion for Summary Judgment and for Declaratory and Permanent Injunctive Relief, # 31 Text of Proposed Order)(Att Michael). Added MOTION for Permanent Injunction on 4/9/2025 (zjm). (Entered: 04/08/2025) |
| 08/2025 | 20 | MOTION to Dismiss by U.S. DEPARTMENT OF JUSTICE. (Attachments: # 1 Memorandum in Support, # 2 Text of Order)(Lawson, Richard) (Entered: 04/08/2025) |
| 08/2025 | 21 | STATUS REPORT by SCOTT BESSENT(in his official capacity as Acting Director of the Consumer Financial Protec Bureau), SCOTT BESSENT(in his official capacity as Secretary of the Treasury), PAMELA J. BONDI, DOUGLAS J. |

| | | BRENDAN CARR, JUDY W. CHANG, MARK C. CHRISTIE, DOUGLAS A. COLLINS, CONSUMER FINANCIAL PROTECTION BUREAU, CAROLINE A. CRENSHAW, DEPARTMENT OF DEFENSE, DEPARTMENT OF HEA... HUMAN SERVICES, DEPARTMENT OF HOMELAND SECURITY, DEPARTMENT OF THE INTERIOR, DEPAR... OF THE TREASURY, DEPARTMENT OF VETERANS AFFAIRS, STEPHEN EHEKIAN, ENVIRONMENTAL PROTECTION AGENCY, EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, CHARLES EZELL, FEDERA... COMMUNICATIONS COMMISSION, FEDERAL ENERGY REGULATORY COMMISSION, FEDERAL TRADE COMMISSION, ANDREW N. FERGUSON, TULSI GABBARD, GENERAL SERVICES ADMINISTRATION, ANN... GOMEZ, PETER B. HEGSETH, MELISSA HOLYOAK, ROBERT F. KENNEDY, JR, ANDREA LUCAS, KRISTI N... OFFICE OF MANAGEMENT AND BUDGET, OFFICE OF PERSONNEL MANAGEMENT, OFFICE OF THE DIR... NATIONAL INTELLIGENCE, OTHER AGENCIES SUBJECT TO EXECUTIVE ORDER ADDRESSING RISKS F... JENNER & BLOCK, HESTER M. PEIRCE, WILLIE L. PHILLIPS, DAVID ROSNER, SECURITIES AND EXCHAN... COMMISSION, LINDSAY S. SEE, NATHAN SIMINGTON, GEOFFREY STARKS, DOUG TULINO, U.S. DEPAR... OF JUSTICE, UNITED STATES OF AMERICA, UNITED STATES POSTAL SERVICE, MARK T. UYEDA, RUSS... VOUGHT, LEE ZELDIN. (Attachments: # 1 Exhibit 1)(Lawson, Richard) (Entered: 04/08/2025) |
| 09/2025 | 22 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Andrew G. Pappas, Filing fee $ 100, receipt number ADCDC−11603140. Fee Status: Fee Paid. by GENERAL COUNSEL AMICI. (Attachments: # 1 Declaration Declarati... Andrew G. Pappas)(Marshall, Austin) Modified filer on 4/22/2025 (znmw). (Entered: 04/09/2025) |
| 09/2025 | 23 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– David B. Rosenbaum, Filing fee $ 100, receipt number ADCDC−11603146. Fee Status: Fee Paid. by GENERAL COUNSEL AMICI. (Attachments: # 1 Declaration Declarati... B. Rosenbaum)(Marshall, Austin) Modified filer on 4/22/2025 (znmw). (Entered: 04/09/2025) |
| 09/2025 | 24 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Eric M. Fraser, Filing fee $ 100, receipt number ADCDC−11603148. Fee Status: Fee Paid. by GENERAL COUNSEL AMICI. (Attachments: # 1 Declaration Declarati... M. Fraser)(Marshall, Austin) Modified filer on 4/22/2025 (znmw). (Entered: 04/09/2025) |
| 09/2025 | 25 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Joseph N. Roth, Filing fee $ 100, receipt number ADCDC−11603149. Fee Status: Fee Paid. by GENERAL COUNSEL AMICI. (Attachments: # 1 Declaration Declarati... Joseph N. Roth)(Marshall, Austin) Modified filer on 4/22/2025 (znmw). (Entered: 04/09/2025) |
| 09/2025 | 26 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Joshua J. Messer, Filing fee $ 100, receipt number ADCDC−11603150. Fee Status: Fee Paid. by GENERAL COUNSEL AMICI. (Attachments: # 1 Declaration Declarati... Joshua J. Messer)(Marshall, Austin) Modified filer on 4/22/2025 (znmw). (Entered: 04/09/2025) |
| 09/2025 | 27 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Mary R. O'Grady, Filing fee $ 100, receipt number ADCDC−11603152. Fee Status: Fee Paid. by GENERAL COUNSEL AMICI. (Attachments: # 1 Declaration Declarati... R. O'Grady)(Marshall, Austin) Modified filer on 4/22/2025 (znmw). (Entered: 04/09/2025) |
| 09/2025 | 50 | UNOPPOSED MOTION for Leave to File Amicus Brief by KENNETH C. PICKERING. (Attachments: # 1 Exhibit Am... Brief)(zdp) (Entered: 04/11/2025) |
| 09/2025 | 87 | ENTERED IN ERROR.....MOTION for Leave to File Amicus Brief by KENNETH C. PICKERING. (Attachment: # 1 Brief)(zjm) Modified on 4/14/2025 due to being duplicate of entry 50 (zjm). (Entered: 04/14/2025) |
| 0/2025 | | MINUTE ORDER: Upon consideration of 22 Andrew G. Pappas's motion for leave to appear pro hac vice, and the enti... herein, it is hereby ORDERED that the motion is GRANTED. **Counsel should register for e−filing via PACER and f... of appearance pursuant to LCvR 83.6(a)** Click for instructions Signed by Judge John D. Bates on 4/10/2025. (lcjdb2... 04/10/2025) |
| 0/2025 | | MINUTE ORDER: Upon consideration of 22 David B. Rosenbaum's motion for leave to appear pro hac vice, and the e... herein, it is hereby ORDERED that the motion is GRANTED. **Counsel should register for e−filing via PACER and f... of appearance pursuant to LCvR 83.6(a)** Click for instructions Signed by Judge John D. Bates on 4/10/2025. (lcjdb2... 04/10/2025) |
| 0/2025 | | |

| | | |
|---|---|---|
| | | MINUTE ORDER: Upon consideration of <u>24</u> Eric M. Fraser's motion for leave to appear pro hac vice, and the entire re it is hereby ORDERED that the motion is GRANTED. **Counsel should register for e–filing via PACER and file a no appearance pursuant to LCvR 83.6(a)** <u>Click for instructions</u> Signed by Judge John D. Bates on 4/10/2025. (lcjdb2) (E 04/10/2025) |
| 0/2025 | | MINUTE ORDER: Upon consideration of <u>25</u> Joseph N. Roth's motion for leave to appear pro hac vice, and the entire r herein, it is hereby ORDERED that the motion is GRANTED. **Counsel should register for e–filing via PACER and f of appearance pursuant to LCvR 83.6(a)** <u>Click for instructions</u> Signed by Judge John D. Bates on 4/10/2025. (lcjdb2 04/10/2025) |
| 0/2025 | | MINUTE ORDER: Upon consideration of <u>26</u> Joshua J. Messer's motion for leave to appear pro hac vice, and the entire herein, it is hereby ORDERED that the motion is GRANTED. **Counsel should register for e–filing via PACER and f of appearance pursuant to LCvR 83.6(a)** <u>Click for instructions</u> Signed by Judge John D. Bates on 4/10/2025. (lcjdb2 04/10/2025) |
| 0/2025 | | MINUTE ORDER: Upon consideration of <u>27</u> Mary R. O'Grady's motion for leave to appear pro hac vice, and the entir herein, it is hereby ORDERED that the motion is GRANTED. **Counsel should register for e–filing via PACER and f of appearance pursuant to LCvR 83.6(a)** <u>Click for instructions</u> Signed by Judge John D. Bates on 4/10/2025. (lcjdb2 04/10/2025) |
| 0/2025 | <u>28</u> | NOTICE of Appearance by David B. Rosenbaum on behalf of GENERAL COUNSEL AMICI (Rosenbaum, David) (E 04/10/2025) |
| 0/2025 | <u>29</u> | NOTICE of Appearance by Joshua James Messer on behalf of GENERAL COUNSEL AMICI (Messer, Joshua) (Enter 04/10/2025) |
| 0/2025 | <u>30</u> | NOTICE of Appearance by Joseph N. Roth on behalf of GENERAL COUNSEL AMICI (Roth, Joseph) (Entered: 04/10 |
| 0/2025 | <u>31</u> | NOTICE of Appearance by Eric M. Fraser on behalf of GENERAL COUNSEL AMICI (Fraser, Eric) (Entered: 04/10/2 |
| 0/2025 | <u>32</u> | NOTICE of Appearance by Justin A. Nelson on behalf of FORMER SENIOR GOVERNMENT OFFICIALS (Nelson, (Entered: 04/10/2025) |
| 0/2025 | <u>33</u> | Unopposed MOTION for Leave to File Amicus Brief by FORMER SENIOR GOVERNMENT OFFICIALS. (Attachm Exhibit Amicus Brief, # <u>2</u> Text of Proposed Order, # <u>3</u> Appendix)(Nelson, Justin) (Entered: 04/10/2025) |
| 0/2025 | <u>34</u> | NOTICE of Appearance by Jim Davy on behalf of FRED T. KOREMATSU CENTER FOR LAW AND EQUALITY (Attachments: # <u>1</u> Appendix Full list of Amici represented by Jim Davy)(Davy, Jim) (Main Document 34 replaced on 4 (zjm). (Entered: 04/10/2025) |
| 0/2025 | <u>35</u> | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Robert Chang, Filing fee $ 100, receipt number ADCDC–11606905. Fee Status: Fee Paid. by FRED T. KOREMATSU CENTER FOR LAW AND EQUALITY. (Atta <u>1</u> Declaration Chang Declaration, # <u>2</u> Exhibit Certificate of Good Standing)(Davy, Jim) (Entered: 04/10/2025) |
| 0/2025 | <u>36</u> | Unopposed MOTION for Leave to File Amicus Brief by AMICI CURIAE 676 LAW PROFESSORS. (Attachments: # Amici Brief, # <u>2</u> Text of Proposed Order)(Malone, Phillip) (Entered: 04/10/2025) |
| 0/2025 | <u>37</u> | Unopposed MOTION for Leave to File Amicus Brief by PAST PRESIDENTS OF THE DC BAR. (Attachments: # <u>1</u> E brief, # <u>2</u> Appendix list of amici, # <u>3</u> Text of Proposed Order)(Ferster, Andrea) (Entered: 04/10/2025) |
| 0/2025 | <u>38</u> | Unopposed MOTION for Leave to File Amicus Brief by Lawyers Defending American Democracy. (Attachments: # <u>1</u> Memorandum in Support, # <u>2</u> Text of Proposed Order)(Francois, Aderson) (Entered: 04/10/2025) |
| 0/2025 | <u>39</u> | NOTICE of Appearance by Aderson Bellegarde Francois on behalf of Lawyers Defending American Democracy (Fran Aderson) (Main Document 39 replaced on 4/11/2025) (zjm). (Entered: 04/10/2025) |
| 1/2025 | | |

| | | |
|---|---|---|
| | | MINUTE ORDER: Upon consideration of <u>35</u> Robert S. Chang's motion for leave to appear pro hac vice, and the entire herein, it is hereby ORDERED that the motion is GRANTED. **Counsel should register for e−filing via PACER and f of appearance pursuant to LCvR 83.6(a)** <u>Click for instructions</u>. Signed by Judge John D. Bates on 4/11/2025. (lcjdb2 04/11/2025) |
| 1/2025 | <u>40</u> | NOTICE of Appearance by Mary Ruth O'Grady on behalf of GENERAL COUNSEL AMICI (O'Grady, Mary) (Entered 04/11/2025) |
| 1/2025 | <u>41</u> | NOTICE of Appearance by William E. Zapf on behalf of 24 NONGOVERNMENTAL ORGANIZATIONS (Zapf, Wil (Entered: 04/11/2025) |
| 1/2025 | <u>42</u> | Unopposed MOTION for Leave to File Amicus Brief by 24 NONGOVERNMENTAL ORGANIZATIONS. (Attachme Exhibit A, # <u>2</u> Text of Proposed Order)(Zapf, William) (Entered: 04/11/2025) |
| 1/2025 | <u>43</u> | Consent MOTION for Leave to File Amicus Brief *in Support of Plaintiff* by INTERNATIONAL ACADEMY OF TRIA LAWYERS. (Attachments: # <u>1</u> Exhibit Brief of Amicus Curiae, # <u>2</u> Text of Proposed Order Proposed Order)(Regan, Pa (Entered: 04/11/2025) |
| 1/2025 | <u>44</u> | Unopposed MOTION for Leave to File Amicus Brief by FRED T. KOREMATSU CENTER FOR LAW AND EQUAL (Attachments: # <u>1</u> Exhibit Proposed amicus brief)(Davy, Jim) (Entered: 04/11/2025) |
| 1/2025 | <u>45</u> | Unopposed MOTION for Leave to File Amicus Brief by 807 LAW FIRMS. (Attachments: # <u>1</u> Exhibit, # <u>2</u> Appendix, # Proposed Order)(Verrilli, Donald) (Entered: 04/11/2025) |
| 1/2025 | <u>46</u> | NOTICE of Appearance by Donald Beaton Verrilli, Jr on behalf of 807 LAW FIRMS (Verrilli, Donald) (Entered: 04/1 |
| 1/2025 | <u>47</u> | MOTION for Leave to Appear Pro Hac Vice :Attorney Name− Nathan P. Eimer, Filing fee $ 100, receipt number ADCDC−11609895. Fee Status: Fee Paid. by 807 LAW FIRMS. (Attachments: # <u>1</u> Declaration of Nathan P. Eimer, # <u>2</u> Proposed Order)(Verrilli, Donald) (Entered: 04/11/2025) |
| 1/2025 | | MINUTE ORDER: Upon consideration of <u>47</u> Nathan P. Eimer's motion for leave to appear pro hac vice, and the entire herein, it is hereby ORDERED that the motion is GRANTED. **Counsel should register for e−filing via PACER and f of appearance pursuant to LCvR 83.6(a)** <u>Click for instructions</u>. Signed by Judge John D. Bates on 4/11/2025. (lcjdb2 04/11/2025) |
| 1/2025 | <u>48</u> | Unopposed MOTION for Leave to File Amicus Brief by LAWYERS' COMMITTEE FOR CIVIL RIGHTS UNDER L LOCAL AFFILIATES. (Attachments: # <u>1</u> Exhibit Brief of Lawyers' Committee and affiliates, # <u>2</u> Exhibit Proposed Order)(Caspar, Edward) (Entered: 04/11/2025) |
| 1/2025 | <u>49</u> | Unopposed MOTION for Leave to File Amicus Brief by MEDIA ORGANIZATIONS AND PRESS FREEDOM ADV (Attachments: # <u>1</u> Exhibit Proposed Brief, # <u>2</u> Appendix A, # <u>3</u> Text of Proposed Order)(Kortz, Mason) (Entered: 04/11 |
| 1/2025 | <u>51</u> | Unopposed MOTION for Leave to File Amicus Brief by NAACP LEGAL DEFENSE & EDUCATIONAL FUND, IN (Attachments: # <u>1</u> Exhibit Brief of Amicus Curiae, # <u>2</u> Text of Proposed Order)(Spital, Samuel) (Entered: 04/11/2025) |
| 1/2025 | <u>52</u> | NOTICE of Appearance by Robert Seungchul Chang on behalf of FRED T. KOREMATSU CENTER FOR LAW AND EQUALITY (Chang, Robert) (Entered: 04/11/2025) |
| 1/2025 | <u>53</u> | NOTICE of Appearance by Sarah A. Hunger on behalf of STATE OF ILLINOIS (Hunger, Sarah) (Entered: 04/11/2025 |
| 1/2025 | <u>54</u> | MOTION for Leave to File Amicus Brief *in Support of Plaintiff Jenner & Block LLP's Motion for Summary Judgment* b GENERAL COUNSEL AMICI. (Attachments: # <u>1</u> Exhibit Brief of Amici Curiae, # <u>2</u> Text of Proposed Order)(Rosenb David) (Entered: 04/11/2025) |
| 1/2025 | <u>55</u> | AMICUS BRIEF by STATE OF ILLINOIS. (Hunger, Sarah) (Entered: 04/11/2025) |
| 1/2025 | <u>56</u> | NOTICE of Appearance by Andrew George Pappas on behalf of GENERAL COUNSEL AMICI (Pappas, Andrew) (En 04/11/2025) |

| 1/2025 | 57 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Adria Bonillas, Filing fee $ 100, receipt number ADCDC–11610850. Fee Status: Fee Paid. by LAWYERS' COMMITTEE FOR CIVIL RIGHTS UNDER LAW AND [AFFILIATES. (Attachments: # 1 Declaration, # 2 Certificate of Good Standing, # 3 Proposed Order)(Caspar, Edward) 04/11/2025) |
|---|---|---|
| 1/2025 | 58 | Unopposed MOTION for Leave to File Amicus Brief *in Support of Plaintiff's Motion for Summary Judgment and for D and Permanent Injunctive Relief* by AMICI CURIAE LITIGATION FIRMS. (Attachments: # 1 Exhibit – Brief of Ami Litigation Firms, # 2 Text of Proposed Order)(Reilly, Kathryn) (Entered: 04/11/2025) |
| 1/2025 | 59 | Unopposed MOTION for Leave to File Amicus Brief by AMERICAN CIVIL LIBERTIES UNION, AMERICAN CIV LIBERTIES UNION OF THE DISTRICT OF COLUMBIA, CATO INSTITUTE, CENTER FOR INDIVIDUAL RIGH ELECTRONIC FRONTIER FOUNDATION, FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION, IN FOR JUSTICE, KNIGHT FIRST AMENDMENT INSTITUTE AT COLUMBIA UNIVERSITY, NATIONAL COALI AGAINST CENSORSHIP, REPORTERS COMMITTEE FOR THE FREEDOM OF THE PRESS, RUTHERFORD IN SOCIETY FOR THE RULE OF LAW INSTITUTE. (Attachments: # 1 Exhibit Amicus Brief, # 2 Text of Proposed Ord Cecilia) (Entered: 04/11/2025) |
| 1/2025 | 60 | NOTICE of Appearance by Kathryn A. Reilly on behalf of AMICI CURIAE LITIGATION FIRMS (Reilly, Kathryn) ( 04/11/2025) |
| 1/2025 | 61 | NOTICE of Appearance by Cecilia D. Wang on behalf of AMERICAN CIVIL LIBERTIES UNION, AMERICAN CI LIBERTIES UNION OF THE DISTRICT OF COLUMBIA, CATO INSTITUTE, CENTER FOR INDIVIDUAL RIGH ELECTRONIC FRONTIER FOUNDATION, FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION, IN FOR JUSTICE, KNIGHT FIRST AMENDMENT INSTITUTE AT COLUMBIA UNIVERSITY, NATIONAL COALI AGAINST CENSORSHIP, REPORTERS COMMITTEE FOR THE FREEDOM OF THE PRESS, RUTHERFORD IN SOCIETY FOR THE RULE OF LAW INSTITUTE (Wang, Cecilia) (Entered: 04/11/2025) |
| 1/2025 | 62 | Unopposed MOTION for Leave to File Amicus Brief by LEGAL ETHICS PROFESSORS. (Attachments: # 1 Exhibit, Proposed Order)(Corkran, Kelsi) (Entered: 04/11/2025) |
| 1/2025 | 63 | NOTICE of Appearance by Kelsi B. Corkran on behalf of LEGAL ETHICS PROFESSORS (Corkran, Kelsi) (Entered: 04/11/2025) |
| 1/2025 | 64 | NOTICE of Appearance by Eric John Galvez Paredes on behalf of BAR ASSOCIATIONS (Paredes, Eric John) (Entere 04/11/2025) |
| 1/2025 | 65 | NOTICE of Appearance by Hayden Johnson on behalf of BAR ASSOCIATIONS (Johnson, Hayden) (Entered: 04/11/2 |
| 1/2025 | 66 | NOTICE of Appearance by Nathan P. Eimer on behalf of 807 LAW FIRMS (Eimer, Nathan) (Entered: 04/11/2025) |
| 1/2025 | 67 | Unopposed MOTION for Leave to File Amicus Brief by BAR ASSOCIATIONS. (Attachments: # 1 Exhibit – Amici C # 2 Text of Proposed Order)(Paredes, Eric John) (Entered: 04/11/2025) |
| 1/2025 | 68 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Samuel Davis, Filing fee $ 100, receipt number ADCDC–11611135. Fee Status: Fee Paid. by LEGAL ETHICS PROFESSORS. (Attachments: # 1 Exhibit, # 2 Text of Order)(Corkran, Kelsi) (Entered: 04/11/2025) |
| 1/2025 | 69 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Jeremiah Chin, Filing fee $ 100, receipt number ADCDC–11611150. Fee Status: Fee Paid. by FRED T. KOREMATSU CENTER FOR LAW AND EQUALITY. (Atta 1 Declaration Chin Declaration, # 2 Exhibit Certificate of Good Standing)(Davy, Jim) (Entered: 04/11/2025) |
| 1/2025 | 70 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Melissa Lee, Filing fee $ 100, receipt number ADCDC- Fee Status: Fee Paid. by FRED T. KOREMATSU CENTER FOR LAW AND EQUALITY. (Attachments: # 1 Declara Declaration, # 2 Exhibit Certificate of good standing)(Davy, Jim) (Entered: 04/11/2025) |
| 1/2025 | | MINUTE ORDER: Upon consideration of 69 Jeremiah Chin's motion for leave to appear pro hac vice, and the entire re it is hereby ORDERED that the motion is GRANTED. **Counsel should register for e–filing via PACER and file a no** |

| | | |
|---|---|---|
| | | **appearance pursuant to LCvR 83.6(a)** <u>Click for instructions</u>. Signed by Judge John D. Bates on 4/11/2025. (lcjdb2) ( 04/11/2025) |
| 1/2025 | | MINUTE ORDER: Upon consideration of <u>70</u> Melissa R. Lee's motion for leave to appear pro hac vice, and the entire re herein, it is hereby ORDERED that the motion is GRANTED. **Counsel should register for e–filing via PACER and f of appearance pursuant to LCvR 83.6(a)** <u>Click for instructions</u>. Signed by Judge John D. Bates on 4/11/2025. (lcjdb2 04/11/2025) |
| 1/2025 | <u>71</u> | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Jessica Levin, Filing fee $ 100, receipt number ADCDC–11611170. Fee Status: Fee Paid. by FRED T. KOREMATSU CENTER FOR LAW AND EQUALITY. (Atta <u>1</u> Declaration Levin Declaration, # <u>2</u> Exhibit Certificate of Good Standing)(Davy, Jim) (Entered: 04/11/2025) |
| 1/2025 | | MINUTE ORDER: Upon consideration of <u>33</u> <u>36</u> <u>37</u> <u>38</u> <u>42</u> <u>43</u> <u>44</u> <u>45</u> <u>48</u> <u>49</u> <u>50</u> <u>51</u> <u>54</u> <u>58</u> <u>59</u> <u>62</u> <u>67</u> motions for leave to fil briefs, and the entire record herein, it is hereby ORDERED that the motions are GRANTED. Signed by Judge John D. 4/11/2025. (lcjdb2) (Entered: 04/11/2025) |
| 1/2025 | <u>72</u> | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Susan McMahon, Filing fee $ 100, receipt number ADCDC–11611178. Fee Status: Fee Paid. by FRED T. KOREMATSU CENTER FOR LAW AND EQUALITY. (Atta <u>1</u> Declaration McMahon Declaration, # <u>2</u> Exhibit Certificate of Good Standing)(Davy, Jim) (Attachment 1 replaced on (zjm). (Entered: 04/11/2025) |
| 1/2025 | | MINUTE ORDER: Upon consideration of <u>71</u> Jessica Levin's motion for leave to appear pro hac vice, and the entire rec it is hereby ORDERED that the motion is GRANTED. **Counsel should register for e–filing via PACER and file a no appearance pursuant to LCvR 83.6(a)** <u>Click for instructions</u>. Signed by Judge John D. Bates on 4/11/2025. (lcjdb2) ( 04/11/2025) |
| 1/2025 | | MINUTE ORDER: Upon consideration of <u>57</u> Adria Bonillas's motion for leave to appear pro hac vice, and the entire rec it is hereby ORDERED that the motion is GRANTED. **Counsel should register for e–filing via PACER and file a no appearance pursuant to LCvR 83.6(a)** <u>Click for instructions</u>. Signed by Judge John D. Bates on 4/11/2025. (lcjdb2) ( 04/11/2025) |
| 1/2025 | | MINUTE ORDER: Upon consideration of <u>72</u> Susan McMahon's motion for leave to appear pro hac vice, and the entire herein, it is hereby ORDERED that the motion is GRANTED. **Counsel should register for e–filing via PACER and f of appearance pursuant to LCvR 83.6(a)** <u>Click for instructions</u>. Signed by Judge John D. Bates on 4/11/2025. (lcjdb2 04/11/2025) |
| 1/2025 | <u>73</u> | AMICUS BRIEF by GENERAL COUNSEL AMICI. (Rosenbaum, David) (Entered: 04/11/2025) |
| 1/2025 | <u>74</u> | AMICUS BRIEF *in Support of Plaintiff's Motion for Summary Judgment and for Declaratory and Permanent Injuncti* 24 NONGOVERNMENTAL ORGANIZATIONS. (Attachments: # <u>1</u> Appendix)(Zapf, William) (Entered: 04/11/2025) |
| 1/2025 | <u>75</u> | NOTICE of Appearance by Noam Biale on behalf of NEW YORK COUNCIL OF DEFENSE LAWYERS (Biale, Noa (Entered: 04/11/2025) |
| 1/2025 | <u>76</u> | NOTICE of Appearance by Kobie A. Flowers on behalf of NATIONAL ASSOCIATION OF CRIMINAL DEFENSE I (Flowers, Kobie) (Entered: 04/11/2025) |
| 1/2025 | <u>77</u> | NOTICE of Appearance by Sara E. Kropf on behalf of AMICI CURIAE 342 FORMER JUDGES (Kropf, Sara) (Enter 04/11/2025) |
| 1/2025 | <u>78</u> | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Donald Falk, Filing fee $ 100, receipt number ADCDC– Fee Status: Fee Paid. by AMICI CURIAE 342 FORMER JUDGES. (Attachments: # <u>1</u> Declaration of Donald Falk)(Kro (Entered: 04/11/2025) |
| 1/2025 | <u>79</u> | Consent MOTION for Leave to File Amicus Brief by AMICI CURIAE 342 FORMER JUDGES. (Attachments: # <u>1</u> Exi of judges), # <u>2</u> Exhibit B (brief), # <u>3</u> Text of Proposed Order)(Kropf, Sara) (Entered: 04/11/2025) |

| 1/2025 | 80 | Unopposed MOTION for Leave to File Amicus Brief by NATIONAL ASSOCIATION OF CRIMINAL DEFENSE LA NEW YORK COUNCIL OF DEFENSE LAWYERS. (Attachments: # 1 Exhibit 1: Brief, # 2 Exhibit 2: Proposed Orde Noam) (Entered: 04/11/2025) |
|---|---|---|
| 1/2025 | 98 | AMICUS BRIEF by FORMER SENIOR GOVERNMENT OFFICIALS. (zjm) (Entered: 04/28/2025) |
| 1/2025 | 99 | AMICUS BRIEF by 676 LAW PROFESSORS. (zjm) (Entered: 04/28/2025) |
| 1/2025 | 100 | AMICUS BRIEF by PAST PRESIDENTS OF THE DC BAR. (zjm) (Entered: 04/28/2025) |
| 1/2025 | 101 | AMICUS BRIEF by LAWYERS DEFENDING AMERICAN DEMOCRACY. (zjm) (Entered: 04/28/2025) |
| 1/2025 | 102 | AMICUS BRIEF by 24 NONGOVERNMENTAL ORGANIZATIONS. (zjm) (Entered: 04/28/2025) |
| 1/2025 | 103 | AMICUS BRIEF by INTERNATIONAL ACADEMY OF TRIAL LAWYERS. (zjm) (Entered: 04/28/2025) |
| 1/2025 | 104 | AMICUS BRIEF by FRED T. KOREMATSU CENTER FOR LAW AND EQUALITY. (zjm) (Entered: 04/28/2025) |
| 1/2025 | 105 | AMICUS BRIEF by 807 LAW FIRMS. (zjm) (Entered: 04/28/2025) |
| 1/2025 | 106 | AMICUS BRIEF by LAWYERS' COMMITTEE FOR CIVIL RIGHTS UNDER LAW AND LOCAL AFFILIATES. (2 (Entered: 04/28/2025) |
| 1/2025 | 107 | AMICUS BRIEF by MEDIA ORGANIZATIONS AND PRESS FREEDOM ADVOCATES. (zjm) (Entered: 04/28/202 |
| 1/2025 | 108 | AMICUS BRIEF by KENNETH C. PICKERING. (zjm) (Entered: 04/28/2025) |
| 1/2025 | 109 | AMICUS BRIEF by NAACP LEGAL DEFENSE & EDUCATIONAL FUND, INC.. (zjm) (Entered: 04/28/2025) |
| 1/2025 | 110 | AMICUS BRIEF by GENERAL COUNSEL AMICI. (zjm) (Entered: 04/28/2025) |
| 1/2025 | 111 | AMICUS BRIEF by AMICI CURIAE LITIGATION FIRMS. (zjm) (Entered: 04/28/2025) |
| 1/2025 | 112 | AMICUS BRIEF by AMERICAN CIVIL LIBERTIES UNION, AMERICAN CIVIL LIBERTIES UNION OF THE DI OF COLUMBIA, CATO INSTITUTE, CENTER FOR INDIVIDUAL RIGHTS, ELECTRONIC FRONTIER FOUND. FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION, INSTITUTE FOR JUSTICE, KNIGHT FIRST AMENDMENT INSTITUTE AT COLUMBIA UNIVERSITY, NATIONAL COALITION AGAINST CENSORSHIP. REPORTERS COMMITTEE FOR THE FREEDOM OF THE PRESS, RUTHERFORD INSTITUTE, SOCIETY FOR RULE OF LAW INSTITUTE. (zjm) (Entered: 04/28/2025) |
| 1/2025 | 113 | AMICUS BRIEF by LEGAL ETHICS PROFESSORS. (zjm) (Entered: 04/28/2025) |
| 1/2025 | 114 | AMICUS BRIEF by BAR ASSOCIATIONS. (zjm) (Entered: 04/28/2025) |
| 2/2025 | 81 | AMICUS BRIEF by MEDIA ORGANIZATIONS AND PRESS FREEDOM ADVOCATES. (Attachments: # 1 Appen A)(Kortz, Mason) (Entered: 04/12/2025) |
| 2/2025 | | MINUTE ORDER: Upon consideration of 79 80 motions for leave to file amicus briefs, and the entire record herein, it ORDERED that the motions are GRANTED. Signed by Judge John D. Bates on 4/12/2025. (lcjdb2) (Entered: 04/12/20 |
| 2/2025 | 115 | AMICUS BRIEF by 342 FORMER JUDGES. (zjm) (Entered: 04/28/2025) |
| 2/2025 | 116 | AMICUS BRIEF by NATIONAL ASSOCIATION OF CRIMINAL DEFENSE LAWYERS, NEW YORK COUNCIL DEFENSE LAWYERS. (zjm) (Entered: 04/28/2025) |
| 4/2025 | 82 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Ruth Greenwood, Filing fee $ 100, receipt number ADCDC–11611702. Fee Status: Fee Paid. by LEGAL ETHICS PROFESSORS. (Attachments: # 1 Exhibit, # 2 Exhibit Proposed Order)(Corkran, Kelsi) (Entered: 04/14/2025) |
| 4/2025 | | |

|  |  |  |
|---|---|---|
|  |  | MINUTE ORDER: Upon consideration of 82 Ruth Greenwood's motion for leave to appear pro hac vice, and the entire herein, it is hereby ORDERED that the motion is GRANTED. **Counsel should register for e–filing via PACER and f of appearance pursuant to LCvR 83.6(a)** Click for instructions. Signed by Judge John D. Bates on 4/14/2025. (lcjdb2 04/14/2025) |
| 4/2025 | 83 | ERRATA by LEGAL ETHICS PROFESSORS re 68 Motion for Leave to Appear Pro Hac Vice,. (Attachments: # 1 Exhibit)(Corkran, Kelsi) (Entered: 04/14/2025) |
| 4/2025 |  | MINUTE ORDER: Upon consideration of 68 Samuel J. Davis's motion for leave to appear pro hac vice, [83–1] his cert good standing, and the entire record herein, it is hereby ORDERED that the motion is GRANTED. **Counsel should reg e–filing via PACER and file a notice of appearance pursuant to LCvR 83.6(a)** Click for instructions. Signed by Jud Bates on 4/14/2025. (lcjdb2) (Entered: 04/14/2025) |
| 4/2025 | 84 | NOTICE of Appearance by Stephen Craig Leckar on behalf of AARON H. CAPLAN (Leckar, Stephen) (Entered: 04/1 |
| 4/2025 | 85 | Unopposed MOTION for Leave to File Amicus Brief*Nunc Pro Tunc* by AARON H. CAPLAN. (Attachments: # 1 Exhi Brief of Professor Aaron H. Caplan Regarding Attainder, # 2 Text of Proposed Order)(Leckar, Stephen) (Entered: 04/14 |
| 4/2025 | 86 | NOTICE of Appearance by Adria Jasmine Bonillas on behalf of LAWYERS' COMMITTEE FOR CIVIL RIGHTS UN AND LOCAL AFFILIATES (Bonillas, Adria) (Entered: 04/14/2025) |
| 4/2025 |  | NOTICE OF ERROR regarding 78 MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Donald Falk, Filing receipt number ADCDC–11611299. Fee Status: Fee Paid.. The following error(s) need correction: Pro Hac Vice motio accompanied by a Certificate of Good Standing issued within the last 30 days (LCvR 83.2(c)(2)). Please file certificate (zjm) (Entered: 04/14/2025) |
| 5/2025 | 88 | ERRATA *Certificate of Good Standing (Donald Falk)* by 342 FORMER JUDGES re 78 Motion for Leave to Appear P Vice,. (Kropf, Sara) (Entered: 04/15/2025) |
| 5/2025 | 89 | NOTICE of Appearance by Melissa Lee on behalf of FRED T. KOREMATSU CENTER FOR LAW AND EQUALITY Melissa) (Entered: 04/15/2025) |
| 5/2025 | 90 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Charlotte Garden, Filing fee $ 100, receipt number ADCDC–11617978. Fee Status: Fee Paid. by FRED T. KOREMATSU CENTER FOR LAW AND EQUALITY. (Atta 1 Declaration Garden declaration, # 2 Exhibit Certificate of good standing)(Davy, Jim) (Entered: 04/15/2025) |
| 5/2025 |  | MINUTE ORDER: Upon consideration of 85 the unopposed motion to file amicus brief, and the entire record herein, it ORDERED that the motion is GRANTED. Signed by Judge John D. Bates on 4/15/2025. (lcjdb2) (Entered: 04/15/2025 |
| 5/2025 |  | MINUTE ORDER: Upon consideration of 90 Charlotte Garden's motion for leave to appear pro hac vice, and the entire herein, it is hereby ORDERED that the motion is GRANTED. **Counsel should register for e–filing via PACER and f of appearance pursuant to LCvR 83.6(a)** Click for instructions. Signed by Judge John D. Bates on 4/15/2025. (lcjdb2 04/15/2025) |
| 5/2025 | 91 | NOTICE of Appearance by Andrea C. Ferster on behalf of PAST PRESIDENTS OF THE DC BAR (Ferster, Andrea) ( 04/15/2025) |
| 5/2025 | 92 | NOTICE of Appearance by Susan A. McMahon on behalf of FRED T. KOREMATSU CENTER FOR LAW AND EQ (McMahon, Susan) (Entered: 04/15/2025) |
| 5/2025 | 117 | AMICUS BRIEF by AARON H. CAPLAN. (zjm) (Entered: 04/28/2025) |
| 6/2025 | 93 | NOTICE of Appearance by Jessica Levin on behalf of FRED T. KOREMATSU CENTER FOR LAW AND EQUALITY Jessica) (Entered: 04/16/2025) |
| 7/2025 | 94 | Memorandum in opposition to re 20 Motion to Dismiss filed by JENNER & BLOCK LLP. (Attachments: # 1 Declarati Declaration of Michael A. Attanasio in support of Plaintiff's Opposition to Defendants' Motion to Dismiss, # 2 Exhibit |

| | | |
|---|---|---|
| | | Exhibit 28, # 4 Text of Proposed Order)(Attanasio, Michael) (Entered: 04/17/2025) |
| 7/2025 | 95 | Memorandum in opposition to re 19 Motion for Summary Judgment,,,,,, Motion for Permanent Injunction,,,,, filed by S BESSENT(in his official capacity as Acting Director of the Consumer Financial Protection Bureau), SCOTT BESSENT official capacity as Secretary of the Treasury), PAMELA J. BONDI, DOUGLAS J. BURGUM, BRENDAN CARR, JU CHANG, MARK C. CHRISTIE, DOUGLAS A. COLLINS, CONSUMER FINANCIAL PROTECTION BUREAU, C. A. CRENSHAW, DEPARTMENT OF DEFENSE, DEPARTMENT OF HEALTH AND HUMAN SERVICES, DEPA OF HOMELAND SECURITY, DEPARTMENT OF THE INTERIOR, DEPARTMENT OF THE TREASURY, DEPA OF VETERANS AFFAIRS, STEPHEN EHEKIAN, ENVIRONMENTAL PROTECTION AGENCY, EQUAL EMPLO OPPORTUNITY COMMISSION, CHARLES EZELL, FEDERAL COMMUNICATIONS COMMISSION, FEDERA REGULATORY COMMISSION, FEDERAL TRADE COMMISSION, ANDREW N. FERGUSON, TULSI GABBAR GENERAL SERVICES ADMINISTRATION, ANNA M. GOMEZ, PETER A. HEGSETH, MELISSA HOLYOAK, R KENNEDY, JR, ANDREA LUCAS, KRISTI NOEM, OFFICE OF MANAGEMENT AND BUDGET, OFFICE OF PERSONNEL MANAGEMENT, OFFICE OF THE DIRECTOR OF NATIONAL INTELLIGENCE, OTHER AGENC SUBJECT TO EXECUTIVE ORDER ADDRESSING RISKS FROM JENNER & BLOCK, HESTER M. PEIRCE, WI PHILLIPS, DAVID ROSNER, SECURITIES AND EXCHANGE COMMISSION, LINDSAY S. SEE, NATHAN SIM GEOFFREY STARKS, DOUG TULINO, U.S. DEPARTMENT OF JUSTICE, UNITED STATES OF AMERICA, UN STATES POSTAL SERVICE, MARK T. UYEDA, RUSSELL T. VOUGHT, LEE ZELDIN. (Attachments: # 1 Statem Response to Plantiff's Statement of Facts, # 2 Declaration of Richard Lawson with Exhibits 1–10)(Lawson, Richard) (E 04/17/2025) |
| 8/2025 | | MINUTE ORDER: Upon consideration of 19 plaintiff's motion for summary judgment, 20 defendants' motion to dismi entire record herein, it is hereby ORDERED that the Court will hold a hearing in this matter on April 28, 2025, at 10:30 Courtroom 30. A public line will be available at: 833–990–9400; meeting ID: 367524674. Signed by Judge John D. Ba 4/18/2025. (lcjdb2) (Entered: 04/18/2025) |
| 22/2025 | 96 | NOTICE of Appearance by Jeremiah Chin on behalf of FRED T. KOREMATSU CENTER FOR LAW AND EQUALI Jeremiah) (Entered: 04/22/2025) |
| 24/2025 | 97 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Jeannie Suk Gersen, Filing fee $ 100, receipt number ADCDC–11642970. Fee Status: Fee Paid. by BAR ASSOCIATIONS. (Attachments: # 1 Declaration of Jeannie Suk G Exhibit – Certificate of Good Standing, # 3 Text of Proposed Order)(Paredes, Eric John) (Entered: 04/24/2025) |
| 24/2025 | | MINUTE ORDER: Upon consideration of 97 Jeannie Suk Gersen's motion for leave to appear pro hac vice, and the ent herein, it is hereby ORDERED that the motion is GRANTED. **Counsel should register for e–filing via PACER and f of appearance pursuant to LCvR 83.6(a)** Click for instructions. Signed by Judge John D. Bates on 4/24/2025. (lcjdb2 04/24/2025) |
| 28/2025 | | Minute Entry for proceeding held on 4/28/2025 before Judge John D. Bates: Motion Hearing re 19 MOTION for Summ Judgment, MOTION for Permanent Injunction and 20 MOTION to Dismiss . Parties both presented their arguments an being taken under advisement. Order forthcoming. (Court Reporter Chandra Kean.) (zed) (Entered: 04/28/2025) |
| 29/2025 | 118 | TRANSCRIPT OF PROCEEDINGS before Judge John D. Bates held on Monday, April 28, 2025; Page Numbers: 1–9 Issuance: April 28, 2025. Court Reporter/Transcriber Chandra Kean, RMR, Telephone number 202–354–3404.Transcr ordered by submitting the Transcript Order Form<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchas court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (m condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty–one days to file with the court and the co any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made av the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifica covered, is located on our website at www.dcd.uscourts.gov. |

| | | |
|---|---|---|
| | | Redaction Request due 5/20/2025. Redacted Transcript Deadline set for 5/30/2025. Release of Transcript Restriction se[...] 7/28/2025.(Kean, Chandra) (Entered: 04/29/2025) |
| 06/2025 | 119 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed as to the United States Attorney General. [...] Service Upon United States Attorney on 4/14/2024. (Attanasio, Michael) Modified on 5/12/2025 to correct party served [...] (Entered: 05/06/2025) |
| 06/2025 | 120 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed. SCOTT BESSENT(in his official capaci[...] Director of the Consumer Financial Protection Bureau) served on 4/14/2025; SCOTT BESSENT(in his official capacity [...] Secretary of the Treasury) served on 4/14/2025; PAMELA J. BONDI served on 4/14/2025; DOUGLAS J. BURGUM s[...] 4/14/2025; BRENDAN CARR served on 4/17/2025; JUDY W. CHANG served on 4/14/2025; MARK C. CHRISTIE s[...] 4/14/2025; DOUGLAS A. COLLINS served on 4/14/2025; CONSUMER FINANCIAL PROTECTION BUREAU serv[...] 4/14/2025; CAROLINE A. CRENSHAW served on 4/11/2025; DEPARTMENT OF DEFENSE served on 4/14/2025; [...] DEPARTMENT OF HEALTH AND HUMAN SERVICES served on 4/14/2025; DEPARTMENT OF HOMELAND S[...] served on 4/14/2025; DEPARTMENT OF THE INTERIOR served on 4/14/2025; DEPARTMENT OF VETERANS A[...] served on 4/14/2025; STEPHEN EHEKIAN served on 4/14/2025; ENVIRONMENTAL PROTECTION AGENCY ser[...] 4/14/2025; EQUAL EMPLOYMENT OPPORTUNITY COMMISSION served on 4/14/2025; CHARLES EZELL serv[...] 4/14/2025; FEDERAL COMMUNICATIONS COMMISSION served on 4/17/2025; FEDERAL ENERGY REGULAT[...] COMMISSION served on 4/14/2025; FEDERAL TRADE COMMISSION served on 4/14/2025; ANDREW N. FERGU[...] served on 4/14/2025; TULSI GABBARD served on 5/2/2025; GENERAL SERVICES ADMINISTRATION served on [...] ANNA M. GOMEZ served on 4/17/2025; PETER B. HEGSETH served on 4/14/2025; MELISSA HOLYOAK served [...] 4/14/2025; ROBERT F. KENNEDY, JR served on 4/14/2025; ANDREA LUCAS served on 4/14/2025; KRISTI NOEM [...] 4/14/2025; OFFICE OF MANAGEMENT AND BUDGET served on 4/17/2025; OFFICE OF PERSONNEL MANAG[...] served on 4/14/2025; OFFICE OF THE DIRECTOR OF NATIONAL INTELLIGENCE served on 5/2/2025; HESTER [...] PEIRCE served on 4/11/2025; WILLIE L. PHILLIPS served on 4/14/2025; DAVID ROSNER served on 4/14/2025; SE[...] AND EXCHANGE COMMISSION served on 4/11/2025; LINDSAY S. SEE served on 4/14/2025; NATHAN SIMING[...] served on 4/17/2025; GEOFFREY STARKS served on 4/17/2025; DOUG TULINO served on 4/16/2025; U.S. DEPAR[...] OF JUSTICE served on 4/14/2025; UNITED STATES OF AMERICA served on 4/14/2025; UNITED STATES POST[...] SERVICE served on 4/14/2025; MARK T. UYEDA served on 4/11/2025; RUSSELL T. VOUGHT served on 4/17/202[...] ZELDIN served on 4/14/2025 (Attanasio, Michael) (Entered: 05/06/2025) |
| 06/2025 | 129 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed as to the United States Attorney. Date of [...] Upon United States Attorney on 4/14/2025. Answer due for ALL FEDERAL DEFENDANTS by 6/13/2025. (See Dock[...] 120 to view document) (zjm) (Entered: 05/12/2025) |
| 07/2025 | 121 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Eric R. Olson, Filing fee $ 100, receipt number ADCDC–11673778. Fee Status: Fee Paid. by LAW FIRM PARTNERS UNITED INC. (Attachments: # 1 Declaration)[...] Eric) (Entered: 05/07/2025) |
| 07/2025 | | MINUTE ORDER: Upon consideration of 121 Eric R. Olson's motion for leave to appear pro hac vice, and the entire re[...] herein, it is hereby ORDERED that the motion is GRANTED. **Counsel should register for e–filing via PACER and [...] of appearance pursuant to LCvR 83.6(a)** Click for instructions. Signed by Judge John D. Bates on 5/7/2025. (lcjdb2)[...] 05/07/2025) |
| 08/2025 | 122 | NOTICE of Appearance by Eric R. Olson on behalf of LAW FIRM PARTNERS UNITED INC (Olson, Eric) (Entered: 05/08/2025) |
| 08/2025 | 123 | Unopposed MOTION for Leave to File Amicus Brief by LAW FIRM PARTNERS UNITED INC. (Attachments: # 1 E[...] Amicus Brief, # 2 Text of Proposed Order)(Olson, Eric) (Entered: 05/08/2025) |
| 09/2025 | | MINUTE ORDER: Upon consideration of 123 Law Firm Partners United's unopposed motion for leave to file amicus b[...] the entire record herein, it is hereby ORDERED that the motion is GRANTED. Signed by Judge John D. Bates on 5/9/2[...] (lcjdb2) (Entered: 05/09/2025) |
| 09/2025 | 135 | AMICUS BRIEF by LAW FIRM PARTNERS UNITED INC. (zjm) (Entered: 05/19/2025) |

| 2/2025 | 124 | Unopposed MOTION for Leave to File Amicus Brief *IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUD AND PERMANENT INJUNCTIVE RELIEF* by 1136 LAW STUDENTS AND 52 LAW STUDENT ORGANIZATION Jordan) (Entered: 05/12/2025) |
|---|---|---|
| 2/2025 | 125 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Charles L. Becker, Filing fee $ 100, receipt number ADCDC–11682158. Fee Status: Fee Paid. by 1136 LAW STUDENTS AND 52 LAW STUDENT ORGANIZATIONS (Attachments: # 1 Text of Proposed Order)(Merson, Jordan) (Entered: 05/12/2025) |
| 2/2025 | 126 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Corrie Woods, Filing fee $ 100, receipt number ADCDC–11682183. Fee Status: Fee Paid. by 1136 LAW STUDENTS AND 52 LAW STUDENT ORGANIZATIONS (Attachments: # 1 Text of Proposed Order)(Merson, Jordan) (Entered: 05/12/2025) |
| 2/2025 | 127 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Spencer J. Pahlke, Filing fee $ 100, receipt number ADCDC–11682197. Fee Status: Fee Paid. by 1136 LAW STUDENTS AND 52 LAW STUDENT ORGANIZATIONS (Attachments: # 1 Text of Proposed Order)(Merson, Jordan) (Entered: 05/12/2025) |
| 2/2025 | 128 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Shanin Specter, Filing fee $ 100, receipt number ADCDC–11682206. Fee Status: Fee Paid. by 1136 LAW STUDENTS AND 52 LAW STUDENT ORGANIZATIONS (Attachments: # 1 Text of Proposed Order)(Merson, Jordan) (Entered: 05/12/2025) |
| 2/2025 | 130 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed. DEPARTMENT OF THE TREASURY 5/12/2025 (Attanasio, Michael) (Entered: 05/12/2025) |
| 2/2025 | | MINUTE ORDER: Upon consideration of 125 126 127 128 motions for leave to appear pro hac vice by Charles L. Bec Woods, Spencer J. Pahlke, and Shanin Specter, it is hereby ORDERED that the motions are GRANTED. **Counsel shou for e–filing via PACER and file a notice of appearance pursuant to LCvR 83.6(a)** Click for instructions. Signed by D. Bates on 5/12/2025. (lcjdb2) (Entered: 05/12/2025) |
| 2/2025 | | MINUTE ORDER: Upon consideration of 124 1136 Law Students and 52 Law Student Organizations' unopposed moti to file amicus brief, and the entire record herein, it is hereby ORDERED that the motion is GRANTED. Signed by Judg Bates on 5/12/2025. (lcjdb2) (Entered: 05/12/2025) |
| 2/2025 | 136 | ENTERED IN ERROR.....AMICUS BRIEF by 1136 LAW STUDENTS AND 52 LAW STUDENT ORGANIZATION Modified on 5/21/2025 Amicus was not attached Motion. Filed in error. (zjm). (Entered: 05/19/2025) |
| 3/2025 | 131 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed as to the United States Attorney. Date of Upon United States Attorney on 4/14/2024. Answer due for ALL FEDERAL DEFENDANTS by 6/13/2024. (Attanasio (Entered: 05/13/2025) |
| 4/2025 | 132 | NOTICE *of Filing Plaintiff Jenner & Block LLP's Amended Proposed Order* by JENNER & BLOCK LLP re 19 Motion Summary Judgment,,,,,, Motion for Permanent Injunction,,,,, (Attachments: # 1 Text of Proposed Order)(Attanasio, Mic (Entered: 05/14/2025) |
| 4/2025 | 133 | ENTERED IN ERROR.....NOTICE *of Recent Development* by JENNER & BLOCK LLP (Attanasio, Michael) Modifie 5/19/2025 (zjm). (Entered: 05/14/2025) |
| 5/2025 | 134 | RESPONSE re 132 Notice (Other), *Opposing Plaintiff's Motion for Leave to Amend* filed by SCOTT BESSENT(in his capacity as Acting Director of the Consumer Financial Protection Bureau), SCOTT BESSENT(in his official capacity a of the Treasury), PAMELA J. BONDI, DOUGLAS J. BURGUM, BRENDAN CARR, JUDY W. CHANG, MARK C. DOUGLAS A. COLLINS, CONSUMER FINANCIAL PROTECTION BUREAU, CAROLINE A. CRENSHAW, DEPARTMENT OF DEFENSE, DEPARTMENT OF HEALTH AND HUMAN SERVICES, DEPARTMENT OF HO SECURITY, DEPARTMENT OF THE INTERIOR, DEPARTMENT OF THE TREASURY, DEPARTMENT OF VET AFFAIRS, STEPHEN EHEKIAN, ENVIRONMENTAL PROTECTION AGENCY, EQUAL EMPLOYMENT OPPO COMMISSION, CHARLES EZELL, FEDERAL COMMUNICATIONS COMMISSION, FEDERAL ENERGY REGU COMMISSION, FEDERAL TRADE COMMISSION, ANDREW N. FERGUSON, TULSI GABBARD, GENERAL S ADMINISTRATION, ANNA M. GOMEZ, PETER B. HEGSETH, MELISSA HOLYOAK, ROBERT F. KENNEDY, |

| | | |
|---|---|---|
| | | ANDREA LUCAS, KRISTI NOEM, OFFICE OF MANAGEMENT AND BUDGET, OFFICE OF PERSONNEL MANAGEMENT, OFFICE OF THE DIRECTOR OF NATIONAL INTELLIGENCE, OTHER AGENCIES SUBJECT EXECUTIVE ORDER ADDRESSING RISKS FROM JENNER & BLOCK, HESTER M. PEIRCE, WILLIE L. PHILI DAVID ROSNER, SECURITIES AND EXCHANGE COMMISSION, LINDSAY S. SEE, NATHAN SIMINGTON, (STARKS, DOUG TULINO, U.S. DEPARTMENT OF JUSTICE, UNITED STATES OF AMERICA, UNITED STAT POSTAL SERVICE, MARK T. UYEDA, RUSSELL T. VOUGHT, LEE ZELDIN. (Lawson, Richard) Modified on 5/1 correct event(zjm). (Entered: 05/15/2025) |
| 9/2025 | | NOTICE OF ERROR regarding 133 Notice (Other). The following error(s) need correction: Incorrect format (Letter)– correspondence is not permitted (LCvR 5.1(a)). Please refile. (zjm) (Entered: 05/19/2025) |
| 20/2025 | 137 | NOTICE *of Recent Development* by JENNER & BLOCK LLP (Attanasio, Michael) (Entered: 05/20/2025) |
| 23/2025 | | MINUTE ORDER: Upon consideration of 78 Donald Falk's motion for leave to appear pro hac vice, 88 the certificate o standing, and the entire record herein, it is hereby ORDERED that the motion is GRANTED. **Counsel should register via PACER and file a notice of appearance pursuant to LCvR 83.6(a)** Click for instructions. Signed by Judge John 5/23/2025. (lcjdb2) (Entered: 05/23/2025) |
| 23/2025 | 138 | MEMORANDUM OPINION. Signed by Judge John D. Bates on 5/23/2025. (lcjdb2) (Entered: 05/23/2025) |
| 23/2025 | 139 | ORDER granting 19 Jenner's motions for summary judgment and permanent injunction and denying 20 the defendants' dismiss. Defendants' status report due not later than May 29, 2025. Signed by Judge John D. Bates on 5/23/2025. (lcjdb (Additional attachment(s) added on 5/23/2025: # 1 Appendix A) (zed). (Entered: 05/23/2025) |
| 27/2025 | 140 | ENTERED IN ERROR.....NOTICE of Appearance by Donald Manwell Falk on behalf of 342 FORMER JUDGES (Fal Modified on 5/29/2025 (zjm). (Entered: 05/27/2025) |
| 29/2025 | 141 | MOTION for Order , MOTION to Clarify by U.S. DEPARTMENT OF JUSTICE. (Lawson, Richard) (Entered: 05/29/2 |
| 29/2025 | | NOTICE OF ERROR regarding 140 Notice of Appearance. The following error(s) need correction: Invalid attorney sig signature on document must match PACER login. Form is fillable; document must be a non–fillable PDF. Please refile (Entered: 05/29/2025) |
| 29/2025 | | MINUTE ORDER: Upon consideration of 141 defendants' motion to clarify, and the entire record herein, plaintiff is he ORDERED to respond by not later than 12 PM on May 30, 2025. Signed by Judge John D. Bates on 5/29/2025. (lcjdb2 05/29/2025) |
| 30/2025 | 142 | RESPONSE re 141 MOTION to Clarify filed by JENNER & BLOCK LLP. (Attanasio, Michael) (Entered: 05/30/2025 |
| 02/2025 | 143 | ORDER granting in part and denying in part 141 defendants' motion to clarify. See Order for details. Signed by Judge J Bates on 6/2/2025. (lcjdb2) (Entered: 06/02/2025) |
| 06/2025 | | MINUTE ORDER: It is hereby ORDERED that defendants shall file the status report that was due on May 29, see 139 later than June 10, 2025. Signed by Judge John D. Bates on 6/6/2025. (lcjdb2) (Entered: 06/06/2025) |
| 06/2025 | 144 | STATUS REPORT by SCOTT BESSENT(in his official capacity as Acting Director of the Consumer Financial Protec Bureau), SCOTT BESSENT(in his official capacity as Secretary of the Treasury), PAMELA J. BONDI, DOUGLAS J. BRENDAN CARR, JUDY W. CHANG, MARK C. CHRISTIE, DOUG COLLINS, CONSUMER FINANCIAL PROT BUREAU, CAROLINE A. CRENSHAW, DEPARTMENT OF DEFENSE, DEPARTMENT OF HEALTH AND HUM SERVICES, DEPARTMENT OF HOMELAND SECURITY, DEPARTMENT OF THE INTERIOR, DEPARTMENT TREASURY, DEPARTMENT OF VETERANS AFFAIRS, STEPHEN EHEKIAN, ENVIRONMENTAL PROTECTIC AGENCY, EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, CHARLES EZELL, FEDERAL COMMUNIC COMMISSION, FEDERAL ENERGY REGULATORY COMMISSION, FEDERAL TRADE COMMISSION, ANDR FERGUSON, TULSI GABBARD, GENERAL SERVICES ADMINISTRATION, ANNA M. GOMEZ, PETER B. HE MELISSA HOLYOAK, ROBERT F. KENNEDY, JR, ANDREA LUCAS, KRISTI NOEM, OFFICE OF MANAGEM BUDGET, OFFICE OF PERSONNEL MANAGEMENT, OFFICE OF THE DIRECTOR OF NATIONAL INTELLIG |

| | | |
|---|---|---|
| | | OTHER AGENCIES SUBJECT TO EXECUTIVE ORDER ADDRESSING RISKS FROM JENNER & BLOCK, HES PEIRCE, WILLIE L. PHILLIPS, DAVID ROSNER, SECURITIES AND EXCHANGE COMMISSION, LINDSAY S. NATHAN SIMINGTON, GEOFFREY STARKS, DOUG TULINO, U.S. DEPARTMENT OF JUSTICE, UNITED ST AMERICA, UNITED STATES POSTAL SERVICE, MARK T. UYEDA, RUSSELL VOUGHT, LEE M. ZELDIN. (L Richard) (Entered: 06/06/2025) |
| 21/2025 | 145 | NOTICE OF APPEAL TO DC CIRCUIT COURT as to 139 Order on Motion for Summary Judgment,, Order on Motio Dismiss,, Order on Motion for Permanent Injunction, 143 Order on Motion to Clarify, 138 Memorandum & Opinion by BESSENT(in his official capacity as Acting Director of the Consumer Financial Protection Bureau), TULSI GABBAR DOUGLAS J. BURGUM, OTHER AGENCIES SUBJECT TO EXECUTIVE ORDER ADDRESSING RISKS FROM & BLOCK, GENERAL SERVICES ADMINISTRATION, NATHAN SIMINGTON, DEPARTMENT OF HEALTH A HUMAN SERVICES, DEPARTMENT OF THE TREASURY, DAVID ROSNER, ANNA M. GOMEZ, JUDY W. CH HESTER M. PEIRCE, DEPARTMENT OF VETERANS AFFAIRS, DEPARTMENT OF DEFENSE, STEPHEN EHE LEE M. ZELDIN, ENVIRONMENTAL PROTECTION AGENCY, DOUGLAS TULINO, ANDREA LUCAS, SCOT BESSENT(in his official capacity as Secretary of the Treasury), ANDREW N. FERGUSON, FEDERAL ENERGY REGULATORY COMMISSION, DEPARTMENT OF THE INTERIOR, MARK T. UYEDA, LINDSAY S. SEE, ROI KENNEDY, JR, DEPARTMENT OF HOMELAND SECURITY, CAROLINE A. CRENSHAW, WILLIE L. PHILLII NOEM, DOUG COLLINS, UNITED STATES POSTAL SERVICE, U.S. DEPARTMENT OF JUSTICE, CHARLES GEOFFREY STARKS, RUSSELL VOUGHT, SECURITIES AND EXCHANGE COMMISSION, MELISSA ANN H BRENDAN CARR, MARK C. CHRISTIE, UNITED STATES OF AMERICA, PAMELA J. BONDI, FEDERAL TRA COMMISSION, OFFICE OF PERSONNEL MANAGEMENT, FEDERAL COMMUNICATIONS COMMISSION, C FINANCIAL PROTECTION BUREAU, OFFICE OF THE DIRECTOR OF NATIONAL INTELLIGENCE, OFFICE MANAGEMENT AND BUDGET, PETER B. HEGSETH, EQUAL EMPLOYMENT OPPORTUNITY COMMISSIO Status: No Fee Paid. Parties have been notified. (Lawson, Richard) (Entered: 07/21/2025) |

# UNITED STATES DISTRICT COURT FOR THE
# DISTRICT OF COLUMBIA

333 Constitution Avenue, NW
Washington, DC 20001-2866
Phone: 202-216-7000 | Facsimile: 202-219-8530

Plaintiff: **JENNER & BLOCK LLP**

vs.

Civil Action No. **1:25-cv-00916**

Defendant: **US DEPARTMENT OF JUSTICE**

## CIVIL NOTICE OF APPEAL

Notice is hereby given this  21  day of ____July____  20 25 , that

Defendants

hereby appeals to the United States Court of Appeals for the District of Columbia Circuit from the

judgment of this court entered on the  23  day of ____May____ , 20 25 , in

favor of Plaintiff

against said Defendants

Attorney/Pro Se Party Signature:

Name: RICHARD LAWSON

Address: US DEPARTMENT OF JUSTICE

PO BOX 878

WASHINGTON DC 20044

Telephone: ( 202 )  445-8042

(Pursuant to Rule 4(a) of the Federal Rules of Appellate Procedure a notice of appeal in a civil action must be filed within 30 days after the date of entry of judgment or 60 days if the United States or officer or agency is a party)

USCA Form 13
Rev. June 2017

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

JENNER & BLOCK LLP,

     Plaintiff,

     v.

U.S. DEPARTMENT OF JUSTICE, et al.,

     Defendants.

Civil Action No. 25-916 (JDB)

## ORDER

Upon consideration of [19] Jenner & Block's motion for summary judgment, [20] the defendants' motion to dismiss, and the entire record herein, and for the reasons set forth in the memorandum opinion issued on this date, it is hereby

**ORDERED** that [19] Jenner's motion for summary judgment is **GRANTED**; it is further

**ORDERED** that [20] the defendants' motion to dismiss is **DENIED**; it is further

**DECLARED** that Executive Order 14246, Addressing Risks from Jenner & Block, 90 Fed. Reg. 13997 (Mar. 28, 2025), is unlawful because it violates the First Amendment to the United States Constitution; it is further

**DECLARED** that Executive Order 14246 is therefore null and void; it is further

**ORDERED** that:

(1)  the defendants are permanently **ENJOINED** from implementing or enforcing Sections 2–5 of Executive Order 14246 in any way;

(2) the defendants are **DIRECTED** to rescind all formal or informal guidance or other direction provided to officers, staff, employees, or contractors of the federal government to communicate, effectuate, implement, or enforce Executive Order 14246;

1

(3) the defendants are **DIRECTED** immediately to notify all officers, staff, employees, and contractors subject to Executive Order 14246 that Executive Order 14246 is unlawful, null, and void, and that Executive Order 14246 therefore should be disregarded, including all prior formal or informal advice, opinions, or direction previously received or communicated to effectuate, implement, or enforce Executive Order 14246, and that all departments, agencies, officers, staff, employees, and contractors of the federal government should carry on with their ordinary course of business with Jenner & Block LLP, its personnel, its clients, and its clients' personnel known or believed by them to be associated with Jenner & Block LLP, as if Executive Order 14246 had not issued;

(4) the defendants are **DIRECTED** immediately to (a) communicate to every recipient of a formal or informal request for disclosure of any relationship with Jenner & Block LLP or any person associated with Jenner & Block LLP made pursuant to Section 3(a) of Executive Order 14246 that such request is permanently rescinded; and (b) cease making such requests for disclosure pursuant to Section 3(a) of Executive Order 14246;

(5) the defendants are **DIRECTED** to cease any security clearance review made pursuant to Sections 1 or 2(a) of Executive Order 14246 and to reverse any suspension or revocation of any active security clearances made pursuant to Sections 1 or 2(a) of Executive Order 14246;

(6) the defendants are **ORDERED** that they must, in good faith, take such other steps as are necessary to prevent the implementation of Executive Order 14246 and to reverse any implementation or enforcement of Executive Order 14246 that has occurred or is occurring;

(7) defendants Office of Management and Budget ("OMB") and Russell Vought, in his official capacity as director of OMB, are **DIRECTED** to identify all government goods, property,

material, and services provided for the benefit of Jenner & Block LLP that were previously identified pursuant to Section 2(b) of Executive Order 14246 and to immediately issue direction to the relevant heads of agencies that they are to reverse any cessation of the provision of such material or services made pursuant to Executive Order 14246;

(8) defendants U.S. Department of Justice; Pamela Bondi, in her official capacity as U.S. Attorney General; Equal Employment Opportunity Commission ("EEOC"); and Andrea R. Lucas, in her official capacity as Acting Chair of the EEOC, are **DIRECTED** immediately to cease any investigation of Jenner & Block LLP made pursuant to Section 4 of Executive Order 14246, and to withdraw any requests for information from Jenner & Block LLP or other investigative steps made pursuant to Section 4 of Executive Order 14246;

(9) defendants U.S. Department of Justice; Pamela Bondi, in her official capacity as U.S. Attorney General; OMB; and Russell Vought, in his official capacity as Director of OMB, are **DIRECTED** immediately to issue direction, which shall include a copy of this Order, to all defendants and all departments, agencies, and other entities subject to Executive Order 14246, including their respective officers, staff, employees, and contractors, to:

    a.  rescind any implementation or enforcement of Executive Order 14246, including any use, consideration, or reliance on the statements in Section 1 of Executive Order 14246;

    b.  rescind all formal or informal guidance or other direction provided to officers, staff, employees, or contractors to communicate, effectuate, implement, or enforce Executive Order 14246 in whole or in part;

    c.  disregard Executive Order 14246 in its entirety in their dealings with Jenner & Block LLP, Jenner & Block LLP personnel, and clients known or believed by them

3

to be associated with Jenner & Block LLP, and carry on with their ordinary course of business as if Executive Order 14246 had not issued;

d.  immediately communicate to every recipient of a formal or informal request for disclosure of any relationship with Jenner & Block LLP or any person associated with the firm made pursuant to Executive Order 14246 that such request is permanently rescinded, and cease making such requests for disclosure pursuant to Executive Order 14246;

e.  cease any security clearance review made or initiated pursuant to Sections 1 or 2(a) of Executive Order 14246 and reverse any suspension or revocation of any active security clearances made pursuant to Sections 1 or 2(a) of Executive Order 14246;

f.  act in good faith to take such other steps as are necessary to prevent the implementation or enforcement of Executive Order 14246 and to reverse any implementation or enforcement of Executive Order 14246 that has occurred or is occurring;

g.  comply with all forms of relief in this Order; and

h.  be advised that all defendants and all departments, agencies, and other entities subject to Executive Order 14246, including their respective officers, staff, employees and contractors, are bound by the Court's Order, under penalty of contempt.

For the avoidance of doubt, the recipients of the foregoing direction shall include, but not be limited to (i) defendants; (ii) the departments, agencies, and other entities listed in Appendix A hereto, including the responsible officials and their successors at each entity, also listed in Appendix A; (iii) any other departments, agencies, and entities that received Executive Order

4

14246 or guidance related to Executive Order 14246; and (iv) any officers, staff, employees, and contractors of any of the foregoing who were provided with Executive Order 14246 or guidance related to Executive Order 14246; and it is further

     **ORDERED** that the defendants shall file a status report within three business days of this Order describing the steps taken to ensure compliance with this Order and certifying compliance with its requirements; and it is further

     **ORDERED** that this Order shall remain in effect until further order of this Court.

     **IT IS SO ORDERED.**


                                       /s/
                                   JOHN D. BATES
                          United States District Judge

Dated: <u>May 23, 2025</u>

## APPENDIX A

- Administration for Children and Families
    - Assistant Secretary of Health and Human Services for Children and Families
    - Deputy Assistant Secretaries of Health and Human Services for Children and Families
- Administration for Strategic Preparedness and Response
    - Assistant Secretary for Preparedness and Response
    - Principal Deputy Assistant Secretary for Preparedness and Response
- Administrative Conference of the United States
    - Chairman of the Administrative Conference of the United States
    - Council Members of the Administrative Conference of the United States
- Advisory Council on Historic Preservation
    - Chairman of the Advisory Council on Historic Preservation
    - Members of the Advisory Council on Historic Preservation
- American National Red Cross
    - Chairman of the Board of the American National Red Cross
    - President and Chief Executive Officer of the American National Red Cross
- AmeriCorps
    - Agency Head of AmeriCorps
    - Chair of the Board of Directors of AmeriCorps
- Appalachian Regional Commission
    - Federal Co-Chair of the Appalachian Regional Commission
    - Executive Director of the Appalachian Regional Commission
- Bonneville Power Administration
    - Administrator and Chief Executive Officer of the Bonneville Power Administration
    - Chief Operating Officer of the Bonneville Power Administration
- Bureau of Alcohol, Tobacco, Firearms and Explosives
    - Director of the Bureau of Alcohol, Tobacco, Firearms and Explosives
    - Deputy Director of the Bureau of Alcohol, Tobacco, Firearms and Explosives
- Bureau of the Census
    - Director of the Bureau of the Census
    - Deputy Director of the Bureau of the Census
- Bureau of Consumer Financial Protection
    - Director of the Bureau of Consumer Financial Protection
    - Deputy Director of the Bureau of Consumer Financial Protection
- Bureau of Economic Analysis
    - Director of the Bureau of Economic Analysis
    - Deputy Director of the Bureau of Economic Analysis
- Bureau of Indian Affairs
    - Assistant Secretary for Indian Affairs
    - Director of the Bureau of Indian Affairs
- Bureau of Industry and Security
    - Under Secretary of Commerce for Industry and Security
    - Deputy Under Secretary of Commerce for Industry and Security

1

- Bureau of International Labor Affairs
  - Deputy Undersecretary of Labor for International Affairs
  - Associate Deputy Undersecretaries of Labor for International Affairs
- Bureau of Land Management
  - Director of the Bureau of Land Management
  - Deputy Director of the Bureau of Land Management
- Bureau of Ocean Energy Management
  - Director of the Bureau of Ocean Energy Management
  - Deputy Director of the Bureau of Ocean Energy Management
- Bureau of Reclamation
  - Commissioner of the Bureau of Reclamation
  - Deputy Commissioners of the Bureau of Reclamation
- Bureau of Safety and Environmental Enforcement
  - Director of the Bureau of Safety and Environmental Enforcement
  - Deputy Director of the Bureau of Safety and Environmental Enforcement
- Centers for Disease Control and Prevention
  - Director of the Centers for Disease Control and Prevention
  - Principal Deputy Director of the Centers for Disease Control and Prevention
- Centers for Medicare & Medicaid Services
  - Administrator of the Centers for Medicare & Medicaid Services
  - Deputy Administrator of the Centers for Medicare & Medicaid Services
- Central Intelligence Agency
  - Director of the Central Intelligence Agency
  - Deputy Director of the Central Intelligence Agency
- CHIPS Research and Development Office
  - Director of the CHIPS Research and Development Office
  - Deputy Director of the CHIPS Research and Development Office
- Commission of Fine Arts
  - Chair of the Commission of Fine Arts
  - Members of the Commission of Fine Arts
- Committee on Foreign Investment in the United States
  - Chairperson of the Committee on Foreign Investment in the United States
  - Members of the Committee on Foreign Investment in the United States
- Commodity Futures Trading Commission
  - Chairman of the Commodity Futures Trading Commission
  - Commissioners of the Commodity Futures Trading Commission
- Consumer Product Safety Commission
  - Chairman of the Consumer Product Safety Commission
  - Commissioners of the Consumer Product Safety Commission
- Corporation for National and Community Service
  - Chair of the Corporation for National and Community Service
  - Vice Chair of the Corporation for National and Community Service
- Council of the Inspectors General on Integrity and Efficiency
  - Executive Chair of the Council of the Inspectors General on Integrity and Efficiency
  - Chair of the Council of the Inspectors General on Integrity and Efficiency

2

- Council on Environmental Quality
  - Chair of the Council on Environmental Quality
  - Members of the Council on Environmental Quality
- Court Services and Offender Supervision Agency for the District of Columbia
  - Director of the Court Services and Offender Supervision Agency for the District of Columbia
  - Associate Director of the Court Services and Offender Supervision Agency for the District of Columbia
- Defense Contract Audit Agency
  - Director of the Defense Contract Audit Agency
  - Deputy Director of the Defense Contract Audit Agency
- Defense Contract Management Agency
  - Director of the Defense Contract Management Agency
  - Deputy Director of the Defense Contract Management Agency
- Defense Intelligence Agency
  - Director of the Defense Intelligence Agency
  - Deputy Director of the Defense Intelligence Agency
- Defense Logistics Agency
  - Director of the Defense Logistics Agency
  - Vice Director of the Defense Logistics Agency
- Denali Commission
  - Federal Co-Chair of the Denali Commission
  - Commissioners of the Denali Commission
- Department of the Air Force
  - Secretary of the Air Force
  - Under Secretary of the Air Force
- Department of the Army
  - Secretary of the Army
  - Under Secretary of the Army
- Department of Commerce
  - Secretary of Commerce
  - Deputy Secretary of Commerce
- Department of Defense
  - Secretary of Defense
  - Deputy Secretary of Defense
- Department of Education
  - Secretary of Education
  - Deputy Secretary of Education
- Department of Energy
  - Secretary of Energy
  - Deputy Secretary of Energy
- Department of Health and Human Services
  - Secretary of Health and Human Services
  - Deputy Secretary of Health and Human Services

3

- Department of Homeland Security
  - o Secretary of Homeland Security
  - o Deputy Secretary of Homeland Security
- Department of Housing and Urban Development
  - o Secretary of Housing and Urban Development
  - o Deputy Secretary of Housing and Urban Development
- Department of the Interior
  - o Secretary of the Interior
  - o Deputy Secretary of the Interior
- Department of Justice
  - o Attorney General
  - o Deputy Attorney General
- Department of Labor
  - o Secretary of Labor
  - o Deputy Secretary of Labor
- Department of the Navy
  - o Secretary of the Navy
  - o Under Secretary of the Navy
- Department of State
  - o Secretary of State
  - o Deputy Secretary of State
- Department of Toxic Substance Controls
  - o Director of the Department of Toxic Substance Controls
  - o Chief Deputy Director of the Department of Toxic Substance Controls
- Department of Transportation
  - o Secretary of Transportation
  - o Deputy Secretary of Transportation
- Department of the Treasury
  - o Secretary of the Treasury
  - o Deputy Secretary of the Treasury
- Department of Veterans Affairs
  - o Secretary of Veterans Affairs
  - o Deputy Secretary of Veterans Affairs
- Directorate of Defense Trade Controls
  - o Deputy Assistant Secretary of the Directorate of Defense Trade Controls
  - o Director of Compliance of the Office of Defense Trade Controls Compliance
  - o Director of Licensing of the Office of Defense Trade Controls Licensing
  - o Director of Management of the Office of Defense Trade Controls Management
  - o Director of the Office of Defense Trade Controls Policy
- Drug Enforcement Administration
  - o Administrator of the Drug Enforcement Administration
  - o Deputy Administrator of the Drug Enforcement Administration
- Environmental Protection Agency
  - o Administrator of the Environmental Protection Agency
  - o Deputy Administrator of the Environmental Protection Agency

4

- Equal Employment Opportunity Commission
  - Chair of the Equal Employment Opportunity Commission
  - Commissioners of the Equal Employment Opportunity Commission
- Executive Office of the President
  - White House Chief of Staff
  - White House Deputy Chief of Staff
- Executive Office for U.S. Trustees
  - Director of the U.S. Trustee Program
  - Principal Deputy Director of the U.S. Trustee Program
- Export-Import Bank of the United States
  - President and Chairman of the Export-Import Bank of the United States
  - First Vice President and Vice Chairman of the Export-Import Bank of the United States
- Farm Credit System Insurance Corporation
  - Chairman of the Board of the Farm Credit System Insurance Corporation
  - Members of the Board of the Farm Credit System Insurance Corporation
- Federal Aviation Administration
  - Administrator of the Federal Aviation Administration
  - Deputy Administrator of the Federal Aviation Administration
- Federal Bureau of Investigation
  - Director of the Federal Bureau of Investigation
  - Deputy Director of the Federal Bureau of Investigation
- Federal Bureau of Prisons
  - Director of the Federal Bureau of Prisons
  - Deputy Director of the Federal Bureau of Prisons
- Federal Communications Commission
  - Chairman of the Federal Communications Commission
  - Commissioners of the Federal Communications Commission
- Federal Deposit Insurance Corporation
  - Chairman of the Federal Deposit Insurance Corporation
  - Board Members of the Federal Deposit Insurance Corporation
- Federal Election Commission
  - Chair of the Federal Election Commission
  - Commissioners of the Federal Election Commission
- Federal Emergency Management Agency
  - Administrator of the Federal Emergency Management Agency
  - Deputy Administrator of the Federal Emergency Management Agency
- Federal Energy Regulatory Commission
  - Chairman of the Federal Energy Regulatory Commission
  - Commissioners of the Federal Energy Regulatory Commission
- Federal Highway Administration
  - Administrator of the Federal Highway Administration
  - Deputy Administrator of the Federal Highway Administration

- Federal Home Loan Mortgage Corporation (Freddie Mac)
  - Chairman of the Federal Home Loan Mortgage Corporation
  - President and Chief Executive Officer of the Federal Home Loan Mortgage Corporation
- Federal Housing Finance Agency
  - Director of the Federal Housing Finance Agency
  - Deputy Directors of the Federal Housing Finance Agency
- Federal Labor Relations Authority
  - Chair of the Federal Labor Relations Authority
  - Board Members of the Federal Labor Relations Authority
- Federal Maritime Commission
  - Chairman of the Federal Maritime Commission
  - Commissioners of the Federal Maritime Commission
- Federal Mediation and Conciliation Service
  - Director of the Federal Mediation and Conciliation Service
  - Chief Operating Officer of the Federal Mediation and Conciliation Service
- Federal Mine Safety and Health Review Commission
  - Chair of the Federal Mine Safety and Health Review Commission
  - Commissioners of the Federal Mine Safety and Health Review Commission
- Federal National Mortgage Association (Fannie Mae)
  - Chairman of the Federal National Mortgage Association
  - President and Chief Executive Officer of the Federal National Mortgage Association
- Federal Permitting Improvement Steering Council
  - Executive Director of the Federal Permitting Improvement Steering Council
  - Deputy Executive Director of the Federal Permitting Improvement Steering Council
- Federal Railroad Administration
  - Administrator of the Federal Railroad Administration
  - Deputy Administrator of the Federal Railroad Administration
- Federal Reserve System
  - Chair of the Board of Governors of the Federal Reserve System
  - Governors of the Federal Reserve System
- Federal Retirement Thrift Investment Board
  - Chair of the Federal Retirement Thrift Investment Board
  - Executive Director of the Federal Retirement Thrift Investment Board
- Federal Trade Commission
  - Chairman of the Federal Trade Commission
  - Commissioners of the Federal Trade Commission
- Federal Transit Administration
  - Administrator of the Federal Transit Administration
  - Deputy Administrator of the Federal Transit Administration
- Financial Crimes Enforcement Network
  - Director of the Financial Crimes Enforcement Network
  - Deputy Director of the Financial Crimes Enforcement Network

- Food and Drug Administration
  - Commissioner of Food and Drugs
  - Principal Deputy Commissioner of Food and Drugs
- General Services Administration
  - Administrator of the General Services Administration
  - Deputy Administrator of the General Services Administration
- Government Accountability Office
  - Comptroller General of the United States
  - Deputy Comptroller General of the United States
- Grid Deployment Office
  - Under Secretary of Energy for Infrastructure
  - Director of the Grid Deployment Office
  - Deputy Director for Grid Modernization of the Grid Deployment Office
  - Deputy Director for Resource Adequacy of the Grid Deployment Office
- Gulf Coast Ecosystem Restoration (RESTORE) Council
  - Chair of the Gulf Coast Ecosystem Restoration (RESTORE) Council
  - Members of the Gulf Coast Ecosystem Restoration (RESTORE) Council
- Health Resources and Services Administration
  - Administrator of the Health Resources and Services Administration
  - Deputy Administrator of the Health Resources and Services Administration
- Institute of Museums and Library Services
  - Director of the Institute of Museums and Library Services
  - Deputy Directors of the Institute of Museums and Library Services
- Inter-American Foundation
  - President and Chief Executive Officer of the Inter-American Foundation
  - Managing Director of the Inter-American Foundation
- Interior Business Center
  - Director of the Interior Business Center
  - Deputy Director of the Interior Business Center
- Internal Revenue Service
  - Commissioner of Internal Revenue
  - Deputy Commissioner of Internal Revenue
- International Trade Administration
  - Under Secretary of Commerce for International Trade
  - Deputy Under Secretary of Commerce for International Trade
- John F. Kennedy Memorial Center for the Performing Arts
  - Chairman of the Board of the John F. Kennedy Memorial Center for the Performing Arts
  - Executive Director of the John F. Kennedy Memorial Center for the Performing Arts
- Joint Chiefs of Staff
  - Chairman of the Joint Chiefs of Staff
  - Vice Chairman of the Joint Chiefs of Staff
- Loan Programs Office
  - Director of the Loan Programs Office
  - Deputy Director of the Loan Programs Office

7

- Marine Mammal Commission
  - Chair of the Marine Mammal Commission
  - Commissioners of the Marine Mammal Commission
- Millennium Challenge Corporation
  - Chair of the Board of Directors of the Millennium Challenge Corporation
  - Chief Executive Officer of the Millennium Challenge Corporation
- National Aeronautics and Space Administration
  - Administrator of the National Aeronautics and Space Administration
  - Associate Administrator of the National Aeronautics and Space Administration
- National Archives and Records Administration
  - Archivist of the United States
  - Deputy Archivist of the United States
- National Board for Respiratory Care
  - President of the National Board for Respiratory Care
  - Vice President of the National Board for Respiratory Care
- National Capital Planning Commission
  - Chair of the National Capital Planning Commission
  - Executive Director of the National Capital Planning Commission
- National Council on Disability
  - Chair of the National Council on Disability
  - Vice Chair of the National Council on Disability
- National Counterterrorism Center
  - Director of the National Counterterrorism Center
  - Deputy Director of the National Counterterrorism Center
- National Endowment for the Arts
  - Chair of the National Endowment for the Arts
  - Senior Deputy Chair of the National Endowment for the Arts
- National Endowment for the Humanities
  - Council Chair of the National Endowment for the Humanities
  - Council Members of the National Endowment for the Humanities
- National Geospatial-Intelligence Agency
  - Director of the National Geospatial-Intelligence Agency
  - Deputy Director of the National Geospatial-Intelligence Agency
- National Indian Gaming Commission
  - Chairwoman of the National Indian Gaming Commission
  - Vice-Chair of the National Indian Gaming Commission
- National Institutes of Health
  - Director of the National Institutes of Health
  - Principal Deputy Director of the National Institutes of Health
- National Highway Traffic Safety Administration
  - Administrator of the National Highway Traffic Safety Administration
  - Deputy Administrator of the National Highway Traffic Safety Administration
- National Labor Relations Board
  - Chairman of the National Labor Relations Board
  - Members of the National Labor Relations Board

- National Marine Fisheries Service
  - Assistant Administrator for Fisheries
  - Deputy Assistant Administrator for Fisheries
- National Mediation Board
  - Chair of the National Mediation Board
  - Members of the National Mediation Board
- National Nuclear Security Administration
  - Under Secretary of Energy for Nuclear Security and Administrator of the National Nuclear Security Administration
  - Principal Deputy Administrator of the National Nuclear Security Administration
- National Oceanic and Atmospheric Administration
  - Under Secretary of Commerce for Oceans and Atmosphere
  - Administrator of the National Oceanic and Atmospheric Administration
- National Park Service
  - Director of the National Park Service
  - Deputy Director of the National Park Service
- National Renewable Energy Laboratory
  - Director of the National Renewable Energy Laboratory
  - Deputy Director of the National Renewable Energy Laboratory
- National Science Foundation
  - Director of the National Science Foundation
  - Deputy Director of the National Science Foundation
- National Security Agency
  - Director of the National Security Agency
  - Deputy Director of the National Security Agency
- National Security Council
  - Vice President of the United States
  - Members of the National Security Council
- National Transportation Safety Board
  - Chair of the National Transportation Safety Board
  - Members of the National Transportation Safety Board
- Nuclear Regulatory Commission
  - Chair of the Nuclear Regulatory Commission
  - Commissioners of the Nuclear Regulatory Commission
- Occupational Safety and Health Administration
  - Assistant Secretary of Labor for Occupational Safety and Health
  - Deputy Assistant Secretaries of Labor for Occupational Safety and Health
- Occupational Safety and Health Review Commission
  - Chair of the Occupational Safety and Health Review Commission
  - Commissioners of the Occupational Safety and Health Review Commission
- Office of Clean Energy Demonstrations
  - Director of the Office of Clean Energy Demonstrations
  - Deputy Director of the Office of Clean Energy Demonstrations
- Office of the Comptroller of the Currency
  - Comptroller of the Currency
  - Senior Deputy Comptrollers of the Currency

9

- Office of the Director of National Intelligence
  - Director of National Intelligence
  - Principal Deputy Director of National Intelligence
- Office of Federal Contract Compliance Programs
  - Director of the Office of Federal Contract Compliance Programs
  - Deputy Director of the Office of Federal Contract Compliance Programs
- Office of Foreign Assets Control
  - Director of the Office of Foreign Assets Control
  - Deputy Director of the Office of Foreign Assets Control
- Office of Government Ethics
  - Director of the Office of Government Ethics
  - Deputy Director for Compliance of the Office of Government Ethics
- Office of Homeland Security Situational Awareness
  - Director of the Office of Homeland Security Situational Awareness
  - Deputy Director of the Office of Homeland Security Situational Awareness
- Office of Management and Budget
  - Director of the Office of Management and Budget
  - Deputy Director of the Office of Management and Budget
- Office of National Drug Control Policy
  - Director of the Office of National Drug Control Policy
  - Deputy Director of the Office of National Drug Control Policy
- Office of Personnel Management
  - Director of the Office of Personnel Management
  - Deputy Director of the Office of Personnel Management
- Office of Science and Technology Policy
  - Director of the Office of Science and Technology Policy
  - Deputy Director of the Office of Science and Technology Policy
- Office of the Secretary of Defense
  - Secretary of Defense
  - Deputy Secretary of Defense
- Office of Special Counsel
  - Special Counsel
  - Principal Deputy Special Counsel
- Offices of the United States Attorneys
  - Director of the Executive Office for U.S. Attorneys
  - Deputy Director of the Executive Office for U.S. Attorneys
- Office of the United States Trade Representative
  - United States Trade Representative
  - Deputy United States Trade Representative
- Overseas Private Investment Corporation
  - President and Chief Executive Officer of the Overseas Private Investment Corporation
  - Executive Vice President of the Overseas Private Investment Corporation
- Patent Trial and Appeal Board
  - Director of the Patent Trial and Appeal Board
  - Deputy Director of the Patent Trial and Appeal Board

- Peace Corps
  - Chief Executive Officer of the Peace Corps
  - Deputy Chief Executive Officer of the Peace Corps
- Pension Benefit Guaranty Corporation
  - Director of the Pension Benefit Guaranty Corporation
  - Deputy Director of the Pension Benefit Guaranty Corporation
- Permitting Council
  - Executive Director of the Permitting Council
  - Deputy Executive Director of the Permitting Council
- Presidio Trust
  - Chair of the Board of the Presidio Trust
  - Vice-Chair of the Board of the Presidio Trust
- Pretrial Services Agency for the District of Columbia
  - Director of the Pretrial Services Agency for the District of Columbia
  - Deputy Director of the Pretrial Services Agency for the District of Columbia
- Public Defender Service for the District of Columbia
  - Director of the Public Defender Service for the District of Columbia
  - Deputy Director of the Public Defender Service for the District of Columbia
- Rural Utilities Service
  - Administrator of the Rural Utilities Service
  - Assistant Administrator of the Rural Utilities Service
- Science and Technology Directorate
  - Under Secretary of Homeland Security for Science and Technology
  - Deputy Under Secretary of Homeland Security for Science and Technology
- Securities and Exchange Commission
  - Chairman of the Securities and Exchange Commission
  - Commissioners of the Securities and Exchange Commission
- Selective Service System
  - Director of the Selective Service System
  - Deputy Director of the Selective Service System
- Small Business Administration
  - Administrator of the Small Business Administration
  - Deputy Administrator of the Small Business Administration
- Smithsonian Institution
  - Secretary of the Smithsonian
  - Deputy Secretary and Chief Operation Officer of the Smithsonian
- Social Security Administration
  - Commissioner of the Social Security Administration
  - Deputy Commissioner of the Social Security Administration
- Surface Transportation Board
  - Chairman of the Surface Transportation Board
  - Members of the Surface Transportation Board
- Tennessee Valley Authority
  - Chair of the Board of the Tennessee Valley Authority
  - Members of the Board of the Tennessee Valley Authority

- Trademark Trial and Appeal Board
  - o Director of the Trademark Trial and Appeal Board
  - o Deputy Director of the Trademark Trial and Appeal Board
- Transportation Security Administration
  - o Administrator of the Transportation Security Administration
  - o Deputy Administrator of the Transportation Security Administration
- U.S. Access Board
  - o Chair of the U.S. Access Board
  - o Members of the U.S. Access Board
- U.S. Agency for International Development
  - o Administrator of the U.S. Agency for International Development
  - o Deputy Administrators of the U.S. Agency for International Development
- U.S. Agency for Global Media
  - o Chief Executive Officer of the U.S. Agency for Global Media
  - o Chairman of the Board of the U.S. Agency for Global Media
- U.S. Army Corps of Engineers
  - o Chief of Engineers and Commanding General of the U.S. Army Corps of Engineers
  - o Deputy Commanding General of the U.S. Army Corps of Engineers
- U.S. Capitol Police
  - o Chief of the U.S. Capitol Police
  - o Assistant Chiefs of the U.S. Capitol Police
- U.S. Chemical Safety Board
  - o Chairperson of the U.S. Chemical Safety Board
  - o Members of the U.S. Chemical Safety Board
- U.S. Citizenship and Immigration Services
  - o Director of U.S. Citizenship and Immigration Services
  - o Deputy Director of U.S. Citizenship and Immigration Services
- U.S. Coast Guard
  - o Commandant of the U.S. Coast Guard
  - o Vice Commandant of the U.S. Coast Guard
- U.S. Commission on Civil Rights
  - o Chairperson of the U.S. Commission on Civil Rights
  - o Commissioners of the U.S. Commission on Civil Rights
- U.S. Commission for the Preservation of America's Heritage Abroad
  - o Chair of the U.S. Commission for the Preservation of America's Heritage Abroad
  - o Members of the U.S. Commission for the Preservation of America's Heritage Abroad
- U.S. Copyright Office
  - o Register of Copyrights and Director of the U.S. Copyright Office
  - o Associate Register of Copyrights
- U.S. Court of Appeals for Veterans Claims
  - o Chief Judge of the U.S. Court of Appeals for Veterans Claims
  - o Judges of the U.S. Court of Appeals for Veterans Claims

12

- U.S. Customs and Border Protection
  - Commissioner of U.S. Customs and Border Protection
  - Deputy Commissioner of U.S. Customs and Border Protection
- U.S. Department of Agriculture
  - Secretary of Agriculture
  - Deputy Secretary of Agriculture
- U.S. Department of Agriculture Rural Development
  - Under Secretary of Agriculture for Rural Development
  - Deputy Under Secretary of Agriculture for Rural Development
- U.S. Election Assistance Commission
  - Chairman of the U.S. Election Assistance Commission
  - Executive Director of the U.S. Election Assistance Commission
- U.S. Fish & Wildlife Service
  - Director of the U.S. Fish & Wildlife Service
  - Principal Deputy Director of the U.S. Fish & Wildlife Service
- U.S. Forest Service
  - Forest Service Chief
  - Associate Forest Service Chief
- U.S. Holocaust Memorial Museum
  - Director of the U.S. Holocaust Memorial Museum
  - Deputy Director of the U.S. Holocaust Memorial Museum
- U.S. Immigration and Customs Enforcement
  - Director of U.S. Immigration and Customs Enforcement
  - Deputy Director of U.S. Immigration and Customs Enforcement
- U.S. International Trade Commission
  - Chair of the U.S. International Trade Commission
  - Commissioners of the U.S. International Trade Commission
- U.S. Marshals Service
  - Director of the U.S. Marshals Service
  - Deputy Director of the U.S. Marshals Service
- U.S. Marine Corps
  - Commandant of the U.S. Marine Corps
  - Assistant Commandant of the U.S. Marine Corps
- U.S. Merit Systems Protection Board
  - Chairman of the U.S. Merit Systems Protection Board
  - Members of the U.S. Merit Systems Protection Board
- U.S. Nuclear Waste Technical Review Board
  - Chair of the U.S. Nuclear Waste Technical Review Board
  - Members of the U.S. Nuclear Waste Technical Review Board
- U.S. Patent & Trademark Office
  - Director of the U.S. Patent & Trademark Office
  - Deputy Director of the U.S. Patent & Trademark Office
- U.S. Postal Inspection Service
  - Chief Postal Inspector
  - Deputy Chief Postal Inspector

- U.S. Postal Service
  - Postmaster General
  - Deputy Postmaster General
- U.S. Privacy and Civil Liberties Oversight Board
  - Chair of the U.S. Privacy and Civil Liberties Oversight Board
  - Members of the U.S. Privacy and Civil Liberties Oversight Board
- U.S. Railroad Retirement Board
  - Chairman of the U.S. Railroad Retirement Board
  - Members of the U.S. Railroad Retirement Board
- U.S. Secret Service
  - Director of the U.S. Secret Service
  - Deputy Director of the U.S. Secret Service
- U.S. Space Force
  - Secretary of the Air Force
  - Under Secretary of the Air Force
- U.S. Trade and Development Agency
  - Director of the U.S. Trade and Development Agency
  - Director of Policy and Program Management of the U.S. Trade and Development Agency
- Woodrow Wilson International Center for Scholars
  - Chairman of the Board of Trustees of the Woodrow Wilson International Center for Scholars
  - Members of the Board of Trustees of the Woodrow Wilson International Center for Scholars

14

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

**JENNER & BLOCK LLP,**

  **Plaintiff,**

   **v.**                                      Civil Action No. 25-916 (JDB)

**U.S. DEPARTMENT OF JUSTICE, et al.,**

  **Defendants.**

---

## MEMORANDUM OPINION

In our constitutional order, few stars are as fixed as the principle that no official "can prescribe what shall be orthodox in politics." W. Va. State Bd. of Educ. v. Barnette, 319 U.S. 624, 642 (1943). And in our constitutional order, few actors are as central to fixing that star as lawyers.

This case arises from one of a series of executive orders targeting law firms that, in one way or another, did not bow to the current presidential administration's political orthodoxy. Like the others in the series, this order—which takes aim at the global law firm Jenner & Block— makes no bones about why it chose its target: it picked Jenner because of the causes Jenner champions, the clients Jenner represents, and a lawyer Jenner once employed. Going after law firms in this way is doubly violative of the Constitution. Most obviously, retaliating against firms for the views embodied in their legal work—and thereby seeking to muzzle them going forward—violates the First Amendment's central command that government may not "use the power of the State to punish or suppress disfavored expression." Nat'l Rifle Ass'n of Am. v. Vullo, 602 U.S. 175, 188 (2024). More subtle but perhaps more pernicious is the message the order sends to the lawyers whose unalloyed advocacy protects against governmental viewpoint

1

becoming government-imposed orthodoxy. This order, like the others, seeks to chill legal representation the administration doesn't like, thereby insulating the Executive Branch from the judicial check fundamental to the separation of powers. It thus violates the Constitution and the Court will enjoin its operation in full.

### Background

Jenner & Block is a 900-person litigation-focused law firm with offices in Chicago, Washington, D.C., New York, Los Angeles, Century City, San Francisco, and London. See Pl.'s Statement of Undisputed Material Facts [ECF No. 19-2] ("SUMF") ¶¶ 1, 9. Its clients span a wide spectrum; what's important to this case is that representing them requires frequently—dozens of times per month—appearing in federal court, entering federal buildings, interacting with federal employees, and the like. See, e.g., id. ¶¶ 8, 11, 14–15, 18, 24, 26–27. Jenner also has a leading and diverse pro bono practice, having been rated the number one law firm for pro bono work by The American Lawyer 12 of the past 15 years. Id. ¶ 7.

As a prominent law firm, Jenner is no stranger to executive orders. But it has more experience representing their targets than being a target itself. Executive Order 14246 flipped the script. Issued on March 25, 2025 and titled "Addressing Risks from Jenner & Block," Executive Order 14246 took aim at Jenner, singling out the firm for disfavored treatment. See 90 Fed. Reg. 13997 (Mar. 25, 2025) ("E.O.")

The order wastes no time saying why. Its first section begins by articulating the President's view that many major law firms "take actions that threaten public safety and national security, limit constitutional freedoms, degrade the quality of American elections, or undermine bedrock American principles"—in large part "through their powerful pro bono practices." E.O. § 1. Jenner, it says, is one such firm. According to the order, Jenner "undermine[s] . . . the

2

interests of the United States" in three main ways: partisan case selection, pro bono representation the President dislikes, and past association with an attorney of whom the President disapproves.  Id.

On partisanship, Section 1 accuses Jenner of "condon[ing] partisan 'lawfare'" by "engag[ing] in obvious partisan representations to achieve political ends."  Id.  It does not elaborate.

On pro bono representation, Section 1 accuses Jenner of "support[ing] attacks against women and children based on a refusal to accept the biological reality of sex, and back[ing] the obstruction of efforts to prevent illegal aliens from committing horrific crimes and trafficking deadly drugs within our borders."  Id.  Aside from its vague reference to Jenner's "powerful pro bono practice[]," on this, too, the order is coy.  Id.  In context, however, the order refers to Jenner's ongoing challenges to two other executive orders issued by this administration, one on behalf of transgender individuals and the other on behalf of asylum-seekers—both of which have resulted in favorable preliminary outcomes for Jenner's clients.  See Compl. [ECF No. 1] ¶¶ 114–16; SUMF ¶¶ 66–69; Defs.' Mem. Supp. Mot. to Dismiss [ECF No. 20-1] ("MTD") at 8 (confirming this understanding).[1]

And on attorney association, Section 1 laments that Jenner "was 'thrilled' to re-hire the unethical Andrew Weissmann."  E.O. § 1.  Weissmann, a former federal prosecutor, was a partner at Jenner from 2006 to 2011 and from 2020 to 2021; he has not worked there since.  See SUMF ¶ 58.  In the interim, he served the federal government in various capacities, including investigating Russian interference in the 2016 election as a member of the team led by Special Counsel Robert Mueller.  Id. ¶ 59.  Weissmann's participation on the Mueller team, plus his

---

[1] See PFLAG, Inc. v. Trump, Civ. A. No. 25-337 (D. Md. Feb. 4, 2025); Refugee & Immigr. Ctr. for Educ. & Legal Servs. v. Noem, Civ. A. No. 25-306 (D.D.C. Feb. 3, 2025).

3

public criticism of President Trump—including, per Section 1, his "overt demand that the Federal Government pursue a political agenda against" President Trump, E.O. § 1, and his authorship of a nonfiction book critical of the President, SUMF ¶ 59—has drawn the President's ire, see id. ¶¶ 60–62. And so Jenner's relationship with Weissmann "is a concerning indictment of Jenner's values and priorities." E.O. § 1.

Separately (and briefly), the order accuses Jenner of "discriminat[ing] against its employees based on race and other categories prohibited by civil rights laws, including through the use of race-based 'targets.'" E.O. § 1. Again, the order does not elaborate. An accompanying "fact sheet" says only: "Jenner has been accused of discriminating against its own employees on the basis of race and other categories." Fact Sheet [ECF No. 19-23] at 2. Like the order itself, the fact sheet does not provide any evidence of the accusations or of their truth.

With that background set, the order's four following sections direct action against Jenner with respect to security clearances (Section 2), government contracts (Section 3), antidiscrimination law enforcement (Section 4), and access to government buildings, personnel, and employment (Section 5).

Section 2, titled "Security Clearance Review," instructs the Attorney General and other agency heads to "immediately take steps consistent with applicable law to suspend any active security clearances held by individuals at Jenner pending a review of whether such clearances are consistent with the national interest." E.O. § 2(a). It also directs the Office of Management and Budget to "identify all Government goods, property, material, and services, including Sensitive Compartmented Information Facilities, provided for the benefit of Jenner," and instructs agency heads to "expeditiously cease such provision." E.O. § 2(b). The fact sheet makes clear that both actions are to happen "immediately." Fact Sheet at 1.

4

Section 3, titled "Contracting," seeks to end all contractual and subcontractual relationships connecting (however tenuously) Jenner and the federal government, in order "[t]o prevent the transfer of taxpayer dollars" to Jenner. E.O. § 3(a); see also Fact Sheet at 1 ("To ensure taxpayer dollars no longer go to contractors whose earnings subsidize activities not aligned with American interests."). It instructs "Government contracting agencies" to "require Government contractors to disclose any business they do with Jenner and whether that business is related to the subject of the Government contract." Id. With that information in hand, agency heads are to "review all contracts with Jenner or with entities that disclose doing business with Jenner," "terminate any contract, to the maximum extent permitted by applicable law, . . . for which Jenner has been hired to perform any service," and "otherwise align their agency funding decisions with the interests of the citizens of the United States." E.O. § 3(b); see also Fact Sheet at 1 ("[T]he Federal Government will terminate contracts that involve Jenner.").

Section 4, titled "Racial Discrimination," is a bit more opaque. It instructs that the order shall not "be construed to limit the action authorized by section 4 of" an earlier executive order—one targeting Perkins Coie, another major law firm. E.O. § 4; see 90 Fed. Reg. 11781 (Mar. 6, 2025) ("Perkins Coie E.O."). That order, in turn, instructed the chair of the Equal Employment Opportunity Commission ("EEOC") to "review the practices of representative large, influential, or industry leading law firms for consistency with" antidiscrimination law. Perkins Coie E.O. § 4. Of course, it would be difficult to read this order to "limit" any action against Jenner. So the fact sheet confirms what Section 4 really means: "The practices of Jenner will be reviewed under Title VII to ensure compliance with civil rights laws against racial bias." Fact Sheet at 2.[2]

---

[2] The Perkins Coie order to which Section 4 refers has since been permanently enjoined. See Perkins Coie LLP v. U.S. Dep't of Just., Civ. A. No. 25-716 (BAH), 2025 WL 1276857, at *23–24, *49–51 (D.D.C. May 2,

5

Finally, Section 5, titled "Personnel," takes aim at every Jenner employee.  It instructs agency heads, "to the extent permitted by law, [to] provide guidance limiting official access [to] Federal Government buildings to employees of Jenner when such access would threaten the national security of or otherwise be inconsistent with the interests of the United States."  E.O. § 5(a).  It instructs agency heads to "provide guidance limiting Government employees acting in their official capacity from engaging with Jenner employees, including but not limited to Andrew Weissmann"—not a Jenner employee, see SUMF ¶ 58—"to ensure consistency with the national security and other interests of the United States."  E.O. § 5(a).  And it instructs agencies to "refrain from hiring employees of Jenner, including but not limited to Andrew Weissmann, absent a waiver from the head of the agency, made in consultation with the Director of the Office of Personnel Management, that such hire will not threaten the national security of the United States."  E.O. § 5(b).  The fact sheet confirms: "Federal Agencies will . . . refrain from hiring Jenner employees unless specifically authorized."  Fact Sheet at 1.

According to undisputed evidence in the record, the order quickly had its intended effect. Department of Justice lawyers instructed a Jenner client not to bring its counsel from Jenner to a meeting with the Department of Justice scheduled for April 3.  SUMF ¶ 76.  Many other clients have contacted Jenner with concerns about Jenner's ability to represent them moving forward, "indicat[ing] that they will need to make decisions shortly" about their retention of the firm.  Id. ¶¶ 74, 78.  And more severe harms are in the offing.  More than forty percent of Jenner's revenue comes from government contractors, subcontractors, or affiliates, id. ¶ 83; the order puts that revenue at grave risk.

---

2025).  Neither party suggests, however, that the Perkins Coie injunction would prevent Section 4 of this executive order from operating as intended.

6

Executive orders like this one have become something of a modus operandi for the President.  Both before and after this order, the administration trained similar orders on other large law firms, including Covington & Burling; Paul, Weiss, Rifkind, Wharton & Garrison LLP ("Paul Weiss"); Perkins Coie; WilmerHale; and Susman Godfrey.[3]  The orders follow the same recipe: other than personalized touches in their first sections, they generally direct the same adverse actions towards each firm and decry the threat each firm poses to national security and the national interest.

It will not come as a spoiler that Jenner opted to sue.  But not everyone did.  Paul Weiss, for instance, negotiated.  See Schmidt, Law Firm Bends in Face of Trump Demands, N.Y. Times (Mar. 20, 2025) [ECF No. 19-16]; SUMF ¶ 49.  The negotiation ended in "a remarkable change of course" from both Paul Weiss and the administration.  90 Fed. Reg. 13685 (Mar. 21, 2025) ("Second Paul Weiss E.O.").   According to the President, Paul Weiss "acknowledged the wrongdoing of its former partner" who, like Weissmann, had drawn the President's anger, and agreed to "adopt[] a policy of political neutrality with respect to client selection and attorney hiring; tak[e] on a wide range of pro bono matters representing the full political spectrum; commit[] to merit-based hiring, promotion, and retention, instead of 'diversity, equity, and inclusion' policies"; and "dedicat[e] the equivalent of $40 million in pro bono legal services," id., "to support the Administration's initiatives," see Donald J. Trump (@realDonaldTrump), Truth Social (Mar. 20, 2025, 3:10 PM) [ECF No. 19-17] at 2.  In exchange, the administration revoked the executive order aimed at Paul Weiss.  See Second Paul Weiss E.O. § 2.

---

[3] See White House, Suspension of Security Clearances and Evaluation of Government Contracts (Feb. 25, 2025), https://perma.cc/8G3A-N82P (Covington); 90 Fed. Reg. 13039 (Mar. 14, 2025) ("First Paul Weiss E.O."); 90 Fed. Reg. 11781 (Mar. 6, 2025) (Perkins Coie); 90 Fed. Reg. 14549 (Mar. 27, 2025) (WilmerHale); 90 Fed. Reg. 15615 (Apr. 15, 2025) (Susman Godfrey).

Other firms skipped straight to negotiations. Without ever receiving an executive order, these firms preemptively bargained with the administration and struck deals sparing them. The deals largely mirror Paul Weiss's, though the price continues to rise: instead of $40 million, these firms have pledged $100 million or more in pro bono legal services the administration has a hand in choosing.[4]  And in public statements, the President has floated the prospect of deploying the firms to work on the administration's own projects, rather than traditional pro bono causes, while acknowledging the firms' lack of wrongdoing: "I agree, they've done nothing wrong," the President said at a recent event.  "[B]ut what the hell, they give me a lot of money considering they've done nothing wrong."  See Keith Goldberg, Trump Wants to Use Firms that Cut Deals for Coal Leases, Law360 (Apr. 8, 2025), https://perma.cc/8S72-2AJ5.[5]

## Procedural History

Rather than negotiate, Jenner sued three days after the order's issuance and sought a temporary restraining order ("TRO") the same day.  See Compl. [ECF No. 1]; Mot. TRO [ECF No. 2].  The complaint challenged the executive order in its entirety and raised 13 counts: violations of the First Amendment six times over; violations of due process thrice over; a violation of the equal protection component of the Fifth Amendment; violations of the Fifth and Sixth Amendments' protections of the right to counsel; and a violation of the separation of powers.  See Compl. ¶¶ 140–253.

---

[4] See, e.g., Donald J. Trump (@realDonaldTrump), Truth Social (Mar. 28, 2025, 10:57 AM) [ECF No. 19-27] (Skadden Arps); Donald J. Trump (@realDonaldTrump), Truth Social (Apr. 1, 2025, 1:47 PM) [ECF No. 19-28] (Willkie Farr & Gallagher); Donald J. Trump (@realDonaldTrump), Truth Social (Apr. 2, 2025, 11:05 AM) [ECF No. 19-29] (Milbank).

[5] In addition to Jenner, three firms have challenged similar executive orders in court.  Each order has been either permanently enjoined, see Perkins Coie, 2025 WL 1276857, or temporarily enjoined in large part pending final resolution, see Wilmer Cutler Pickering Hale & Dorr LLP v. Exec. Off. of the President, Civ. A. No. 25-917 (RJL), 2025 WL 946979 (D.D.C. Mar. 28, 2025); Temporary Restraining Order, Susman Godfrey LLP v. Exec. Off. of the President, ECF No. 15, Civ. A. No. 25-1107 (LLA) (Apr. 15, 2025).

8

The TRO motion raised the same sweeping arguments but sought narrower relief more tailored to Jenner's immediate harm, asking the Court to temporarily enjoin Sections 1, 3, and 5 of the order. See Mot. TRO at 3. Following a hearing held the same day, the Court largely obliged. The Court concluded that Jenner's challenge would likely succeed because the order "retaliates against [Jenner] for its protected speech" and "constitutes unconstitutional viewpoint discrimination"—problems that were "magnified by the order's additional Fifth and Sixth Amendment deficiencies" reflected in its attempts to undermine "the essential role that lawyers play in our polity." TRO Hr'g Tr. [ECF No. 10] at 46, 48, 50. It then found that Jenner faced imminent and irreparable harm: the order's economic impacts "threaten[ed] the existence of the firm," id. at 51, and its constitutional impacts "deprive[d] Jenner of its First Amendment freedoms," id. at 53 (citing Pursuing Am.'s Greatness v. FEC, 831 F.3d 500, 511 (D.C. Cir. 2016)). And the public interest and balance of the equities easily favored relief, as "the legal profession as a whole [was] watching and wondering" whether "the federal government [would] turn its unwanted attention to them next." Id. at 54–55.

Accordingly, the Court entered a TRO restraining the defendants from enforcing Sections 3 or 5 of the executive order and from using the statements in Section 1 to punish Jenner, its clients, or its employees. See Order Granting TRO [ECF No. 9]. By consent of the parties, the TRO has remained in place pending final judgment. See Joint Status Report [ECF No. 13]. The defendants then moved to dismiss, while the plaintiffs moved for summary judgment and a permanent injunction. See MTD; Mot. for Summ. J. [ECF No. 19] ("MSJ"). The Court held a hearing on April 28, and now resolves the competing dispositive motions.

9

**Standards**

The defendants filed a motion to dismiss; Jenner filed a motion for summary judgment. The traditional difference between these two types of motions is the discovery that follows the one and enables the other.  See Convertino v. U.S. Dep't of Just., 684 F.3d 93, 99 (D.C. Cir. 2012) ("[S]ummary judgment is premature unless all parties have 'had a full opportunity to conduct discovery.'" (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986))). Here, though, both parties "agreed that they do not anticipate needing discovery," see Joint Status Report, and the defendants submitted evidence of their own in response to Jenner's motion for summary judgment, see Decl. of Richard Lawson [ECF No. 95-2].  Since the defendants have "responded to the submission of exhibits with evidence of [their] own," Pintro v. Wheeler, 35 F. Supp. 3d 47, 52 n.5 (D.D.C. 2014), and had an opportunity "to either conduct discovery or come forward with additional evidence" to the extent they wished, Colbert v. Potter, 471 F.3d 158, 168 (D.C. Cir. 2006) (internal quotation marks omitted), the Court will construe the defendants' motion to dismiss as one for summary judgment.

That leaves the parties with dueling cross-motions for summary judgment.  In that posture, each party receives the benefit of favorable factual inferences for purposes of the other party's motion.  See N.S. ex rel. Stein v. District of Columbia, 709 F. Supp. 2d 57, 65 (D.D.C. 2010).  Summary judgment is appropriate if "there is no genuine issue as to any material fact" and either movant "is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).

If it prevails, Jenner seeks a declaratory judgment and permanent injunction.  In addition to a meritorious case, securing a permanent injunction requires Jenner to have (1) irreparable injury that it will suffer absent injunctive relief; (2) no available remedy at law, such as monetary damages, adequate to compensate its injury; and (3) an upper hand considering the balance of

10

hardships and the public interest.  See Anatol Zukerman & Charles Krause Reporting, LLC v. USPS, 64 F.4th 1354, 1364 (D.C. Cir. 2023) (citing eBay Inc. v. MercExchange, LLC, 547 U.S. 388, 391 (2006)); Nken v. Holder, 556 U.S. 418, 435 (2009) (explaining that the inquiries into the balance of hardships and public interest merge when the government is the defendant).

**Analysis**

### I.    The executive order violates Jenner's First Amendment rights.

The challenged executive order targets Jenner for what it has said and thereby attempts to dampen what it might yet say.  That is unconstitutional under any view of the First Amendment, but two additional features of this order magnify its offensiveness to the freedoms the First Amendment guarantees: its viewpoint discrimination and its targeting of lawyers in particular. And none of the order's sections can be salvaged by the Executive Branch's discretion in guarding the nation's secrets (Section 2); in contracting (Section 3); in investigating discrimination (Section 4); or in landlording and hiring (Section 5).

### A.  The executive order retaliates for and seeks to silence Jenner's protected speech.

Jenner's primary claim—and its most straightforward winner—is the First Amendment retaliation claim.  To prevail, Jenner "must show (1) that it engaged in protected conduct, (2) that the government took some retaliatory action sufficient to deter a person of ordinary firmness in plaintiff's position from speaking again, and (3) that there exists a causal link between the exercise of a constitutional right and the adverse action taken against him."  Scahill v. District of Columbia, 909 F.3d 1177, 1185 (D.C. Cir. 2018) (cleaned up).  At prong three, "[t]he improper motive must be a but-for cause of the government action, meaning that the adverse action . . . would not have been taken absent the retaliatory motive."  Comm. on Ways & Means, U.S.

11

<u>House of Reps. v. U.S. Dep't of Treasury</u>, 45 F.4th 324, 340 (D.C. Cir. 2022) (internal quotation marks omitted).

The first two prongs are easy.  Begin with an area of significant agreement: of the activity for which Section 1 denounces Jenner, nearly all enjoys robust First Amendment protection. This elementary and unchallenged point need not occupy much space.   Jenner's "partisan representations to achieve political ends," E.O. § 1, is another way of saying courtroom advocacy on behalf of its chosen causes—that is, the very core of the First Amendment's protection of "litigation as a vehicle for effective political expression and association."  <u>In re Primus</u>, 436 U.S. 412, 431 (1978); <u>see also, e.g.</u>, <u>In re Halkin</u>, 598 F.2d 176, 187 (D.C. Cir. 1979) ("Litigation itself is a form of expression protected by the First Amendment."), <u>abrogated on other grounds by</u> <u>Seattle Times Co. v. Rhinehart</u>, 467 U.S. 20, 29–33 (1984).[6]  The same goes for Jenner's pro bono representation of transgender people and asylum-seekers.  <u>See</u> E.O. § 1 ("refusal to accept the biological reality of sex" and "obstruction of efforts to prevent illegal aliens from committing horrific crimes and trafficking deadly drugs").   Whether best captured by the "freedom of speech, petition or assembly," this is precisely the sort of "vigorous advocacy . . . against governmental intrusion," <u>NAACP v. Button</u>, 371 U.S. 415, 429–30 (1963), that has long "made lawyerdom proud," <u>Sacher v. United States</u>, 343 U.S. 1, 4 (1952).  As for Jenner's employment of Weissmann, it is evidently Weissmann's criticisms of the President and participation in a legitimate investigation of election interference that drew presidential disdain; and it is Jenner's erstwhile association with Weissmann that extended that disdain to the firm.  But Weissmann's activity falls easily within the First Amendment's muscular protection for "criticism of government and public officials," <u>N.Y. Times Co. v. Sullivan</u>, 376 U.S. 254, 276 (1964), and

---

[6] It matters not whether Jenner is in fact a "partisan" actor, or whether its litigation activity expresses its own views or simply channels the interests of its clients.  What matters is the administration's motive, whether resting on fact or falsehood.  <u>See</u> <u>Heffernan v. City of Paterson</u>, 578 U.S. 266, 271–73 (2016).

that criticism can no more bring Jenner into the administration's crosshairs than it can bring Weissmann himself into the administration's crosshairs, cf. Hobson v. Wilson, 737 F.2d 1, 28 (D.C. Cir. 1984) ("Government cannot constitutionally punish individual or group advocacy of any position, unless it amounts to incitement to lawless action."), overruled in part on other grounds by Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit, 507 U.S. 163 (1993).

The second prong poses no more difficulty.  Usually, figuring out whether retaliation would chill a speaker of ordinary firmness—and ascertaining just how much a speaker would have to trim her advocacy to avoid reprisal—requires some guesswork.[7]  Not here.  The serial executive orders targeting law firms have produced something of an organic experiment, control group and all, for how firms react to the orders and how they might escape them.  Over the course of that experiment, several firms of (presumably) ordinary firmness have folded rather than face similar executive orders.  Indeed, it appears to take extraordinary firmness to resist.  And the experiment has shown what folding entails: compromising speech.  See, e.g., Second Paul Weiss E.O. § 1 (Paul Weiss agreeing to "adopt[] a policy of political neutrality," accept pro bono matters "representing the full political spectrum," and dedicate $40 million in pro bono services to causes of which the President approves).

The third prong—the "causal link between the exercise of a constitutional right and the adverse action," Aref v. Lynch, 833 F.3d 242, 258 (D.C. Cir. 2016)—requires more analysis. Section 1 of the order leaves no question that there is some causal link, as that section proudly identifies Jenner's protected activity as a reason—indeed, the primary reason—Jenner has earned

---

[7] That said, the bar is not a high one.  See Tao v. Freeh, 27 F.3d 635, 639 (D.C. Cir. 1994) ("[A]s the Supreme Court has noted, the First Amendment protects government employees from 'even an act of retaliation as trivial as failing to hold a birthday party for a public employee . . . when intended to punish her for exercising her free speech rights." (quoting Rutan v. Republican Party of Ill., 497 U.S. 62, 76 n.8 (1990))).

13

the President's disdain.  And the defendants make no attempt to dispel the impression that Section 1 leaves, as they in fact double down on Section 1's accusations in their briefing.  See, e.g., MTD at 8–9 (defendants highlighting that Jenner "does not and cannot seriously contest" that it "is providing pro bono representation in a challenge to the President's executive order designed to protect children from chemical and surgical mutilation" or that it "hosted an event interviewing" Weissmann).

To prevail on its retaliation claim, however, Jenner must show not only that its speech was a cause of the executive order but that it was a but-for cause.  That requires showing that the order would not have issued "absent the retaliatory motive."  Comm. on Ways & Means, 45 F.4th at 340.  If the defendants can point to unprotected activity that would have justified the same actions, then the factfinder at trial, not the Court at summary judgment, would have to resolve that credibility dispute.  See, e.g., Borgo v. Goldin, 204 F.3d 251, 258 (D.C. Cir. 2000); Tao v. Freeh, 27 F.3d 635, 639 (D.C. Cir. 1994).

This final showing is complicated by the one aspect of Section 1's accusations the First Amendment leaves unprotected: discrimination.  See, e.g., Runyon v. McCrary, 427 U.S. 160, 176 (1976).  So the defendants attempt to save sections 3 and 4 of the order by clinging to Jenner's supposedly discriminatory employment practices, insisting that they would have taken the steps those sections direct even absent any retaliatory motive.[8]  And they attempt to save

---

[8] This is a generous construction of the defendants' argument.  Apparently not eager to face a jury, they disclaim any "genuine issues of material fact that would necessitate a trial."  See Defs.' Resp. to Pl.'s SUMF [ECF No. 95-1] at 1.  So they style most of this argument not as a factual dispute but as a legal argument that the First Amendment disappears or retreats to mere rationality review so long as the defendants identify any non-retaliatory motive at all, leaving no need to assess the retaliatory motive.  See MTD at 17.  For this they cite McGowan v. State of Maryland, 366 U.S. 420 (1961), which upheld against Establishment Clause challenge a state law requiring certain businesses to close on Sundays because the laws were justified by legitimate purposes like "providing a Sunday atmosphere of recreation, cheerfulness, repose and enjoyment."  Id. at 442, 448.

There is a long answer and a short answer.  The long answer would observe that McGowan says no such thing; that McGowan in fact concluded that the challenged Sunday-closure laws had evolved away from their religious origins, id. at 433–34; that they now held "a secular rather than [] a religious character" such that they no

14

Section 2's security-clearance suspension by vague reference to national security, another facially legitimate motive. These are doubtful propositions given the order's persistent emphasis on Jenner's speech and comparatively scanty treatment of discrimination and security concerns. But this is summary judgment, and the Court is not a jury; it cannot weigh competing motives via word count. Instead, the Court must determine whether Jenner prevails as a matter of law. So it will investigate whether "non-retaliatory grounds are in fact []sufficient to provoke the adverse consequences" prescribed by any of the order's sections. Nieves v. Bartlett, 587 U.S. 391, 398 (2019) (quoting Hartman v. Moore, 547 U.S. 250, 256 (2006)).[9]

Keep in mind, however, that this is no run-of-the-mill retaliation case, for several reasons bearing mention. Although retaliation connotes retrospective punishment, its greatest danger lies in its prospective silencing effect: "The reason why . . . retaliation offends the Constitution is that

---

longer bore any "relationship to establishment of religion," id. at 444; and that it was only after concluding that "the core values of the Establishment Clause [were] not at stake," Anderson v. Laird, 466 F.2d 283, 292 n.51 (D.C. Cir. 1972), that the Supreme Court applied the rational-basis standard that the government so desires here, see Woodson v. Attorney General, 990 F.2d 1344, 1350 (D.C. Cir. 1993) (relying on McGowan to apply rational basis to an equal protection claim involving no fundamental right).

The short answer is that the First Amendment is asked every day to shield speech against laws with legitimate purposes. The classic formulation of strict scrutiny in the First Amendment context, after all, asks whether a law is "narrowly tailored to serve compelling state interests"; intermediate scrutiny, too, compares the "important governmental interests unrelated to the suppression of free speech" to the amount of speech burdened. TikTok Inc. v. Garland, 145 S. Ct. 57, 67 (2025) (internal quotation marks omitted). A First Amendment that disappears in the face of governmental interests would be both impotent and foreign to American jurisprudence.

So it will come as no surprise that the law is not as the defendants see it, and that the First Amendment is not so easily circumvented. In fact, "the mere assertion of a content-neutral purpose" is not enough to save government action "which, on its face, discriminates based on content"—let alone viewpoint, which, as the Court will explain, this order does. See Turner Broad. Sys. v. FCC, 512 U.S. 622, 642–43 (1994); see also Simon & Schuster, Inc. v. Members of the N.Y. State Crime Victims Bd., 502 U.S. 105, 117 (1991); Frederick Douglass Found., Inc. v. District of Columbia, 82 F.4th 1122, 1144–45 (D.C. Cir. 2023).

[9] Jenner would have the Court skip this section-by-section analysis and view the order "as a single, integrated document." Pl.'s Mem. of L. in Opp'n to Defs.' MTD [ECF No. 94] at 23. The Court agrees that retaliatory motive infects the entire order and that the entire order—accounting for the array of tools it brings to bear against Jenner—is the relevant adverse action that must suffice to chill a speaker of ordinary firmness (though any of the sections would suffice standing alone). But it is difficult to discern whether non-retaliatory reasons justify the actions taken without analyzing the actions taken, and that requires a dive into each operative section. In any event, the Court is unpersuaded by Jenner's contention that the order's sections "are not severable," id. at 22–23, because the President "intended the . . . order to stand or fall as a whole," Minnesota v. Mille Lacs Band of Chippewa Indians, 526 U.S. 172, 191 (1999). The order directs a number of distinct actions, none of which depend on the others for their operation. So the President would likely have wanted as much of the order to survive as possible even if some of it must fall.

15

it threatens to inhibit exercise of the protected right." <u>Crawford-El v. Britton</u>, 523 U.S. 574, 588 n.10 (1998); <u>see also, e.g.</u>, <u>McIntyre v. Ohio Elections Comm'n</u>, 514 U.S. 334, 357 (1995) ("[T]he First Amendment . . . protect[s] unpopular individuals from retaliation—and their ideas from suppression.").  That forward-looking threat looms especially large here, not only for other law firms but for Jenner itself.  The administration has shown a repeated willingness to haggle, sending the message loud and clear that Jenner can spare itself—if it compromises its speech.  So whereas retaliation usually punishes once and moves along, the retaliation here is ongoing and avoidable.  In this context, retaliation amounts to something akin to the impermissible "scheme of informal censorship" that arises when government actors use the "threat of invoking legal sanctions and other means of coercion to achieve the suppression of disfavored speech."  <u>Vullo</u>, 602 U.S. at 188–89 (cleaned up).  Such threats present an especially harmful sort of retaliation, analogous to (though less absolute than) the prior restraints that are "the most serious and the least tolerable" of all First Amendment violations.  <u>Neb. Press Ass'n v. Stuart</u>, 427 U.S. 539, 559 (1976).

Then there is the fact that we deal here with lawyers.  In this context, the forward-looking censorship scheme threatens not only the First Amendment but also the right to counsel's promise of a conflict-free attorney "devoted solely to the interests of his client."  <u>Penson v. Ohio</u>, 488 U.S. 75, 86–87 (1988) (internal quotation marks omitted).  A firm fearing or laboring under an order like this one feels pressure to avoid arguments and clients the administration disdains in the hope of escaping government-imposed disabilities.  Meanwhile, a firm that has acceded to the administration's demands by cutting a deal feels the same pressure to retain "the President's ongoing approval."  Br. of Legal Ethics Profs. as Amici Curiae in Supp. of Pl. [ECF No. 113] at 6.  Either way, the order pits firms' "loyal[ty] to client interests" against a competing interest in

pleasing the President.  See Nat'l Sec. Counselors v. CIA, 811 F.3d 22, 30 (D.C. Cir. 2016).  The Constitution shields clients from lawyers caught in such a "struggle to serve two masters." Cuyler v. Sullivan, 446 U.S. 335, 349 (1980) (internal quotation marks omitted).

That this order targets lawyers magnifies its threat to the Constitution in other ways, too. Lawyers and the firms they comprise are not, it goes without saying, immune from the legitimate exercise of state power.  Cf. Hishon v. King & Spalding, 467 U.S. 69, 77–78 (1984).  But neither is the Constitution blind to lawyers' importance in upholding our democracy.  Indeed, at least four constitutional amendments afford counsel-specific protection in view of the "foundation[al]" nature of the right to counsel.  Martinez v. Ryan, 566 U.S. 1, 12 (2012); see U.S. Const. amends. I, V, VI, XIV.[10]  This is because "[t]he right to sue and defend in the courts" is "the right conservative of all other rights, and lies at the foundation of orderly government."  Chambers v. Baltimore & O.R. Co., 207 U.S. 142, 148 (1907).  Our society has entrusted lawyers with something of a monopoly on the exercise of this foundational right—on translating real-world harm into courtroom argument.  Sometimes they live up to that trust; sometimes they don't.  But in all events, their independence is essential lest they shrink into "nothing more than parrots of the views of whatever group wields governmental power at the moment."  Cohen v. Hurley, 366 U.S. 117, 138 (1961) (Black, J., dissenting).

For that reason, Executive Order 14246 implicates also the Fifth and Sixth Amendment guarantees of the "right to choose counsel without interference by officialdom."  Am. Airways Charters, Inc. v. Regan, 746 F.2d 865, 872 (D.C. Cir. 1984); see also United States v. Gonzalez-Lopez, 548 U.S. 140, 144–46 (2006).  Section 5 of the order in particular—with its threatened (and, in at least one case, consummated) bar of Jenner employees from, say, negotiating with

_____

[10] See, e.g., Legal Servs. Corp. v. Velazquez, 531 U.S. 533, 548 (2001); Minnick v. Mississippi, 498 U.S. 146, 152–53 (1990); United States v. Gonzalez-Lopez, 548 U.S. 140, 144 (2006); see also Perkins Coie, 2025 WL 1276857, at *41–43.

federal prosecutors and agencies and even entering federal courthouses—could hamstring Jenner's ability to represent its clients, and thus its clients' right to choose Jenner without interference.  So the First, Fifth, and Sixth Amendments speak in unison here, all eyeing skeptically the administration's attempt "to stifle any voice" Jenner and its clients "might wish to raise before the courts in protest."  Am. Airways Charters, 746 F.2d at 876.

Next, there is the interdependence of bench and bar.  "An informed, independent judiciary presumes an informed, independent bar."  Legal Servs. Corp. v. Velazquez, 531 U.S. 533, 545 (2001).  So limitations on lawyers' speech must be examined with care, as such limitations threaten not only the lawyers and their clients but also the ability of a coequal branch of government to function.  Cf. Penson, 488 U.S. at 82 (noting that a lawyer's failure "deprived the court of the assistance of an advocate" of its own).[11]  Official attempts to "draw lines around lawyers' advocacy and thereby "exclude from litigation those arguments and theories [the President] finds unacceptable but which by their nature are within the province of the courts to consider" threaten a deep and irreparable rift in the constitutional order because they seek "to insulate the Government's [acts] from judicial inquiry."  Legal Servs. Corp., 531 U.S. at 546.  When the government draws legal scrutiny, its response must be to defend itself in court, not to intimidate those who would force it to do so.[12]

---

[11] Of course, there are certain contexts in which lawyers' speech may be curtailed in ways that would be unacceptable outside, say, a courtroom.  See, e.g., Gentile v. State Bar of Nev., 501 U.S. 1030, 1071 (1991) (Op. of Rehnquist, C.J.) ("It is unquestionable that in the courtroom itself, during a judicial proceeding, whatever right to 'free speech' an attorney has is extremely circumscribed."); id. at 1081–82 (O'Connor, J., concurring) ("Lawyers are officers of the court and, as such, may legitimately be subject to ethical precepts that keep them from engaging in what otherwise might be constitutionally protected speech.").  This case presents nothing like the circumstances where the "right of lawyers to free speech" can "conflict" with "the right of litigants to fair trials."  Chicago Council of Lawyers v. Bauer, 522 F.2d 242, 248 (7th Cir. 1975).  Far from ensuring the integrity of the legal process, this order attempts to deter law firms from offering their services to disfavored clients and from making disfavored arguments.  "[W]e should be extremely skeptical about any" action in this vein.  In re Halkin, 598 F.2d at 187 (quoting Chicago Council of Lawyers, 522 F.2d at 258).

[12] But see Presidential Memorandum, Preventing Abuses of the Legal System and the Federal Court (Mar. 22, 2025) (directing the Attorney General to, among other things, "review conduct by attorneys or their law firms in

18

Last, the order targets Jenner not merely for the fact of its speech but for the specific views it expresses thereby. It is Jenner's "partisan representations," its "support[]" and "back[ing]" for transgender people and asylum-seekers, and its tenuous connection to "a political agenda against me"—that is, against President Trump—that drew this executive order. E.O. § 1. The order thus engages in the "egregious form of content discrimination" known as "viewpoint discrimination," making its inconsistency with the First Amendment "all the more blatant." Rosenberger v. Rector & Visitors of Univ. of Va., 515 U.S. 819, 829 (1995); see also, e.g., Frederick Douglass Found., Inc. v. District of Columbia, 82 F.4th 1122, 1141 (D.C. Cir. 2023) ("viewpoint discrimination is poison" (internal quotation marks omitted)).

In short, the order raises constitutional eyebrows many times over. It punishes and seeks to silence speech "at the very center of the First Amendment," Gentile v. State Bar of Nev., 501 U.S. 1030, 1034 (1991); does so via the most "egregious form of content discrimination— viewpoint discrimination," Vidal v. Elster, 602 U.S. 286, 293 (2024) (internal quotation marks omitted); all in an unacceptable attempt to "insulate the Government's laws from judicial inquiry," Legal Servs. Corp., 531 U.S. at 546.

The remainder of this opinion will investigate whether the order—or any of its sections— can nevertheless survive.

---

litigation against the Federal Government over the last 8 years" for purported "misconduct" and recommend responses "including reassessment of security clearances held by the attorney, termination of any contract for which the relevant attorney or law firm has been hired to perform services, or any other appropriate actions").

This is not the first time powerful government officials have attempted to silence lawyers and thereby cut off the courts as an avenue of redress for unconstitutional action. "In too many countries and instances to name, regimes have disbarred, prosecuted and jailed lawyers who dared to represent opposition figures or challenge government actions, with predictable results for the rule of law and the integrity of the legal profession." Br. of Amici Curiae 807 Law Firms in Supp. of Pl. [ECF No. 105] at 4. And while most examples might come from abroad, there are also cautionary tales from within our borders—for instance, southern states' targeting of civil rights lawyers during the civil rights movement and the ACLU's initial reluctance to represent Fred Korematsu for fear of angering President Roosevelt. See Br. of Amici Curiae Fred T. Korematsu Center for Law & Equality, et al. in Supp. of Pl. [ECF No. 104] at 2–3, 5–7; Br. of Amicus Curiae NAACP Legal Def. & Educ. Fund, Inc. in Supp. of Pl. [ECF No. 109] at 2–11.

**B. Section 2: Security Clearance Review.**

Section 2(a) directs the Attorney General and other relevant officials to "immediately take steps consistent with applicable law to suspend any active security clearances held by individuals at Jenner pending a review of whether such clearances are consistent with the national interest." E.O. § 2(a). The fact sheet confirms that suspensions will happen "immediately." Fact Sheet at 1. Suspensions will impact Jenner employees both in their work for Jenner and outside of it: three Jenner employees possess or are awaiting adjudication of security clearances in connection with ongoing military service unrelated to their work at the firm; at least six others hold clearances related to their work at the firm; and another is currently applying for a clearance to enable pro bono representation of a federal criminal defendant. SUMF ¶ 38–42. Jenner "regularly" handles cases that require access to classified information, including two currently underway. SUMF ¶ 81. This section's directives have already begun to take effect and impact Jenner attorneys' ability to represent criminal defendants. See Notice of Recent Development [ECF No. 137].

i.    <u>Jenner's challenge to Section 2 is justiciable.</u>

Jenner's challenge to this provision encounters an immediate obstacle: courts may not second-guess "an Executive Branch decision to deny or revoke a security clearance." <u>Lee v. Garland</u>, 120 F.4th 880, 891 (D.C. Cir. 2024). Such decisions, the D.C. Circuit held just last year, are non-justiciable political questions because they belong exclusively to the Executive Branch, <u>id.</u> at 891, and because they lack judicially manageable standards, turning as they do on "'predictive judgments' about whether individuals are likely to divulge sensitive information" and whether individuals possess "intangible qualities such as 'loyalty to the United States, strength of character, trustworthiness, honesty, reliability, discretion, and sound judgment,'" <u>id.</u>

20

at 893 (quoting 60 Fed. Reg. 40245, 40250 (Aug. 2, 1995)).  "The grant of a security clearance to a particular employee," in sum, is "a sensitive and inherently discretionary judgment call" bound up with "concerns of national security" and thus "committed by law to the appropriate agency of the Executive Branch."  Dep't of Navy v. Egan, 484 U.S. 518, 527 (1988).

In the same breath, though, Lee made clear that a dispute is not rendered nonjusticiable "simply because it tangentially relates to a security clearance."  120 F.4th at 892.  For instance, the D.C. Circuit held justiciable constitutional challenges to the "methods used to gather information" for clearance decisions and thus reviewed an argument that the Fifth Amendment prohibited asking clearance applicants about their use of illegal drugs or their mental health. Nat'l Fed'n of Fed. Emps. v. Greenberg, 983 F.2d 286, 290 (D.C. Cir. 1993).  And the D.C. Circuit also held justiciable Title VII retaliation claims involving security-clearance revocation resulting from a government employee's knowing provision of false information.  Rattigan v. Holder, 689 F.3d 764, 770 (D.C. Cir. 2012).

In short, while the merits of any individual security clearance decision are unreviewable, courts may hear "constitutional claims arising from the clearance revocation process."  El-Ganayni v. U.S. Dep't of Energy, 591 F.3d 176, 183 (3d Cir. 2010) (emphasis added).  This balance is not unique to the security clearance context.  Courts may probe (if with a light touch) other processes that culminate in "non-justiciable . . . determinations," such as the President's assessment that a certain transaction "threatens to impair the national security of the United States" and thus must be blocked under the Defense Production Act of 1950.  Ralls Corp. v. Comm. on Foreign Inv. in U.S., 758 F.3d 296, 303, 314 (D.C. Cir. 2014).  Despite the sensitive national-security context and the concession that courts may not question the presidential determination that a transaction would threaten national security, the Ralls court held that it

21

could investigate the _process_ behind the determination: "whether the Due Process Clause entitles" a would-be transactor "to have notice of, and access to, the evidence on which the President relied and an opportunity to rebut that evidence before he reaches his non-justiciable (and statutorily unreviewable) determinations"—a question the court answered in the affirmative. Id. at 314, 316; accord El-Shifa Pharm. Indus. Co. v. United States, 607 F.3d 836, 843 (D.C. Cir. 2010) (en banc).

Section 2(a) is susceptible to characterization as either a merits determination or a process. In one sense, its immediate revocation of all security clearances held by Jenner employees is "an Executive Branch decision to . . . revoke a security clearance." Lee, 120 F.4th at 891. On the other hand, it enacts what Jenner aptly dubs a "bespoke," "Jenner-specific" "suspension-and-review process." Pl.'s Mem. of L. in Opp'n to Defs.' MTD [ECF No. 94] ("MTD Opp'n") at 23, 25; see El-Ganayni, 591 F.3d at 183 (claim "that the decision to suspend and then revoke [a] security clearance was made in retaliation for the exercise of his First Amendment rights" was a reviewable process-based claim). At the first step, the order immediately revokes all clearances without individualized explanation, consideration, or opportunity to be heard; at the second, it permits reinstatement upon "a review of whether such clearances are consistent with the national interest." E.O. § 2(a).

Reviewing this process raises none of the concerns that make individual security-clearance determinations nonjusticiable. The immediate and blanket suspension involves no "predictive judgment[s]" about an "individual['s]" threat to national security—indeed it doesn't even permit them. See Lee, 120 F.4th at 893 (emphasis added) (quoting Egan, 484 U.S. at 528–29). And reviewing the suspension does not override decisions "made by trained Security Division personnel," which is the only sort of decision the "absolute bar on judicial review

22

covers." <u>Rattigan</u>, 689 F.3d at 768; <u>see</u> <u>Egan</u>, 484 U.S. at 529 ("[p]redictive judgment[s]" about who can be trusted with classified information "must be made by those with the necessary expertise"). Instead, Jenner only asks this Court to question the special suspend-then-review process the order imposes on a categorical basis. Refusing to do so would equally bless blanket security-clearance suspensions for all Muslims, Catholics, or disabled people. <u>Cf.</u> <u>Gill v. U.S. Dep't of Just.</u>, 875 F.3d 677, 685 (D.C. Cir. 2017) (Tatel, J., concurring) (a claim "that the government has a policy or practice of treating Muslims or naturalized citizens differently . . . , like the claims at issue in <u>Greenberg</u>, would not be barred"). The Constitution does not tolerate such judicial abdication. So Jenner's claim does not ask a political question; it asks a legal one. <u>Accord</u> <u>Perkins Coie LLP v. U.S. Dep't of Just.</u>, Civ. A. No. 25-716 (BAH), 2025 WL 1276857, at *19–22 (D.D.C. May 2, 2025) (reaching same conclusion).

      ii.     <u>Section 2(a) impermissibly aims to manipulate speech.</u>

On the merits, there's no doubt that the President ordered the Jenner-specific process in retaliation for Jenner's protected speech. But, given the national security importance of security clearances, that alone may not be enough to deem Section 2 unconstitutional. Any review of a security-clearance process must afford significant deference to the Executive's assessment of what processes will best allow it to make the predictive national security judgments necessary. <u>See</u> <u>Greenberg</u>, 983 F.2d at 290. And for that reason, discriminating on the basis of speech and belief, verboten almost everywhere else, is routine in the security-clearance context. <u>See, e.g.</u>, <u>Lee</u>, 120 F.4th at 893 ("Clearance decisions involve an assessment of intangible qualities such as 'loyalty to the United States.'" (quoting 60 Fed. Reg. at 40250)); <u>cf.</u> <u>Aref</u>, 833 F.3d at 260–61 (permissible to consider a prisoner's "language used during [a] prayer meeting" where it bore on

a "legitimate security interest" related to prisoner's place of confinement). So the conclusion that Section 2 retaliates for speech doesn't sting quite the same in this context as in others.

Jenner's challenge to Section 2, however, clears this additional hurdle. To begin, Section 2's process implicates no national security concern to speak of. Security clearance decisions merit judicial deference because of their deep importance to the national security. See, e.g., Greenberg, 983 F.2d at 296 (Sentelle, J., concurring); Egan, 484 U.S. at 527 (presumption of judicial review of agency action "runs aground when it encounters concerns of national security"); Lamb v. Millennium Challenge Corp., 498 F. Supp. 3d 104, 112 (D.D.C. 2020) (noting the "national security concerns animating" security clearance deference). But as far as national security justification, all the defendants have to offer is that Jenner's "public praise for" and rehiring of Weissman after his "role in the Mueller investigation" shows a "national security nexus" supporting Section 2(a). Defs.' Opp'n to Pl.'s Mot. for Summ. J. [ECF No. 95] ("MSJ Opp'n") at 6.

This speech-based justification doesn't even feign at national security, nor do the defendants articulate a cogent argument that it does. Weissmann hasn't worked at Jenner in four years, and the defendants offer no reason that a firm's "public praise for" a figure the administration dislikes could generate a national security need to subject every employee of that firm to a special (and skewed) security clearance review process.[13] Note too that Section 2 permits reinstatement of Jenner employees' security clearances only as consistent with "the national interest," E.O. § 2(a)—a far broader term than national security, and something that Section 1 already concluded Jenner "undermine[s]," E.O. § 1. And if any doubt remains as to the sincerity of the invocation of national security, take a look at the Paul Weiss saga. Paul

---

[13] Twenty-seven former high-level government officials agree that the order invokes "no valid national security concern" and that any gestures towards national security merely provide cover for a "punitive, retributive, ad hominem order." See Br. of Former Senior Gov't Officials as Amici Curiae Supp. Pl. [ECF No. 98] at 1–2.

Weiss's executive order imposed the same tailored process on its employees' security clearances. See First Paul Weiss E.O. § 2. What it took to escape that process—denouncing a former partner, changing client selection and hiring practices, and pledging pro bono work to the President's liking—had not even a glancing relationship to national security.

Put simply, this blunderbuss of an order does not engage in the sort of "legitimate consideration of speech," Reichle v. Howards, 566 U.S. 658, 668 (2012), that might sometimes be necessary to keep classified information in safe hands. Rather than ensuring that national secrets remain with those who will keep them, Section 2's process "seek[s] to leverage" the Executive's control over security clearances as a way to change speech. See Agency for Int'l Dev. v. All. for Open Soc'y Int'l, 570 U.S. 205, 214–15 (2013). Section 2, in other words, is about using another lever in the President's arsenal to extinguish speech he dislikes. Cf. id. at 218 ("This case is not about the Government's ability to enlist the assistance of those with whom it already agrees. It is about compelling a grant recipient to adopt a particular belief as a condition of funding."). The First Amendment forbids that sort of speech manipulation by the government, even in an arguably national security-related setting.

iii.    Section 2(b) violates the First Amendment.

Section 2(b) received almost no attention from the parties and warrants only brief discussion here. It does either a great deal or very little. Either way it violates the First Amendment.

Situated under the same "Security Clearance Review" heading as Section 2(a), Section 2(b) reads:

> The Office of Management and Budget shall identify all Government goods, property, material, and services, including Sensitive Compartmented Information Facilities, provided for the benefit of Jenner. The heads of agencies providing

25

such material or services shall, to the extent permitted by law, expeditiously cease
such provision.

E.O. § 2(b).  Sensitive Compartmented Information Facilities, or SCIFs, are secure rooms used
to view classified information.

Construed broadly and out of context, this directive has a breathtaking sweep, as it could
exclude Jenner from all government-provided "services" and "property." (The Postal Service?
The Library of Congress?)  If understood in this manner, Section 2(b) would be more similar to
Section 5 than to Section 2(a), and would violate the First Amendment as plainly as Section 5
violates it.  See infra § I.E.

Both parties, however, agree that Section 2(b) is best read much more narrowly and with
its context in mind.[14]  On this reading, Section 2(b) revokes Jenner's access to SCIFs and other
similar mechanisms and materials of the security state.  If this is so, Jenner's challenge to Section
2(b) prevails for the same reasons its challenge to Section 2(a) prevails.

### C.  Section 3: Contracting.

Section 3, recall, aims "[t]o prevent the transfer of taxpayer dollars to Federal contractors
whose earnings subsidize, among other things, activities that are not aligned with American
interests."  E.O. § 3(a).  To achieve this goal, Section 3 prescribes three steps.  The first ferrets
out any contractual connection, however tenuous, between Jenner and the federal government by
instructing "Government contracting agencies" to "require Government contractors to disclose
any business they do with Jenner and whether that business is related to the subject of the
Government contract."  Id.

---

[14] See Tr. of Mots. Hr'g [ECF No. 118] at 20–21; Tr. of Mots. Hr'g, Perkins Coie LLP v. U.S. Dep't of
Just., ECF No. 169 at 50, Civ. A. No. 25-716 (Apr. 24, 2025).  But see United Transp. Union v. State Bar of Mich.,
401 U.S. 576, 581 (1971) ("We cannot assume that, in its subsequent enforcement, ambiguities will be resolved in
favor of adequate protection of First Amendment rights." (cleaned up) (quoting Button, 371 U.S. at 438)).

26

The second step severs some of those connections and insinuates that agencies must sever the rest. Agency heads shall "terminate any contract . . . for which Jenner has been hired to perform any service." Id. § 3(b)(i). Such contracts could involve Jenner as a government subcontractor or in a capacity adverse to the government, as many of Jenner's government-contractor clients hire Jenner to "avoid or resolve contract disputes with the U.S. Government." SUMF ¶ 25. The second step also calls for agency heads to "otherwise align their agency funding decisions with the interests of the citizens of the United States." E.O. § 3(b)(ii). This instruction threatens to sever ties with contractors that do business with Jenner unrelated to their government work.

The third step ensures follow-through. Within a month of the order, agencies were instructed to report back with "an assessment of contracts with Jenner or with entities that do business with Jenner . . . and any actions taken with respect to those contracts." Id.

     i.    <u>Jenner has standing to challenge Section 3 and its challenge is ripe.</u>

The defendants first question Jenner's standing to challenge Section 3. See MTD at 18. Standing "asks whether a case pairs a proper plaintiff with a proper defendant," Indus. Energy Consumers of Am. v. FERC, 125 F.4th 1156, 1164 (D.C. Cir. 2025) (Henderson, J., concurring), requiring that Jenner (1) have suffered or be at imminent risk of suffering an injury in fact (2) that is fairly traceable to the defendants' challenged conduct and (3) that is likely to be redressed by a favorable judicial decision, Ass'n of Am. Physicians & Surgeons, Inc. v. Schiff, 23 F.4th 1028, 1032 (D.C. Cir. 2022) (citing Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016)).

Jenner does not have any direct contracts with the federal government, see Tr. of Mots. Hr'g [ECF No. 118] at 28, so Section 3 operates on Jenner through third-party government contractors that have hired Jenner. Briefly stated, Jenner's theory of standing is that government

contractors will jettison Jenner—both as to government contracts and as to unrelated ones—in an effort to keep their own government business.  See MTD Opp'n at 30.  Because approximately forty percent of Jenner's revenue comes from representation of government contractors, subcontractors, or affiliates, SUMF ¶ 83, the loss of even a fraction of this business would inflict no small injury on Jenner.

The defendants first argue that any fear of injury "at this point [is] purely speculative." See MSJ Opp'n at 15.  Though styled as a contention that Jenner's challenge is unripe, the argument sounds more in imminence.  Cf. Indus. Energy Consumers of Am., 125 F.4th at 1164–65 (Henderson, J., concurring) (discussing the interplay between Article III standing and prudential ripeness).  Either way it is unpersuasive, as the threat Section 3 poses is clear and imminent.  Before the TRO froze much of the order, Jenner's clients, many of whom "hold significant government contracts and subcontracts," began "requesting frequent updates about the Order's status to evaluate whether the Firm can continue to represent them" and "indicated that they will need to make decisions shortly."  SUMF ¶ 74.  In other words, they must decide "shortly" whether to keep their contracts and lose Jenner or keep Jenner and risk losing their contracts.  Assuming they choose the former, Jenner will be injured imminently.

But will they choose the former?  Seizing on the standing doctrine's general skepticism of "speculation about the decisions of independent" third-party actors, Clapper v. Amnesty Int'l USA, 568 U.S. 398, 414 (2013), the defendants also challenge standing's second prong, arguing that Jenner cannot trace any forthcoming loss in business to the executive order, see MTD at 19; see also, e.g., Murthy v. Missouri, 603 U.S. 43, 57–58, 72 (2024).  The argument is peculiar in its self-deprecation.  It requires the defendants to disclaim the order's potency at accomplishing its stated aim: to prevent taxpayer dollars from flowing to government contractors "whose

28

earnings subsidize" Jenner's purportedly unamerican activities.  See E.O. § 3(a).  The President, in other words, apparently believed Section 3 would cause Jenner "a classic pocketbook injury," Tyler v. Hennepin Cnty., 598 U.S. 631, 636 (2023); his lawyers now say otherwise.

On this, the Court agrees with the President.  It is entirely predictable that, given the choice between keeping their contracts and keeping Jenner, government contractors will choose the former.  This in any event is the rational choice; Jenner is doubtless a very able law firm, but plenty of able law firms come without the accompanying loss of government business.  Thus, Jenner's "theory of standing thus does not rest on mere speculation about the decisions of third parties; it relies instead on the predictable effect of Government action on the decisions of third parties."  Dep't of Com. v. New York, 588 U.S. 752, 768 (2019); see also, e.g., FDA v. All. for Hippocratic Med., 602 U.S. 367, 383 (2024); Energy Future Coal. v. EPA, 793 F.3d 141, 144 (D.C. Cir. 2015); PFLAG, Inc. v. Trump, Civ. A. No. 25-337 (BAH), 2025 WL 685124, at *12 (D. Md. Mar. 4, 2025).  Once faced with the ultimatum Section 3 issues, self-preservation is the likely choice.

And all that is just the cold economics.  But economic injury is not the only sort the Constitution recognizes, and the injury to Jenner's constitutional right to express itself without fear of government reprisal itself confers standing.  As discussed below—and as made clear by other firms' negotiations (and capitulations)—the mere existence of the order chills Jenner's expression.  Jenner has standing to challenge the order casting that chill.  See Chamber of Com. of U.S. v. FEC, 69 F.3d 600, 603–04 (D.C. Cir. 1995); Act Now to Stop War & End Racism Coal. v. District of Columbia, 589 F.3d 433, 435 (D.C. Cir. 2009); Action for Children's Television v. FCC, 59 F.3d 1249, 1258 (D.C. Cir. 1995).

ii.    <u>Section 3 is not sustainable on unprotected grounds.</u>

On the merits, the Supreme Court's recent decision in <u>Vullo</u> and less recent decision in

<u>Bantam Books</u> govern—and defeat the defendants' attempt to deflect a retaliation claim by

pointing to accusations of racial discrimination.  By promising to cancel all contracts for which

Jenner has been hired to perform any service and threatening to cancel contracts with any entity

that contracts with Jenner even on non-government matters, Executive Order 14246 does

precisely what the Supreme Court said just last year is forbidden: it engages in "coercion against

a third party to achieve the suppression of disfavored speech."  <u>Vullo</u>, 602 U.S. at 180 (internal

quotation marks omitted).

The defendants try to escape <u>Vullo</u> by pointing out that the coercive weapon wielded here

is different than the coercive weapon wielded there: Vullo flexed her regulatory might where the

defendants simply flex their procurement power.  This softer sort of governmental influence, the

defendants believe, does not implicate the First Amendment because "when implementing

Section 3 the government is acting as a private party, not as a sovereign,"[15] <u>see</u> MSJ Opp'n at 8,

and is not engaged in "punishment" but merely discretionary contract-selection, <u>see</u> MTD at 21.

But the First Amendment binds the government not only "as sovereign" but also as "employer,

educator, . . . licensor," and more, <u>Hous. Cmty. Coll. Sys. v. Wilson</u>, 595 U.S. 468, 480–81

(2022), and the First Amendment does not concern itself only with "direct restraint or

punishment," <u>Am. Commc'ns Ass'n, C.I.O v. Douds</u>, 339 U.S. 382, 402 (1950).  "Under some

circumstances, indirect 'discouragements' undoubtedly have the same coercive effect upon the

exercise of First Amendment rights as imprisonment, fines, injunctions or taxes."    <u>Id.</u>

---

[15] This quotation could be taken to mean that the defendants believe themselves entirely exempt from the strictures of the First Amendment (or, for that matter, nearly the whole of the Constitution) because when government agencies act as employers or contractors rather than as "sovereign," they do not engage in state action. Such a suggestion would be frivolous and the defendants don't really make it.  But their tendency to veer into such untenable rhetoric might say something about the weakness of their position.

Government manipulation need not be "heavy-handed" to be unconstitutional; the First Amendment protects as well against "more subtle governmental interference."  Bates v. City of Little Rock, 361 U.S. 516, 523 (1960).

It is for this reason that Vullo simply reiterated what had been established at least "[s]ix decades" prior when it announced "that a government entity's 'threat of invoking legal sanctions and other means of coercion' against a third party 'to achieve the suppression' of disfavored speech violates the First Amendment."  602 U.S. at 180 (emphasis added) (quoting Bantam Books, Inc. v. Sullivan, 372 U.S. 58, 67 (1963)).  So the government's discretion in selecting its contractors is beside the point: "An ordinarily permissible exercise of discretion may become a constitutional deprivation if performed in retaliation for"—or to suppress—"the exercise of a First Amendment right."  Toolasprashad v. Bureau of Prisons, 286 F.3d 576, 585 (D.C. Cir. 2002) (cleaned up).  Thus, the government may regulate but it may not regulate in retaliation for speech.  See Vullo, 602 U.S. at 190.  The government may transfer prisoners but it may not transfer prisoners in retaliation for speech.  Toolasprashad, 286 F.3d at 585.  The government may tax but it may not tax based on speech's content without withstanding strict scrutiny.  Ark. Writers' Proj., Inc. v. Ragland, 481 U.S. 221, 230 (1987).  And the government may "terminate contracts" but it may not terminate contracts "in retaliation for protected First Amendment activity."  Bd. of Cnty. Comm'rs v. Umbehr, 518 U.S. 668, 677 (1996); see also, e.g., Houston Cmty. Coll. Sys., 595 U.S. at 477 (commenting that it is "easy to identify . . . a dismissal from governmental employment" as an impermissible adverse action under the First Amendment).  It should go without saying, in other words, that the First Amendment is in the everyday business of doing just what the defendants say it may not: limiting government discretion.

31

So the defendants fail to escape the First Amendment's strictures. But even if the First Amendment applies, the defendants insist they did not violate it. They turn to their alternative explanation—that they seek to stem government funds from flowing not to a speaker but to a discriminator. Pointing out that government may avoid discriminatory employers when it procures contracts, cf. AFL-CIO v. Kahn, 618 F.2d 784, 788, 790–92 & n.40 (D.C. Cir. 1979); Chamber of Com. of U.S. v. Reich, 74 F.3d 1322, 1332–33 (D.C. Cir. 1996),[16] the defendants insist that they would have taken the steps outlined in Section 3 even absent the retaliatory intent that infects the order.

Though this case presents no occasion to determine the lawfulness of Jenner's employment practices, it is worth pausing to examine the defendants' bases, factual and legal, for accusing Jenner of discrimination. Factually there is very little. The order and accompanying fact sheet simply say Jenner has been "accused" of discrimination, and the materials the defendants submit in opposition to summary judgment show that Jenner participates in diversity, equity, and inclusion ("DEI") programs in which a large slice of the nation's private sector also participates. See Diversity Lab, More than 360 Law Firms Achieve Mansfield Certification for 2023–24, Marking a Double-Digit Increase in the Push for Leadership Diversity (Oct. 2, 2024) [ECF No. 95-2 at *110–15]. Legally there is not much more. The defendants point to no case holding such diversity initiatives illegal. Instead they expand the Supreme Court's recent decision in Students for Fair Admissions, Inc. v. President and Fellows of Harvard College, 600 U.S. 181 (2023), beyond its own bounds. See MSJ Opp'n at 11. In fact they recognize as much, saying that they "raise[] legitimate legal issues of just how far DEI policies and programs can go and whether such policies cross the line into illegal discrimination." MTD at 28. Whether or not

---

[16] But see, e.g., Commonwealth v. Biden, 57 F.4th 545, 553 (6th Cir. 2023). Note that Jenner is not a government contractor, making this premise potentially irrelevant.

the defendants accurately predict the future of antidiscrimination law, the point is that they bank on their predictions of the future. The defendants thus seek unilaterally to effectuate their novel legal theory on untested factual accusations, all while evading the due process that would normally accompany such a step.

Bantam Books and Vullo both rebuffed similar—indeed less ambitious—attempts to sidestep due process. First consider Bantam Books. The case involved a state commission tasked with investigating and recommending the prosecution of the distribution of obscene artwork to juveniles. See Bantam Books, Inc. v. Sullivan, 372 U.S. 58, 59–61 (1963). That goal did not implicate the First Amendment since, like discrimination, "'obscenity is not within the area of constitutionally protected speech or press' and may therefore be regulated." Id. at 65 (quoting Roth v. United States, 354 U.S. 476, 485 (1957)). But the commission's mode of enforcement was another story. The commission achieved its aims by sending letters to booksellers subtly threatening enforcement action if the sellers continued distributing books the commission had deemed obscene. Id. at 62–64. Booksellers, fearing the consequences, generally complied, and thus the commission enjoyed a handy tool to suppress speech. See id. at 63–64.

The commission's threats vested it with an authority inconsistent not only with the First Amendment, but also with the Fourteenth, whose promise of due process would otherwise have ensured that only unprotected content could be suppressed. The commission's unilateral suppression of speech using "the threat of invoking legal sanctions and other means of coercion, persuasion, and intimidation," id. at 67, gave it a shortcut to avoid the procedural protections that would normally attach:

> Herein lies the vice of the system. The Commission's operation is a form of effective state regulation superimposed upon the State's criminal regulation of

33

> obscenity and making such regulation largely unnecessary. In thus obviating the need to employ criminal sanctions, the State has at the same time eliminated the safeguards of the criminal process. Criminal sanctions may be applied only after a determination of obscenity has been made in a criminal trial hedged about with the procedural safeguards of the criminal process. The Commission's practice is in striking contrast, in that it provides no safeguards whatever against the suppression of nonobscene, and therefore constitutionally protected, matter. It is a form of regulation that creates hazards to protected freedoms markedly greater than those that attend reliance upon the criminal law.

Id. at 69–70. The commission could not claim for itself the unchecked power to separate protected from unprotected speech and enforce that power using the "informal censorship" tool of threatened reprisal. Id. at 71. So too here, the government has simply decreed that Jenner discriminates without affording any due process.

Now consider Vullo. In that case, a New York state official took aim at the National Rifle Association ("NRA"), a group whose pro-gun advocacy state officials disliked. See 602 U.S. at 180–81. The state official oversaw a department that regulates insurance companies doing business in New York, and she used her influence to "threaten enforcement actions against" insurance companies unless they disengaged commercially from the NRA. Id. at 181, 187. Crucially, the case involved conceded violations of law: the NRA contracted with an insurance company to offer insurance policies that all agree ran afoul of New York insurance law. Id. at 181–82, 187. Given those legal infirmities, the defendant argued—and the Second Circuit held—that when the official encouraged insurance companies to avoid business with the NRA she "was merely carrying out her regulatory responsibilities." Id. at 186 (quoting NRA v. Vullo, 49 F.4th 700, 718–19 (2d Cir. 2022)).

The Supreme Court didn't buy it. To be sure, the defendant "was free to . . . pursue the conceded violations of New York insurance law." Id. at 187. "She could not wield her power, however, to threaten enforcement actions against []regulated entities in order to punish or

34

suppress the NRA's gun-promotion advocacy." Id.  That the NRA and its insurers had violated the law, in other words, did not give New York officials a blank check to disadvantage the NRA and its message—or to pursue violations of law outside the law enforcement process.

Like the defendants Bantam Books and Vullo, the defendants here have identified a speaker they don't like; have threatened action against third parties unless the third parties disassociate from the speaker; and have tried to evade First Amendment scrutiny by recasting their actions not as speech suppression but as law enforcement.  Like the Supreme Court in Bantam Books and Vullo, this Court will not allow the defendants to evade the procedural protections that would normally attend law enforcement by instituting "a scheme of state censorship effectuated by extralegal sanctions." Bantam Books, 372 U.S. at 72.

And make no mistake: like the plaintiffs in those cases, Jenner is entitled to due process. "Suspending a contractor is a serious matter." Com. Drapery Contractors, Inc. v. United States, 133 F.3d 1, 6 (D.C. Cir. 1998).  Thus "[a]n agency may not impose even a temporary suspension without providing the 'core requirements' of due process: adequate notice and a meaningful hearing." Id.; see also, e.g., Reeve Aleutian Airways, Inc. v. United States, 982 F.2d 594, 598 (D.C. Cir. 1993); Liff v. Off. of the Inspector Gen. for the U.S. Dep't of Lab., 156 F. Supp. 3d 1, 21 (D.D.C. 2016), rev'd on other grounds, 881 F.3d 912 (D.C. Cir. 2018).  And if the government must provide due process before terminating a contractor of its own, surely it must do the same before blacklisting an entity from all its contractors' Rolodexes—a more drastic move that precludes Jenner not only from government employment but from the forty percent of its business it gets from entities that themselves contract with the government.  Whatever precise process is due, the executive order does not afford it: Sections 1 and 3, coupled with the fact

sheet's unambiguous instruction that "contracts that involve Jenner" will be "terminate[d]," Fact Sheet at 1, preordain the outcome.

So Section 3 is an act of retaliation not sustainable on non-speech grounds.  Still, the analysis must go on, as government coercion of or retaliation for speech does not invariably violate the First Amendment.  Consider government speech.  When government speaks, it necessarily chooses viewpoints.  Shurtleff v. City of Boston, 596 U.S. 243, 251–52 (2022).  And being made up, in the end, of people, the government must be able to channel those viewpoints through employees; thus it may "impose restraints on the job-related speech of public employees that would be plainly unconstitutional if applied to the public at large."  United States v. Nat'l Treasury Emps. Union, 513 U.S. 454, 465 (1995).  That is, it may in some circumstances coerce its employees to speak as it wishes while on the job, on pain of dismissal.  Relatedly, the government may make "viewpoint-based funding decisions" where it "use[s] private speakers to transmit specific information pertaining to its own program."  Legal Servs. Corp., 531 U.S. at 541 (discussing Rust v. Sullivan, 500 U.S. 173 (1991)).

But the government may not "seek to leverage" its power—whether regulatory, spending, or otherwise—"to regulate speech" outside of those parameters.  All. for Open Soc'y Int'l, 570 U.S. at 214–15.  Jenner falls easily outside those parameters, as it could not be further from the sort of government mouthpiece or policymaker that would open it to government control of its speech.  Even if Jenner contracted directly with the government, the government would have a heavy burden to bear.  Cf. O'Hare Truck Serv., Inc. v. City of Northlake, 518 U.S. 712, 719 (1996).  But Jenner holds no direct government contracts.  Instead, the harm to Jenner from Section 3 is to Jenner's contracts with government contractors—some related to the government contracts, some not.  See SUMF ¶¶ 84–85.  And at this extra level of remove, Jenner becomes

36

even less like a government mouthpiece and "more like ordinary citizens whose viewpoints on matters of public concern the government has no legitimate interest in repressing." Umbehr, 518 U.S. at 680; cf. Navab-Safavi v. Glassman, 637 F.3d 311, 317 (D.C. Cir. 2011).

In fact, most of Jenner's work for government contractors places Jenner adverse to the government: its Government Contracts and Grants practice "help[s] companies successfully avoid or resolve contract disputes with the U.S. Government." SUMF ¶ 25. Section 3, then, employs retaliatory means against lawyers engaged in litigation opposing the government. A use of the procurement authority more offensive to the First Amendment is difficult to imagine. Cf. United States v. Am. Library Ass'n, Inc., 539 U.S. 194, 213 (2003) (explaining that the funding conditions in Legal Services Corporation offended the First Amendment because the job of the lawyers there was "to advocate against the Government, and there was thus an assumption that counsel would be free of state control"). In sum, Section 3 retaliates for speech the government has no business regulating.

**D. Section 4: Racial Discrimination.**

Section 4 is an odd section that, on its face, does nothing at all. The section reads in full: "Nothing in this order shall be construed to limit the action authorized by section 4 of Executive Order 14230 of March 6, 2025 (Addressing Risks from Perkins Coie LLP)." E.O. § 4. That order, in turn, instructed the chair of the EEOC to "review the practices of representative large, influential, or industry leading law firms for consistency with" antidiscrimination law. Perkins Coie E.O. § 4(a). As discussed, it would be difficult to read this order to "limit" any action against Jenner. So the fact sheet confirms what Section 4 really means: "The practices of Jenner will be reviewed under Title VII to ensure compliance with civil rights laws against racial bias." Fact Sheet at 2.

After briefly (and implausibly) protesting that Section 4 does "nothing," see MTD at 25, the defendants turn again to standing—traceability and redressability in particular, id. at 26. They point out that Jenner was "subject to review by the EEOC" before the order and will remain subject to review no matter what this Court does.  Id.  But Jenner does not complain of being vulnerable to investigation on equal terms with the rest of the country.  It objects to being a guaranteed subject of investigation because of its speech.  That injury is easily traceable.  And it is redressable by the order Jenner seeks: not immunity from investigation, but immunity from investigation "made pursuant to Section 4."  Proposed Order [ECF No. 132-1] at 3–4.

The defendants' merits defense parallels their standing objection.  Per the defendants, Jenner cannot show that it wouldn't have been subjected to an EEOC investigation "absent the retaliatory motive," Comm. on Ways & Means, 45 F.4th at 340, because the EEOC investigates; that's what it does.  MSJ Opp'n at 17.

But the defendants fail to offer any reason that would justify singling Jenner out for investigation aside from its speech.  The defendants' sole support for their belief that Jenner unlawfully discriminates is Jenner's "adoption of the 'Mansfield Rule,'" a certification process that seeks to "diversify the power structure of law firms and legal departments."  Id. at 12–14. Jenner is among more than 360 law firms that earned the Mansfield Certification in 2023–24. See [ECF No. 95-2 at *110].  So in this sense Jenner is entirely unremarkable.  What is remarkable is the shared characteristic of the firms now threatened with EEOC investigations: speech the President dislikes.  See Perkins Coie LLP, 2025 WL 1276857, at *36–37 (cataloging the President's speech-based targeting of other firms).

If Jenner discriminates, the EEOC will doubtless receive a charge to that effect, at which point it will be free, indeed obligated, to investigate.  See EEOC v. Shell Oil Co., 466 U.S. 54, 64

38

(1984) ("[T]he EEOC's investigative authority is tied to charges filed with the Commission; unlike other federal agencies that possess plenary authority to demand to see records relevant to matters within their jurisdiction, the EEOC is entitled to access only to evidence 'relevant to the charge under investigation.'" (quoting 42 U.S.C. § 2000e–8(a))); McLane Co. v. EEOC, 581 U.S. 72, 75 (2017).  But the President may not evade the "extensive regulation" governing EEOC proceedings, Am. Ctr. for Int'l Lab. Solidarity v. Fed. Ins. Co., 548 F.3d 1103, 1104–05 (D.C. Cir. 2008), and single out Jenner for investigation in retaliation for its speech.  See, e.g., Sanders v. District of Columbia, 85 F. Supp. 3d 523, 535 (D.D.C. 2015); see also Bantam Books, 372 U.S. at 67 (prohibiting the "threat of invoking legal sanctions" levied to suppress speech).  After all, EEOC investigations can have "serious consequences for their targets."  Am. Ctr. for Int'l Lab. Solidarity, 548 F.3d at 1105.

### E.  Section 5: Personnel.

The order's final operative section is perhaps its most sweeping.  Section 5 seeks to keep all Jenner employees out of federal buildings, away from federal employees, and forever off the federal payroll.  First, Section 5(a) instructs agency heads to "provide guidance limiting official access [to] Federal Government buildings to employees of Jenner when such access would threaten the national security of or otherwise be inconsistent with the interests of the United States" and to "provide guidance limiting Government employees acting in their official capacity from engaging with Jenner employees . . . to ensure consistency with the national security and other interests of the United States."  E.O. § 5(a).  Section 5(b), meanwhile, instructs agencies to "refrain from hiring employees of Jenner . . . absent a waiver from the head of the agency, made in consultation with the Director of the Office of Personnel Management, that such hire will not threaten the national security of the United States."  Id. § 5(b).

39

i.    <u>Section 5 is ripe.</u>

The defendants primarily combat Jenner's Section 5 challenge on ripeness grounds, arguing that the Court ought to hold off on enjoining Section 5 until guidance is issued.  MTD at 28–29.  Note at the outset that even this threshold argument does not apply to § 5(b)'s hiring ban, which takes effect immediately, no guidance needed.  In any event, Jenner's challenge to the entire section is ripe.

Ripeness turns on "the fitness of the issues for judicial review and the hardship to the parties of withholding court consideration."  <u>Full Value Advisors, LLC v. SEC</u>, 633 F.3d 1101, 1106 (D.C. Cir. 2011).  "A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all."  <u>In re Al-Nashiri</u>, 47 F.4th 820, 826 (D.C. Cir. 2022) (cleaned up).

The defendants point out that Section 5 may not play out "as anticipated":

> [Section 5] calls for agency heads to provide guidance as to whether or when to limit Jenner employees from entering a government building; whether or when to limit Government employees from engaging Jenner personnel in their official capacity; whether or when to bar Jenner employees from being hired into government employment.

MSJ Opp'n at 19.[17]

In one sense the defendants are right: just <u>how</u> devastating Section 5 is to Jenner's ability to function remains to be seen.  Without the anticipated guidance, we don't know whether Jenner is in for the "nightmare" scenario, <u>id.</u>—barred from federal courthouses and post offices, from negotiating with federal prosecutors, and the like—or just a fitful night's sleep.

But this is a question of degree, nothing more.  The order compels guidance not on "whether" to limit Jenner's access to government buildings and officials but simply on how to do

---

[17] "[W]hether or when to bar Jenner employees from being hired into government employment" is not in fact awaiting guidance; absent the TRO, that directive would have taken effect immediately.

so.  See E.O. § 5(a).  The Court can imagine no exclusion of Jenner employees from federal buildings, no bar of Jenner employees from interacting with federal employees, and no federal hiring ban on Jenner employees that would pass constitutional muster.  So, barring Executive Branch disobedience of the executive order, this is not a scenario in which the illegality "may not occur at all."  In re Al-Nashiri, 47 F.4th at 826.  Indeed, it is occurring now.  Department of Justice employees have already told a Jenner client that Jenner cannot attend meetings at the Department of Justice; by the time they reversed course following this Court's TRO, the client had obtained substitute counsel.  SUMF ¶ 76.

In any event, the injury Jenner fears is not only one that will result from actual exclusion from government buildings.  The injury is also the coercion it feels now to change its speech to avoid impending consequences; the mere fact that the defendants are weighing things like "limiting  Government  employees"  from  engaging  with  Jenner  personnel,  E.O.  § 5(a), exemplifies the speech-based discrimination Jenner is experiencing.  And the current injury extends, too, to the strong incentive the order gives Jenner's clients and potential clients to choose other firms that can come and go from federal buildings as they please.  In other words, "the mere existence of the Order" harms Jenner.  See Reich, 57 F.3d at 1100.

ii.    Section 5 violates the First Amendment and threatens to violate the Fifth and Sixth Amendments.

The defendants have nearly nothing to say for Section 5 on the merits.  That is not surprising.  Even more than the order's other sections, Section 5 is inexplicable by anything other than a pure desire to inflict pain on Jenner.  Unlike Sections 3 and 4, whose adverse actions—terminating contractual ties and investigating employment practices—at least bear some purported (although ultimately failing) connection to suspicions of discrimination, the same cannot be said for Section 5.  This section, which directs an astonishingly broad range of

41

actions against Jenner employees past, current, and future, has no plausible legitimate rationale and thus cannot stand.

The order's retaliatory nature suffices to deem it unconstitutional under the First Amendment.  Still, a brief exploration of the order's Fifth and Sixth Amendment deficiencies is worthwhile and fits nicely here because, while the full order threatens the protections afforded by those amendments, Section 5 does so most directly.

The Sixth Amendment's guarantee that a criminal defendant "have the Assistance of Counsel for his defense," U.S. Const. amend. VI, embraces a defendant's concomitant right "to choose who will represent him," Gonzalez-Lopez, 548 U.S. at 144 (citing Wheat v. United States, 486 U.S. 153, 159 (1988)).  And the Fifth Amendment's due process guarantee protects a civil litigant's "right to choose counsel without interference by officialdom."  Am. Airways Charters, 746 F.2d at 872.  While these rights are of course qualified—by "the authority of trial courts to establish criteria for admitting lawyers to argue before them" for one, see Gonzalez-Lopez, 548 U.S. at 151, and the imperative of avoiding conflicts of interest for another, see Wheat, 486 U.S. at 162—at the very least they may not be deprived in an "arbitrary" manner, see Morris v. Slappy, 461 U.S. 1, 11 (1983); Ky. W. Va. Gas Co. v. Pa. Pub. Util. Comm'n, 837 F.2d 600, 618 (3d Cir. 1988).

If Section 5 plays out as intended, it would arbitrarily stymie Jenner's ability to represent its clients and, alongside it, Jenner's clients' rights to choose their lawyers.  A lawyer without the ability to negotiate with federal agencies, appear in court, and the like is hardly a lawyer at all.  Cf. Missouri v. Frye, 566 U.S. 134, 143–44 (2012) ("defense counsel have responsibilities in the plea bargain process" necessary "to render the adequate assistance of counsel that the Sixth Amendment requires").  Section 2's security clearance process would also impose a similar

42

disability on Jenner in cases, civil and criminal, involving classified information.  See SUMF ¶¶ 36–42, 81; Notice of Recent Development.  And Section 3 penalizes Jenner clients for their choice of counsel by revoking government contracts.  See Perkins Coie, 2025 WL 1276857, at *42.

The Court need not determine whether these Fifth and Sixth Amendment problems are in fact Fifth and Sixth Amendment violations, as the order's incompatibility with the First Amendment suffices to invalidate it.  And whereas the defendants' Section 5 ripeness argument lacks merit with respect to the First Amendment, it might have a bit more meat with respect to Jenner's right to counsel claims, as those claims might turn on the degree to which the contemplated "guidance" kneecaps Jenner's ability to fulfill its obligations to its clients.  But the Court would be remiss to let this opinion conclude without the observation that Executive Order 14246 at least threatens to metastasize from a violation of the First Amendment to a violation of others as well.

## II.    The remaining factors support an injunction.

Executive Order 14246 is an unconstitutional act of retaliation.  Jenner therefore prevails on the merits and is entitled to summary judgment in its favor.  To win a permanent injunction, however, Jenner still must show that no available remedy at law, such as monetary damages, is adequate to compensate its injury, and that the balance of hardships and the public interest support an injunction.  See Anatol Zukerman, 64 F.4th at 1364 (citing eBay, 547 U.S. at 391); Nken, 556 U.S. at 435 (balance of hardships and public interest inquiries merge when the government is the defendant).  The defendants put forth no argument on these factors, and the Court concludes they are easily met.

43

**A.  The order will cause Jenner irreparable harm not compensable at law.**

Absent court intervention, the order puts Jenner to a choice the Constitution protects it from having to make: change its speech or suffer a serious injury to its livelihood.  If it opts for the former, it will suffer irreparable harm, as "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."  Roman Cath. Diocese of Brooklyn v. Cuomo, 592 U.S. 14, 19 (2020) (quoting Elrod v. Burns, 427 U.S. 347, 373 (1976) (plurality op.)).

If it opts for the latter, Jenner puts a large amount of income at grave risk, as every action directed by the order would strangle Jenner's ability to attract and retain clients and personnel.  Section 3 alone threatens the forty percent of Jenner's income that comes from government contractors, subcontractors, or affiliates.  See SUMF ¶ 83.  Sections 2 and 5 will pile on top of that, making it impossible for Jenner to represent clients whose cases involve sensitive information or—as innumerable cases do—interacting with government employees and entering government buildings.  And that's just accounting for Jenner's current clients; prospective clients will doubtless choose law firms without government-imposed disabilities and a government-inscribed scarlet letter, and prospective employees will doubtless choose law firms whose appearance on their resume will not bar them from future government employment.  As 807 law firms tell the Court, an executive order like this one "would threaten the survival of any law firm."  Br. of Amici Curiae 807 Law Firms in Supp. of Pl. [ECF No. 105] at 2.

Of course, economic injury traditionally is not irreparable, as what is lost can be returned.  See Wis. Gas Co. v. FERC, 758 F.2d 669, 674 (D.C. Cir. 1985).  But "significant" economic loss unrecoverable due to sovereign immunity can be irreparable.  See Luokung Tech. Corp. v. Dep't of Def., 538 F. Supp. 3d 174, 192 (D.D.C. 2021); cf. Dep't of Educ. v. California, 145 S. Ct. 966,

44

968–69 (2025) (irreparable harm to the government where it was "unlikely to recover" funds it was ordered to disburse). That is so here: even if Jenner had a cause of action for damages, but see Egbert v. Boule, 596 U.S. 482, 498 (2022) (no Bivens cause of action for First Amendment retaliation claim), sovereign immunity would bar their collection.

Only a permanent injunction can prevent these significant harms. Jenner has thus established "irreparable injury that the proposed injunction would avert." Taylor v. Resol. Tr. Corp., 56 F.3d 1497, 1508 (D.C. Cir. 1995); accord Xiaomi Corp. v. Dep't of Def., Civ. A. No. 21-280 (RC), 2021 WL 950144, at *10–11 (D.D.C. Mar. 12, 2021) ("exodus of lucrative contracts" coupled with sovereign immunity supported irreparable harm); Luokung Tech. Corp., 538 F. Supp. 3d at 192–93 ("difficulty recruiting and retaining talent" supported irreparable harm).

## III.    The equities and the public interest definitively favor an injunction.

The defendants offer nothing on their side of the equities scale, perhaps because they have little. "[E]nforcement of an unconstitutional [order] is always contrary to the public interest." Karem v. Trump, 960 F.3d 656, 668 (D.C. Cir. 2020) (quoting Gordon v. Holder, 721 F.3d 638, 653 (D.C. Cir. 2013)).[18] And Jenner's side of the balance is much weightier, both as to Jenner itself and as to the greater public. This opinion has already outlined the grave harm the order will inflict on Jenner, but the harm extends well beyond this one firm. This case illustrates why "there is always a strong public interest in the exercise of free speech rights otherwise abridged by an unconstitutional" action. Pursuing Am.'s Greatness, 831 F.3d at 511. Retaliation

---

[18] The Court admits to some brief hesitation in enjoining Section 2 given the national security implications of security clearances, but, as explained, this case implicates no national security concern at all. Cf. Luokong Tech. Corp., 538 F. Supp. 3d at 194–95 (recognizing the "undoubtedly important public interest[]" in national security but giving the interest little weight because the court was "skeptical that weighty national security interests are actually implicated" (quoting Xiaomi Corp., 2021 WL 950144, at *12)).

against Jenner—and Covington & Burling, and Paul Weiss, and Perkins Coie, and WilmerHale, and Susman Godfrey—threatens retaliation against all.  Cf. Heffernan v. City of Paterson, 578 U.S. 266, 273 (2016) (retaliatory action "against one . . . unquestionably inhibits protected belief and association of all" (cleaned up)).  It casts a chill over the whole of the legal profession, leaving lawyers around the country weighing the necessity of vigorous representation against the peril of crossing the federal government.

The order's chilling effect is uniquely harmful for its focus on pro bono work.  When law firms volunteer to represent vulnerable individuals and groups without pay, they embody the best of the profession.  Cf. Mallard v. U.S. Dist. Ct. for S. Dist. of Iowa, 490 U.S. 296, 310 (1989); id. at 313 (Stevens, J., dissenting) ("The lawyer's duty to provide professional assistance to the poor is part of the ancient traditions of the bar.").  This order and the others like it seek not only to prevent that noble undertaking but to manipulate it.  The orders strongarm firms into redirecting their uncompensated services to work the President prefers—or even perhaps to work for the President himself.  See Goldberg, Trump Wants to Use Firms that Cut Deals for Coal Leases, supra.  So when this order retaliates for (and endeavors to steer) Jenner's "powerful pro bono practice[]," E.O. § 1, it sullies a tradition that instructs lawyers to pursue ideals higher than profit.  The public will suffer.

And the chill does not end with the legal profession.  As various amici point out, what the President does to the bar he can equally do to other pillars of our constitutional order—the press,[19] non-governmental organizations,[20] and more.  Retaliatory action against one profession

---

[19] See Amicus Br. of Sixty Media Orgs. & Press Freedom Advocs. [ECF No. 107] at 9 ("[T]he press and their attorneys[] are logical next targets of these tactics."); see also Associated Press v. Budowich, Civ. A. No. 25-532 (TNM), 2025 WL 1039572, at *1 (D.D.C. Apr. 8, 2025) (granting preliminary injunction to end viewpoint discrimination in access to Oval Office press pool events).

[20] See Br. of Amici Curiae 24 NGOs [ECF No. 102] at 1–2 (this "unvarnished viewpoint discrimination against law firms sends a clear message to Amici: Do not challenge the President or you will be next").

46

thus "tells the others that they engage in protected activity at their peril." Heffernan, 578 U.S. at 273. A republic overcast with such a pervasive chill would not long endure, "for what is at stake is the equilibrium established by our constitutional system." Youngstown Sheet & Tube Co. v. Sawyer, 343 U.S. 579, 638 (1952) (Jackson, J., concurring).

## IV.    Scope of injunction.

Having concluded that a permanent injunction must issue, the questions remain against whom and in what form. On the first, the defendants urge the Court to dismiss the United States as a defendant and enjoin only the individually named agency and official defendants; the Court holds otherwise. On the second, Jenner urges the Court not only to enjoin enforcement of the order's operative sections (2–5), but also to enjoin any future governmental actions inspired by the order's derogatory findings in Section 1; the Court declines to do so.

### i.    The United States is a proper defendant.

Jenner's complaint named a great many defendants. See Compl. ¶¶ 32–79. It did not, however, name every agency and agency head subject to the executive order; instead it added as a defendant the "United States of America," "to ensure that the relief ordered by the Court will apply on a government-wide basis, including to federal agencies that are not specifically listed as Defendants." Id. ¶ 79. The defendants object to the inclusion of the United States as a defendant. They insist that Jenner may sue federal officials tasked with implementing the order but may not sue the United States because it "retain[s] [its] immunity against all suits in federal court." MTD at 32 (quoting Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 146 (1993)) (cleaned up).[21] And they see in the inclusion of the United States a ploy

---

[21] The defendants also suggest that Jenner may not sue an "agency" because, like the government, it too enjoys sovereign immunity. See MTD at 32 (quoting Puerto Rico Aqueduct, 506 U.S. at 146). The defendants' failure to move to dismiss the many agency defendants named in this case betrays their halfhearted belief in that argument.

to "enjoin the President by another name," id. at 34, in derogation of the judiciary's general reluctance to bring its injunctive powers to bear directly against the President rather than against a subordinate official, see McCray v. Biden, 574 F. Supp. 3d 1, 8–11 (D.D.C. 2021).

The argument makes a hash of two distinct principles, but it is answered by reference to one statute. The first principle is sovereign immunity, which shields governments (state and federal) from suit absent waiver. See, e.g., United States v. Dalm, 494 U.S. 596, 608 (1990); Bd. of Trs. of Univ. of Ala. v. Garrett, 531 U.S. 356, 363 (2001). This principle has no application here. As the defendants themselves appear to recognize, the United States has waived sovereign immunity for purposes of suits just like this one, in which an entity "suffering legal wrong because of agency action" seeks "relief other than money damages." 5 U.S.C. § 702; see also Perry Capital LLC v. Mnuchin, 864 F.3d 591, 620 (D.C. Cir. 2017) ("[T]he APA's waiver of sovereign immunity applies to any suit whether under the APA or not." (quoting Trudeau v. FTC, 456 F.3d 178, 186 (D.C. Cir. 2006)); MTD at 32–33.

The second principle is the separation of powers, which counsels courts to avoid enjoining the President. See Swan v. Clinton, 100 F.3d 973, 978 (D.C. Cir. 1996). This principle, too, has no application here because Jenner has not sued the President. Instead it has sued, in addition to "subordinate officials," id., the United States. To see why this is permissible, look again to 5 U.S.C. § 702, which provides that "[t]he United States may be named as a defendant in any" action to which the APA's waiver of sovereign immunity applies, "and a judgment or decree may be entered against the United States." See also § 703 ("[T]he action for judicial review may be brought against the United States, the agency by its official title, or the appropriate officer."); Cohen v. United States, 650 F.3d 717, 723 (D.C. Cir. 2011) (en banc).

Section 702 does require Jenner eventually to list the individual federal officers it seeks to enjoin; it just need not do so in the caption of the complaint. The statute insists "[t]hat any mandatory or injunctive decree" resulting from a lawsuit against the United States "shall specify the Federal officer or officers (by name or by title), and their successors in office, personally responsible for compliance." 5 U.S.C. § 702. Jenner has complied, attaching to its proposed injunction a lengthy list of agencies and agency heads subject to the executive order. See Proposed Order at 7–20. And Jenner has standing to obtain an injunction against those agencies and agency heads for the same reasons it has standing to challenge the order generally. The defendants offer no reason that harm from these additional agencies is any more speculative than harm from the agencies named as defendants.

ii.    The Court will not enjoin future actions taken pursuant to Section 1.

It should be clear by now that, in this case, the Court will enjoin any actions taken pursuant to the order's operative sections, Sections 2 through 5. Section 6's boilerplate language aside, that leaves Section 1.

Section 1 does not direct any action. It represents instead something of a screed airing the President's grievances with Jenner. In the executive order as issued, the screed played an essential role: it both supplied a rationale for Sections 2 through 5 and answered any questions those operative sections purported to leave open, like whether engaging with Jenner is in the "national interest."

But once this opinion and the accompanying order issue, the executive order will no longer stand. Sections 2 through 5 will not direct agencies to ask the questions Section 1 largely answers. And shorn of its enforcement mechanisms, Section 1 is nothing more than the Executive Branch "say[ing] what it wishes." Vullo, 602 U.S. at 187. Jenner has no more right to

49

silence the Executive Branch than the Executive Branch has to silence Jenner: the government is "free to criticize" Jenner all it wants "in the hopes of persuading others" through "the merits and force of [its] ideas, the strength of [its] convictions, and [its] ability to inspire." Id. at 187–88. It simply may not back up that criticism with "the power of the State." Id. at 188; see also, e.g., Kennedy v. Warren, 66 F.4th 1199, 1207 (9th Cir. 2023) ("[P]ublic officials may criticize practices that they would have no constitutional ability to regulate, so long as there is no actual or threatened imposition of government power or sanction.").

Recognizing Section 1's status as government speech, Jenner does not exactly seek to enjoin it. See MTD Opp'n at 24. But Jenner fears further action pursuant to Section 1, and so seeks to enjoin federal officials "from using or considering in any way or for any purpose the statements laid out in Section 1." Proposed Order at 2.

The Court is very sympathetic to Jenner's request. The President has displayed a great deal of animosity towards Jenner. Further adverse actions would not be shocking—and could very well offend the Constitution as plainly as Executive Order 14246 does. And the defendants' own conduct during this litigation does not ease the concern: even in complying with the TRO, the defendants persisted in disparaging Jenner, implied that federal agencies may "decide with whom to work" notwithstanding the First Amendment, and "reserve[d] the right to take all necessary and legal actions" against Jenner. See Memorandum from Pamela Bondi, Att'y Gen., & Russell Vought, Dir., Off. of Mgmt. & Budget to Heads of Exec. Dep'ts & Agencies [ECF No. 21-1]. Rather than leave the possibility open, Jenner would prefer to head it off at the pass.

But such a step would require the Court to enjoin all uses of Section 1 "in the abstract," "apart from any concrete application that threatens imminent harm to [Jenner's] interests." Summers v. Earth Island Inst., 555 U.S. 488, 494 (2009). Neither standing doctrine nor equity

50

generally permits such judicial prophylaxis.  Jenner lacks standing to challenge hypothetical future actions taken pursuant to Section 1; unlike actions taken pursuant to Sections 2 through 5, these are purely "conjectural or hypothetical" because agencies have not been instructed to take them.  See Anatol Zukerman, 64 F.4th at 1362 (quoting City of L.A. v. Lyons, 461 U.S. 95, 101–02 (1983)).  With no standing to challenge such actions, the injunction shrinks accordingly, as a "remedy must of course be limited to the inadequacy that produce[s] the injury in fact." DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 353 (2006) (quoting Lewis v. Casey, 518 U.S. 343, 357 (1996)).  And equitable principles provide the same thing standing doctrine demands, as an injunction may not issue "without adequate proof of a threatened injury."  Taylor, 56 F.3d at 1508.  Whether best viewed as a shortcoming of standing, ripeness, or a "basis in equity for an injunction," the guesswork entailed in enjoining all future uses of the sentiments expressed in Section 1 would exceed the Court's proper role.  See id.; Trump v. New York, 592 U.S. 125, 133–34 (2020).

If this conclusion results in more federal action taken against Jenner, those actions could very well be equally unconstitutional.  But Article III requires this Court to place its faith in future courts to prevent harm from befalling Jenner if and when that occurs.  At this juncture, the Court cannot take that role for itself.

## Conclusion

Jenner raises many more claims of unconstitutionality.  These present interesting, difficult, and potentially meritorious questions about the scope of presidential power and more. What has been said here of the First Amendment (and in passing of the Fifth and Sixth), however, is sufficient to declare Executive Order 14246 unlawful and enjoin its operation, eliminating the need to explore those other questions.  So the Court need not break new ground:

Executive Order 14246 violates settled First Amendment law and its operation must be enjoined in full.  Jenner's motion for summary judgment is granted; the defendants' motion is denied.  A separate order will issue.

_____/s/_____

JOHN D. BATES
United States District Judge

Dated: <u>May 23, 2025</u>

52

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **JENNER & BLOCK LLP,** | |
| **Plaintiff,** | |
| **v.** | **Civil Action No. 25-916 (JDB)** |
| **U.S. DEPARTMENT OF JUSTICE, et al.,** | |
| **Defendants.** | |

## ORDER

Just over one week ago, this Court determined that Executive Order 14246 was an act of retaliation against Jenner & Block, that it violated the First Amendment, and that "its operation must be enjoined in full." See Jenner & Block LLP v. U.S. Dep't of Just., Civ. A. No. 25-916 (JDB), 2025 WL 1482021, at *25 (D.D.C. May 23, 2025). The Court stopped just short, however, of giving Jenner everything it asked for. The Court noted that Jenner's proposed order would have had the Court permanently enjoin federal officials not only from taking the actions the executive order directed but also "from using or considering in any way or for any purpose the statements laid out in Section 1" of the executive order. Id. The Court viewed such a sweeping injunction against future actions inspired by the President's statements as inappropriate because any such actions are, at this point, "purely conjectural or hypothetical": "agencies have not been instructed to take them." Id. (internal quotation marks omitted). So the resulting Order permanently enjoined federal officials "from implementing or enforcing Sections 2–5"—the executive order's operative sections. Order [ECF No. 139] § 1. It did not specifically enjoin Section 1.

But that modest limitation on the scope of the injunction did not mean that Section 1 was altogether beyond the Court's power to touch. To the contrary, the Court recognized that Section

1

1 "played an essential role" in the executive order as issued, as it "both supplied a rationale for Sections 2 through 5 and answered any questions those operative sections purported to leave open." Jenner, 2025 WL 1482021, at *24. And any reliance on Section 1 in implementing the executive order, the Court concluded, would thus contravene the First Amendment just as surely as actions taken under the operative sections would. Accordingly, the Court's Order referenced Section 1 several times, each time making clear that any actions already taken pursuant to Section 1 must be undone. Any such actions, after all, were neither conjectural nor hypothetical; they had already occurred or been directed.

For instance, the Court ordered security clearance reviews and suspensions "made pursuant to Sections 1 or 2(a)" stopped and reversed. Order § 5.[1] And—in the now-controversial portion of the Order—it ordered certain defendants to direct entities subject to the executive order to "rescind any implementation or enforcement of Executive Order 14246, including any use, consideration, or reliance on the statements in Section 1." Id. § 9(a).

The defendants now move for clarification of this last-mentioned portion of the Order. See Defs.' Mot. to Clarify [ECF No. 141]. They view it as inconsistent with the Court's decision not to permanently enjoin all consideration of Section 1, and ask the Court to clarify that the forthcoming direction need only instruct federal entities to "rescind any implementation or enforcement of Sections 2–5"—but not Section 1. Id. at 2.

The Court declines to do so. The relevant portion of the Court's Order requires the rescission of past uses of Section 1; that is what "rescind" means, after all. This instruction does not suffer from the lack-of-imminence problem that caused the Court to refrain from enjoining future "consider[ation]" of the statements in Section 1 "for any purpose." Jenner, 2025 WL

---

[1] The defendants do not challenge or seek clarification as to this portion of the Order, and the Court trusts that they understand their obligations under it.

2

1482021, at *25 (internal quotation marks omitted).  So the Court meant what it said: the direction contemplated in Section 9 of the Order must instruct entities subject to the executive order to "rescind any implementation or enforcement of Executive Order 14246, including any use, consideration, or reliance on the statements in Section 1."  Order § 9(a).

The defendants also seek one other type of clarification, this one uncontroversial.  They fear that the Court's Order could be taken to enjoin Equal Employment Opportunity Commission investigations of other "industry leading law firms," and ask for clarification that the Order's relief runs to Jenner alone.  See Mot. at 3–4.  Jenner does not object to this clarification, see Jenner's Resp. to Mot. [ECF No. 142] at 1, and the Court hereby issues it.  The Court intended to enjoin Section 4 of the executive order only insofar as it targeted Jenner; to the extent the initial Order was unclear on that point, the Court now clarifies that "the injunctive relief as to Section 4 of Executive Order 14246 in the Court's Order of May 23, 2025 [ECF No. 139] runs only in favor of the Plaintiff, Jenner & Block LLP (including its affiliates, predecessors, successors, assigns, directors, officers, partners, employees, and agents)."  Mot. at 4.

For the above reasons, the defendants' motion to clarify [ECF No. 141] is **DENIED** insofar as it seeks clarification or amendment of the Order's impact on Section 1 of Executive Order 14246 and **GRANTED** insofar as it seeks clarification of the Order's impact on Section 4 of Executive Order 14246.  **SO ORDERED.**

/s/
_____

JOHN D. BATES
United States District Judge

Dated: June 2, 2025